THOMAS R. BURKE (CA State Bar No. 141930)
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, California  94111
Telephone:      (415) 276-6500
Facsimile:      (415) 276-6599
Email:          thomasburke@dwt.com

JOHN D. SEIVER (admitted *pro hac vice*)
ADAM S. CALDWELL (admitted *pro hac vice*)
RONALD G. LONDON (admitted *pro hac vice*)
ELIZABETH A. DROGULA (admitted *pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Ave., N.W. Suite 200
Washington, D.C.  20006-1272
Telephone:      (202) 973-4200
Facsimile:      (202) 973-4499
Email:          johnseiver@dwt.com

Attorneys for Defendant BRESNAN COMMUNICATIONS, INC.

## UNITED STATES DISTRICT COURT
## THE NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| DAN VALENTINE, DALE MORTENSEN, MELISSA BECKER, SAMUEL GREEN, SHERRON RIMPSEY, CHARLOTTE MIRANDA, FRANK MIRANDA, SAUL DERMER, WAYNE COPELAND, CRYSTAL REID, ANDREW PAUL MANARD, KATHLEEN KIRCH, TERRY KIRCH, NEIL DEERING, PAUL DRISCOLL, individuals, on behalf of themselves an others similarly situated, )<br><br>            Plaintiffs,<br><br>       v.<br><br>NEBUAD, INC., a Delaware Corporation; BRESNAN COMMUNICATIONS, a New York Corporation; CABLE ONE, a Delaware Corporation; CENTURYTEL, a Texas Corporation; EMBARQ, a Delaware Corporation; KNOLOGY, a Delaware Corporation; WOW!, a Delaware Corporation; and JOHN DOES 1-20, corporations,<br><br>            Defendants. | Case No. CV 08-5113 TEH<br><br>DEFENDANT BRESNAN COMMUNI-CATIONS' NOTICE OF MOTION AND MOTION TO DISMISS UNDER FED. R. CIV. P. 12(B)(2) OR FED. R. CIV. P. 12(B)(6)<br><br>Date: March 9, 2009<br>Time: 10 a.m.<br>Place: Courtroom 12, 19th Floor<br>Senior Judge: Hon. Thelton E. Henderson<br><br><br>Complaint Filed: November 10, 2008<br>Trial Date: None Set |

**DAVIS WRIGHT TREMAINE LLP**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD IN THIS ACTION**:

**PLEASE TAKE NOTICE** that on March 9, 2009, at 10 a.m., or as soon thereafter as the matter may be heard before the Hon. Thelton E. Henderson, United States District Judge in Courtroom Twelve of the United States District Court for the Northern District of California, San Francisco Division, located at 450 Golden Gate Avenue, San Francisco, California 94102, the Defendant Bresnan Communications ("Bresnan") will and hereby does move this Court for an order, pursuant to Federal Rules of Civil Procedure 12(b)(2) or 12(b)(6), dismissing the Complaint of Plaintiffs Dan Valentine, Dale Mortensen, Melissa Becker, Samuel Green, Sherron Rimpsey, Charlotte Miranda, Frank Miranda, Saul Dermer, Wayne Copeland, Crystal Reid, Andrew Paul Manard, Kathleen Kirch, Terry Kirch, Neil Deering, and Paul Driscoll ("Plaintiffs") on the following grounds: (1) lack of personal jurisdiction; (2) lack of standing to bring the claims alleged in Counts II and IV of the Complaint; (3) Plaintiffs Dale Mortensen and Melissa Becker (the "Bresnan Plaintiffs")[1] are required to arbitrate their claims pursuant to a binding Arbitration Provision in their agreement for services with Bresnan; and (4) failure to state a claim in Counts I -VII.

Bresnan makes this motion first on the grounds that this Court does not have jurisdiction over Bresnan.  Bresnan is a Delaware corporation with its principal place of business in New York.[2]  The allegations in the Complaint pertain to Bresnan's cable system in Billings, Montana, and the Bresnan Plaintiffs, the two putative class representatives who are or were Bresnan subscribers, as well as the proposed class of Bresnan subscribers, are or were Montana residents at all relevant times.  Moreover, any action by Bresnan that is challenged would have taken place in Montana or New York, and any injury to the Bresnan Plaintiffs would have been sustained in

---

[1]  Plaintiffs Mortensen and Becker are the only plaintiffs alleged in the Complaint to have received services from Bresnan.  Thus, they are the only plaintiffs with potential standing to sue Bresnan.

[2]  Plaintiffs named Bresnan Communications, Inc. as a defendant in this action.  However, the Bresnan entity with which Plaintiffs have contracted and that entered an agreement with NebuAd is Bresnan Communications, LLC, a Delaware Limited Liability Company.  Accordingly, Bresnan Communications, LLC is the correct party to this litigation and is the entity referred to herein as "Bresnan."

Bresnan's Motion to Dismiss Under  Fed. R. Civ. P. 12(b)(2) or 12(b)(6)                Case No. C08 05113 TEH

DAVIS WRIGHT TREMAINE LLP

1 Montana.  Thus, the Bresnan Plaintiffs also have no standing to assert violations of California

2 law (Counts II and IV) against Bresnan and, in any event, those counts fail to state a claim.  In

3 addition, Plaintiffs' Complaint fails to state cognizable claims under the Wiretap and Stored

4 Communications Acts (Count I) and the Computer Fraud and Abuse Act  (Count III), or under

5 their California analogs (Counts II and IV).  Finally, there is no express or implied cause of

6 action for conspiracy or for aiding and abetting any alleged violations of law committed by

7 codefendant NebuAd (Counts V and VI) and no claim for unjust enrichment (Count VII).

8 Accordingly, Plaintiffs' Complaint should be dismissed in its entirety.

9     This Motion rests on the concurrently filed Defendant Bresnan Communications' Memor-

10 andum of Points and Authorities in Support of Motion to Dismiss under Fed. R. Civ. P. 12(b)(2)

11 or 12(b)(6),[3] Exhibits A and B in support thereof, including the Declaration of Jerold C. Lambert,

12 the complete files and records in this action, and such additional evidence and argument as may

13 hereinafter be presented in connection with the hearing on this Motion.

15     DATED:  January 30, 2009

16             Respectfully submitted,

17             DAVIS WRIGHT TREMAINE LLP

19             By:  /s/ John D. Seiver
               THOMAS R. BURKE (CA State Bar No. 141930)
20             JOHN D. SEIVER (admitted *pro hac vice*)
               ADAM S. CALDWELL (admitted *pro hac vice*)
21             RONALD G. LONDON (admitted *pro hac vice*)
               ELIZABETH A. DROGULA (admitted *pro hac vice*)

23             Attorneys for Defendant
               BRESNAN COMMUNICATIONS, INC.

[3]  Also concurrently herewith Defendant Bresnan Communications is moving to compel arbi-tration of the Bresnan Plaintiffs' claims as provided for in the relevant subscriber agreements.

THOMAS R. BURKE (CA State Bar No. 141930)
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, California  94111
Telephone:   (415) 276-6500
Facsimile:   (415) 276-6599
Email:       thomasburke@dwt.com

JOHN D. SEIVER (admitted *pro hac vice*)
ADAM S. CALDWELL (admitted *pro hac vice*)
RONALD G. LONDON (admitted *pro hac vice*)
ELIZABETH A. DROGULA (admitted *pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Ave., N.W. Suite 200
Washington, D.C.  20006-1272
Telephone:   (202) 973-4200
Facsimile:   (202) 973-4499
Email:       johnseiver@dwt.com

Attorneys for Defendant BRESNAN COMMUNICATIONS, INC.

UNITED STATES DISTRICT COURT
THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| DAN VALENTINE, DALE MORTENSEN, MELISSA BECKER, SAMUEL GREEN, SHERRON RIMPSEY, CHARLOTTE MIRANDA, FRANK MIRANDA, SAUL DERMER, WAYNE COPELAND, CRYSTAL REID, ANDREW PAUL MANARD, KATHLEEN KIRCH, TERRY KIRCH, NEIL DEERING, PAUL DRISCOLL, individuals, on behalf of themselves an others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> NEBUAD, INC., a Delaware Corporation; BRESNAN COMMUNICATIONS, a New York Corporation; CABLE ONE, a Delaware Corporation; CENTURYTEL, a Texas Corporation; EMBARQ, a Delaware Corporation; KNOLOGY, a Delaware Corporation; WOW!, a Delaware Corporation; and JOHN DOES 1-20, corporations, <br><br> Defendants. | Case No. CV 08-5113 TEH <br><br> DEFENDANT BRESNAN COMMUNICA-TIONS' SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES IN SUP-PORT OF MOTIONS TO DISMISS UNDER FED. R. CIV. P. 12(B)(2) OR FED. R. CIV. P. 12(B)(6) <br><br> Date: March 9, 2009 <br> Time: 10 a.m. <br> Place: Courtroom 12, 19th Floor <br> Senior Judge: Hon. Thelton E. Henderson <br><br> Complaint Filed: November 10, 2008 <br> Trial Date: None Set |

DAVIS WRIGHT TREMAINE LLP

# **TABLE OF CONTENTS**

I.     INTRODUCTION ...................................................................................................1

II.    ISSUES TO BE DECIDED ....................................................................................1

III.   ARGUMENT..........................................................................................................2

    A.    This Court Lacks Personal Jurisdiction Over Bresnan ...............................2

    B.    Counts II and IV Must Be Dismissed Because Plaintiffs Lack
        Standing and Counts II and IV Fail to State a Claim ...............................5

    C.    The Court Should Dismiss Because the Bresnan Plaintiffs Are
        Subject to Binding Arbitration..................................................................7

    D.    Count I Fails to State a Claim Under the Federal Wiretap Act .................7

        1.    Bresnan did not "intercept," "use" or "disclose" any
             electronic communication or access any computer ....................8

        2.    Plaintiffs' federal Wiretap Act claims fail because
             Defendants did not use any "device" to "intercept"
             electronic communications .....................................................11

        3.    Plaintiffs' federal Wiretap Act claim fails because
             Bresnan's conduct constituted limited testing necessarily
             incident to rendition of service ................................................13

        4.    Plaintiffs' federal Wiretap Act claims fail because they
             consented to Bresnan's conduct................................................14

    E.    Count I Fails to State A Claim Under the SCA .......................................17

    F.    Count III Fails to State a Claim Under the CFAA....................................18

    G.    Counts V and VI Fail to State a Claim for Aiding and Abetting and
        Conspiracy .............................................................................................22

    H.    Count VII Fails to State a Claim for Unjust Enrichment.........................23

IV.   CONCLUSION....................................................................................................25

**TABLE OF AUTHORITIES**

**FEDERAL CASES**

*Accuimage Diagnostics Corp. v. Terarecon, Inc.,*
   260 F.Supp.2d 941 (N.D. Cal. 2003) ................................................................24

*Aleshire v. Licking County Sheriff's Office,* 2008 WL 3307120
   (S.D. Ohio Aug. 7, 2008) ..................................................................................8

*Ali v. Douglas Cable Commc'ns,* 929 F.Supp. 1362 (D. Kan. 1996) .....................12, 13

*American Family Mut. Ins. Co. v. Rickman,* 554 F.Supp.2d 766
   (N.D. Ohio 2008) .............................................................................................21

*Arias v. Mut. Cent. Alarm Serv., Inc.,* 202 F.3d 553 (2d Cir. 2000) ......................12, 13

*Baggett v. Hewlett-Packard Co.,* 2007 WL 5600703
   (C.D. Cal. Oct. 30, 2007) ................................................................................23

*Bansal v. Server Beach,* 285 Fed. Appx. 890 (3d Cir. 2008) ...............................18

*Bates v. United States,* 522 U.S. 23 (1997) .......................................................23

*Bell Atl. Corp. v. Twombly,* 127 S. Ct. 1955 (2007) .....................................7, 9, 22

*Berry v. Funk,* 146 F.3d 1003 (D.C. Cir. 1998) ...................................................13

*Bohach v. City of Reno,* 932 F.Supp. 1232 (D. Nev. 1996) ...................................17

*Borinski v. Williamson,* 2005 WL 1206872 (N.D. Tex. May 17, 2005) .....................16

*Boschetto v. Hansing,* 539 F.3d 1011 (9th Cir. 2008) ...........................................2

*Brazil v. Dell,* 2008 WL 2693629 (N.D. Cal. July 7, 2008) ...................................24

*Bunnell v. Motion Picture Ass'n of Am.,* 567 F.Supp.2d  1148 (C.D. Cal. 2007) ........11

*Butera & Andrews v. IBM Corp.,* 456 F.Supp.2d 104 (D.D.C. 2006) ......................23

*Butler v. Adoption Media, LLC,* 486 F.Supp.2d 1022 (N.D. Cal. 2007) ....................6

*Cairo, Inc. v. Crossmedia Servs., Inc.,* 2005 WL 756610
   (N.D. Cal. 2005) .............................................................................................15

*Cattie v. Wal-Mart Stores, Inc.,* 504 F.Supp.2d 939 (S.D. Cal. 2007) .....................7

*Chance v. Avenue A, Inc.,* 165 F.Supp.2d 1153 (W.D. Wash. 2001) ......................20

*Columbia Pictures, Inc. v. Bunnell,* 245 F.R.D. 443 (C.D. Cal. 2007) .....................11

*Contemporary Servs. Corp. v. Hartman,* 2008 WL 3049891
   (C.D. Cal. Aug. 4, 2008) ..................................................................................18

*Coremetrics, Inc. v. Atomic Park.com, LLC,* 370 F.Supp.2d 1013
   (N.D. Cal. 2005) ...............................................................................................3

DAVIS WRIGHT TREMAINE LLP

DAVIS WRIGHT TREMAINE LLP

*Creative Computing v. Getloaded.com, L.L.C.,* 386 F.3d 930 (9th Cir. 2004) ..............................20

*Crowley v. CyberSource Corp.,* 166 F.Supp.2d 1263 (N.D. Cal. 2001) .................9, 14, 17, 18, 27

*DirecTV, Inc. v. Jerolleman,* 2003 WL 22697177
(E.D. La. Nov. 12, 2003) .................................................................................11

*Doe v. Dartmouth-Hitchcock Med. Ctr.,* 2001 WL 873063
(D.N.H. July 19, 2001) .............................................................................18, 23

*Doe v. GTE Corp.,* 347 F.3d 655 (7th Cir. 2003) ......................................................22

*Doe I v. Unocal Corp.,* 248 F.3d 915 (9th Cir. 2001) ..................................................2

*Dole Food Co. v. Watts*, 303 F.3d 1104 (9th Cir. 2002) ..............................................2

*Dorris v. Absher,* 179 F.3d 420 (6th Cir. 1999) ......................................................10

*Elektra Entm't Group, Inc. v. Santangelo,* 2008 WL 4452393
(S.D.N.Y. Oct. 1, 208) ...............................................................................22

*Enreach Tech., Inc. v. Embedded Internet Solutions, Inc.,*
403 F.Supp.2d 968 (N.D. Cal. 2005) .................................................................23

*Falk v. General Motors Corp.,* 496 F.Supp.2d 1088 (N.D. Cal. 2007) ............................23

*Fernandez-Vargas v. Gonzales,* 548 U.S. 30 (2006) ...................................................23

*Flagg v. City of Detroit,* 252 F.R.D. 346 (E.D. Mich. 2008) ......................................18

*Franklin v. City of Chicago Police Dep't,* 2004 WL 1921027 (N.D. Ill. July 9, 2004) ............10

*Freeman v. DirecTV, Inc.,* 457 F.3d 1001 (9th Cir. 2006) ....................................22, 23

*Garelli Wong & Assocs. Inc. v. Nichols,* 551 F.Supp.2d 704 (N.D. Ill. 2008) ................20, 22

*Garland-Sash v. Lewis,* 2007 WL 935013 (S.D.N.Y. Mar. 26, 2007) .............................23

*Gerlinger v. Amazon.com, Inc.,* 311 F.Supp.2d 838 (N.D. Cal. 2004) ..........................23

*Griggs-Ryan v. Smith,* 904 F.2d 112 (1st Cir. 1990) .............................................16, 17

*Hall v. EarthLink Network, Inc.,* 396 F.3d 500 (2d Cir. 2005) ....................................13

*Hayes v. Packard Bell NEC, Inc.,* 193 F.Supp.2d 910 (E.D. Tex. 2001) ...........................21

*Hirsch v. Blue Cross, Blue Shield*, 800 F.2d 1474 (9th Cir. 1986) ..................................3

*Hotmail Corp. v. Van$ Money Pie, Inc.,* 1998 WL 388389 (N.D. Cal. Apr. 16, 1998) ............15

*Hurst v. Phillips,* 2005 WL 2436712 (W.D. Tenn. Sept. 30, 2005) ...............................11

*Ideal Aerosmith, Inc. v. Acutronic USA, Inc.,*
2007 WL 4394447 (E.D. Pa. Dec. 13, 2007) .........................................................9

*In re AOL, Inc.,* 168 F.Supp.2d 1359 (S.D. Fla. 2001) .............................................21

*In re DoubleClick Inc. Privacy Litig.,* 154 F.Supp.2d 497 (S.D.N.Y. 2001) ..........8, 14, 16, 20, 21

*In re Graphics Processing Units Antitrust Litig.,* 527 F.Supp.2d 1011
    (N.D. Cal. 2007) ...................................................................................................5

*In re Hongisto,* 293 B.R. 45 (N.D. Cal. 2003)...................................................................22

*In re Intuit Privacy Litig.,* 138 F.Supp.2d 1272 (C.D. Cal. 2001)...................................20

*In re Late Fee & Over-Limit Fee Litig.,* 528 F.Supp.2d 953 (N.D. Cal. 2007)...............23

*In re Toys R Us, Inc. Privacy Litig.,* 2001 WL 34517252
    (N.D. Cal. Oct. 9, 2001)...............................................................11, 16, 18, 22, 23

*James v. Newspaper Agency Corp.,* 591 F.2d 579 (10th Cir. 1979) .................................12

*Jet Blue Airways Corp. Privacy Litig.,* 379 F.Supp.2d 299 (E.D.N.Y. 2005)................14

*Jonathan Browning, Inc. v. Venetian Casino Resort, LLC,*
    2007 WL 4532214 (N.D. Cal. Dec. 19, 2007)................................................3, 5

*Kalow & Springnut, LLP v. Commence Corp.,*
    2008 WL 2557506 (D.N.J. June 23, 2008)................................................19, 20

*Konop v. Hawaiian Airlines, Inc.,* 302 F.3d 868 (9th Cir. 2002) ....................................11

*Lewis v. Casey,* 518 U.S. 343 (1996)..................................................................................5

*Mattel, Inc. v. Greiner & Hausser GmbH,* 354 F.3d 857 (9th Cir. 2003) ........................5

*Maxtor Corp. v. Read-Rite (Thailand) Co.,*
    2003 WL 24902406 (N.D. Cal. Dec. 4, 2003)................................................2

*Mazur v. eBay, Inc.,* 2008 WL 618988 (N.D. Cal. 2008) ...............................................15

*Menken v. Emm,* 503 F.3d 1050 (9th Cir. 2007)................................................................2

*Modis, Inc. v. Bardelli,* 531 F.Supp.2d 314 (D. Conn. 2008)..........................................22

*Murray v. Financial Visions, Inc.,* 2008 WL 4850328
    (D. Ariz. Nov. 7, 2008)................................................................................15

*National Cable Telecomms. Ass'n v. Brand X Internet Servs.,* 545 U.S. 967 (2005).....................8

*Neilson v. Union Bank of Cal., N.A.,* 290 F.Supp.2d 1101 (C.D. Cal. 2003) ................22

*Netzer v. Continuity Graphic Assocs., Inc.,* 963 F.Supp. 1308 (S.D.N.Y. 1997) .........24

*New York Life Ins. Co. v. Head,* 234 U.S. 149 (1914)......................................................6

*Nexans Wires S.A. v. Sark-USA, Inc.,* 319 F.Supp.2d 468 (S.D.N.Y. 2004) ...................18, 20, 21

*Nutrishare, Inc. v. Biorx, LLC*, 2008 WL 3842946
    (E.D. Cal. Aug. 14, 2008)................................................................................2

*Oracle Corp. v. SAP AG*, 2008 WL 5234260 (N.D. Cal. Dec. 15, 2008) ......................24

DAVIS WRIGHT TREMAINE LLP

DAVIS WRIGHT TREMAINE LLP

*Paracor Fin. v. General Elec. Capital Corp.,* 96 F.3d 1151 (9th Cir. 1996) ...............................23

*Patrick Patterson Custom Homes, Inc. v. Bach,*
    2008 WL 4924820 (N.D. Ill. Nov. 14, 2008) ....................................................................22

*Pattee v. Ga. Ports Auth.,* 512 F.Supp.2d 1372 (S.D. Ga. 2007) .....................................11

*PBA Local No. 38 v. Woodbridge Police Dep't,* 832 F.Supp. 808 (D.N.J. 1993) ........................10

*P.C. Yonkers, Inc. v. Celebrations the Party & Seasonal Superstore, LLC,*
    428 F.3d 504 (3d Cir. 2005) ....................................................................18

*Peavy v. WFAA-TV,* 221 F.3d 158 (5th Cir. 2000) ....................................................11

*Pebble Beach Co. v. Caddy,* 453 F.3d 1151 (9th Cir. 2006) ...........................................4

*Perkins-Carrillo v. Systemax, Inc.,*
    2006 WL 1553957 (N.D. Ga. May 26, 2006) ......................................................10, 11

*Phillips Petro. Co . v. Shutts,* 472 U.S. 797 (1985) ..................................................6

*Potter v. Havlicek,* 2008 WL 2556723 (S.D. Ohio June 23, 2008) ......................................12

*Register.com, Inc. v. Verio, Inc.,* 356 F.3d 393 (2d Cir. 2004) .......................................15

*Reynolds v. Spears,* 93 F.3d 428 (8th Cir. 1996) ....................................................9, 10

*Sam's Wine & Liquors, Inc. v. Hartig,* 2008 WL 4394962
    (N.D. Ill. Sept. 24, 2008) ....................................................................20

*Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797 (9th Cir. 2004) ...................................4

*Simon v. E. Ky. Welfare Rights Org.,* 426 U.S. 26 (1976) .............................................5

*Smartix Int'l Corp. v. MasterCard Int'l LLC,* 2008 WL 4444554
    (S.D.N.Y. Sept. 30, 2008) ....................................................................23

*Sparling v. Hoffman Constr. Co.,* 864 F.2d 635 (9th Cir. 1988) ......................................7

*Standfacts Credit Servs., Inc. v. Experian Info. Solutions, Inc.,* 405 F.Supp.2d 1141
    (C.D. Cal. 2005)....................................................................7

*State Wide Photocopy Corp. v. Tokai Fin. Servs.,*
    909 F.Supp. 137 (S.D.N.Y. 1995) ....................................................17

*Sullivan v. Oracle Corp.,* 547 F.3d 1177 (9th Cir. 2008) .............................................6

*Swanson v. USProtect Corp.,* 2007 WL 1394485 (N.D. Cal. 2007) .......................................23

*Thurmond v. Compaq Computer Corp.,* 171 F.Supp.2d 667 (E.D. Tex. 2001) ...............................21

*Ticketmaster L.L.C. v. RMB,* 507 F.Supp.2d 1096 (C.D. Cal. 2007) .....................................15

*Tuazon v. R.J. Reynolds Tobacco Co.,* 433 F.3d 1163 (9th Cir. 2006) .................................3, 4

*United States v. Amen,* 831 F.2d 373 (2d Cir. 1987) ..................................................14

DAVIS WRIGHT TREMAINE LLP

*United States v. Councilman,* 418 F.3d 67 (1st Cir. 2005) ..................................................17

*United States v. Delgado,* 357 F.3d 1061 (9th Cir. 2004) ..................................................22

*United States v. Diaz,* 2006 WL 2792422 (N.D. Cal. 2006) .............................................14, 16, 17

*United States v. Fraser,* 352 F.3d 107 (3d Cir. 2004) ......................................................17

*United States v. Hammond,* 286 F.3d 189 (4th Cir. 2002) ...................................................14

*United States v. Hernandez-Orellana,* 539 F.3d 994 (9th Cir. 2008)......................................22

*United States v. Lewis,* 406 F.3d 11 (1st Cir. 2005) ......................................................14

*United States v. N.Y. Tel. Co.,* 434 U.S. 159 (1977).......................................................12

*United States v. Ritchie,* 342 F.3d 903 (9th Cir. 2003)....................................................15

*United States v. Van Poyck,* 77 F.3d 285 (9th Cir. 1996)...............................................14, 16

*United States v. Verdin-Garcia,* 516 F.3d 884 (10th Cir. 2008) ...................................14, 16, 17

*United States v. Workman,* 80 F.3d 688 (2d Cir. 1996)...................................................14

*Walker v. USAA Cas. Ins. Co.,* 474 F.Supp.2d 1168 (E.D. Cal. 2007) ...................................23

*Yahoo! Inc. v. La Ligue Contre le Racisme et L'antisemitisme,*
    433 F.3d 1129 (9th Cir. 2006) ......................................................................4

**STATE CASES**

*Dillon v. Mass. Bay Transp. Auth.,* 729 N.E.2d 329 (Mass. App. Ct. 2000)................................12

*Fantaco Enters., Inc. v. Iavaorone,* 555 N.Y.S.2d 921 (N.Y. App. Div. 1990).............................13

*Fearnow v. Chesapeake & Potomac Tel. Co.,* 655 A.2d 1 (Md. Ct. Spec. App. 1995) ...............10

*iWon, Inc. v. Ourhouse, Inc.,* 744 N.Y.S.2d 791 (N.Y. App. Div. 2001).....................................25

*Jogani v. Superior Court,* 81 Cal.Rptr.3d 503 (Cal. Ct. App. 2008)........................................23

*Kearney v. Salomon Smith Barney, Inc.,* 137 P.3d 914 (Cal. 2006)..........................................6

*Lawrence v. Clepper,* 865 P.2d 1150 (Mont. 1993) ......................................................25

*Melchior v. New Line Prod. Inc.,* 131 Cal.Rptr.3d 347 (Cal. Ct. App. 2003) .............................23

*Montana Petrol. Tank Release Comp. Bd. v. Capitol Indemnity Co.,*
    137 P.3d 522 (Mont. 2006)....................................................................25

*Mosier v. S. Cal. Phys'ns Ins. Exch.,* 74 Cal.Rptr.2d 550 (Cal. App. 4th 1998) ..........................22

*Norwest Mortgage, Inc. v. Superior Court*, 85 Cal. Rptr.2d 18 (Cal. App. 4th  1999) .................6

*Randolph V. Peterson, Inc. v. J.R. Simplot Co.,* 778 P.2d 879 (Mont. 1989)...............................25

DAVIS WRIGHT TREMAINE LLP

*Sebena v. State,* 883 P.2d 1263 (Mont. 1994) .................................................................24

*Tako Holdings, Inc. v. Tillman,* 707 N.Y.S.2d 658 (N.Y. App. Div. 2000) ................................24

*U.P.C., Inc. v. R.O.A. Gen'l, Inc.,* 990 P.2d 945 (Utah Ct. App. 1999) ........................................13

*Waldman v. Englishtown Sportswear, Ltd.,* 460 N.Y.S.2d 552 (N.Y. App. Div. 1983) ..............24

### ADMINISTRATIVE DECISIONS

*Inquiry Concerning High-Speed Access to the Internet Over Cable and Other Facilities,* 17 FCC Rcd. 4798 (2005) .......................................................................8

### FEDERAL STATUTES

9 U.S.C. § 3 ...................................................................................................................................7

9 U.S.C. § 4 ...................................................................................................................................7

18 U.S.C. § 1030.....................................................................................................18, 19, 21, 23

18 U.S.C. § 2510 .........................................................................................................................9

18 U.S.C. § 2511 ..................................................................................10, 11, 14, 15, 16, 17

18 U.S.C. § 2520 .................................................................................................................11, 18

18 U.S.C. § 2701 .................................................................................................................17, 18

18 U.S.C. § 2702 .................................................................................................................14, 18

### STATE STATUTES

Cal. Penal Code § 502(a) ............................................................................................................7

Cal. Penal Code § 630 ................................................................................................................6

Cal. Penal Code § 631 ................................................................................................................6

### LEGISLATIVE MATERIAL

S. Rep. No. 90-1097 (1968), *reprinted in* 1968 U.S.C.C.A.N. 2112...........................................14

Pub. L. No. 110-326 (2008)..................................................................................................18, 23

DAVIS WRIGHT TREMAINE LLP

## I.      INTRODUCTION

This case is about electronic communications and a limited online advertising trial of a software system designed by a third-party advertising network, Defendant NebuAd, for delivery of ads to computer users while they are navigating the Internet.  Plaintiffs Mortensen and Becker ("Bresnan Plaintiffs")[1] allege that they are Montana residents and subscribers to Bresnan's Internet services in Billings, Montana.  (Compl. ¶¶ 16, 17; Declaration of Jerold C. Lambert ("Lambert Decl."), attached as Exhibit A, ¶ 8, 10.)  The Bresnan Plaintiffs further allege that interceptions of their electronic communications violated federal and state electronic privacy laws when NebuAd delivered online ads during the trial and that Bresnan "allowed, permitted, encouraged and aided NebuAd in accessing [its] subscriber's online transmissions" and "knowingly and expressly allowed, permitted, aided, encouraged, and assisted in" NebuAd's violations of law (Compl. ¶¶ 4, 31.)  However, the Complaint and Lambert Declaration make clear Bresnan has no physical presence in California, offers no services and has no subscribers there, did not commit any act or injury there, did not take any action involving any California resident, and had no reason to believe that NebuAd's test of its technology over Bresnan's cable system serving subscribers in Billings, Montana, could harm any California resident.  Thus, this Court lacks jurisdiction to resolve any suit challenging Bresnan's actions.  Indeed, California law is remote not only to Bresnan but to the Bresnan Plaintiffs, who are alleged to be residents of Montana and subscribed to Bresnan services only in Montana.  In addition, the California statutes under which Plaintiffs raise claims cannot apply to Bresnan with regard to its Montana operations involving Montana residents.  Finally, Plaintiffs' mere repetition of legal standards in the various counts does not adequately state any cause of action for violations of any state or federal law.

## II.      ISSUES TO BE DECIDED

(1)  Whether Bresnan, a Delaware corporation with its principal place of business in New York, and no property or customers in California, is subject to the jurisdiction of a California court in an action brought by Montana residents who received services from Bresnan in Montana.

---

[1] As the Complaint alleges other Plaintiffs received no service from and were not harmed by Bresnan, the only claims relevant and analyzed here are those of and involving Bresnan Plaintiffs.

(2)  Whether Bresnan Plaintiffs, Montana residents who subscribed to Bresnan's services in Montana, lack standing to sue Bresnan under California's Invasion of Privacy Act ("CIPA") and Computer Crime Law ("CCCL").

(3)  Whether Bresnan Plaintiffs Mortensen and Becker are bound to arbitrate their claims.

(4)  If this Court asserts jurisdiction, whether it should dismiss Bresnan Plaintiffs' claims under the federal Wiretap, Stored Communications and Computer Fraud and Abuse Acts, for aiding and abetting and conspiracy, and for unjust enrichment, for failure to state a claim.

## III.   ARGUMENT

### A.   This Court Lacks Personal Jurisdiction Over Bresnan

The Bresnan Plaintiffs have not and cannot show that non-resident Defendant Bresnan has sufficient California contacts to subject it to either the general or specific jurisdiction of this Court under California law.[2]  If the Court decides the issue without an evidentiary hearing, a plaintiff need only make a prima facie showing of jurisdictional facts to prevail, *Boschetto*, 539 F.3d at 1015, with all "uncontroverted allegations in the complaint [ ] being taken as true" and the court "resolv[ing] all disputed facts in favor of the plaintiff." *Menken*, 503 F.3d at 1056. However, a "plaintiff cannot simply rest on [ ] bare allegations of its complaint," *id.*, but rather must allege *facts* sufficient to make a prima facie showing of general or specific jurisdiction.

First, "general jurisdiction implies that a forum has jurisdiction over a party even if the particular cause of action is not related to that party's contacts to the forum." *Maxtor Corp. v. Read-Rite (Thailand) Co.*, 2003 WL 24902406 *2 (N.D. Cal. Dec. 4, 2003).  General jurisdiction is subject to "an exacting standard … because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the

---

[2]  *Menken v. Emm*, 503 F.3d 1050, 1056 (9th Cir. 2007).  "When no federal statute governs personal jurisdiction, the district court applies the law of the forum state." *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008).  As "California's long-arm jurisdictional statute is coextensive with federal due process requirements, … analyses under state law and federal due process are the same." *Dole Food Co. v. Watts*, 303 F.3d 1104, 1110 (9th Cir. 2002).  "Constitutional due process concerns are satisfied when a nonresident defendant has 'certain minimum contacts with the forum such that … [a] suit does not offend traditional conceptions of fair play and substantial justice." *Doe I v. Unocal Corp.*, 248 F.3d 915, 923 (9th Cir. 2001).  In assessing a plaintiff's showing, "the court may consider evidence presented in affidavits." *Nutrishare, Inc. v. Biorx, LLC*, 2008 WL 3842946 *1 (E.D. Cal. Aug. 14, 2008).

DAVIS WRIGHT TREMAINE LLP

world." *Coremetrics, Inc. v. Atomic Park.com, LLC*, 370 F.Supp.2d 1013, 1017 (N.D. Cal. 2005) (quotations omitted). Only when a defendant has "'substantial' or 'continuous or systemic' contacts with the forum state, [is it] subject to general jurisdiction." *Jonathan Browning, Inc. v. Venetian Casino Resort, LLC*, 2007 WL 4532214 *3 (N.D. Cal. Dec. 19, 2007). Such contacts must be so substantial as to constitute "approximate physical presence" in the forum. *Id*. (quoting *Tuazon v. R.J. Reynolds Tobacco Co*., 433 F.3d 1163, 1169 (9th Cir. 2006)). In determining whether general jurisdiction exists, courts consider whether a defendant "makes sales, solicits or engages in business, serves the state's markets, designates an agent for service of process, holds a license, has employees, or is incorporated" in the state. *Hirsch v. Blue Cross, Blue Shield of Kansas City*, 800 F.2d 1474, 1478 (9th Cir. 1986). This "should focus upon the economic reality of [its] activities rather than a mechanical checklist," *Coremetrics*, 370 F.Supp.2d at 1017, and "isolated contact" generally "will not support general jurisdiction." *Tuazon*, 433 F.3d at 1173.

Plaintiffs fail to allege facts sufficient to show that this Court has general jurisdiction over Bresnan. In the Complaint, the only contact that Bresnan is alleged to have with California is one agreement with NebuAd, a California entity.[3] However, execution of a single contract with a California entity is insufficient to establish general personal jurisdiction, *Tuazon*, 433 F.3d at 1173, especially where, as here, Plaintiffs allege NebuAd conducted a limited trial of technology only over Bresnan's Billings, Montana cable system. (Compl. ¶¶ 83, 90.) Moreover, both Bresnan Plaintiffs are alleged to be Montana residents who received services from Bresnan in Montana. (*Id*. ¶¶ 16, 17.) Bresnan does not have any customers in California, does not offer service in California, does not maintain an office, facilities or equipment there, and does not hold any license or franchise to provide services in California.[4] Because Plaintiffs cannot show Bresnan

---

[3] (*See* Compl. ¶¶ 9, 78.) Further, Bresnan Plaintiffs purport to represent a subclass of "Bresnan [ ] subscribers whose internet communications were monitored, intercepted, accessed, copied, transmitted, altered and/or used at any time by or through a NebuAd device," which they allege NebuAd installed in "the data hub of the ISP," which, for Bresnan, is in Billings, Montana. (Compl. ¶¶ 60, 90, 97(i); Lambert Decl. ¶ 8.)

[4] (Lambert Decl. ¶ 6.) Bresnan is a Delaware LLC with its principal place of business in New York. *Id*. ¶ 7. Besides Montana, Bresnan's systems and subscribers are located in Colorado, Wyoming and Utah only, *id*. and since it lacks an agent designated to receive service in California, Bresnan was served with the Complaint in Montana at its cable system. *Id*. ¶ 9.

DAVIS WRIGHT TREMAINE LLP

has "substantial," "continuous," or "systemic" contacts with the state of California, this Court does not have general personal jurisdiction over Bresnan.

Next, Plaintiffs' allegations show that this Court does not have specific personal jurisdiction over Bresnan. Courts here apply a three-prong test to non-resident defendants:

> (1) The non-resident defendant must purposefully direct activities or consummate some transaction with the forum or resident thereof, or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must arise out of or relate to defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.*, it must be reasonable.[5]

A defendant purposefully directs activities to a forum state if it (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state. *Yahoo! Inc.*, 433 F.3d at 1206; *see also Pebble Beach Co. v. Caddy*, 453 F.3d 1151 (9th Cir. 2006) (third prong requires something more than mere foreseeability).

Plaintiffs do not show Bresnan purposefully directed activities to California, but rather allege its operations and subscribers are in Montana where the trial of NebuAd's technology took place, and the only reasonable inference is that Bresnan's alleged conduct could have caused injury, if any, only in Montana.[6] Bresnan has no subscribers, facilities, agents or employees, or physical presence, and offers no services, in California. (Lambert Decl. ¶ 6.) Thus, Bresnan cannot be said to have directed any of its activities to California. More fundamentally, Plaintiffs could never satisfy the third prong of the purposeful direction test, *i.e.*, causing harm that Bresnan knew was likely to be suffered in California. Plaintiffs allege that Bresnan allowed NebuAd to conduct a trial of NebuAd's technology over Bresnan's cable system in Billings, Montana, and

---

[5] *Yahoo! Inc. v. La Ligue Contre le Racisme et L'antisemitisme*, 433 F.3d 1129, 1205-06 (9th Cir. 2006).

[6] (Compl. ¶¶ 16-17, 60.) In this Circuit, the first prong of the specific personal jurisdiction test may be satisfied via one of two tracks: (1) a "purposeful availment" test applicable to contracts; and (2) a "purposeful direction" test applicable to torts. When all alleged wrongful conduct occurs outside of the forum state, the evidence of contacts with it "is the type … that supports a purposeful direction analysis." *Caddy*, 453 F.3d at 1156 (reviewing personal jurisdiction in trademark infringement action); *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 803 (9th Cir. 2004) (purposeful direction analysis is appropriate where conduct occurs outside forum state and defendant receives no benefit, privilege or protection from doing business there).

Page 4

DAVIS WRIGHT TREMAINE LLP

that this trial resulted in NebuAd's interception of Plaintiffs' electronic communications in viola-tion of federal and state law.  Even if these allegations were actionable, the Bresnan Plaintiffs and their putative class are Montana residents who subscribed to and received Bresnan services in Montana.  They have not alleged that they suffered harm in California, nor that Bresnan knew that a trial involving Montana subscribers could cause harm in California.   Accordingly, Bresnan cannot be found to have purposefully directed its activities to California, and it is not subject to specific personal jurisdiction there, either.[7]

## B. Counts II and IV Must Be Dismissed Because Plaintiffs Lack Standing and Counts II and IV Fail to State a Claim

Counts II and IV assert claims under CIPA and CCCL, but as Plaintiffs fail to allege facts showing "a personal stake in the outcome of the controversy as to warrant [the] invocation of federal court jurisdiction and to justify exercise of the court's remedial powers on [their] behalf," *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 38 (1976), these claims must be dismissed. To establish standing, "named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that the injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'"  *Lewis v. Casey*, 518 U.S. 343, 357 (1996) (quoting *Simon*, 426 U.S. at 40, n.20).  Named plaintiffs asserting claims in federal court under state law must allege facts that show they have personally suffered an injury under each such statute, and may not do so in broad, over-arching terms.  "Each claim under each state statute must be analyzed separately."  *In re Graphics Processing Units Antitrust Litig.*, 527

---

[7]   Even if Plaintiffs could satisfy the specific personal jurisdiction test, the Court still needs to determine if the exercise of specific personal jurisdiction is reasonable.  *Jonathan Browning*, 2007 WL 4532214 *4-5.  This Circuit applies seven factors to assess reasonableness:  (1) the extent of defendant's purposeful injection into the forum state; (2) the burden on defendant to defend in the forum; (3) the extent of conflict with the sovereignty of defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to plaintiff's interest in convenient and effective re-lief; and (7) whether an alternative forum exists.  *Mattel, Inc. v. Greiner and Hausser GmbH*, 354 F.3d 857, 865-67 (9th Cir. 2003).  As noted, Bresnan does not have subscribers or offer service in California, the Bresnan Plaintiffs are citizens of Montana – not California – who subscribed to and received services from Bresnan in Montana, and Bresnan's conduct that Plaintiffs allege gave rise to their purported injuries did not occur in California.  (Compl. ¶¶ 16, 17, 90.)  Also, there is no interest in adjudicating privacy rights of Montana residents in relation to services received in Montana for non-California defendants.  Thus, if the Court reaches this stage of specific personal jurisdiction analysis, it would be unreasonable to subject Bresnan to jurisdiction in California.

F.Supp.2d 1011, 1026 (N.D. Cal. 2007).  When a named plaintiff brings a claim under a statute of a state in which he does not reside, a federal court may dismiss the action.[8]  Here, both CIPA and CCCL are statutes that protect only California citizens.  Consistent with due process, the Bresnan Plaintiffs' claims under California law must fail.[9]

CIPA prohibits the interception of any wire, line, or cable communication without the consent of all parties.  Cal. Penal Code § 631.  When it enacted CIPA, the California legislature expressly stated that it "intend[ed] to protect the right of privacy of the people *of this state*."  Cal. Penal Code § 630 (emphasis added).  Indeed, CIPA may be enforced *only* against corporations that violate its terms as to "clients or consumers in California and would not compel any action or conduct of the business with regard to [privacy interests] with non-California clients or consumers."  *Kearney v. Salomon Smith Barney, Inc.*, 137 P.3d 914, 922 (Cal. 2006).  The Bresnan Plaintiffs are not citizens of California and do not allege that they are consumers in California.  Rather, they allege that they are Montana residents who received Bresnan's services there.  (Compl. ¶¶ 16, 17.)  Thus, unlike the brokerage firm in *Kearney*, Bresnan is not alleged to have directed services towards, or chosen to do business with, any consumers in California.

CCCL was enacted "to expand the … protection afforded to individuals, businesses, and governmental agencies from tampering, interference, damage, and unauthorized access to lawfully created computer data and [ ] systems."  Cal. Penal Code § 502(a).  Because "a state cannot regulate or proscribe activities conducted in another state or supervise the internal affairs of another state in any way," *Butler*, 486 F.Supp.2d at 1050, the California legislature made clear the protections conferred by CCCL extended only to "financial institutions, business concerns, governmental agencies, and others *within this state* that lawfully utilize those computers, com-

---

[8]  *Id.* at 1027.  *See Sullivan v. Oracle Corp.*, 547 F.3d 1177, 1187 (9th Cir. 2008) (California law prohibiting unlawful business practices "does not apply to the claims of nonresidents of California who allege violations of law outside of California."); *Butler v. Adoption Media, LLC*, 486 F.Supp.2d 1022, 1050 (N.D. Cal. 2007) ("a state cannot regulate or proscribe activities conducted in another state"); *Norwest Mortgage, Inc. v. Superior Court*, 85 Cal. Rptr.2d 18, 23 (Cal. App. 4th 1999) (California's unfair competition act could not apply to "claims of non-California residents injured by conduct occurring beyond California's borders.")

[9]  *Phillips Petro. Co. v. Shutts*, 472 U.S. 797, 822 (1985); *New York Life Ins. Co. v. Head*, 234 U.S. 149, 162 (1914).

DAVIS WRIGHT TREMAINE LLP

puter systems, and data." Cal. Penal Code § 502(a) (emphasis added). For the reasons stated above regarding CIPA, the Bresnan Plaintiffs lack standing under CCCL, *see Cattie v. Wal-Mart Stores, Inc.*, 504 F.Supp.2d 939 (S.D. Cal. 2007) (non-California plaintiff has no standing to sue under California law for transaction unrelated to California), and Counts II and IV fail.[10]

### C.   The Court Should Dismiss Because the Bresnan Plaintiffs Are Subject to Binding Arbitration

Pursuant to Section 4 of the Federal Arbitration Act, 9 U.S.C. § 4 ("FAA"), Bresnan is filing a Motion to Compel Arbitration concurrently with this Motion to Dismiss. Plaintiffs Mortensen and Becker allege they are customers of Bresnan's OnLine Service (Compl. ¶¶ 16, 17) and, as such, are bound to the terms and conditions of the Bresnan OnLine Internet Service Subscriber Agreement and Acceptable Use Policy ("Subscriber Agreement"). Ex. B at 1-4. As explained in Bresnan's Motion, Section 9 of the Subscriber Agreement is a binding arbitration provision that obligates Plaintiffs Mortensen and Becker to pursue the claims asserted here only in arbitration. *See id*. at 11-13. The FAA authorizes the Court to stay proceedings pending completion of arbitration of the Bresnan Plaintiff's claims, 9 U.S.C. § 3, but because all of the Bresnan Plaintiffs' claims are required to be arbitrated, the Court may simply dismiss the action. *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 637-38 (9th Cir. 1988). Accordingly, if the Court does not dismiss the Complaint on other grounds, Bresnan requests that it enter an order compelling Bresnan Plaintiffs to arbitrate their claims, and dismiss Bresnan from these proceedings.

### D.   Count I Fails to State a Claim Under the Federal Wiretap Act

As alleged in the complaint, a limited trial was conducted of NebuAd's software that NebuAd placed in Bresnan's headend in Billings, Montana. (Compl. ¶ 60.) Bresnan gave its

---

[10]   Because secondary liability cannot arise solely from extraterritorial conduct under laws such as CIPA and CCCL that do not apply extraterritorially, *Standfacts Credit Servs., Inc. v. Experian Info. Solutions, Inc.*, 405 F.Supp.2d 1141, 1148 (C.D. Cal. 2005), Plaintiffs' state-law aiding-and-abetting and conspiracy claims fail as well. Further, as codefendants explain, Plaintiffs' CIPA claim fails because it is preempted by federal law, *see* Defendant Cable One's Mem. of Points and Auth. § III.B.3.c, and the CIPA and CCCL claims fail insofar as the former does not apply to non-telephonic communications like those at issue here, while the latter requires the same kind of loss or damage showing as the federal Computer Fraud and Abuse Act ("CFAA") requires, and that Plaintiffs did not and cannot make. *See* Mem. in Sup. of Mot. to Dismiss of CenturyTel and Embarq § II.B; *see also infra* 19-21. We incorporate by reference here co-defendants' arguments in these regards.

DAVIS WRIGHT TREMAINE LLP

subscribers the ability to opt-out of the trial as explained via email and in its posted privacy policy.[11]  As an ISP, Bresnan processes its subscriber's website browsing requests through its domain name servers.  (Compl. ¶¶ 42, 44.)  Subscribers cannot reach a third-party's Web site without accessing the ISP's domain name server, which (among other things) matches a Web site address the user wants with an IP address of a Web page's server.[12]  During that process, NebuAd software places a cookie so it can track users anonymously and serve ads relevant to that user's browsing in place of generic ads that otherwise would appear.  (Compl. ¶¶ 45-53.)  Although placement and analysis of cookies occurs anonymously (Compl. ¶ 90), the Bresnan Plaintiffs allege violations of various electronic privacy laws.  However, as shown below, even if this Court were to retain jurisdiction over the Bresnan Plaintiffs' claims, Count I fails.

### 1. Bresnan did not "intercept," "use" or "disclose" any electronic communication or access any computer

Plaintiffs allege "*NebuAd* placed [ ] hardware … into the data hub of the ISP," that "*NebuAd* [ ] hardware monitors, intercepts, and [ ] modifies … packets," [13] and that "*NebuAd* exploits [ ] browser and platform security."[14]  The Complaint assails "*NebuAd*'s interception … scheme,"[15] and states all storage, analysis, and use of electronic communications allegedly inter-

---

[11]  (Compl. ¶¶ 45, 90.)  While Plaintiffs allege the opt-out was insufficient, they admit there was notice, and something more than conclusorily alleging an opt-out notice was insufficient is required to negate consent.  *See Aleshire v. Licking County Sheriff's Office*, 2008 WL 3307120 (S.D. Ohio Aug. 7, 2008) (citing *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007)).

[12]  *Inquiry Concerning High-Speed Access to the Internet Over Cable and Other Facilities*, 17 FCC Rcd. 4798, 4810 n.74 (2005) ("A [domain name system ("DNS")] is an Internet service that enables the translation of domain names into IP addresses.  When queried about a domain name, a DNS server provides the querier with the IP address of the domain name or the IP address of another DNS server that may provide the IP address of the domain name if the original DNS server does not how [sic] to translate a particular domain name.  Thus, in effect, a DNS acts as its own network.  This translation process is necessary because routing of traffic over the Internet is based on IP addresses, not domain names.") (citation omitted), *aff'd*, *National Cable Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967 (2005).  *Cf.*, *In re DoubleClick, Inc. Privacy Litig.*, 154 F.Supp.2d 497, 509 (S.D.N.Y. 2001) ("Because the Internet functions through packet-switching and dynamic routing, human users do not in any sense connect to a passive receptacle and obtain information.").

[13]  (*Id.* ¶ 60) (emphasis added).  *Id.* ¶ 68 (emphasis added, original emphasis omitted); *see also id.* ¶ 70 ("NebuAd intercepted, modified, and altered … packets"), ¶ 71 ("NebuAd faked…").

[14]  (*Id.* ¶ 70) (emphasis added).  *See also id.* at 74 ("the *NebuAd* system circumvents … cookie deletion" and "[t]he *NebuAd* system … negates [consumer] efforts") (emphases added).

[15]  (*Id.* ¶ 78) (emphasis added).

DAVIS WRIGHT TREMAINE LLP

DAVIS WRIGHT TREMAINE LLP

cepted or accessed in excess of authorization – that is, "[a]ll … activities complained of" – "took place by and through *NebuAd*'s headquarters."[16]  Meanwhile, other than lumping Bresnan in with all the named "Defendants," the Complaint says little about what *Bresnan* allegedly did.  Specifically, it does <u>not</u> allege Bresnan engaged in any interception, but at most "permitted" interceptions, *id*. ¶ 104, or perhaps "profited" thereby, *id*. ¶ 77, and, thus, offers no more than "labels and conclusions, and [ ] formulaic recitation of the elements of a cause of action" that cannot withstand a motion to dismiss.[17]  This failure to allege that Bresnan actually intercepted or acquired access to any electronic communication is fatal to the claims against Bresnan.  As discussed below, direct participation by Bresnan is required under the Wiretap Act, 18 U.S.C. §§ 2510 *et seq.*, and neither allegations that Bresnan "procured" interceptions, nor pled-in-the-alternative claims under the Stored Communications Act ("SCA"), can stave off dismissal.  Further, as explained in Section III.G herein, Plaintiffs' aiding and abetting or conspiracy claims are insufficient because such secondary and/or vicarious liability does not exist under the Wiretap Act, SCA, or CFAA.

Even accepting as true the Complaint's allegations and viewing them and all reasonable inferences most favorably to Plaintiffs, *see*, *e.g.*, *Ideal Aerosmith*, 2007 WL 4394447 *1, there is no precedent to suggest that a party such as Bresnan can be liable for another's interception.  For example, *Reynolds v. Spears* holds that "acquiescence in [another]'s plans to [engage in interception] and [ ] passive knowledge of [such] interceptions are insufficient as a matter of law to impute liability" under the Wiretap Act.  93 F.3d 428, 432-33 (8th Cir. 1996).  *Reynolds* held that where a wife knew her husband planned to intercept phone calls in the collocated home and business they owned to further their common objective, and acquiesced to installation and operation of the equipment, Wiretap Act claims against her failed because *she* did not directly intercept any

---

[16]  (*Id*. ¶ 77) (emphasis added); *see also id*. ¶ 76.

[17]  *Twombly*, 127 S. Ct. at 1964-65.  Consequently, the Complaint fails to "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory."  *Ideal Aerosmith, Inc. v. Acutronic USA, Inc*., 2007 WL 4394447 *1 (E.D. Pa. Dec. 13, 2007) (quoting *Twombly*, 127 S. Ct. at 1969); *see Crowley v. CyberSource Corp*., 166 F.Supp.2d 1263, 1268 (N.D. Cal. 2001) ("Court need not accept a conclusory allegation that conduct alleged in [ ] complaint constituted an interception under the Wiretap Act.").

communications or use a device to acquire them.[18]  Even where a party *instructs* another to in-

tercept, a Wiretap Act claim fails as a matter of law as against defendants who only gave the

command and/or who knew it was given.[19]  Moreover, courts have specifically rejected efforts to

hold service providers such as Bresnan liable for interceptions conducted by others on the service

provider's network.[20]  Nor does failure by a party installing an intercepting device to inquire into

the lawfulness of the device's ultimate use by another suffice to confer liability on the installer.[21]

Significantly, Bresnan's alleged conduct does not rise even to the level of that of defen-

dants dismissed in the above cases, such as *Systemax,* where defendant affirmatively instructed

another to intercept communications, or *Woodbridge Police*, where a phone company owned the

device that enabled interceptions.  Here, there is no allegation Bresnan instructed (or even soli-

cited) NebuAd to do anything, or that Bresnan owned the equipment.  Consequently, if claims in

*Reynolds* and *Systemax*, and in service-provider cases like *Woodbridge* and *C&P Telephone*,

could not survive against those defendants, Plaintiffs' claims against Bresnan must fail as well.

This cannot be avoided by Plaintiffs' inclusion in Count I of reference to the Wiretap

Act's prohibition on "procuring" others to intercept electronic communications (Compl. ¶ 114

(quoting 18 U.S.C. § 2511(1))), in that, while the act of "procuring" an interception may be un-

---

[18]  *Id*.  This was true even to the extent that she may have listened to some of the communications.  *See id*. at 432.  It should be noted that, unlike the facts in *Reynolds*, Plaintiffs here do not even allege Bresnan acquired contents of communications allegedly intercepted, and further that, as explained below, Bresnan cannot be deemed to have illicitly acquired any intercepted communication in that it "had" them in the first instance in its capacity as electronic communications service provider.  *See infra* 14-17.  *Cf*., *Dorris v. Absher*, 179 F.3d 420, 423, 426 (6th Cir. 1999) ("simply listening to an illegally intercepted communication" or "transcribing a letter [ ] someone else composed … based on illegally intercepted communications" is "insufficient for liability").

[19]  *See Perkins-Carrillo v. Systemax, Inc*., 2006 WL 1553957 *15 (N.D. Ga. May 26, 2006) ("Even assuming Garrison instructed [someone] to monitor Plaintiff's [ ] calls and that Irby was aware of that fact," since it was "undisputed [ ] neither Garrison nor Irby monitored any … calls," Plaintiff's "claim against these individuals [Garrison and Irby] fails as a matter of law").

[20]  *See, e.g*., *PBA Local No. 38 v. Woodbridge Police Dep't*, 832 F.Supp. 808 (D.N.J. 1993) ("All [New Jersey Bell] did was install, and perhaps maintain or service, a 'call director' in the Director's office" that allowed him to intercept); *Franklin v. City of Chicago Police Dep't*, 2004 WL 1921027 *2 (N.D. Ill. July 9, 2004) ("SBC was not involved in the interception" and "merely by providing services that facilitated the monitoring" or "[s]imply being informed" of it "is not sufficient to show that SBC violated § 2511").

[21]  *See, e.g*., *Fearnow v. Chesapeake & Potomac Tel. Co*., 655 A.2d 1, 12 (Md. Ct. Spec. App. 1995), *aff'd in relevant part*, 676 A.2d 65 (Md. 1996) (construing Maryland wiretap law modeled on, closely tracking, and read *in pari materia* with, federal Wiretap Act).

Page 10

DAVIS WRIGHT TREMAINE LLP

DAVIS WRIGHT TREMAINE LLP

lawful, "the civil cause … did not encompass that act, but rather only … acts of interception … , or of disclosure or use of intercepted communications."[22]  There is no allegation whatsoever that Bresnan "used" or "disclosed" any intercepted communications.  Nor could there be.  The allegations are only that NebuAd received communications content and information that its device directly captured and transmitted to NebuAd.  Plaintiffs also cannot avoid dismissal based on a throw-in citation to the SCA, for reasons explained in Section I.E,[23] nor for aiding and abetting or conspiracy as to any federal claim, as explained in Section I.G.

### 2.    Plaintiffs' federal Wiretap Act claims fail because Defendants did not use any "device" to "intercept" electronic communications

Even if any interception were attributable to Bresnan, "[t]he Wiretap Act … is full of trap doors," that can undermine the viability of a cause of action.  *Pattee v. Ga. Ports Auth.*, 512 F.Supp.2d 1372, 1376 (S.D. Ga. 2007).  Among the first "trap doors" Plaintiffs face is the "ordinary course of business" exception to what constitutes a "device," which any Wiretap Act defendant – including Bresnan – must be found to have used to "intercept" communications.  Insofar as Plaintiffs aver Defendants "willfully *intercept[ed]*, endeavor[ed] to *intercept*, or procure[d] another] to *intercept* … electronic communication[s]" in violation of Section 2511,[24] the Act

---

[22]   *In re Toys R Us, Inc. Privacy Litig*., 2001 WL 34517252 *6 (N.D. Cal. Oct. 9, 2001) (citing *Peavy v. WFAA-TV*, 221 F.3d 158, 168-69 (5th Cir. 2000) ("the 'or procures any other person' language was deleted … in 1986") (construing 18 U.S.C. § 2520(a)); *see also Systemax*, 2006 WL 1553957 *15; *Hurst v. Phillips*, 2005 WL 2436712 (W.D. Tenn. Sept. 30, 2005); *cf. Direc-TV, Inc. v. Jerolleman*, 2003 WL 22697177 (E.D. La. Nov. 12, 2003) (granting motion to dismiss) ("Nor is the Court persuaded … that, so long as [plaintiff] has [ ] alleged unlawful interception and use by a [ ] defendant, in violation of section 2511, then section 2520 authorizes a private right of action").  Bresnan does not concede it "procured" anybody to do anything, or that any activity here qualifies as "interception" under the Act, or that if such interception occurred, it was not permissible under one of the Act's many exceptions.  *See infra* Sections III.D.2-III.D.4.

[23]   The Complaint's SCA claim appears to be an afterthought or a mistake, because the SCA is not listed in what Plaintiffs filed a "Complaint for."  *See* Compl. at 1.  *See also infra* 17-18 (noting Complaint's lack of allegation that any electronic communications were in storage).  Further, insofar as Count I simultaneously alleges Wiretap Act and SCA violations for the same conduct, *see id*. ¶¶ 114-124, this Circuit's law is clear that acquisition of a given electronic communication must be either an "interception" under the Wiretap Act or involve stored communications under the SCA but not both.  *Columbia Pictures, Inc. v. Bunnell*, 245 F.R.D. 443, 450 (C.D. Cal. 2007); *Bunnell v. Motion Picture Ass'n of Am.*, 567 F.Supp.2d 1148, 1152 (C.D. Cal. 2007); *Konop v. Hawaiian Airlines, Inc*., 302 F.3d 868, 877 (9th Cir. 2002).

[24]   (Compl. ¶ 114) (emphases added); *see also id*. ¶ 116 ("Defendants … obtained and/or *intercepted* … electronic communications"); *id*. ¶ 118 (citing "Defendants' intentional *interception*"); ¶ 121 ("Defendants intentionally acquired and/or *intercepted*"); ¶ 122 ("Defendants … accessed and used, and voluntarily disclosed … *intercepted* communications") (all emphases added).

defines "intercept" as the "acquisition of … any … electronic communication through … any electronic, mechanical, or other device," but "provides an ordinary course of business exception … within its definition of 'electronic, mechanical, or other device'" under Section 2510(5).[25] Specifically, under Section 2510(5)(a)(ii), instruments, equipment or facilities (and components thereof) utilized "in the ordinary course of business" by service providers like Bresnan are not "electronic, mechanical or other devices" that can "intercept" in violation of the Wiretap Act.[26]

Originally dubbed the "extension telephone exception,"[27] Section 2510(5)(a)(ii) exempts hardware utilized to monitor and/or use communications in the "ordinary course of business" for purposes such as improving customer service, determining if communications are personal in nature, and/or facilitating promotional efforts with business affiliates. *Ali,* at 1373, 1379. In *Ali,* routine cable operator monitoring of customer service representative calls with the company's customers to train them, perfect "sales and save techniques," improve service, and aid participation in promotions, were held to fall "squarely within" Section 2510(a)(5)'s ordinary course of business exception,[28] and such monitoring falls within the exception even if secret.[29]

These principals apply online as well. *Hall v. EarthLink* held the exception precluded Wiretap Act liability for EarthLink's receipt and storage of emails sent to Hall's EarthLink account for the year following its termination, and forwarding them to Hall at year's end. This,

---

[25] *Hall v. EarthLink Network, Inc.,* 396 F.3d 500, 503-04 (2d Cir. 2005) (quoting 18 U.S.C. §§ 2510(4)-(5)) (internal quotations omitted).

[26] *Id.* at 504. Section 2510(5)(a) specifically references "telephone or telegraph" equipment, instruments and facilities, but as *Hall* illustrates, mechanisms deployed in online communication networks qualify under the exception as well, *see id.* at 504-05, as other cases similarly recognize. *See, e.g., Potter v. Havlicek,* 2008 WL 2556723 *8-9 (S.D. Ohio June 23, 2008).

[27] *See, e.g., Ali v. Douglas Cable Comm'cns,* 929 F.Supp. 1362, 1378 (D. Kan. 1996).

[28] *Id.* at 1379. *See also James v. Newspaper Agency Corp.,* 591 F.2d 579, 581 (installation of monitoring device in departments dealing with public to allow supervisory personnel to monitor calls to train and instruct employees on dealing with public and to protect employees from abusive calls, fell "squarely within" § 2510(5)(a)); *Arias v. Mut. Cent. Alarm Serv., Inc.,* 202 F.3d 553, 558-59 (2d Cir. 2000) ("surreptitious, 24-hour recording of all [communications], regardless of the personal, private and privileged nature" fell within ordinary course of business exception).

[29] *See, e.g., Dillon v. Mass. Bay Transp. Auth.,* 729 N.E.2d 329 (Mass. App. Ct. 2000) (construing state law modeled on Wiretap Act and read in accord with federal law). *Cf. United States v. N.Y. Tel. Co.,* 434 U.S. 159, 174-75 (1977) ("use of pen registers is by no means offensive" if "Company … regularly employs such devices … for the purposes of checking billing operations, detecting fraud, and preventing violations of law").

DAVIS WRIGHT TREMAINE LLP

DAVIS WRIGHT TREMAINE LLP

it was held, was part of EarthLink's practice at the time, in serving its subscribers, to receive and store emails on its servers after any account was cancelled. 396 F.3d 502, 505 (2d Cir. 2005). NebuAd's hardware similarly maximizes subscribers' online experience. In provisioning Internet access, Bresnan serves as more than a "bare conduit" over which subscribers – including Plaintiffs here – surf the web. Although the Complaint regularly refers to "NebuAd hardware" using the Wiretap Act "device" nomenclature (even as an "interception device"[30]), if Bresnan did intercept anything using NebuAd's software, that software would be seen only as a type of component used in the ordinary course of the company's business that is part of delivering ads with content online and enhancing subscribers' online experiences with more relevant ads. So, too, as practices have evolved, are ads being delivered "dynamically," *i.e.*, banners and other ads change each time a subscriber visits a page (or even "goes back" to a page) or when others visit the same page. (Compl. ¶¶ 51-53, 72.) As an ISP, Bresnan is in the business of delivering ads along with content to its subscribers, and permitting a trial of NebuAd's hardware was an effort to ensure that ads that are delivered – unavoidable even in the absence of NebuAd – are more likely to be meaningful.[31] Thus, just like the conduct in *Ali*, *Arias*, and *Hall* that improved services the defendants provided to their customers, if Bresnan intercepted anything, such interception would satisfy the ordinary course of business exception and thus not violate the Wiretap Act.[32]

### 3. Plaintiffs' federal Wiretap Act claim fails because Bresnan's conduct constituted limited testing necessarily incident to rendition of service

Along with an ordinary-course-of-business exception under which "interception" did not occur here within the meaning of the Wiretap Act, dismissal of Plaintiffs' Section 2511 claim is

---

[30]  (Compl. ¶¶ 64, 64.1, 65, 66); *see id.* ¶ 60 ("NebuAd placed a hardware interception device").

[31]  Bald assertions that using a device to deliver more relevant ads is not in the ordinary course of business (Compl. ¶ 4) is simply recitation of statutory language that cannot satisfy *Twombly*.

[32]  To the extent monitoring communications must be "justifiable," *see Ali*, 929 F.Supp. at 1380, "valid" and/or "undertaken normally" for the exception to apply, *see Arias*, 202 F.3d at 559 (citing *Berry v. Funk*, 146 F.3d 1003, 1009 (D.C. Cir. 1998)), the "economic goal of maximizing [ ] profits from … advertising" by media companies is a "legitimate competitive activity." *U.P.C., Inc. v. R.O.A. General, Inc.*, 990 P.2d 945, 957-58 (Utah Ct. App. 1999); *see also, e.g.*, *Fantaco Enters., Inc. v. Iavorone*, 555 N.Y.S.2d 921, 922 (N.Y. App. Div. 1990) ("sponsorship of [ ] a radio announcement is a legitimate business activity"). Conversely, Plaintiffs' claim that "monetiz[ing] the subscriber's data for advertisement purposes" is not in the normal course of business, Compl. ¶ 4, can be ignored. *See infra* note 73 and accompanying text.

DAVIS WRIGHT TREMAINE LLP

similarly warranted because, even if "interceptions" occurred, the Act provides an exception to allow providers of electronic communication service such as Bresnan[33] to "intercept, disclose, or use that communication in the normal course of … any activity which is a necessary incident to the rendition of [the] service."  18 U.S.C. § 2511(2)(a)(i); *see also id.* § 2511(3)(b)(i) ("entity providing electronic communication service … may divulge the contents of any [ ] communication as authorized in Section 2511(2)(a)").  For the same reasons that allowing "experiments" like the NebuAd trial satisfies the ordinary course of business exception as explained above, it likewise falls within the exception for conduct necessarily incident to Bresnan's business.[34]

### 4. Plaintiffs' federal Wiretap Act claims fail because they consented to Bresnan's conduct

Plaintiffs' Wiretap Act claims must also be dismissed because if any "interception" under the Act occurred, it was lawful under the Act's allowance for interceptions made with consent of a party to the communications.[35]  The Bresnan Plaintiffs were both generally and specifically notified of, and thereby consented to, the NebuAd trial.  This exception is construed broadly,[36] and precedent in this Circuit (and others) is that consent need not be express but can be implied.[37]  Accordingly, because Plaintiffs consented to any interceptions that may have occurred, their

---

[33]  Plaintiffs do not specifically aver Bresnan is a provider of electronic communication service, but allegations do point to making that showing (*e.g.*, Compl. ¶ 120 (claims of violation of 18 U.S.C. § 2702's prohibitions on entities providing electronic communication service)), which is an element of their claims.  *Jet Blue Airways Corp. Privacy Litig.*, 379 F.Supp.2d 299 (E.D.N.Y. (2005) (discussing, *inter alia, Crowley*, 166 F.Supp.2d at 1270).

[34]  Plaintiffs implicitly plead as much (Compl. ¶ 44) ("ISPs are allowed, within their normal course of business as a necessary incident to the rendition of [ ] services, to inspect a subscriber's datastream"), as well as that delivery of ads is necessary incident to rendition of Internet service.  *Id.* ¶ 46 (noting "Traditional Online Advertising Model" and now-ubiquitous efforts of advertisers working with ISPs to provide subscribers content at a reduced rate").  *See also id.* ¶¶ 47-55.

[35]  18 U.S.C. § 2511(2)(d).  Though it is sufficient that once it is found an electronic communication was not "intercepted," or was intercepted lawfully under an exception in the Act, later use or disclosure cannot create liability, *see* 18 U.S.C. § 2511(1)(c), (d) (only intentional use or disclosure of communications obtained in violation of Section 2511 prohibited); *United States* v. *Lewis*, 406 F.3d 11, 19 (1st Cir. 2005); *United States* v. *Hammond*, 286 F.3d 189, 192 (4th Cir. 2002), consent further renders disclosure permissible under Section 2511(3)(b)(iii).

[36]  *See DoubleClick*, 154 F.Supp.2d at 514, n.23; *see also United States* v. *Amen*, 831 F.2d 373, 378 (2d Cir. 1987); S. Rep. No. 90-1097 (1968), *reprinted in* 1968 U.S.C.C.A.N. 2112, 2182.

[37]  *See United States* v. *Van Poyck*, 77 F.3d 285, 292 (9th Cir. 1996); *United States* v. *Diaz*, 2006 WL 2792422 *3 (N.D. Cal. 2006); *see also United States* v. *Verdin-Garcia*, 516 F.3d 884, 895-96 (10th Cir. 2008); *United States* v. *Workman*, 80 F.3d 688, 693-94 (2d Cir. 1996).

1    Complaint must be dismissed.  *See*, *e.g.*, *Murray v. Financial Visions, Inc.*, 2008 WL 4850328

2    *4 (D. Ariz. Nov. 7, 2008) ("consent is a complete defense to [ ] a claim" of "unauthorized inter-

3    ception of electronic communications") (citing 18 U.S.C. § 2511(2)(d)).

4            Dismissal based on consent is proper in that Bresnan Plaintiffs are bound by a *Bresnan*

5    *Communications Online Privacy Notice* and the *Bresnan Online Subscriber Agreement* referred

6    to therein.[38]  Under their terms, Bresnan subscribers "acknowledge[ ] and agree[ ] that Bresnan [ ]

7    and its agents shall have the right to monitor any [ ] postings and transmissions, including without

8    limitation … web space content, from time to time and to disclose them."[39]  In addition, Bresnan

9    specifically notifies its subscribers that its "equipment automatically collects information on your

10   use of the Service including information on … the programs and web sites you review or services

11   you order, the time [ ] you actually … view [them, and] other information about your "electronic

12   browsing."  *Id.* at 19.  Bresnan also advises that "[i]n delivering the … Service, Bresnan [ ], its

13   partners, affiliates and advertisers may [ ] use cookies, and/or small bits of code called 'one pixel

14   gifs' or 'clear gifs'  to make cookies more effective."  *Id.*  Bresnan subscribers – including Plain-

15   tiffs here – agree to these terms of using any aspect of Bresnan's Internet access service, includ-

16   ing engaging in communications such as those alleged to have been intercepted here.[40]  By agree-

17   ing, Plaintiffs consented to all conduct the Complaint characterizes as "interception" under the

18

19   ───────────────────────

20   [38]   A copy of the *Online Privacy Notice* appears as part of Exhibit B hereto.  Plaintiffs effectively
     plead Bresnan's *Online Privacy Notice* (as well as the NebuAd-specific notice Bresnan provided

21   before the trial, *see infra* at 16) in their Complaint (Compl. ¶ 90), thereby allowing the Court to
     consider their terms on a Motion to Dismiss.  *See, e.g., United States v. Ritchie*, 342 F.3d 903,

22   908 (9th Cir. 2003) (courts may on 12(b)(6) motion "consider … documents attached to the
     complaint, documents incorporated by reference in the complaint, or matters of judicial notice").

23   [39]   *See* Ex. B at 10.  Bresnan also alerts subscribers that:  "[W]hen you use [Bresnan's] Service
     …, information relating to your use … may be disclosed to third parties … includ[ing] … infor-

24   mation on [ ] choices [ ] you make along the range of services offered, including the content, pro-
     grams and web sites you view or services you order … , the time [ ] you actually use the services

25   or view the content … , and other information about your 'electronic browsing.'"  *Id.* at 20.

26   [40]   Courts routinely and repeatedly have confirmed that service agreements and privacy policies
     such as these to which a user assents, such as the one Plaintiffs opted-in to, is a valid agreement

27   that binds them.  *See Cairo, Inc. v. Crossmedia Servs., Inc.*, 2005 WL 756610 *4-5 (N.D. Cal.
     2005) (citing *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393 (2d Cir. 2004)); *Mazur v. eBay, Inc.*,

28   2008 WL 618988 (N.D. Cal. 2008); *Ticketmaster L.L.C. v. RMB*, 507 F.Supp.2d 1096, 1107
     (C.D. Cal. 2007); *Hotmail Corp. v. Van$ Money Pie, Inc.*, 1998 WL 388389 (N.D. Cal. 1998).

DAVIS WRIGHT TREMAINE LLP

Bresnan's Memo in Support of Motion to Dismiss Under Fed. R. Civ. P. 12(b)(2) or (b)(6)          Case No. C08 05113 TEH

1  Wiretap Act. [41]  As in *DoubleClick*, given these notices – and assent to them – any "purely theo-

2  retical possibility" that, after contracting with Bresnan and engaging in the very communications

3  at the heart of this dispute, Plaintiffs might have been unaware of what they consented to, is "too

4  remote to be the basis" for denying dismissal.  154 F.Supp.2d at 510.

5          That is especially so in that even apart from the general notice of and consent to Bresnan's

6  practices cited above, Bresnan gave all subscribers *additional specific* notice of the NebuAd trial

7  before it began.  Indeed, Plaintiffs allege that Bresnan "sent an email message to [its] customers

8  … , posted a web page describing the trial, and described [it] in [Bresnan's] privacy policy."[42]

9  Bresnan expressly informed all its subscribers, including Plaintiffs, when the trial would com-

10  mence, providing a link to detailed information about the trial and an opportunity to opt out.

11  Ex. B at 24-27.  It also explained how websites populate ad space and how NebuAd "tailored" the

12  ads subscribers would see, which included specifically explaining the trial would proceed "using

13  information observed while you browse the Internet" and that it "operates by … observing user

14  activity," and, as noted, Bresnan gave subscribers, including Plaintiffs, an opportunity to opt out

15  by explaining that participation was optional and providing easy-to-follow instructions.[43]

16          Allegations that no opt-out notice could be sufficient (Compl. ¶¶ 85-88) do not negate this

17  consent.  It is well-settled under Section 2511(2)(d) that, in circumstances such as these, where an

18  electronic communications service provider like Bresnan puts subscribers on notice that their

19  communications are monitored (*i.e.*, "observed"), and they opt to continue using the service, the

20  consent exception applies.[44]  It is <u>not</u> necessary for there to be both notice and affirmative agree-

21  ment by the consenting party to monitoring, *see Diaz*, 2006 WL 2792422 *3, and even prisoners,

22

23  [41]  *See, e.g.*, *DoubleClick*, 154 F.Supp.2d at 510 ("Examining DoubleClick's technological and commercial relationships with [website parties to the communication with which it contracted], we find it implausible to infer [they] have not authorized DoubleClick's access"); *Borinski v. Williamson*, 2005 WL 1206872 *12-13 (N.D. Tex. May 17, 2005); *Toys R Us*, 2001 WL 34517252.

24

25  [42]  (Compl. ¶ 90)  Email and related material discussed in the Complaint, which as noted the Court can consider in that Plaintiffs have plead them, *see supra* note 38, appear as Exhibit B.

26  [43]  *Id*.  Given an ISP's role in providing Internet access, a case can be made that for communications at issue here, Bresnan also was a party who could have consented to interception, if any occurred.  Were it to become necessary, Bresnan would present evidence to support same.

27

28  [44]  *See, e.g.*, *Van Poyck*, 77 F.3d at 292; *Diaz*, 2006 WL 2792422; *see also, e.g.*, *Verdin-Garcia*, 516 F.3d at 893-95; *Griggs-Ryan v. Smith*, 904 F.2d 112 (1st Cir. 1990).

DAVIS WRIGHT TREMAINE LLP

DAVIS WRIGHT TREMAINE LLP

with no alternative of using a non-monitored communications service, and thus presented a "Hobson's choice" of using a monitored service or foregoing communication altogether, are deemed to have consented. *Verdin-Garcia*, 516 F.3d at 894; *see also Diaz* 2006, WL 2792422 at *4 (discounting extent to which lack of other options factors into finding consent). Plaintiffs' use of Bresnan's service after receiving notice of the trial clearly satisfies Section 2511(2)(d)'s consent exception, and Plaintiffs' Wiretap Act claims must be dismissed.[45]

### E.      Count I Fails to State A Claim Under the SCA

Count I of the Complaint should also be dismissed insofar as it seeks to impose liability under the SCA, 18 U.S.C. § 2701, *et seq*. *See* Compl. ¶¶ 119-120. Section 2701 "does not apply with respect to conduct authorized by the … entity providing [the] electronic communication service,"[46] which Bresnan is here, *see supra* note 33, so it is not possible it "exceeded [its] authorization … in violation of 18 U.S.C. § 2701" as Plaintiffs claim. Similarly, were the Complaint construed (though no such claim is explicitly set forth) as alleging violation of Section 2702(a)(3) for divulging records or other information relating to subscribers, Section 2702(c)(6) expressly permits Bresnan to make such a disclosure.[47] Count I also should be dismissed insofar as it alleges SCA violations because it fails to allege any of the electronic communications at issue

---

[45]   This conclusion is not undermined by Plaintiffs' allegations that Bresnan did not "specifically provide[ ] details concerning the monitoring of [ ] online communications" for the NebuAd trial (Compl. ¶ 45), that "adequate, informed notice" was not provided due to lack of specificity, *id*. ¶ 85, or that "notice was insufficient, misleading, and inadequate." *Id*. ¶ 86. *See Griggs-Ryan*, 904 F.2d at 114 (landlady started to hang up when Griggs-Ryan picked up but stopped to monitor/record call); *id*. at 117 (relying on landlady's policy, "whatever her actual practice was"), and *id*. at 117-18 (no specification which calls would be monitored or under what circumstances – it was enough to be on notice calls were monitored generally). Manifestation of consent by Bresnan's subscribers is at least as strong, if not stronger. Thus, although Plaintiffs insist "[c]onsent under such circumstances [as the Complaint alleges] is impossible" (Compl. ¶ 86), "that rallying cry – like most sloganeering – overstates the proposition." *Griggs-Ryan*, 904 F.2d at 116.

[46]   18 U.S.C. § 2701(c)(1). This precept is uniformly accepted, including within this District. *See*, *e.g*., *Crowley*, 166 F.Supp.2d at 1272; *see also United States v. Councilman*, 418 F.3d 67, 81 (1st Cir. 2005) (en banc) (§ 2701(c)(1) "establishes virtually complete immunity for a service provider" with regard to communications in electronic storage); *United States v. Fraser*, 352 F.3d 107, 114-15 (3d Cir. 2004); *Bohach v. City of Reno*, 932 F.Supp. 1232 (D. Nev. 1996); *State Wide Photocopy Corp. v. Tokai Fin. Servs*., 909 F.Supp. 137, 145 (S.D.N.Y. 1995).

[47]   *Id*. §§ 2702(a)(3), 2702(c)(6). The SCA restricts such disclosures only insofar as they are to government entities, *see id*., and the Complaint alleges no disclosure to any governmental body.

were in electronic storage as required not only by Section 2701(a) but by 2702(a)(1) as well.[48]

Nor does liability attach under Section 2702(a)(2), because it applies only to providers of remote

computing service which the Complaint does not allege Bresnan to be,[49] or under Section

2702(a)(3), which restricts disclosures to the government, which are not alleged.  Finally, though

Count I alleges SCA violations, it fails to invoke Section 2707, which provides for SCA civil

actions (whereas Plaintiffs' ECPA claim invokes Section 2520 (Compl. ¶¶ 121, 123-125)).

### F.   Count III Fails to State a Claim Under the CFAA

Plaintiffs cannot hold Bresnan liable for alleged violations of the CFAA because, apart

from Bresnan's lack of direct conduct, *see supra* 9-11, Plaintiffs cannot meet the statutorily pre-

scribed threshold of damage or loss required to bring the action.  Plaintiffs cite the CFAA's civil

cause of action in 18 U.S.C. § 1030(g) (Compl. ¶ 145), but fail to account for the fact that the

CFAA "is essentially a criminal statute [that] creates only a limited private right of action,"[50]

which limitations preclude Plaintiffs from stating a claim as a matter of law.[51]  Specifically,

Section 1030(g) allows "[a]ny person who suffers damage or loss by reason of a violation of this

section [to] may maintain a civil action against the violator," but it "may be brought only if the

conduct involves" certain enumerated "factors" prescribed in the statute.  These include "loss to

one or more persons during any one-year period aggregating at least $5,000 in damages," *id*.

---

[48]  *See Toys R Us*, 2001 WL 34517252.  Even if Plaintiffs are deemed to allege electronic communications were in storage, as with the Wiretap Act, there are exceptions that would obviate liability for Bresnan, such in Section 2702(b)(1) for disclosures to agents of an addressee or intended recipients of the communication, in Section 2702(b)(2) for disclosure with consent of a party to the communication, and in Section 2702(b)(5) for disclosure necessarily incident to rendition of service.  18 U.S.C. §§ 2702(b)(1), (2), (5).  *See Bansal v. Server Beach*, 285 Fed. Appx. 890, 892 (3d Cir. 2008); *Flagg v. City of Detroit*, 252 F.R.D. 346, 364 (E.D. Mich. 2008) (noting "similar 'consent' provisions [ ] in the SCA's close cousin, the federal Wiretap Act").

[49]  *See Crowley*, 166 F.Supp.2d at 1270.

[50]  *Doe v. Dartmouth-Hitchcock Med. Ctr.*, 2001 WL 873063 *5 (D.N.H. July 19, 2001); *see also Contemporary Servs. Corp. v. Hartman*, 2008 WL 3049891 *4 (C.D. Cal. Aug. 4, 2008); *P.C. Yonkers, Inc. v. Celebrations the Party & Seasonal Superstore, LLC*, 428 F.3d 504, 507-08 (3d Cir. 2005).

[51]  *See, e.g.*, *Nexans Wires S.A. v. Sark-USA, Inc.*, 319 F.Supp.2d 468, 472 (S.D.N.Y. 2004) ("Plaintiffs must meet this [loss or damage] threshold in order to sue on any … CFAA claims they assert").  The Complaint's failings also include that it alleges claims under a superseded version of the CFAA, which was amended effective September 26, 2008.  Pub. L. No. 110-326, (2008).  For example, Plaintiffs claim "Defendants violated … § 1030(a)(5)(A)(i)," even though the Act no longer has a section enumerated 1030(a)(5)(A)(i).

DAVIS WRIGHT TREMAINE LLP

DAVIS WRIGHT TREMAINE LLP

1    § 1030(c)(4)(A)(i)(I) (as incorporated by *id*. § 1030(g)), which Plaintiffs allege (Compl. ¶ 143),[52]

2    but "damages for [such] violation … are limited to *economic* damages."  18 U.S.C. § 1030(g)

3    (emphasis added).  As noted, Plaintiffs claim Bresnan violated Section 1030(a)(2)(C) by inten-

4    tionally accessing computers used for interstate commerce or communications without or in

5    excess of authorization and thereby obtained information from a protected computer (Compl.

6    ¶ 142), and Section 1030(a)(5)(A) by knowingly causing the transmission of a program, infor-

7    mation, code, or command resulting in losses aggregating at least $5,000 in value.  (Compl.

8    ¶ 143.)  However, the only "losses" Plaintiffs allege involve "violation of the right of privacy,

9    disclosure of affiliation and business relationships between Plaintiffs and internet product and

10   service providers, and disclosure of specific purchase and transaction information" (Compl.

11   ¶ 144), none of which constitute the kind of economic damage or loss that Section 1030(g)

12   requires Plaintiffs to allege in order to maintain a CFAA cause of action.[53]

13        As a threshold matter, Bresnan did not violate Section 1030(a)(2)(C) because Plaintiffs

14   do not allege that Bresnan "accessed" Plaintiffs' computers beyond such access as they author-

15   ized in order for Bresnan to provide Internet access.  Nor did it violate Section 1030(a)(5)(A)

16   because for all the NebuAd-related conduct Plaintiffs complain of, whatever NebuAd may have

17   transmitted, Plaintiffs do not allege *Bresnan* "transmitted" anything to their computers other than

18   Internet traffic in the ordinary course.  Plaintiffs not only fail to allege the kind of damage or loss

19   the CFAA requires, as explained below, they also fail to allege *intent* by Bresnan to cause the

20   harm, which by itself is fatal to a CFAA claim.[54]

21

22   [52]   Other factors are modification or impairment of medical examination, diagnoses, or treatment;
     physical injury to any person; public health or safety threats; and damage to certain government
23   computers, *see id*. § 1030(c)(4)(A)(i)(II)-(V) (as incorporated by Section 1030(g)), but Plaintiffs
     do not – nor could they – allege any such impact from the NebuAd trial.

24   [53]   In this regard, it should be noted Plaintiffs do not aver loss with respect to alleged violations
     of Section 1030(a)(2)(C) (Compl. ¶ 142), but rather only with respect to Section 1030(a)(5)(A).
25   *Id*. ¶¶ 143-144.  As such loss is required to maintain *all* CFAA claims, *see* 18 U.S.C. 1030(g) (a
     "person who suffers damage or loss … may maintain a civil action" which "may be brought only
26   if the conduct involves … the factors" specified), Plaintiffs' Section 1030(a)(2)(C) claim should
     be dismissed not just because they fail to allege the *kind* of harm Section 1030(g) requires, but
27   also because they fail to allege any loss or damage at all.

28   [54]   *See*, *e.g*., *Kalow & Springnut, LLP v. Commence Corp*., 2008 WL 2557506 *4 (D.N.J. June
     23, 2008).  It is not enough to show intentional conduct ultimately causing harm to a protected

DAVIS WRIGHT TREMAINE LLP

In any event, Plaintiffs' failure to allege economic loss is fatal. The Complaint only avers Plaintiffs' loss(es) involved loss of privacy, disclosure of relationships, and disclosure of transactional data (Compl. ¶ 144), while relief under the CFAA is strictly limited to "economic loss"[55] and harms such as "personal injury, mental distress, and the like" simply do not qualify.[56] Indeed, it is well-settled that the kind of "invasion of privacy" and collection of "demographic information" of the sort alleged here are not recoverable "economic loss." *DoubleClick*, 154 F.Supp.2d at 523-25. In fact, *DoubleClick* involved *exactly* the same kinds of injuries alleged here for the same conduct, *i.e.*, insertion of cookies and collection of browsing and Internet usage data, and the court in that seminal case found Plaintiffs did not – and could not – allege damage or loss sufficient for a CFAA claim.[57]

Thus, the emotional injury and ephemeral "lost privacy" or "disclosure of … private, confidential" data that Plaintiffs allege (Compl. ¶ 144) do not constitute "loss" or "damage" under the CFAA.[58] Such supposed harms not only lack intrinsic pecuniary value, Plaintiffs assign them no economic value, either. Even asserted "disclosure of affiliation and business relationships between Plaintiffs and internet product and service providers" and "specific purchase and transactional information" are not averred to have had economic impacts. (Compl. ¶ 144.) This contrasts sharply to, as one court put it, the "underlying premise of this [ ] statute" which "is directed toward computer piracy" such that loss "must be related to the misuse of the computer – some-

---

computer (not that Plaintiffs even alleged such), but rather it must be shown the actor *intended* the harm to occur. *Id.*

[55] *Garelli Wong & Assocs., Inc. v. Nichols*, 551 F.Supp.2d 704, 709-11 (N.D. Ill. 2008); *Sam's Wine & Liquors, Inc. v. Hartig*, 2008 WL 4394962 (N.D. Ill. Sept. 24, 2008).

[56] *Creative Computing v. Getloaded.com, L.L.C.,* 386 F.3d 930, 935 (9th Cir. 2004); *see also Chance v. Avenue A, Inc*., 165 F.Supp.2d 1153, 1159 (W.D. Wash. 2001) *(disapproved on other grounds)* ("Unlike a computer hacker's illegal destruction of computer files or transmission of a widespread virus which might cause substantial damage to many computers … transmission of an internet cookie is virtually without economic harm."); *In re Intuit Privacy Litig.*, 138 F.Supp.2d 1272, 1281 (C.D. Cal. 2001).

[57] *See id. Cf.*, *Nexans Wires*, 319 F.Supp.2d at 474 ("there is nothing to suggest that the 'loss' or costs alleged can be unrelated to the computer"); *id.* at 475 (same); *id.* at 476 (same, in "[e]ven cases which have taken an expansive view of the CFAA jurisdictional threshold").

[58] While "economic losses [from] securing or remedying [ ] systems in the wake of [ ] alleged CFAA violations would count," to the extent Plaintiffs "have not pled … any damage whatsoever to [ ] computers, [ ] or data," their CFAA claim fails. *DoubleClick Inc.*, 154 F.Supp.2d at 524-25.

DAVIS WRIGHT TREMAINE LLP

1   thing more than misuse of information obtained from the computer." *American Family Mut. Ins.

2   *Co. v. Rickman*, 554 F.Supp.2d 766, 772 (N.D. Ohio 2008) (quoting *DoubleClick*, 154 F.Supp.2d

3   at 521, and citing cases). Plaintiffs not only fail to allege how their "loss" is economic as the

4   CFAA requires, they also fail to allege the loss – even if its economic nature could be explained,

5   which we doubt – comes not from *use* of information by Bresnan, but rather some impact on their

6   computers. Similarly, "damage" is defined as "impairment to the integrity or availability of data,

7   a program, or information,"[59] and Plaintiffs have not alleged anything of the sort.

8         Finally, even if Plaintiffs could show how their alleged injuries constitute damage or loss

9   under the CFAA, they do not allege facts sufficient under the $5,000 aggregated-value threshold

10   in Section 1030(a)(5)(B)(i). Damage and loss under the CFAA "may only be aggregated across

11   victims and over time for a single act," *DoubleClick*, 154 F.Supp.2d at 523, and that "single act"

12   is limited to that taken with respect to "a *particular* computer," such that "the suggestion that [ ]

13   accessing cookies on [multiple] plaintiffs' computers could constitute a single act is refuted by

14   the statute's plain language." *Id.* at 524. Accordingly, not only do Plaintiffs fail to allege any

15   damage to any computer or data, or economic loss cognizable under the CFAA, they fail to allege

16   facts showing they suffered harm valued at $5,000 for any single act of Defendants.[60] With

17   respect to this $5,000 minimum, Plaintiffs fail to satisfy the pleading requirements articulated by

18   the Supreme Court, as they merely recite language from Sections 1030(g) and 1030(a)(5)(A),

19   without explaining the nature of the losses suffered, how they were suffered, or how they are ag-

20

21

---

22   [59]   *See, e.g.*, *Nexans Wires*, 319 F.Supp.2d at 472 (quoting 18 U.S.C. § 1030(e)(8)); *see also*
23   *Hayes v. Packard Bell NEC, Inc.*, 193 F.Supp.2d 910, 912 (E.D. Tex. 2001) (noting "the damage
      element of a [ ] CFAA violation requires [ ] plaintiff to allege/establish that [ ] defendant caused
24   $5,000 'damage' to '*a* protected computer,'" and "specifically reject[ing] … that [ ] CFAA mere-
      ly required an allegation that [ ] defendant caused $5,000 damage … in the aggregate").

25   [60]   Even if damage could be aggregated across each Bresnan Plaintiff and/or their computers (if
26   either of them had more than one computer), they cannot proceed as if a class had been certified,
      but rather, "[w]here … there has been no certification," the action its treated "as one … by Plain-
27   tiffs individually, not as members of a putative class." *Thurmond v. Compaq Computer Corp.*,
      171 F.Supp.2d 667, 680 (E.D. Tex. 2001). Thus, where a complaint "fails to sufficiently allege
      [ ] individuals [ ] suffered aggregate harm in the amount of $5,000" because it "does not specify
28   who [ ] suffered the loss," dismissal is proper. *In re AOL, Inc.*, 168 F.Supp.2d 1359, 1374-75
      (S.D. Fla. 2001) ("Was it individuals inside the class, outside … or named representatives?").

gregated to a value of at least $5,000.[61] This fails to raise Plaintiffs' entitlement to relief "above the speculative level," *Twombly*, 127 S. Ct. at 1965, and requires dismissal.

### G. Counts V and VI Fail to State a Claim for Aiding and Abetting and Conspiracy

Counts V and VI fail to state a claim that Bresnan aided and abetted NebuAd's violation of, and/or conspired with NebuAd to violate, the Wiretap Act, SCA, or CFAA.[62] First, the above-discussed failures to state claims preclude liability for conspiracy to commit, or any aiding or abetting of, the underlying violation, as unlawfulness is a *sine qua non* of both aiding and abetting,[63] and conspiracy.[64] Even if Plaintiffs alleged facts sufficient to allege a Wiretap Act, SCA or CFAA claim (which they do not), Counts V and VI still must be dismissed insofar as they assert aiding and abetting and/or conspiracy with respect to those violations. *Freeman v. Direc-TV, Inc.*, 457 F.3d 1001 (9th Cir. 2006). "The private right of action [ ] found in 18 U.S.C. § 2520 … does not provide for a civil action against one who aids and abets a violation of the Wiretap Act,"[65] the SCA does not allow liability for aiding and abetting or conspiracy, *Freeman*,

---

[61] *See Garelli Wong*, 551 F.Supp.2d at 711 (citing *Twombly*, 127 S. Ct. at 1959); *Modis, Inc. v. Bardelli*, 531 F.Supp.2d 314, 320 (D. Conn. 2008) (dismissing CFAA claim because, *inter alia*, "plaintiff's allegation as to loss requires speculation as to the grounds for relief") (citing same); *Patrick Patterson Custom Homes, Inc. v. Bach*, 2008 WL 4924820 *8 (N.D. Ill. Nov. 14, 2008).

[62] *See* Compl. ¶¶ 160-173. Bresnan does not concede such aiding and abetting or conspiracy occurred or that Plaintiffs could satisfy the elements of any cause of action for same.

[63] *See, e.g.*, *Toys R Us*, 2001 WL 34517252 *5 n.15; *United States v. Delgado*, 357 F.3d 1061, 1065-66 (9th Cir. 2004); *see also United States v. Hernandez-Orellana*, 539 F.3d 994, 1006-07 (9th Cir. 2008).

[64] *See, e.g.*, *In re Hongisto*, 293 B.R. 45, 50 (N.D. Cal. 2003) ("Conspiracy is not a cause of action, but a legal doctrine for imposing liability" which among other things requires "damage from an act or acts done … with … unlawful purpose.") (internal citation omitted); *see also Neilson v. Union Bank of Cal., N.A.*, 290 F.Supp.2d 1101, 1133 (C.D. Cal. 2003); *Mosier v. S. Cal. Phys'ns Ins. Exch.*, 74 Cal.Rptr.2d 550 (Cal. App. 4th 1998) (civil conspiracy requires showing, *inter alia*, wrongful act); *Elektra Entm't Group, Inc. v. Santangelo*, 2008 WL 4452393 *7 n.7 (S.D.N.Y. Oct. 1, 2008) (failure to state claim under CFAA bars liability for conspiracy to violate CFAA).

[65] *Crowley*, 166 F.Supp.2d at 1269; *Doe v. GTE Corp.*, 347 F.3d 655, 658 (7th Cir. 2003) ("plaintiffs say that GTE is liable for aiding and abetting" but "nothing in [18 U.S.C. §§ 2511 or 2520] condemns assistants, as opposed to those who directly perpetrate the act."); *see also Toys R Us*, 2001 WL 34517252 *7. *Cf. supra* Section III.D.1.

DAVIS WRIGHT TREMAINE LLP

DAVIS WRIGHT TREMAINE LLP

1    457 F.3d at 1005-06, nor does conspiracy liability lie under the Wiretap Act,[66] and "Congress has

2    not provided for conspiracy liability under the CFAA."[67]

### H.    Count VII Fails to State a Claim for Unjust Enrichment

4         Count VII seeks recovery on a theory of unjust enrichment (Compl. ¶¶ 174-178), but no

5    such cause of action exists, and even if it did, the Bresnan Plaintiffs' contractual relationship with

6    Bresnan and their pursuit of tort remedies preclude recovery, as does the fact that any "enrich-

7    ment" realized was not "unjust."  First, if California law applies, "there is no cause of action in

8    California for 'unjust enrichment,'" which "does not describe a theory of recovery, but ... [rather

9    is the] result of a failure to make restitution ... where it is equitable to do so."[68]  Even were "un-

10   just enrichment" a cognizable cause of action, it sounds "in quasi-contract [and] ... cannot lie

11   where a valid [ ] contract covering the same subject [ ] exists between the parties."[69]  Under New

---

[66]  *Id*. at 1007 (upon holding SCA does not allow liability for aiding and abetting or conspiracy, expressing doubt Wiretap Act could allow such liability as well).

[67]  *Smartix Int'l Corp*. *v*. *MasterCard Int'l LLC*, 2008 WL 4444554 *1 n.2 (S.D.N.Y. Sept. 30, 2008).  Recent CFAA amendments, whereby Congress did not include *any* civil conspiracy provisions in the CFAA, reinforce this view.  *See* Pub. L. No. 110-326.  Even if that amendment applied retroactively to Bresnan (which it cannot, *see*, *e.g*., *Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 37-38 (2006)), it created conspiracy liability for only *criminal* CFAA violations.  In contrast, Congress did not include secondary liability in CFAA's civil remedy provisions, but rather only for actions "against *the violator*."  *Id*. § 1030(g) (emphasis added); *cf*. *Butera & Andrews v*. *IBM Corp*., 456 F.Supp.2d 104, 112 n.6 (D.D.C. 2006) (quoting *Dartmouth-Hitchcock*, 2001 WL 873063 *5).  This differing language in the civil and criminal portions must be given effect. *Bates v. United States*, 522 U.S. 23, 30 (1997).  There is, thus, no basis for upsetting the long-recognized interpretation that the CFAA "creates only a limited private right of action 'against the violator.'"  *Dartmouth-Hitchcock*, 2001 WL 873063 *5 ("vicarious liability ... would neither be permitted by the language of the CFAA itself, nor ...  further the basic purpose of the Act."). *See also*, *e.g*., *Garland-Sash v. Lewis*, 2007 WL 935013 *4 (S.D.N.Y. Mar. 26, 2007).

[68]  *Melchior v. New Line Prod*. *Inc*., 131 Cal.Rptr.2d 347, 357 (Cal. Ct. App. 2003) (internal cite omitted); *see also Jogani v. Superior Court*, 81 Cal.Rptr.3d 503, 511 (Cal. Ct. App. 2008). Several courts have dismissed or granted summary judgment on this basis, and this Court should as well.  *See*, *e.g*., *Melchior*, 131 Cal.Rptr.2d at 357; *Jogani*, 81 Cal.Rptr.3d at 511; *see also In re Late Fee & Over-Limit Fee Litig*., 528 F.Supp.2d 953, 966 (N.D. Cal. 2007); *Walker v. USAA Cas*. *Ins*. *Co*., 474 F.Supp.2d 1168, 1174 (E.D. Cal. 2007); *Enreach Tech*., *Inc*. *v*. *Embedded Internet Solutions, Inc*., 403 F.Supp.2d 968, 976 (N.D. Cal. 2005); *Swanson v. USProtect Corp*., 2007 WL 1394485 (N.D. Cal. 2007).  *Cf*., *Baggett v. Hewlett-Packard Co*., 2007 WL 5600703 (C.D. Cal. Oct. 30, 2007) (where plaintiff had multiple claims through which to pursue remedies, "unjust enrichment ...  will add nothing to his available relief."); *Falk v. General Motors Corp*., 496 F.Supp.2d 1088, 1099-1100 (N.D. Cal. 2007).

[69]  *Gerlinger v. Amazon.Com, Inc*., 311 F.Supp.2d 838, 856 (N.D. Cal. 2004) (citing *Paracor Fin*. *v*. *General Elec*. *Capital Corp*., 96 F.3d 1151, 1167 (9th Cir. 1996)).

York law,[70] "existence of a valid contract … ordinarily precludes recovery in *quasi* contract for events rising out of the same subject matter." *Netzer v. Continuity Graphic Assocs., Inc*., 963 F.Supp. 1308, 1321 (S.D.N.Y. 1997). Plaintiffs refer to "acceptable use policies" and cite Bresnan's privacy policy in particular (Compl. ¶¶ 45, 91), which terms govern subscribers' rights and responsibilities, including the subject matter of this dispute, *see supra* at 7, 15-17, thereby barring Plaintiffs' unjust enrichment claim.[71] Similarly, "a claim for [such] restitution is inconsistent and incompatible with a related … claim in tort" such as those Plaintiffs bring. *Oracle Corp. v. SAP AG*, 2008 WL 5234260 *8 (N.D. Cal. Dec. 15, 2008) (citations omitted).

Moreover, there was no "unjust" enrichment. To recover under that "equitable doctrine," Plaintiffs "must show some element of misconduct" by Bresnan or that it "somehow took advantage" of them, *Sebena v. State*, 883 P.2d 1263, 1268 (Mont. 1994), that is, they must show "fraud, duress, conversion, or similar conduct" by Bresnan to recover. *Oracle Corp*., 2008 WL 5234260 *8. If any "enrichment" Bresnan realized from the NebuAd trial was not "unjust" insofar as its conduct was lawful, any commercial value would be an expected and proper benefit of its contractual relationship with subscribers. Similarly, because Plaintiffs consented to monitoring and collection of information, *see supra* 15-17, an unjust enrichment claim fails because Bresnan's benefit as alleged, and any funds received, could not be unjust. *See generally Accuimage Diagnostics Corp. v. Terarecon, Inc*., 260 F.Supp.2d 941, 958 (N.D. Cal. 2003) (unjust enrichment requires allegation of "unjust retention of the benefit at the expense of another").

In this regard, unjust enrichment requires Plaintiffs to show Bresnan reaped rewards at Plaintiffs' expense, *Waldman v. Englishtown Sportswear, Ltd*, 460 N.Y.S.2d 552, 556 (N.Y. App. Div. 1983), that is, it "obtained a benefit that in equity and good conscience [it] should not

---

[70]   Bresnan and its subscribers agreed to New York law. *See* Bresnan's Mot. to Compel Arbitration and Dismiss or Stay Action at Section IV.B.1; *cf*., *Brazil v. Dell*, 2008 WL 2693629 *2 (N.D. Cal. July 7, 2008) (California applies no presumption against contractual choice-of-law).

[71]   Given this, Plaintiffs' relief, if any is to be had, must come under a contract theory alleging Bresnan breached a duty owed Plaintiffs under the privacy policy or online service agreement. *See*, *e.g*., *Tako Holdings, Inc. v. Tillman*, 707 N.Y.S.2d 658, 660 (N.Y. App. Div. 2000). But there is no basis for such a claim. *See supra* 15-16 (quoting online service agreement and privacy policy).

Bresnan's Memo in Support of Motion to Dismiss Under Fed. R. Civ. P. 12(b)(2) or (b)(6)     Case No. C08 05113 TEH

DAVIS WRIGHT TREMAINE LLP

have obtained … because it rightfully belongs" to Plaintiffs.[72]  But Plaintiffs have no grounds for alleging Bresnan deprived them of anything rightfully theirs.  Whatever revenues the NebuAd trial generated (Compl. ¶ 77) came not from funds Plaintiffs otherwise may have received (nor did it diminish their assets or increase liabilities they may have faced), but rather constituted ad revenue that Plaintiffs acknowledge traditionally flows not to viewers of ads, but to the owner of media over which they are conveyed.[73]  In view of all the foregoing, the Bresnan Plaintiffs cannot recover on an unjust enrichment theory.

## IV.   CONCLUSION

For the foregoing reasons, Bresnan Communications respectfully requests this Court grant this Motion and enter an order dismissing Bresnan from this action with prejudice.

DATED:  January 30, 2009

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

By: _/s/ John D. Seiver_____
THOMAS R. BURKE (CA State Bar No. 141930)
JOHN D. SEIVER (admitted *pro hac vice*)
ADAM S. CALDWELL (admitted *pro hac vice*)
RONALD G. LONDON (admitted *pro hac vice*)
ELIZABETH A. DROGULA (admitted *pro hac vice*)

Attorneys for Defendant
BRESNAN COMMUNICATIONS, INC.

---

[72]  *iWon, Inc.* v. *Ourhouse, Inc.,* 744 N.Y.S.2d 791, 794-95 (N.Y. App. Div. 2001) (citations omitted).  Were the Court to apply Montana law, the analysis would not change.  Montana's law requires the enrichment must come "at the expense of another" or "belong to another."  *Lawrence v. Clepper*, 865 P.2d 1150, 1156 (Mont. 1993).  Because ad revenue was not owed to plaintiffs, *see infra* note 73 and accompanying text, they have no unjust enrichment claim against the ISPs.  *See Randolph V. Peterson, Inc.* v. *J.R. Simplot Co.*, 778 P.2d 879, 883-84 (Mont. 1989); *Montana Petrol. Tank Release Comp. Bd.* v. *Capitol Indem. Co.*, 137 P.3d 522, 529 (Mont. 2006).

[73]  *See supra* note 34.  Other than the extent to which ad revenue helps lower subscribers' costs for Internet access, which if anything *benefits* Plaintiffs, the NebuAd trial had no financial impact on them whatsoever.