Douglas R. Young (State Bar No. 073248)
    dyoung@fbm.com
C. Brandon Wisoff (State Bar No. 121930)
    bwisoff@fbm.com
Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
Telephone:  (415) 954-4400
Facsimile:  (415) 954-4480

David A. Handzo (Admitted *Pro Hac Vice*)
    dhandzo@jenner.com
Jenner & Block LLP
1099 New York Avenue, N.W.
Suite 900
Washington, DC  20001
Telephone:  (202) 639-6000
Facsimile:   (202) 649-6066

Attorneys for Defendants
CENTURYTEL and EMBARQ

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DAN VALENTINE, et al.,<br><br>                    Plaintiffs,<br><br>         vs.<br><br>NEBAUD, INC., a Delaware Corporation, et al.,<br><br>                    Defendants. | Civil Case No.: CV-08-5113 (TEH)<br><br>**NOTICE OF MOTION AND MOTION OF DEFENDANTS CENTURYTEL AND EMBARQ FOR ORDER DISMISSING THEM FOR LACK OF PERSONAL JURISDICTION AND FAILURE TO STATE A CLAIM; MEMORANDUM IN SUPPORT**<br><br>(Fed. R. Civ. P. 12(b)(2), (6))<br><br>The Honorable Thelton E. Henderson<br><br>Date:              March 9, 2009<br>Time:             10:00 a.m.<br>Courtroom:     Twelve<br>Complaint Filed:  Nov. 10, 2008 |

**NOT. OF MOT AND MEM. ISO MOT. TO
DISMISS OF CENTURYTEL AND EMBARQ**
Case No. cv-08-5113  (TEH)

23981\1855191.1

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

NOTICE OF MOTION AND MOTION ........................................................................... vi

ISSUES TO BE DECIDED ............................................................................................... vi

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................. 3

ARGUMENT ...................................................................................................................... 5

I.  THIS COURT LACKS PERSONAL JURISDICTION OVER CENTURYTEL AND
    EMBARQ................................................................................................................ 5

    A.  This Court Lacks General Personal Jurisdiction Over CenturyTel and Embarq. ..... 6

    B.  This Court Lacks Specific Personal Jurisdiction Over Defendant ISPs. .................. 8

    C.  Exercising Personal Jurisdiction over CenturyTel and Embarq Is Unreasonable... 10

    D.  Alternatively, this Court Should Transfer this Action to an Appropriate Venue.... 13

II.  PLAINTIFFS' CALIFORNIA STATUTORY CLAIMS MUST BE DISMISSED.......... 14

    A.  California and Federal Law Prevent the Application of California Law to the
        Non-California Activities of a Non-California Company Affecting Only
        Non-California Residents................................................................................ 14

    B.  Plaintiffs Have Failed To State a Claim for Any of the California Statutes They
        Invoke................................................................................................................ 18

III. PLAINTIFFS HAVE ALLEGED WRONGDOING BY NEBUAD, NOT CENTURYTEL
     OR EMBARQ, WHO CANNOT BE LIABLE FOR NEBUAD'S ALLEGED
     VIOLATIONS OF FEDERAL PRIVACY LAWS........................................................ 20

    A.  Plaintiffs Have Not Alleged Acts by CenturyTel or Embarq that Directly Violate
        Federal Privacy Laws........................................................................................ 20

    B.  CenturyTel and Embarq Cannot Be Sued for Allegedly Aiding and Abetting
        Violations by, or Conspiring With, NebuAd. .................................................. 22

IV.  PLAINTIFFS HAVE FAILED TO STATE A CLAIM FOR UNJUST ENRICHMENT. 26

CONCLUSION ................................................................................................................. 29

**NOT. OF MOT AND MEM. ISO MOT. TO
DISMISS OF CENTURYTEL AND EMBARQ**          - i -
Case No. cv-08-5113 (TEH)

23981\1855191.1

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Allstate Insurance Co. v. Hague*, 449 U.S. 302 (1981) .................................................. 17

*Bancroft & Masters, Inc. v. Augusta National Inc.*, 223 F.3d 1082 (9th Cir. 2000) ......... 6, 7, 8, 10

*Bates v. United States*, 522 U.S. 23 (1997) ..................................................................... 26

*Board of Supervisors of Louisiana State University v. Louisiana Agricultural Finance Authority*, 984 So. 2d 72 (La. Ct. App. 2008) ................................................................. 28

*BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996) .................................... 11, 18

*Brand v. Menlove Dodge*, 796 F.2d 1070 (9th Cir. 1986) .......................................... 7, 8

*Brazil v. Dell, Inc.*, 585 F. Supp. 2d 1158 (N.D. Cal. 2008) ........................................ 27

*Calder v. Jones*, 465 U.S. 783 (1984) ............................................................................. 8

*Campbell v. Arco Marine, Inc.*, 42 Cal. App. 4th 1850 (2d Dist. 1996) ........................ 17

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164 (1994) ........................................................................................................................ 22, 23

*Core-Vent Corp. v. Nobel Industries AB*, 11 F.3d 1482 (9th Cir. 1993) ...................... 10

*Crowley v. CyberSource Corp.*, 166 F. Supp. 2d 1263 (N.D. Cal. 2001) ...................... 21

*Cubbage v. Merchent*, 744 F.2d 665 (9th Cir. 1984) .................................................... 7

*Diamond Multimedia System, Inc. v. Superior Court*, 19 Cal. 4th 1036 (1999) .......................... 15

*Doe v. Dartmouth-Hitchcock Medical Center*, No. Civ. 00-100-M, 2001 WL 873063 (D.N.H. July 19, 2001) ................................................................................................ 26

*Doe v. GTE Corp.*, 347 F.3d 655 (7th Cir. 2003) ........................................................ 24

*Dole Food Co. v. Watts*, 303 F.3d 1104 (9th Cir. 2002) ...................................... 8, 10, 12

*Edgar v. MITE Corp.*, 457 U.S. 624 (1982) ............................................................ 12, 18

*Enreach Technology, Inc. v. Embedded Internet Solutions, Inc.*, 403 F. Supp. 2d 968 (N.D. Cal. 2005) .................................................................................................................. 26

*Estate of Walker v. Peters*, 989 So. 2d 241 (La. Ct. App. 2008) ................................. 28

*Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006) .................................................... 25

**NOT. OF MOT AND MEM. ISO MOT. TO DISMISS OF CENTURYTEL AND EMBARQ** - ii -
Case No. CV-08-5113 (TEH)

*Forrand v. Federal Express Corp.*, No. C07-4674, 2008 WL 276389 (N.D. Cal. Jan. 31, 2008) ................................................................................................................. 13

*Freeman v. DirecTV, Inc.*, 457 F.3d 1001 (9th Cir. 2006) ................................. 22, 23, 24

*Garland-Sash v. Lewis*, No. 05 Civ. 6827, 2007 WL 935013 (S.D.N.Y. Mar. 26, 2007) ........... 26

*Glud & Marstrand A/S v. Microsoft Corp.*, No. C05-01563, 2006 WL 2380717 (W.D. Wash. Aug. 15, 2006) .................................................................................................. 9

*Gray Line Tours v. Reynolds Electrical & Engineering Co.*, 193 Cal. App. 3d 190 (2d Dist. 1987) ......................................................................................................................... 7

*Haz-Mat Response, Inc. v. Certified Waste Services Ltd.*, 910 P.2d 839 (Kan. 1996) ................ 27

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984) ................................ 6

*Injen Technology Co. Ltd. v. Advanced Engine Management, Inc.*, 270 F. Supp. 2d 1189 (S.D. Cal. 2003) ............................................................................................................ 7

*Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95 (2006) ................................... 9, 16, 17, 18

*In re Late Fee & Over-Limit Fee Litigation*, 528 F. Supp. 2d 953 (N.D. Cal. 2007) .................... 26

*Lawrence v. Clepper*, 865 P.2d 1150 (Mont. 1993) ......................................................... 27

*Locke v. Aston*, 814 N.Y.S.2d 38 (N.Y. App. Div. 2006) ............................................... 17

*Lou v. Belzberg*, 834 F.2d 730 (9th Cir. 1987) ............................................................... 13

*MCA Records, Inc. v. Charly Records Ltd.*, 108 F.3d 338, 1997 WL 76173 (9th Cir. 1997) (unpublished table decision) ......................................................................................... 9

*In re Marriage of Wageman*, 968 P.2d 1114 (Kan. Ct. App. 1998) .................................... 27

*Melchior v. New Line Productions, Inc.*, 106 Cal. App. 4th 779 (2d Dist. 2003) ........................ 26

*Montana Petroleum Tank Release Compensation Board v. Capitol Indemnity Co.*, 137 P.3d 522 (Mont. 2006) .................................................................................................. 28

*Munro v. Carstensen*, 945 So. 2d 961 (La. Ct. App. 2006) .......................................... 28

*Nance v. Maxwell Federal Credit Union (MAX)*, 186 F.3d 1338 (11th Cir. 1999) ..................... 23

*National Indemnity Co. v. Garamendi*, 233 Cal. App. 3d 392 (2d Dist. 1991) ........................... 19

*North Alaska Salmon Co. v. Pillsbury*, 174 Cal. 1 (1916) ........................................... 15

*Norwest Mortgage, Inc. v. Superior Court*, 72 Cal. App. 4th 214 (4th Dist. 1999) .................... 15

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

**NOT. OF MOT AND MEM. ISO MOT. TO
DISMISS OF CENTURYTEL AND EMBARQ**                 - iii -                                    23981\1855191.1
Case No. CV-08-5113 (TEH)

*Panavision International, L.P. v. Toeppen*, 141 F.3d 1316 (9th Cir. 1998) ........................... 7, 12

*PBA Local No. 38 v. Woodbridge Police Department*, 832 F. Supp. 808 (D.N.J. 1993) ............. 21

*Pearce v. E.F. Hutton Group, Inc.*, 664 F. Supp. 1490 (D.D.C. 1987).................................... 9, 16

*People v. Ratekin*, 212 Cal. App. 3d 1165 (4th Dist. 1989).......................................................... 19

*Perkins-Carrillo v. Systemax, Inc.*, No. 1:03CV2836-TW, 2006 WL 1553957 (N.D. Ga.
   May 26, 2006) ............................................................................................................................ 25

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985)................................................................ 18

*Randolph V. Peterson, Inc. v. J.R. Simplot Co.*, 778 P.2d 879 (Mont. 1989) ........................ 21, 28

*Reynolds v. Spears*, 93 F.3d 428 (8th Cir. 1996) ........................................................................ 21

*Sandberg v. McDonald*, 248 U.S. 185 (1918)................................................................................ 15

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797 (9th Cir. 2004) ........................... 6, 7, 9

*Security Benefit Life Insurance Corp. v. Fleming Cos.*, 908 P.2d 1315 (Kan. Ct. App.
   1995) .......................................................................................................................................... 27

*Sinatra v. National Enquirer, Inc.*, 854 F.2d 1191 (9th Cir. 1998) ............................................. 11

*Standfacts Credit Services, Inc. v. Experian Information Solutions, Inc.*, 405 F. Supp. 2d
   1141 (C.D. Cal. 2005), *aff'd*, 294 F. App'x 271 (9th Cir. 2008) ............................................ 16

*Tos v. Mayfair Packing Co.*, 160 Cal. App. 3d 67 (5th Dist. 1984)............................................. 19

*In re Toys R Us, Inc. Privacy Litigation*, No. 00-CV-2746, 2001 WL 34517252 (N.D. Cal.
   Oct. 9, 2001)............................................................................................................................... 25

*Unicorn Investment Bank v. Kuruvilla*, No. CV-04-3135-FVS, 2005 WL 1151996 (E.D.
   Wash. May 16, 2005) .................................................................................................................. 8

*Wild v. Subscription Plus, Inc.*, 292 F.3d 526 (7th Cir. 2002)..................................................... 13

*Williams v. Bowman*, 157 F. Supp. 2d 1103 (N.D. Cal. 2001) ..................................................... 13

*Ziegler v. Indian River County*, 64 F.3d 470 (9th Cir. 1995)...................................................... 10

## STATUTES

18 U.S.C. § 1030(b) ...................................................................................................................... 25

18 U.S.C. § 1030(g) ...................................................................................................................... 25

18 U.S.C. § 2510 *et seq.*................................................................................................................ 24

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

**NOT. OF MOT AND MEM. ISO MOT. TO
DISMISS OF CENTURYTEL AND EMBARQ**            - iv -
Case No. CV-08-5113 (TEH)

23981\1855191.1

18 U.S.C. § 2511(1)(a) ............................................................................................... 25

18 U.S.C. § 2520(a) .................................................................................................... 25

18 U.S.C. § 2701(a) .................................................................................................... 24

18 U.S.C. § 2707 ......................................................................................................... 23

28 U.S.C. § 1404(a) .................................................................................................... 13

28 U.S.C. § 1712(e) .............................................................................................. 12, 14

Pub. L. No. 110-326, Title II, § 206, 122 Stat. 3561, 3563 (2008) ............................ 25

Cal. Penal Code § 502 ................................................................................................... 2

Cal. Penal Code § 502(a) ............................................................................................. 16

Cal. Penal Code § 502(e) ............................................................................................. 19

Cal. Penal Code § 630 ............................................................................................. 16-17

Cal. Penal Code § 631 ................................................................................................... 2

Cal. Penal Code § 631(a) ................................................................................... 17, 18, 19

Stats. 2000, ch. 635 § 2 ............................................................................................... 19

**OTHER AUTHORITIES**

Federal Trade Commission Staff, *Online Behavioral Advertising:  Moving the Discussion Forward to Possible Self-Regulatory Principles* (Dec. 20, 2007), *available at* http://www.ftc.gov/os/2007/12/P859900stmt.pdf ................................................... 4

15 Charles A. Wright et al., *Federal Practice and Procedure* (3d ed. 2007) ............................... 13

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

**NOT. OF MOT AND MEM. ISO MOT. TO
DISMISS OF CENTURYTEL AND EMBARQ** - v -
Case No. CV-08-5113 (TEH)

23981\1855191.1

1

**NOTICE OF MOTION AND MOTION**

2

PLEASE TAKE NOTICE that on March 9, 2009, at 10:00 a.m., or as soon thereafter as

3

the matter may be heard before the Hon. Thelton E. Henderson, United States District Judge, in

4

Courtroom 12, 19th Floor of the United States District Court for the Northern District of

5

California, San Francisco Division, located at 450 Golden Gate Avenue, San Francisco,

6

California, Defendants CenturyTel and Embarq will and hereby do move this Court for an order,

7

pursuant to Federal Rule of Civil Procedure 12(b)(2) or 12(b)(6), dismissing the Complaint of

8

Plaintiffs Dan Valentine, Dale Mortensen, Melissa Becker, Samuel Green, Sherron Rimpsey,

9

Charlotte Miranda, Frank Miranda, Saul Dermer, Wayne Copeland, Crystal Reid, Andrew Paul

10

Manard, Kathleen Kirch, Terry Kirch, Neil Deering, and Paul Driscoll ("plaintiffs") for lack of

11

personal jurisdiction (alternatively, for transfer of venue pursuant to 28 U.S.C. § 1404(a)) and

12

failure to state a claim in any of the counts in the Complaint.  CenturyTel and Embarq's motion is

13

based upon this Notice of Motion and Motion, the following Memorandum of Points and

14

Authorities, the accompanying declarations, the Complaint, and such additional matters as may be

15

judicially noticed or properly come before this Court prior to or at the hearing of this matter.

16

17

18

**ISSUES TO BE DECIDED**

19

(1)  Whether this Court can assert personal jurisdiction over CenturyTel and Embarq.

20

(2)  Whether this Court should transfer the actions against CenturyTel and Embarq to an

21

appropriate venue.

22

23

(3)  Whether the California Privacy Act or the California Computer Crimes Law can

24

impose liability on CenturyTel or Embarq, non-California companies, for non-California

25

activities affecting non-California residents.

26

(4)  Whether plaintiffs have stated a direct, aiding and abetting, or conspiracy claim

27

against CenturyTel and Embarq under the California Privacy Act.

28

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

**NOT. OF MOT AND MEM. ISO MOT. TO
DISMISS OF CENTURYTEL AND EMBARQ**       - vi -                                     23981\1855191.1
Case No. CV-08-5113 (TEH)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

(5)  Whether plaintiffs have stated a direct, aiding and abetting, or conspiracy claim against CenturyTel and Embarq under the California Computer Crimes Law.

(6)  Whether plaintiffs have stated a direct, aiding and abetting, or conspiracy claim against CenturyTel and Embarq under the Electronic Communications Privacy Act.

(7)  Whether plaintiffs have stated a direct, aiding and abetting, or conspiracy claim against CenturyTel and Embarq under the Computer Fraud and Abuse Act.

(8)  Whether plaintiffs have stated a direct, aiding and abetting, or conspiracy claim against CenturyTel and Embarq for unjust enrichment.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

**NOT. OF MOT AND MEM. ISO MOT. TO
DISMISS OF CENTURYTEL AND EMBARQ**            - vii -
Case No. CV-08-5113 (TEH)

23981\1855191.1

1   Defendants CenturyTel Communications, Inc. and Embarq, Inc. respectfully submit this

2   memorandum in support of their Motion to Dismiss Plaintiffs' Complaint pursuant to Federal

3   Rule of Civil Procedure 12(b).

### INTRODUCTION

4

5   Plaintiffs claim that an innovative technology invented, patented, owned and implemented

6   by a California-based company called NebuAd, Inc. ("NebuAd") violated the privacy rights of

7   internet users.  Whatever the merits of this claim — and the undersigned defendants believe there

8   are none — plaintiffs reach too far by bringing CenturyTel and Embarq into this case.

9   To begin, the Court cannot assert personal jurisdiction over CenturyTel and Embarq.

10  Neither these defendants nor the plaintiffs who are suing them have any relevant connection with

11  California.  None of the plaintiffs and putative class members who assert claims against

12  CenturyTel and Embarq resides in California, and the harm they allegedly suffered occurred

13  entirely out of state.  Neither Louisiana-based CenturyTel nor Kansas-based Embarq has

14  substantial contacts in California.  Neither company is alleged to have taken any action in

15  California that is relevant to this case.  Their only conceivable connection to this forum is their

16  agreement to let NebuAd, a California company, conduct a test of its technology on CenturyTel

17  customers in Montana, Wyoming, and Idaho, and Embarq customers in Kansas.  Under clearly

18  established Ninth Circuit law, that fact is insufficient to establish general jurisdiction and

19  irrelevant to establishing specific jurisdiction.  This Court cannot assert personal jurisdiction over

20  non-California defendants sued by non-California plaintiffs for alleged injuries suffered outside

21  of California.

22  For much the same reasons, the out-of-state plaintiffs' attempt to enforce California law

23  against these non-California defendants must fail.  California law simply cannot govern the non-

24  California dealings of a non-California company with its non-California customers.  This is clear

25

26

27

28

**NOT. OF MOT AND MEM. ISO MOT. TO**
**DISMISS OF CENTURYTEL AND EMBARQ**        - 1 -                                    23981\1855191.1
Case No. cv-08-5113 (TEH)

both in the California laws themselves, which explicitly limit their extraterritorial application, and in the long line of Due Process Clause cases that prohibit states from trying to make their individual laws apply to all conduct, anywhere.  Even if the California laws did apply, plaintiffs have failed to state claims under the California Invasion of Privacy Act, Cal. Penal Code § 631, which guards against the tapping of telephone lines, and the California Computer Crime Law, Cal. Penal Code § 502, which was designed to prevent the spread of computer viruses.

Plaintiffs similarly have failed to state claims that CenturyTel and Embarq violated two federal statutes, the Electronic Communications Privacy Act ("ECPA") and the Computer Fraud and Abuse Act ("CFAA"), either directly or by aiding and abetting or conspiring with NebuAd to do so.  Plaintiffs' complaint alleges that the acts forbidden by those statutes — intercepting and using private communications transmitted over the internet — were all taken by NebuAd, with CenturyTel and Embarq taking no action other than allowing NebuAd access to their networks.  Although plaintiffs allege in conclusory terms that CenturyTel and Embarq committed the same purportedly illegal acts they accuse NebuAd of performing, the specific allegations of the complaint belie that conclusion.  The complaint is replete with allegations that NebuAd intercepted communications, that NebuAd analyzed those communications, and that NebuAd used those communications, but makes nary a mention of any affirmative step that CenturyTel or Embarq took apart from opening their doors to NebuAd in return for a share of the revenue NebuAd earned.  Such allegations do not state any direct violation of the privacy laws by CenturyTel and Embarq.  Apparently conscious of this, plaintiffs try to hold CenturyTel and Embarq liable for NebuAd's acts on theories of aiding and abetting and conspiracy liability.  Those claims fail, too.  There is no general secondary liability under federal law, and none of the statutes in question admits of conspiracy or aiding and abetting liability.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

**NOT. OF MOT AND MEM. ISO MOT. TO
DISMISS OF CENTURYTEL AND EMBARQ**
Case No. CV-08-5113 (TEH)

- 2 -

23981\1855191.1

Finally, plaintiffs' unjust enrichment claim goes nowhere.  The core of an unjust enrichment suit is the claim that a defendant accepted a benefit that should have gone to, or constituted a loss by, the plaintiff.  Here, plaintiffs have alleged that defendants received money for their role in delivering relevant advertisements to the end-user.  To succeed, plaintiffs would have to show that such ad revenue belongs to the end-user.  But that is not how advertising works, or has ever worked.  The allegations in plaintiffs' complaint demonstrate that in both traditional and online advertising, end-users do not receive compensation for viewing ads.  The defendants have in no way been enriched with income that should have gone to plaintiffs.

### BACKGROUND

CenturyTel and Embarq are communications companies that, among other things, offer internet access services to their customers.  The complaint alleges that CenturyTel and Embarq separately[1] entered "partnership[s]" with NebuAd, a specialist in online behavioral advertising. Compl. ¶ 68.  Online behavioral advertising seeks to match the advertisements that an internet user sees with that user's interests.  Thus, for example, "[i]f the consumer was visiting multiple car sites over a period of time, and then searched for a sports site," behavioral advertising would aim to have car ads, rather than randomly generated ads that held little interest to the consumer, on the sports site.  Compl. ¶ 53.  Although the complaint insinuates that behavioral advertising is somehow nefarious, the Federal Trade Commission has observed that behavioral advertising provides numerous benefits to consumers:

> The benefits include, for example, access to newspapers and information from around the world, provided free because it is subsidized by online advertising; tailored ads that facilitate comparison shopping for the specific products that consumers want; and, potentially, a reduction in ads that are irrelevant to consumers' interests and that may therefore be unwelcome.

[1] At the time of the events recited in the complaint, CenturyTel and Embarq were unrelated. Since then, the companies have agreed that CenturyTel will acquire Embarq and, assuming that the requisite regulatory approvals are obtained, the companies will merge.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

**NOT. OF MOT AND MEM. ISO MOT. TO
DISMISS OF CENTURYTEL AND EMBARQ**   - 3 -
Case No. CV-08-5113 (TEH)

23981\1855191.1

Federal Trade Commission Staff, *Online Behavioral Advertising: Moving the Discussion Forward to Possible Self-Regulatory Principles* 2 (Dec. 20, 2007), *available at* http://www.ftc.gov/os/2007/12/P859900stmt.pdf.

In late 2007, NebuAd began "test[s]" of its technology on small populations of CenturyTel customers in Montana, Idaho, and Wyoming, and Embarq customers in Kansas. Compl. ¶¶ 92-93.  Embarq and CenturyTel amended the privacy policies on their websites to advise their consumers that data was being collected for behavioral advertising purposes, and offered their users the choice not to participate.  Compl. ¶¶ 92-93.  The defendants received assurances from NebuAd that the data was collected and maintained in a manner that would make it impossible, after the fact, to link individual users and their history, Compl. ¶ 92, and that NebuAd's system did not collect any health- or child-related information.

Pursuant to contracts with CenturyTel and Embarq, "NebuAd placed a hardware interception device directly onto the data hub of the ISP."  Compl. ¶ 60.  NebuAd's device "analyzed the contents of the traffic, monitored and intercepted consumer communications, Compl. ¶¶ 68, 70, and used information thus obtained to route advertising to the consumer. Compl. ¶ 72.  All of these actions "took place by and through NebuAd's headquarters."  Compl. ¶ 77; *see also id.* ¶¶ 76, 78.  Apart from the defendants "permit[ing]" NebuAd to install the device in their Montana and Kansas data centers, Compl. ¶ 104, and accepting a modest check for a portion of revenue from the trial, Compl. ¶¶ 77, 79, the test was under NebuAd's control.

One customer of CenturyTel (a Montana resident) and two customers of Embarq (both Kansas residents) have sued CenturyTel and Embarq here in the Northern District of California. Compl. ¶ 28.  Claiming that NebuAd's online behavioral advertising system violates federal and state wiretapping and computer-hacking laws, plaintiffs have also sued NebuAd and four other

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

**NOT. OF MOT AND MEM. ISO MOT. TO
DISMISS OF CENTURYTEL AND EMBARQ**
Case No. CV-08-5113 (TEH)

- 4 -

23981\1855191.1

1    internet service providers.  As explained below, there is no basis for the suits against CenturyTel

2    and Embarq to proceed, and they should be dismissed in their entirety.

3                                              **ARGUMENT**

4    **I.      THIS COURT LACKS PERSONAL JURISDICTION OVER CENTURYTEL AND**

5            **EMBARQ.**

6            At the outset, plaintiffs' claims against CenturyTel and Embarq must be dismissed

7    because this Court lacks personal jurisdiction over them.

8            As the accompanying declarations demonstrate, neither of the entities named —

9    CenturyTel Communications, Inc. and Embarq, Inc. — had any involvement in the matters at

10   issue in this case.[2]  Instead, the contract between Embarq and NebuAd was signed by Embarq

11   Management Company, and the network on which the NebuAd equipment was installed is owned

12   by United Telephone Company of Eastern Kansas (we will refer to these two companies

13   collectively as "Embarq").  Similarly, CenturyTel Service Group, LLC entered into an agreement

14   with NebuAd, on behalf of its operating subsidiary, CenturyTel Broadband Services LLC (we

15   will refer to these two companies collectively as "CenturyTel").[3]

16           None of the companies that was actually involved in the NebuAd test is incorporated in

17   California.  None of the tortious acts alleged was undertaken by these defendants in California.

18

19   And not a single plaintiff — neither any named or a putative class member — is a California

20   citizen who suffered harm in California.  At bottom, plaintiffs are asking this Court to exercise

21   jurisdiction over out-of-state defendants who allegedly have taken actions outside the state that

22

23

24

25   [2] CenturyTel and Embarq do not at this time move to dismiss on the grounds that plaintiffs have
     named the incorrect corporate entity, but will move for summary judgment at the appropriate time
26   if plaintiffs fail to substitute the correct defendants.  CenturyTel and Embarq have stipulated that
     they will not object to a motion by the plaintiffs to substitute the correct entities, reserving,
27   however, all objections to the assertion personal jurisdiction.

28   [3] There is no entity known as CenturyTel Communications, Inc.  *See* Mangum Decl. ¶ 3.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

**NOT. OF MOT AND MEM. ISO MOT. TO**
**DISMISS OF CENTURYTEL AND EMBARQ**          - 5 -                                    23981\1855191.1
Case No. CV-08-5113 (TEH)

harmed out-of-state plaintiffs.  It is difficult to imagine a clearer case for finding that personal jurisdiction does not exist.

### A.   This Court Lacks General Personal Jurisdiction Over CenturyTel and Embarq.

For general jurisdiction to exist over a non-resident defendant, the plaintiff must show that the defendant has engaged in "continuous and systematic general business contacts" in California. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984); *see Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000) (no general personal jurisdiction for company that was not registered in California, paid no taxes in California, and targeted no advertising toward California residents).  The standard requires the equivalent of showing the defendant's "'approximate physical presence'" in California, because a finding of general jurisdiction would permit the defendant to be sued in California for any dispute, regardless of its connection to the defendant's California contacts.  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004) (quoting *Bancroft*, 223 F.3d at 1086).

CenturyTel and Embarq have no continuous or systematic business contacts in California. Mangum Decl. ¶¶ 8-12; Ramsey Decl. ¶¶ 6-10; Huber Decl. ¶¶ 5-9; Binder Decl. ¶¶ 5-10.  None of the companies is a resident of California.  Mangum Decl. ¶¶ 8-12; Ramsey Decl. ¶ 6; Huber Decl. ¶ 5; Binder Decl. ¶ 6.  The relevant CenturyTel entities are organized under the laws of Louisiana, and headquartered in Louisiana.  Mangum Decl. ¶¶ 8-9.  None of the relevant Embarq entities are incorporated under California law or are headquartered there.  Ramsey Decl. ¶ 6; Huber Decl. ¶ 5; Binder Decl. ¶ 6.  None of the companies has an office or an employee within California.  Mangum Decl. ¶¶ 8-12; Ramsey Decl. ¶¶ 7-8; Huber Decl. ¶¶ 6-7; Binder Decl. ¶¶ 7-8.  The relevant Embarq entities have no California customers.  Ramsey Decl. ¶ 10; Huber Decl. ¶ 9; Binder Decl. ¶ 10.  One of the two relevant CenturyTel entities has no customers in California, and the other has no more than 16 dial-up ISP customers in California, none of whom has any

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

**NOT. OF MOT AND MEM. ISO MOT. TO DISMISS OF CENTURYTEL AND EMBARQ**
Case No. CV-08-5113 (TEH)                              - 6 -                              23981\1855191.1

connection to the allegations in the Complaint.  Mangum Decl. ¶ 12.  None of the companies

advertises in California.  Mangum Decl. ¶ 11; Ramsey Decl. ¶ 9; Huber Decl. ¶ 8; Binder Decl. ¶

9.  These facts are more than sufficient to establish a lack of general jurisdiction.

*Schwarzenegger*, 374 F.3d at 801; *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th

Cir. 1998).[4]

The sole California contact alleged by plaintiffs is the contract that CenturyTel and

Embarq separately entered into with NebuAd.  But a single contract is hardly "continuous or

systematic" and in any case merely shows one instance of doing business *with* California, not an

instance of doing business *in* California.  *Bancroft & Masters*, 223 F.3d at 1086 (agreements with

California vendors "constitute doing business with California, but do not constitute doing

business in California").[5]  Defendants who have a single contract with a California company may

not be haled into the California courts for the resolution of any dispute against them.

*Schwarzenegger*, 374 F.3d at 801 ("implausibl[e]" to think general personal jurisdiction exists

over nonresident defendant even where defendant purchased California products, hired California

contractors, and provided for California law to govern certain California disputes); *Brand v.*

---

[4] One of the relevant Embarq entities, Embarq Management Company, has a registered agent for
service purposes in California.  That fact, however, is wholly insufficient to establish personal
jurisdiction in California.  *E.g.*, *Gray Line Tours v. Reynolds Elec. & Eng'g Co.*, 193 Cal. App.
3d 190, 194-95 (2d Dist. 1987) (presence of agent only permits suit regarding company's *in-state*
activities) (citing *Miner v. United Air Lines Transp. Corp.*, 16 F. Supp. 930 (S.D. Cal. 1936)).  At
most, the presence of a registered agent is but one factor among many relevant to the stringent
showing required for general jurisdiction.  *Bancroft & Masters*, 223 F.3d at 1086.

[5] Nor does the fact that one of the two relevant CenturyTel entities has 16 Californian ISP
customers give rise to general jurisdiction.  General jurisdiction arises only where the defendant's
forum contacts are "substantial."  *Bancroft & Masters*, 223 F.3d at 1086.  These customers
represent no more than .0028 percent of CenturyTel's ISP customers (Mangum Decl. ¶ 12), and
thus plainly do not constitute substantial contacts.  *See Brand v. Menlove Dodge*, 796 F.2d 1070,
1073 (9th Cir. 1986) (no jurisdiction based on occasional sales to California residents); *Cubbage
v. Merchent*, 744 F.2d 665, 667-68 (9th Cir. 1984) (no jurisdiction over hospital despite fact that
26 percent of patients came from forum state); *Injen Tech. Co. Ltd. v. Advanced Engine Mgmt.,
Inc.*, 270 F. Supp. 2d 1189, 1194-95 (S.D. Cal. 2003) (no general jurisdiction over company that
did small amount of business in state).

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

**NOT. OF MOT AND MEM. ISO MOT. TO
DISMISS OF CENTURYTEL AND EMBARQ**
Case No. CV-08-5113 (TEH)

- 7 -

23981\1855191.1

1    *Menlove Dodge*, 796 F.2d 1070, 1073 (9th Cir. 1986) (occasional sales by nonresident to

2    California residents are insufficient to create general jurisdiction).

3         **B.**    **This Court Lacks Specific Personal Jurisdiction Over These Defendants.**

4         It is equally clear that this Court lacks specific personal jurisdiction over CenturyTel and

5    Embarq.  In order to show that these defendants have "purposefully availed [themselves] of the

6    privileges of conducting activities in the forum" in order to support specific jurisdiction, *Bancroft*

7    *& Masters*, 223 F.3d at 1086, plaintiffs must satisfy the "effects test" articulated in *Calder v.*

8    *Jones*, 465 U.S. 783, 789 (1984).  The effects test rejects the notion that a "foreign act with

9    foreseeable effects in the forum state always gives rise to specific jurisdiction." *Bancroft &*

10   *Masters*, 223 F.3d at 1087.  Instead, "something more" is required — namely, that the defendant

11   has "expressly aimed" the allegedly illegal conduct at the forum state, by "engag[ing] in wrongful

12   conduct *target[ing] a plaintiff whom the defendant knows to be a resident of [California].*" *Id.*

13   (emphasis added).  Furthermore, the acts must cause "harm that the defendant knows is likely to

14   be suffered *in the forum state*."  *Dole Foods Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)

15   (emphasis added).  Plaintiffs' complaint fails to meet either of these requirements.

16        First, it is undisputed that no plaintiff is this case is a resident of California.  Compl.

17   ¶¶ 15-29 (alleging that plaintiffs are "resident[s]" of Montana, Alabama, Georgia, Kansas, and

18   Illinois).  Nor is any class member — defined as a subscriber of CenturyTel or Embarq whose

19   communications were monitored or otherwise affected by the NebuAd device — a resident of

20   California, because the NebuAd device was used only in conjunction with non-Californian

21   residents.  Mangum Decl. ¶¶ 6-7; Huber Decl. ¶ 4.  Consequently, it is obvious that CenturyTel

22   and Embarq did not target any plaintiff who resides in California, making personal jurisdiction

23   improper.  *Unicorn Inv. Bank v. Kuruvilla*, No. CV-04-3135-FVS, 2005 WL 1151996, at *5 (E.D.

24   Wash. May 16, 2005) (no jurisdiction over nonresident who "injures another nonresident in a

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

foreign state"); *Glud & Marstrand A/S v. Microsoft Corp.*, No. C05-01563, 2006 WL 2380717, at

*6 (W.D. Wash. Aug. 15, 2006) (where plaintiff resides in Denmark, harm is "better described as

being aimed at [the plaintiff] in Denmark").  The Ninth Circuit recently reaffirmed the targeting

requirement in *Schwarzenegger*, 374 F.3d at 801.  In that case the Ninth Circuit held that there

was no personal jurisdiction over an Ohio car dealership that had allegedly made an unauthorized

use of Governor Schwarzenegger's likeness in advertising directed toward Ohio consumers.  The

Ninth Circuit held that because the activity was targeted at Ohioans, the car dealership could not

be sued in a California court — even though the plaintiff in the case was a Californian.  *Id.* at 807

("[While the defendant] may have known that Schwarzenegger lived in California[, that] does not

confer jurisdiction, for [the defendant's] express aim was local.").  If a *Californian* may not hale a

nonresident defendant into a California court for acts directed at nonresidents, it is abundantly

clear that nonresidents may not sue in California either.

Second, and relatedly, the plaintiffs suffered no harm — and CenturyTel and Embarq had

no reason to think that they would suffer harm — in California.  The alleged harm at issue is the

interception of subscribers' online transmissions.  Any harm the plaintiffs suffered from the

alleged interception of the transmissions would have been felt where the plaintiffs resided, not in

California.  *E.g.*, *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 119-20 & n.12 (2006)

(recognizing that privacy harm occurs where plaintiff lives); *see also Pearce v. E.F. Hutton*

*Group, Inc.*, 664 F. Supp. 1490, 1499 (D.D.C. 1987) (same); *MCA Records, Inc. v. Charly*

*Records Ltd.*, 108 F.3d 338, 1997 WL 76173, at *8 (9th Cir. 1997) (unpublished table decision)

(finding that the "brunt of the [trademark] injury is nevertheless borne by the alleged trademark

owner where the owner resides").

It is thus irrelevant to personal jurisdiction over CenturyTel and Embarq that NebuAd

allegedly processed plaintiffs' data in California.  The pertinent question is where the effects of

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

NOT. OF MOT AND MEM. ISO MOT. TO
DISMISS OF CENTURYTEL AND EMBARQ
Case No. CV-08-5113 (TEH)

- 9 -

23981\1855191.1

their actions were targeted and felt, and there is no plausible argument that these non-California plaintiffs felt these effects in California.  Setting aside plaintiffs' allegations of what *NebuAd* did in California, there are no allegations that CenturyTel or Embarq did anything in, targeted anything at, or affected anyone in the forum state.

### C.   Exercising Personal Jurisdiction over CenturyTel and Embarq Is Unreasonable.

Even if they could satisfy the other requirements of general or specific personal jurisdiction, plaintiffs still cannot show that it is reasonable to exercise jurisdiction here.  *Ziegler v. Indian River County*, 64 F.3d 470, 474-75 (9th Cir. 1995) (requiring showing of reasonableness); *Dole Foods*, 303 F.3d at 1114 (even where defendant has targeted forum, personal jurisdiction is inappropriate where it would be unreasonable) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)); *Bancroft & Masters*, 223 F.3d at 1086 (making reasonableness a prerequisite of specific jurisdiction).  This Court looks to seven factors in assessing the reasonableness of jurisdiction:

> (1) the extent of the defendants' purposeful injection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Dole Foods*, 303 F.3d at 1114.  Each factor supports a finding that personal jurisdiction would be unreasonable here.

*Purposeful injection*.  This Circuit recognizes that "the smaller the element of purposeful interjection, the less is jurisdiction to be anticipated and the less reasonable is its exercise."  *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1488 (9th Cir. 1993) (quotation marks omitted).  As explained above, neither CenturyTel nor Embarq has taken any action to inject itself into California.  The complained-of conduct in this case is that CenturyTel and Embarq targeted non-

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

**NOT. OF MOT AND MEM. ISO MOT. TO
DISMISS OF CENTURYTEL AND EMBARQ**
Case No. CV-08-5113 (TEH)

- 10 -

23981\1855191.1

Californians by allowing NebuAd to intercept their communications outside of California, thereby causing them to receive more targeted advertising information at their non-California place of service.  The sole California connection in this case is NebuAd, which, unlike CenturyTel and Embarq, is based in California.  That CenturyTel and Embarq each contracted with NebuAd is insufficient to establish meaningful purposeful interjection into California, particularly when neither of them took actions in California pursuant to that contract.

*Burden on the Defendants*.  While the factor is not dispositive, it is typical for a court to "examine the burden on the defendant in light of the corresponding burden on the plaintiff." *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1199 (9th Cir. 1998) (quotation marks omitted).  When it is equally difficult for the defendant to come to the plaintiff's forum as it is for the plaintiff to come to the defendant, this factor is neutral.  Here, however, *neither* the plaintiffs *nor* the defendants are from California; *neither* side benefits from a California forum.  Moreover, the burden of litigating in California is substantial for CenturyTel and Embarq.  Because the events at issue took place outside of California, all witnesses and documents will need to be brought in from other states.  Mangum Decl. ¶ 14; Huber Decl. ¶ 11.  The complaint alleges a nationwide class action on multiple claims that could turn on complex technical testimony concerning the nature of defendants' operations.  Proceedings could be lengthy.  It would be a substantial (and unnecessary) burden for CenturyTel and Embarq to defend their out-of-state actions in California.

*Conflict with Other States*.  Given California's minimal connection to this suit, it would be inappropriate for it to serve as the forum.  Plaintiffs' claims involve non-California conduct against non-Californians, and as the Supreme Court has put it, "a State may not impose economic sanctions on violators of its laws with the intent of changing the tortfeasors' lawful conduct in other States." *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 572 (1996).  To the extent that plaintiffs' rights are in need of vindication, that is the sole concern of the jurisdictions in which

**NOT. OF MOT AND MEM. ISO MOT. TO
DISMISS OF CENTURYTEL AND EMBARQ**      - 11 -                23981\1855191.1
Case No. CV-08-5113 (TEH)

they live. *Edgar v. MITE Corp.*, 457 U.S. 624, 644 (1982) (recognizing that a state "has no legitimate interest in protecting nonresident shareholders"). It is not for California to dictate to other states whether, and how, they should regulate the provision of internet access.

*Importance to California*. This factor favors the extension of personal jurisdiction when it would serve California's "interest in providing a forum for its residents and citizens who are tortiously injured." *Dole Foods*, 303 F.3d at 1115-16. Because no California resident or citizen is alleging injury, California correspondingly has no interest in hearing this suit.

*Efficient Resolution*. "This factor focuses on the location of the evidence and witnesses." *Panavision*, 141 F.3d at 1323. Simple mathematics shows that it is inefficient to try this case in California. There are 23 named parties to this suit plus thousands of putative class members; only one party — NebuAd — resides in California. It is inefficient to require 22 of 23 parties and thousands of class members to litigate in California, instead of requiring NebuAd to litigate in the home fora of the parties. Even a settlement would be difficult to efficiently negotiate in California given the Class Action Fairness Act's requirement of a fairness hearing. 28 U.S.C. § 1712(e). Unnamed class members would be required to come to California to challenge any settlement instead of being able to litigate in their home jurisdictions.

*Importance to Plaintiffs*. The plaintiffs have no interest in hearing this suit in California because none of them resides in California. Plaintiffs' choice to file in California appears to have been entirely the choice of their counsel. It would be far more convenient for the plaintiffs to litigate in their home forum, which is also the site of their alleged injury.

*Alternative Forum*. As explained below, there are undeniably alternative fora open to the plaintiffs. The most obvious forum for each class of plaintiffs is in a suit against CenturyTel or Embarq where those companies have substantial contacts, such as in Montana and Kansas, respectively. There is no question that personal jurisdiction would lie over CenturyTel and

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

**NOT. OF MOT AND MEM. ISO MOT. TO
DISMISS OF CENTURYTEL AND EMBARQ**      - 12 -                                          23981\1855191.1
Case No. CV-08-5113 (TEH)

1    Embarq in such a forum, and plaintiffs would likely be able to establish personal jurisdiction over

2    NebuAd in such a forum as well.

3        This case presents a rare personal jurisdiction hat trick:  Neither the plaintiffs, nor the

4    undersigned defendants, nor any of their actions in this case are connected to California.

5    Consequently, it would violate due process to hale CenturyTel or Embarq into a California court.

6    Other constitutionally sufficient jurisdictions are available.  This Court should hold that no

7

8    personal jurisdiction over CenturyTel and Embarq exists here.

9        **D.    Alternatively, this Court Should Transfer this Action to an Appropriate
              Venue.**
10

11       If this Court concludes that personal jurisdiction lies, it should transfer the action against

12    CenturyTel to the District of Montana, where the alleged interceptions occurred and where the

13    great majority of the putative class members reside.  It should transfer the action against Embarq

14    to the District of Kansas for the same reasons.  This Court has the authority to transfer this action

15    "[f]or the convenience of parties and witnesses, in the interests of justice, . . . to any other district

16    or division where it might have been brought."  28 U.S.C. § 1404(a).  It also has the power to

17

18    authorize the severance and transfer of claims against separate defendants to separate districts,

19    particularly where, as here, there is no forum in which all the defendants are subject to

20    jurisdiction.  *E.g.*, *Wild v. Subscription Plus, Inc.*, 292 F.3d 526, 530-31 (7th Cir. 2002).  *See*

21    *generally* 15 Charles A. Wright et al., *Federal Practice and Procedure* § 3845 (3d ed. 2007).

22    When none of the plaintiffs resides in the forum, *Williams v. Bowman*, 157 F. Supp. 2d 1103,

23    1106 (N.D. Cal. 2001), and when the operative facts took place elsewhere, *Lou v. Belzberg*, 834

24    F.2d 730, 739 (9th Cir. 1987), venue transfers are plainly appropriate.  *See generally Forrand v.*

25    *Federal Exp. Corp.*, No. C07-4674, 2008 WL 276389 (N.D. Cal. Jan. 31, 2008) (Henderson, J.).

26    Because the Districts of Montana and Kansas are home to the plaintiffs, key witnesses, and

27

28

**NOT. OF MOT AND MEM. ISO MOT. TO
DISMISS OF CENTURYTEL AND EMBARQ**          - 13 -          23981\1855191.1
Case No. CV-08-5113 (TEH)

documents, the suits against CenturyTel and Embarq should proceed in those fora, respectively, if at all.

It is worth noting that there are particularly strong grounds for transferring venue in this class action. Although the named class plaintiffs — or their California-based counsel — apparently prefer to litigate their claims outside of their home state, there is no reason to think that any other class members would, should a class be certified. Out-of-state litigation will impose obvious and substantial burdens on those class members. As noted, in the event that a settlement is reached, this Court would need to hold a fairness hearing to ensure that the settlement meets the requirements stated in the Class Action Fairness Act. 28 U.S.C. § 1712(e). To the extent any class members believe that the settlement is unfair, they will need to travel to California to vindicate their rights and/or procure out-of-state counsel. Venue should be transferred to the home jurisdictions of class members to avoid this problem.

## II.   PLAINTIFFS' CALIFORNIA STATUTORY CLAIMS MUST BE DISMISSED.

Even if the Court were to proceed, it would have to do so without plaintiffs' California statutory claims. Just as there is no basis for bringing CenturyTel and Embarq into a California court, there is no basis for subjecting CenturyTel and Embarq to California law. Neither California law nor the Due Process Clause permits such extraterritorial application of state power. Further, even if California law could apply here, plaintiffs' claims would fail because plaintiffs have failed to state a claim.

### A.   California and Federal Law Prevent the Application of California Law to the Non-California Activities of a Non-California Company Affecting Only Non-California Residents.

There is no basis for subjecting CenturyTel and Embarq to the California laws invoked here. CenturyTel is a Louisiana-based company accused by a Montana resident of taking certain actions in Montana; Embarq is a Kansas-based company, and it is accused by Kansas plaintiffs of

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

**NOT. OF MOT AND MEM. ISO MOT. TO
DISMISS OF CENTURYTEL AND EMBARQ**      - 14 -
Case No. CV-08-5113 (TEH)

23981\1855191.1

1   taking certain actions in Kansas.  Neither California law nor the Due Process Clause permits

2   plaintiffs to apply the laws of California to these activities and parties.

3          First, there is a basic presumption that a state's laws do not apply beyond its borders.  That

4   is a simple requirement of a multi-jurisdictional federal system; a state's laws are "presumptively

5   territorial and confined to limits over which the law-making power has jurisdiction." *Sandberg v.*

6   *McDonald*, 248 U.S. 185, 195 (1918).  Under that well-established principle, state laws are not to

7   be given extraterritorial effect.  *See, e.g.*, *N. Alaska Salmon Co. v. Pillsbury*, 174 Cal. 1, 4 (1916);

8

9   *Norwest Mortgage, Inc. v. Superior Court*, 72 Cal. App. 4th 214, 222-23 (4th Dist. 1999).

10  Although this test may present some difficult cases, where both the offending conduct and the

11  resulting harm occurred beyond California's borders, courts apply the presumption against

12  extraterritorial effects.  *See Diamond Multimedia Sys., Inc. v. Superior Court*, 19 Cal. 4th 1036,

13  1059 n.20 (1999).  California courts will not apply their state's law in those circumstances "unless

14  a contrary intention is clearly expressed or reasonably can be inferred from the language or

15  purpose of the statute." *Norwest*, 72 Cal. App. 4th at 222.

16

17         Plaintiffs, none of whom reside in California, have not alleged that CenturyTel or Embarq

18  engaged in any activity in California, nor have they pointed to any harm that they suffered in

19  California.  The wrongful conduct that they allege to have been committed by these two

20  defendants all occurred, by plaintiffs' own admission, at the CenturyTel and Embarq facilities in

21  Montana and Kansas.  *See* Compl. ¶ 60 (alleging that the defendants cooperated with NebuAd to

22  install the "hardware interception device directly into the data hub of the ISP"); *see also* Compl.

23  ¶¶ 90-95 (identifying locations of hubs involved).  The only activities that allegedly occurred in

24  California were NebuAd's.  *See* Compl. ¶¶ 75-78 (alleging that the NebuAd devices "collected

25

26

27

28

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

**NOT. OF MOT AND MEM. ISO MOT. TO
DISMISS OF CENTURYTEL AND EMBARQ**           - 15 -                                      23981\1855191.1
Case No. CV-08-5113 (TEH)

and transmitted" data to the NebuAd center in California, where "NebuAd analyzed the content of the traffic").[6]

Similarly, as a matter of law, all of the harm that plaintiffs allege occurred outside of California. Privacy harms arise in the state of the purported victim. *See Kearney*, 39 Cal. 4th at 120 n.12 (noting that the recording in Georgia, by a Georgia resident, of a conversation with a California resident without the Californian's consent "constitutes an invasion of privacy *within* California"); *see also Pearce*, 664 F. Supp. at 1499 ("Invasion of privacy is a personal injury—an injury to feelings. . . . Clearly, an injury to one's feelings can only occur where the plaintiff is located at the time of the impact of the privacy invasion."). Because all of the named plaintiffs are citizens and residents of other states, communicating through their non-California service providers, Compl. ¶ 9, the alleged harms occurred in those other states. Neither the activities alleged against CenturyTel and Embarq nor the harms those activities allegedly caused occurred in California. The presumption against extraterritorial effects therefore applies.

Nothing in the particular state laws that plaintiffs have invoked overcomes the presumption against applying California law. If anything, there are only additional reasons *not* to apply it. First, both of the statutes at issue — the California Invasion of Privacy Act and the Computer Crime Law — expressly state that they are limited to offenses against Californians. In the Computer Crime Law, the California legislature explained in its statement of intent that the law was necessary to protect "individuals as well as … others *within this state*." Cal. Penal Code § 502(a) (emphasis added). The Privacy Act is doubly clear: Its statement of intent emphasizes that the Act was "intend[ed] to protect the right of privacy of the people *of this state*," Cal. Penal

---

[6] That the California statutes do not apply extraterritorially dooms plaintiffs' state-law conspiracy and aiding and abetting claims, too. Secondary liability may not be based solely on extraterritorial conduct under laws that lack extraterritorial effect. *See Standfacts Credit Servs., Inc. v. Experian Info. Solutions, Inc.*, 405 F. Supp. 2d 1141, 1148 (C.D. Cal. 2005), *aff'd*, 294 F. App'x 271 (9th Cir. 2008).

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

**NOT. OF MOT AND MEM. ISO MOT. TO
DISMISS OF CENTURYTEL AND EMBARQ**      - 16 -      23981\1855191.1
Case No. CV-08-5113 (TEH)

1   Code § 630 (emphasis added), and the statute's plain terms limit its application to wiretaps or the

2   unauthorized reading of communications "in this state." Cal. Penal Code § 631(a); *see also*

3   *Kearney*, 39 Cal. 4th at 119-20 ("[T]he principal purpose of section 632 [of the Privacy Act] is to

4   protect the privacy of confidential communications of California residents *while they are in*

5   *California*.") (emphasis added). Courts inside and outside California have recognized that such

6   clear statements bar these statutes' use by out-of-state plaintiffs. *See, e.g.*, *Campbell v. Arco*

7   *Marine, Inc.*, 42 Cal. App. 4th 1850, 1860 (2d Dist. 1996) ("[S]tatements that the law was enacted

8   for the benefit of the citizenry of this state is persuasive indication of the Legislature's intent

9   concerning the applicability of the FEHA."); *see also Locke v. Aston*, 814 N.Y.S.2d 38, 41-42

10  (App. Div. 2006) (relying on Section 630 to hold that the California Privacy Act does not provide

11  a cause of action for a New York resident whose calls were recorded while he was in New York).

12  Far from overcoming the presumption of extraterritoriality, every additional piece of evidence

13  confirms that the laws in question do not reach conduct outside California, by non-Californians,

14  that allegedly injures non-California residents.

15        Any interpretation of these laws that would *permit* their application to the activities

16  alleged would raise serious federal constitutional concerns. Even apart from any state-law

17  presumption against extraterritoriality, it is well established that the Due Process Clause and

18  Commerce Clause place significant limits on California's ability to regulate a Louisiana or

19  Kansas company's out-of-state activities with respect to out-of-state residents. For a state to

20  regulate conduct beyond its borders, the state must establish "a significant contact or significant

21  aggregation of contacts, creating state interests, such that [application] of its law is neither

22  arbitrary nor fundamentally unfair." *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 313 (1981).

23        Three key factors doom any effort to expand California's reach to touch the non-

24  California defendants' relationship with their non-California customers. First, California's

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

**NOT. OF MOT AND MEM. ISO MOT. TO
DISMISS OF CENTURYTEL AND EMBARQ**       - 17 -
Case No. CV-08-5113 (TEH)

23981\1855191.1

interest in regulating the actions of CenturyTel and Embarq with respect to out-of-state customers is extraordinarily weak. *Edgar*, 457 U.S. at 644 (recognizing that a state "has no legitimate interest in protecting nonresident shareholders"). Second, the Supreme Court has recognized that "an important element" in the due process analysis "is the expectation of the parties." *Phillips Petro. Co. v. Shutts*, 472 U.S. 797, 822 (1985). Plaintiffs have not alleged, and could not allege, any basis on which CenturyTel and Embarq could have expected to be subjected to California laws when they agreed to provide internet service to Montanans or Kansans. Finally, comity and state sovereignty forbid states from trying to regulate activities of others. As the Supreme Court put it, the Due Process Clause and Commerce Clause dictate "that a State may not impose economic sanctions on violators of its laws with the intent of changing the tortfeasors' lawful conduct in other states." *Gore*, 517 U.S. at 572. Indeed, this is precisely the class of case that the California Supreme Court has advised is *not* be subject to California law: one "in which California would be applying its law in order to alter a defendant's conduct in another state vis-à-vis another state's residents." *Kearney*, 39 Cal. 4th at 104. The California claims must be dismissed.

### B.   Plaintiffs Have Failed To State a Claim for Any of the California Statutes They Invoke.

Even if California law did apply, the California claims would have to be dismissed regardless. Count IV of the Complaint alleges a violation of Section 631 of the California Invasion of Privacy Act (the "Privacy Act"), which applies to any person who "taps, or makes any unauthorized connection, . . . with any telegraph or telephone wire, line, cable or instrument." Cal. Penal Code § 631(a). However, unlike the federal Wiretap Act, the California Privacy Act has not been amended to cover non-telephonic communications. By its plain terms, Section 631 is limited to communications carried over "any *telegraph or telephone* wire, line, cable, or instrument." Cal. Penal Code § 631(a) (emphasis added); *see also People v. Ratekin*, 212 Cal.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

**NOT. OF MOT AND MEM. ISO MOT. TO
DISMISS OF CENTURYTEL AND EMBARQ**                - 18 -                          23981\1855191.1
Case No. CV-08-5113 (TEH)

App. 3d 1165, 1168 (4th Dist. 1989) ("In order to violate section 631 it is necessary that the intercepted communication be carried over '[]telegraph or telephone wire, line, cable, or instrument.'") (quoting Cal. Penal Code § 631(a)).  It is clear from the first mention of "wire, line, [or] cable" that the legislature intended to restrict the scope of Section 631 to telegraph or telephone communications.  *See Nat'l Indem. Co. v. Garamendi*, 233 Cal. App. 3d 392, 406 (2d Dist. 1991) (relying on an express limitation in another section of a statute to construe a disputed term similarly, "even if the limitation is not expressly stated" a second time).  Indeed, it appears that no California court has ever applied Section 631 to email or other computer communications.  This Court should not extend the statute where California courts and the California legislature have not, particularly when doing so would drastically expand the statute's criminal application.  *Tos v. Mayfair Packing Co.*, 160 Cal. App. 3d 67, 80 (5th Dist. 1984) ("When a statute is penal, principles governing construction of penal statutes apply even when the underlying action is civil in nature.").

Plaintiffs' California Computer Crimes Act claim fails, too.  Although it proscribes various kinds of conduct, that law — like the federal CFAA on which it is modeled — provides a civil cause of action only for one "who suffers damage or loss" as a result of a violation.  Cal. Penal Code § 502(e).  There is no California case law interpreting that requirement, but it is clear that the "loss or damage" requirement must be interpreted like the parallel federal provision.  Prior to 2000, the private cause of action was available to anyone whose computer was attacked in violation of the law's substantive provisions.  In 2000, however, the legislature amended the right of action to track the CFAA, inserting the requirement that a plaintiff have "suffer[ed] damage or loss."  *See* Stats. 2000, ch. 635 § 2.  As discussed in the accompanying briefs of the other Defendant ISPs, *see, e.g.*, Cable One Br. at 19-20, the federal law's "damage or loss" restriction has consistently been interpreted to exclude privacy-related harms and require actual

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

**NOT. OF MOT AND MEM. ISO MOT. TO
DISMISS OF CENTURYTEL AND EMBARQ**   - 19 -
Case No. CV-08-5113 (TEH)

23981\1855191.1

economic expenditure.  There is no reason to think that California, which amended its prior act to

incorporate this language, would interpret its law any differently.[7]

### III.   PLAINTIFFS HAVE ALLEGED WRONGDOING BY NEBUAD, NOT CENTURYTEL OR EMBARQ, WHO CANNOT BE LIABLE FOR NEBUAD'S ALLEGED VIOLATIONS OF FEDERAL PRIVACY LAWS.

In Counts I, III, V, and VI, plaintiffs allege that CenturyTel and Embarq directly violated,

aided and abetted violations of, and conspired to violate ECPA and the CFAA.  Plaintiffs do not,

however, allege facts that would permit a finding of direct liability based on actions taken by

CenturyTel and Embarq.  Rather, plaintiffs allege only that CenturyTel and Embarq agreed to

allow allegedly illegal acts by NebuAd.  Plaintiffs, in effect, seek to hold CenturyTel and Embarq

liable for NebuAd's alleged violations of federal law.  None of the federal privacy statutes

provide for such indirect liability, and under established Supreme Court and Ninth Circuit

precedent, plaintiffs cannot expand these statutes to make CenturyTel and Embarq responsible for

NebuAd's actions under "aiding and abetting" or "conspiracy" theories.

### A.   Plaintiffs Have Not Alleged Acts by CenturyTel or Embarq that Directly Violate Federal Privacy Laws.

Plaintiffs' complaint is very clear that it was NebuAd, not CenturyTel or Embarq, who

engaged in the activities plaintiffs challenge.  Their complaint is replete with allegations about

what NebuAd allegedly did and how NebuAd did it.  Plaintiffs allege, for example, that "NebuAd

obtained its data by tapping directly into the consumer's ISP connection" and that "NebuAd

placed a hardware interception device directly into the data hub of the ISP."  Compl. ¶ 60.  They

claim that "NebuAd advertising hardware monitors, intercepts, and then modifies the contents of

internet packets."  Compl. ¶ 68 (emphasis omitted); *see id.* ¶ 70 ("NebuAd intercepted, modified,

and altered the contents of the Internet packets . . . ").  Plaintiffs state that all of the storage,

---

[7] Because plaintiffs have failed to establish any underlying violations of state law, plaintiffs' claims based on secondary liability — aiding and abetting and conspiracy — fail, too.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

**NOT. OF MOT AND MEM. ISO MOT. TO DISMISS OF CENTURYTEL AND EMBARQ**
Case No. CV-08-5113 (TEH)

- 20 -

23981\1855191.1

analysis, and use of the data that they allege — "[a]ll of the activities complained of herein" — "took place by and through NebuAd's headquarters."  Compl. ¶ 77; *see also id.* ¶¶ 76, 78.

By contrast, the complaint is nearly silent concerning actions allegedly taken by CenturyTel and Embarq.  Indeed, the most that plaintiffs allege regarding activities by CenturyTel and Embarq is that they "permitted" the interception, Compl. ¶ 104, and "gained profit" from it, Compl. ¶¶ 77, 79, not that they  actually engaged in an interception.  Apart from conclusory allegations that the "[d]efendants" violated various provisions of federal privacy laws,[8] Compl. ¶¶ 116-118, there is no factual allegation that CenturyTel and Embarq did much of anything — and certainly nothing that would violate ECPA or the CFAA.

These allegations do not state claims that CenturyTel or Embarq themselves illegally intercepted plaintiffs' communications.  Indeed, courts consistently reject the argument that a service provider "intercepts" a communication by letting some third party act on the service provider's network.  In *PBA Local No. 38 v. Woodbridge Police Department*, 832 F. Supp. 808 (D.N.J. 1993), for example, a federal district court rejected efforts to hold a phone company liable under the Wiretap Act for installing, at another's request, a device that enabled the other party to intercept communications.  Whatever the phone company had done, it had not intercepted any calls itself:  "All NJB did was install, and perhaps maintain or service, a 'call director' in the Director's office.  This does not amount to 'interception' or procuring another to intercept."  *Id.* at 832; *see also Reynolds v. Spears*, 93 F.3d 428, 432-33 (8th Cir. 1996) (refusing to hold wife liable for interception conducted by husband with wife's knowledge and to further their common objective).

---

[8] "The Court need not accept a conclusory allegation that conduct alleged in the complaint constituted an interception under the Wiretap Act."  *Crowley v. CyberSource Corp.*, 166 F. Supp. 2d 1263, 1268 (N.D. Cal. 2001).

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

**NOT. OF MOT AND MEM. ISO MOT. TO
DISMISS OF CENTURYTEL AND EMBARQ**
Case No. CV-08-5113 (TEH)

- 21 -

23981\1855191.1

**B.    CenturyTel and Embarq Cannot Be Sued for Allegedly Aiding and Abetting Violations by, or Conspiring With, NebuAd.**

Given the paucity of factual allegations concerning CenturyTel and Embarq, plaintiffs can succeed against these defendants only if they can hold them liable for NebuAd's wrongdoing. They cannot, however, because there is no federal statute that creates civil conspiracy or aiding and abetting liability, and nothing in these particular statutes expands their scope to capture such secondary claims.

As explained in *Central Bank of Denver, N.A. v. First Interstate Bank of Denver*, 511 U.S. 164, 182 (1994), "Congress … has taken a statute-by-statute approach" to civil secondary liability. That is, rather than applying a common rule to all cases potentially involving civil secondary liability, it is necessary to examine the particular statute at issue rigorously and determine whether Congress intended to create a private cause of action against those who aid and abet or conspire to commit that offense. *See id.* ("[T]here is no general presumption that the plaintiff may also sue aiders and abettors."). "When 'a statute is precise about who … can be liable' courts should not implicitly read secondary liability into the statute." *Freeman v. DirecTV, Inc.*, 457 F.3d 1001, 1006 (9th Cir. 2006) (quoting *Doe v. GTE Corp.*, 347 F.3d 655, 659 (7th Cir. 2003)). As the *Central Bank* Court explained, "Congress knew how to impose aiding and abetting liability when it chose to do so." 511 U.S. at 176 (rejecting secondary liability under Section 10b of the 1934 Securities Act).

The analysis thus begins with the terms of the statute, which indisputably "control the definition of conduct covered." *Central Bank*, 511 U.S. at 175. In assessing whether Congress intended to authorize suits based on secondary liability, it should be noted that Congress has regularly done so by including the words "aid" and "abet" in the text, *see id.* at 176; accordingly, there must be some affirmative indication that Congress intended to cover "persons who do not engage in the proscribed activities at all, but who give a degree of aid to those who do." *Id.*

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

**NOT. OF MOT AND MEM. ISO MOT. TO
DISMISS OF CENTURYTEL AND EMBARQ**          - 22 -
Case No. CV-08-5113 (TEH)

23981\1855191.1

When there is no indication of such expansive liability, as when the statute narrowly identifies the individuals against whom Congress intended to create liability, then courts are not to create a conspiracy or aiding and abetting cause of action where Congress did not. *See id.* at 179-80. As the Eleventh Circuit put it in concluding that Congress did not create secondary liability under the Age Discrimination in Employment Act, in which "liability is limited to 'employers,'"

> [a]llowing a state-law conspiracy claim in an ADEA case would permit plaintiffs to make an "end run" around this federal statutory structure for age discrimination suits. Such evasion would surely frustrate congressional intent. We therefore hold that the enforcement of rights secured through the ADEA must be pursued in the manner specified in the ADEA.

*Nance v. Maxwell Fed. Credit Union (MAX)*, 186 F.3d 1338, 1342 (11th Cir. 1999). When Congress particularly identifies those it intends to be held civilly liable, courts cannot frustrate that intent.

In each of the federal statutes at issue here, Congress clearly identified a narrow, specific class of wrongdoers it intended to be held liable. None of the statutes permits secondary liability. With respect to the sections of ECPA addressing the access and use of stored communications (the Stored Communications Act or "SCA"), the Ninth Circuit has directly rejected an effort to impute aiding and abetting and conspiracy liability under Section 2702. *See Freeman*, 457 F.3d at 1004-09. The court there followed *Central Bank* precisely, looking for indications of how broadly Congress intended to extend the private right of action — 18 U.S.C. § 2707, which creates the right of action for all SCA claims — that plaintiffs invoke here. Concluding that there was "no textual support for [the] contention that Congress explicitly provided for aiding and abetting or conspiracy claims," *Freeman*, 457 F.3d at 1005, the Court could find nothing in the SCA's structure that suggested any intention to impose liability on those who were not enumerated in the statute. To the contrary, the Ninth Circuit ruled that the SCA "impose[s] civil liability on a defined group for specific conduct." *Id.* Indeed, Section 2702 — and Section 2701,

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

**NOT. OF MOT AND MEM. ISO MOT. TO
DISMISS OF CENTURYTEL AND EMBARQ**
Case No. CV-08-5113 (TEH)

- 23 -

23981\1855191.1

which was not directly at issue in *Freeman* but for which the analysis is identical — precisely

identifies the conduct that the statute seeks to outlaw.  *See* 18 U.S.C. § 2701(a) (providing

liability for those who, among others, intentionally access, without authorization, an electronic

communications facility and obtain, alter, or prevent access to a stored communication).  Unlike

statutes that impose liability on anyone who was "involved" in particular wrongdoing, or that

require courts to define the contours of that liability using aiding and abetting or conspiracy

theories, Congress itself defined those contours in the SCA.  *Freeman*, 457 F.3d at 1008

(comparing SCA to anti-terrorism statute that imposes consequences on anyone "involve[d]" in

particular activities).  Plaintiffs' secondary liability claims under the SCA must be dismissed.

Similarly, with respect to the sections of ECPA addressing communications that were

intercepted while in transit over a carrier's network, 18 U.S.C. § 2510 *et seq*. ("the Wiretap Act"),

the Seventh Circuit explained in a Wiretap Act case (on which the Ninth Circuit relied in reaching

the same conclusion with respect to the SCA), Congress did not provide for aiding and abetting or

conspiracy liability.  *See Doe v. GTE Corp.*, 347 F.3d 655, 658 (7th Cir. 2003) ("nothing in the

statute condemns assistants, as opposed to those who directly perpetrate the act"); *see also*

*Freeman*, 457 F.3d at 1006 (relying on *Doe*).  Recognizing the Wiretap Act's specific imposition

of civil liability on those who intercept electronic communications or use or disclose such

intercepted communications, the Seventh Circuit concluded that "[a] statute that is this precise

about who, other than the primary interceptor, can be liable, should not be read to create a

penumbra of additional but unspecified liability."  *Doe*, 347 F.3d at 659.

Confirming this conclusion, courts have rejected the suggestion that secondary civil

liability can be imposed on one who *procures* another to intercept a communication.  Although

the Wiretap Act imposes *criminal* liability for "procur[ing]" interceptions, 18 U.S.C. §

2511(1)(a), the section which creates a private *civil* cause of action, 18 U.S.C. § 2520(a), does

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

**NOT. OF MOT AND MEM. ISO MOT. TO
DISMISS OF CENTURYTEL AND EMBARQ**
Case No. CV-08-5113 (TEH)

- 24 -

23981\1855191.1

not.  Courts thus do not permit civil suits against those who procure interceptions.  *E.g.*, *Perkins-Carrillo v. Systemax, Inc.*, No. 1:03CV2836-TW, 2006 WL 1553957, at *15 (N.D. Ga. May 26, 2006); *In re Toys R Us, Inc. Privacy Litig.*, No. 00-CV-2746, 2001 WL 34517252, at *6-7 (N.D. Cal. Oct. 9, 2001).  If the statute does not permit liability for procuring an interception, logically there cannot be liability when two entities enter into an agreement (or conspiracy) that one will intercept communications.  The Wiretap Act is thus just the kind of statute that *Central Bank* envisioned:  one in which Congress clearly defined who was liable and gave no indication that courts should expand it.  The direct and secondary liability claims must be dismissed with respect to the Wiretap Act, just as with the SCA.

Finally, the Computer Fraud & Abuse Act is perhaps the most clearly limited of all. While the statute *does* provide for conspiracy liability in certain circumstances, that liability is expressly limited in two ways that make it inapplicable in this case.  First, the CFAA did not include any conspiracy provisions until September 2008, when Congress amended Section 1030(b) of the statute to impose conspiracy liability. Pub. L. No. 110-326, Title II, § 206, 122 Stat. 3560, 3563 (2008).  That amendment cannot apply retroactively to punish CenturyTel or Embarq for alleged activities that were legal when conducted.  *See Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 37-38 (2006).  Second, however, even if Congress had intended its new conspiracy provision to apply retroactively, it created conspiracy liability only for *criminal* cases. The amended Section 1030(b) provides *criminal* punishments for "[w]hoever conspires to commit or attempts to commit an offense" under it.  18 U.S.C. § 1030(b).  In contrast, Congress provided only for "a civil action *against the violator*."  18 U.S.C. § 1030(g) (emphasis added).  The contrast could not be more plain, and there is no reason to think that the different treatment is anything but purposeful.  *See Bates v. United States*, 522 U.S. 23, 29-30 (1997) (requiring courts to interpret different language differently).  Courts consistently recognize that the CFAA provides

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

**NOT. OF MOT AND MEM. ISO MOT. TO
DISMISS OF CENTURYTEL AND EMBARQ**
Case No. CV-08-5113 (TEH)

- 25 -

23981\1855191.1

no basis for broadening the civil liability that Congress kept narrow.  *See, e.g.*, *Doe v. Dartmouth-Hitchcock Med. Ctr.*, No. Civ. 00-100-M, 2001 WL 873063, at *5 (D.N.H. July 19, 2001) ("[T]he CFAA …. creates only a limited private right of action 'against the violator.'") (citation omitted); *Garland-Sash v. Lewis*, No. 05 Civ. 6827, 2007 WL 935013, at *4 (S.D.N.Y. Mar. 26, 2007).[9]

Unable to allege any unlawful actions by CenturyTel or Embarq, and unable to hold them liable for NebuAd's alleged wrongdoing, plaintiffs have failed to state claims against CenturyTel and Embarq under ECPA or the CFAA.  Accordingly, their federal claims — both those premised on direct violations and those premised on secondary liability — against CenturyTel and Embarq must be dismissed.

## IV.   PLAINTIFFS HAVE FAILED TO STATE A CLAIM FOR UNJUST ENRICHMENT.

Although plaintiffs do not specify which state's law they hope to apply for their unjust enrichment claim, Compl. ¶¶ 174-178, in the end that will make no difference in this motion's outcome.  The unjust enrichment claim fails under the law of any of the states in question.  Were California law to apply — which it clearly cannot, for all the reasons stated above — the resolution is simple:  "[T]here is no cause of action in California for unjust enrichment." *Melchior v. New Line Prods., Inc.*, 106 Cal. App. 4th 779, 793 (2d Dist. 2003); *see also, e.g.*, *In re Late Fee & Over-Limit Fee Litig.*, 528 F. Supp. 2d 953, 966-67 (N.D. Cal. 2007) (dismissing unjust enrichment claim as not valid under California law); *Enreach Tech., Inc. v. Embedded Internet Solutions, Inc.*, 403 F. Supp. 2d 968, 976 (N.D. Cal. 2005) (same).

Applying the laws that CenturyTel, Embarq and their customers agreed would apply, *see Brazil v. Dell, Inc.*, 585 F. Supp. 2d 1158, 1162 (N.D. Cal. 2008) (recognizing that California

---

[9] Also, as explained in the briefs of Cable One and Bresnan Communications, which CenturyTel and Embarq expressly incorporate herein, a CFAA claim lies only when the conduct at issue caused economic losses aggregating to $5,000 or more.  Plaintiffs do not meet that standard.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

**NOT. OF MOT AND MEM. ISO MOT. TO
DISMISS OF CENTURYTEL AND EMBARQ**          - 26 -
Case No. CV-08-5113 (TEH)

23981\1855191.1

applies no presumption against contractual choice-of-law provisions), the unjust enrichment claim fares no better. Under Kansas law, which governs the Kansas-based Embarq's relationship with the Kansas-based customers who are plaintiffs here, Huber Decl. ¶ 10; Compl. ¶¶ 26-27, 34, an unjust enrichment claim requires plaintiffs to show that defendants reaped rewards *at the expense of* plaintiffs. As the Kansas Supreme Court explained, unjust enrichment has its roots in "the older doctrine of quasi-contracts," and is based on "a promise implied in law that one will restore to the person entitled thereto that which in equity and good conscience belongs to him [or her]." *Haz-Mat Response, Inc. v. Certified Waste Servs. Ltd.*, 910 P.2d 839, 846 (Kan. 1996) (quotation marks omitted; alteration in original). The paradigmatic case is one in which a plaintiff has provided some labor to the defendant, and the defendant gladly accepts it in a way that leads the plaintiff to understand he or she will be compensated for providing it. *See, e.g.*, *In re Marriage of Wageman*, 968 P.2d 1114, 1119 (Kan. Ct. App. 1998). The key to an unjust enrichment claim is that the plaintiff is *out something*: the defendant's enrichment comes "at the expense of another" such that the plaintiff must be "restore[d]," *Haz-Mat Response*, 910 P.2d at 847, and that the defendant must give back to the plaintiff "that which in equity and good conscience belongs to him." *Sec. Ben. Life Ins. Corp. v. Fleming Cos.*, 908 P.2d 1315, 1323 (Kan. Ct. App. 1995) (quotation marks omitted).

The conclusion is the same for CenturyTel, applying the Louisiana law that governs claims arising out of CenturyTel's provision of service to its users.[10] Mangum Decl. ¶ 13. To

---

[10] Were the Court to ignore the parties' choice-of-law provision and apply the law of Montana, where the plaintiffs reside, Compl. ¶ 28, the analysis would mirror the Embarq analysis under Kansas law. Montana's law, like Kansas's, requires that the enrichment come "at the expense of another" or must "belong to another." *Lawrence v. Clepper*, 865 P.2d 1150, 1156 (Mont. 1993). Because the ad revenue was not owed to plaintiffs, they have no unjust enrichment claim against the ISPs. *See Randolph V. Peterson, Inc. v. J.R. Simplot Co.*, 778 P.2d 879, 883-84 (Mont. 1989) (rejecting claim that defendant was unjustly enriched for failing to pay plaintiff a commission, because "[n]o commission was due"); *Mont. Pet. Tank Release Comp. Bd. v. Capitol Indemnity*

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

state an unjust enrichment claim in Louisiana, not only must there be an enrichment, but "there

must be an impoverishment," *Estate of Walker v. Peters*, 989 So. 2d 241, 246 (La. Ct. App.

2008), which the law defines in purely economic terms: "[O]ne is impoverished when assets are

diminished, a justified expectation of gain is prevented, or liabilities increased." *Munro v.

Carstensen*, 945 So. 2d 961, 966 (La. Ct. App. 2006); *see also, e.g.*, *Bd. of Supervisors of La.

State Univ. v. La. Agricultural Finance Auth.*, 984 So. 2d 72, 81 (La. Ct. App. 2008) (requiring

economic detriment).

Plaintiffs here simply cannot and did not claim that they suffered any such

impoverishment. Whatever revenue CenturyTel and Embarq derived from their role in delivering

relevant ads, Compl. ¶ 77, it did not diminish plaintiffs' assets, increase their liabilities, or deny

them revenue they would have expected: Ad revenue does not belong to the one who views the

ads, but to those who deliver the ads. While alleging that CenturyTel and Embarq were

compensated for their role in ensuring that advertisements that their users saw on websites were

more tailored to user interests, plaintiffs here have made no allegation that the revenue defendants

received came at plaintiffs' expense, left the plaintiffs needing to be restored, or in any way

belonged to plaintiffs. To the contrary, taking plaintiffs' allegations as true, plaintiffs show that

this revenue was like advertising revenue in any other model. It is beyond dispute that in

traditional print advertising, for example, a newspaper or magazine will promote the demographic

details of its audience to potential advertisers, the advertisers will pay the newspaper or magazine

for delivering the ad to subscribers, and the subscriber has (hopefully) relevant ads. *See* Compl. ¶

46. Except inasmuch as the newspaper's advertising revenue helped keep subscription costs

down, in no sense did the ad revenue belong to the subscriber, even though it was placed using

---

*Co.*, 137 P.3d 522, 529 (Mont. 2006) ("One cannot be unjustly enriched by failing to pay a debt
one does not owe.").

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

1   demographic information about him or her.  Earlier versions of online advertising were similar:

2   "Commercial websites, known as 'publishers' allow portions of their web page to be sold to

3   online advertising networks, which act as an intermediary between 'publishers' and the

4   'advertisers.'"  Compl. ¶ 47.  The publishers collect data about their users and are paid by

5   advertisers for delivering the ads to the end-user.  Compl. ¶¶ 47-49.

6

7       For unjust enrichment purposes, that context is dispositive.  Plaintiffs do not, and cannot,

8   claim that the revenue that these defendants received for delivering relevant advertisements to

9   users belonged, in any way, to the users.  Advertising revenue has never gone to the end-user; it

10  goes to those involved in delivering the advertising.  Thus, because plaintiffs have not alleged that

11  CenturyTel or Embarq accepted any benefit that belonged to plaintiffs, their unjust enrichment

12  claim fails.

13                                    **CONCLUSION**

14      For the foregoing reasons, plaintiffs' claims against CenturyTel and Embarq must be

15  dismissed in their entirety.

16

17

18  DATED:  January 30, 2009.                    Respectfully submitted,

19                                                FARELLA BRAUN + MARTEL LLP

20

21                                                By: _____
                                                           /s/
22                                                      C. Brandon Wisoff

23                                                   David A. Handzo
                                                   JENNER & BLOCK LLP
24
                                                   Attorneys for Defendants
25                                                 CENTURYTEL and EMBARQ

26

27

28

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

**NOT. OF MOT AND MEM. ISO MOT. TO
DISMISS OF CENTURYTEL AND EMBARQ**
Case No. CV-08-5113 (TEH)                    - 29 -                    23981\1855191.1