1  DAVID T. BIDERMAN, Bar No. 101577
      dbiderman@perkinscoie.com
2  TROY P. SAURO, Bar No. 224097
      tsauro@perkinscoie.com
3  PERKINS COIE LLP
   Four Embarcadero Center, Suite 2400
4  San Francisco, CA  94111-4131
   Telephone: 415.344.7000
5  Facsimile: 415.344.7050

6  Attorneys for Defendant
   Knology, Inc. and WideOpen West Finance, LLC
7

8              UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10             SAN FRANCISCO DIVISION

11

| | |
|---|---|
| 12  DAN VALENTINE, DALE<br>MORTENSEN, MELISSA BECKER,<br>13  SAMUEL GREEN, SHERRON<br>RIMPSEY, CHARLOTTE MIRANDA,<br>14  FRANK MIRANDA, SAUL DERMER,<br>WAYNE COPELAND, CRYSTAL REID,<br>15  ANDREW PAUL MANARD,<br>KATHLEEN KIRCH, TERRY KIRCH,<br>16  NEIL DEERING, PAUL DRISCOLL,<br>individuals, on behalf of themselves and all<br>17  others similarly situated,<br><br>18              Plaintiff,<br><br>19      v.<br><br>20  NEBUAD, INC., a Delaware Corporation;<br>BRESNAN COMMUNICATIONS, a New<br>21  York Corporation; CABLE ONE, a<br>Delaware Corporation; CENTURYTEL, a<br>22  Texas Corporation; EMBARQ, a Delaware<br>Corporation; KNOLOGY, a Delaware<br>23  Corporation; WOW!, a Delaware<br>Corporation; AND JOHN DOES 1-20,<br>24  corporations Defendants,<br><br>25              Defendants. | Case No. CV-08-5113 (TEH)<br><br>DEFENDANTS KNOLOGY AND WOW'S<br>NOTICE OF MOTION AND MOTION TO<br>DISMISS; SUPPORTING MEMORANDUM<br>OF POINTS AND AUTHORITIES<br><br>**(Fed. R. Civ. P. 12(b)(2), (6))**<br><br>Date:       March 9, 2009<br>Time:      10:00 a.m.<br>Judge:    The Hon. Thelton E. Henderson |

26

27

28

69990-0001/LEGAL15199640.5

1

## NOTICE OF MOTION AND MOTION

2

TO THE PARTIES AND THEIR ATTORNEYS OF RECORD:

3

   PLEASE TAKE NOTICE that, on Monday March 9, 2009, at 10:00 a.m., or as soon

4

thereafter as the matter may be heard before the Hon. Thelton E. Henderson, United States

5

District Judge, Courtroom 12, 19th Floor, of the United States District Court for the Northern

6

District of California, San Francisco Division, 450 Golden Gate Avenue, San Francisco,

7

California, Defendants Knology, Inc. ("Knology") and WideOpen West Finance, LLC ("WOW"),

8

shall and hereby do move the Court for an order dismissing the Complaint of Plaintiffs Dan

9

Valentine, Dale Mortensen, Melissa Becker, Samuel Green, Sherron Rimpsey, Charlotte Miranda,

10

Frank Miranda, Saul Dermer, Wayne Copeland, Crystal Reid, Andrew Paul Menard, Kathleen

11

Kirch, Terry Kirch, Neil Deering, Paul Driscoll as individuals on behalf of themselves and all

12

others similarly situated on the grounds that, under Federal Rule of Civil Procedure ("FRCP")

13

Rule 12(b)(2), this Court lacks personal jurisdiction over each and every claim against Knology

14

and WOW; and on the grounds that: (1) under FRCP Rule 12(b)(6) Plaintiffs have failed to state

15

any claims upon which relief can be granted in Counts I, III, V, VI; and (2) under FRCP Rule

16

12(b)(6) Plaintiffs have failed to state any claims upon which relief can be granted in Counts II

17

and IV because Plaintiffs lack standing to bring those California state law claims; and (3) under

18

FRCP Rule 12(b)(6) Plaintiffs have failed to state a claim upon which relief can be granted in

19

Count VII because that cause of action does not exist here, as a matter of law.  The motion is

20

based upon this notice of motion and motion, the supporting memorandum of points and

21

authorities, the Declarations of Peter Smith and Bret T. McCants filed in support of the motion,

22

the complete files and records in this action, and such additional evidence and argument as may

23

hereinafter be presented.

24

## STATEMENT OF ISSUES

25

   1.   Whether this Court should dismiss all Counts pursuant to Federal Rule of Civil

26

Procedure 12(b)(2) because this court lacks personal jurisdiction to adjudicate the claims asserted

27

by out-of-state Plaintiffs against out-of-state Defendants Knology and WOW?

28

-1-
DEFENDANTS KNOLOGY AND WOW'S
NOTICE AND MOTION TO DISMISS
CV-08-5113 (TEH)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

2.      Whether this Court should dismiss Counts I, III, V and VI, under FRCP Rule 12(b)(6) for failure to state claims upon which relief can be granted, because Plaintiffs have failed to state claims for violation of the Electronic Communications Privacy Act and the Computer Fraud and Abuse Act and because claims for aiding and abetting and civil conspiracy to violate those laws do not exist, as a matter of law?

3.      Whether this Court should dismiss Counts II and IV under FRCP Rule 12(b)(6) for failure to state claims upon which relief can be granted, because non-California Plaintiffs lack standing to bring these claims under the California Computer Crime Law and California Invasion of Privacy Act?

4.      Whether this Court should dismiss Count VII under FRCP Rule 12(b)(6) for failure to state a claim upon which relief can be granted, because unjust enrichment is not a claim here, as a matter of law?

-2-

DEFENDANTS KNOLOGY AND WOW'S MEMO IN SUPP. MOTION TO DISMISS
CV-08-5113 (TEH)

1

**TABLE OF CONTENTS**

2  MEMORANDUM OF POINTS AND AUTHORITIES.................................................................1

3  BACKGROUND..................................................................................................................2

4  ARGUMENT ......................................................................................................................4

5  I.   THE COURT LACKS PERSONAL JURISDICTION OVER OUT-OF-STATE
      PLAINTIFFS' CLAIMS AGAINST OUT-OF-STATE DEFENDANTS
6     KNOLOGY AND WOW .............................................................................................4

7       A.   This Court Lacks General Personal Jurisdiction Over Knology And WOW.........4

8       B.   This Court Does Not Have Specific Personal Jurisdiction Over Knology or
             WOW Since Plaintiffs Have Failed To Meet Their Burden Of Proving
9            Knology's or WOW's Minimum Contacts With California .................................6

10           1.   The purposeful availment requirement is not met because Knology
                  and WOW have not directed conduct toward residents of
11                California..............................................................................................7

12           2.   The Claims Do Not Arise From Any Knology or WOW Activity
                  Within California...................................................................................9
13
             3.   Exercising Specific Personal Jurisdiction Over Knology And
14                WOW Would Not Be Reasonable In This Case.........................................9

15  II.  PLAINTIFFS HAVE FAILED TO ALLEGE VIOLATIONS OF FEDERAL
      PRIVACY LAWS OR LIABILITY FOR THOSE LAWS UNDER AIDING AND
16    ABETTING OR CONSPIRACY THEORIES .................................................................12

17      A.   The Plain Statutory Language and Cases Interpreting The Language of
             The Stored Communications Act Forbid Secondary Liability .............................15
18
        B.   The Plain Statutory Language and Cases Interpreting The Language of
19           The Wiretap Act Forbid Secondary Liability....................................................15

20      C.   The Plain Statutory Language and Cases Interpreting The Language of
             The Computer Fraud and Abuse Act Forbid Secondary Liability .......................16
21
22  III. KNOLOGY AND WOW ARE IMMUNE FROM ECPA LIABILITY AND
      PLAINTIFFS HAVE FAILED TO PLEAD SUFFICIENT DAMAGES FOR
      CFAA VIOLATIONS ...............................................................................................17
23
        A.   Even If The Court Finds Some Plausible Basis For Liability Against
24           Knology or WOW, Several Exceptions to ECPA Liability Would
             Immunize Them ...............................................................................................17
25
        B.   Plaintiffs Have Failed To Plead Requisite Damages And Intent Under
26           CFAA .............................................................................................................19

27  IV.  PLAINTIFFS LACK STANDING TO SUE UNDER CALIFORNIA'S
      INVASION OF PRIVACY ACT AND COMPUTER CRIME LAW .............................21
28

-i-          DEFENDANTS KNOLOGY AND WOW'S MEMO IN
SUPP. MOTION TO DISMISS
CV-08-5113 (TEH)

1

A.      Plaintiffs Lack Standing Under CIPA, Which Specifically Limits Standing
       To California Residents And Does Not Cover Electronic Communications ........22

2

B.      Plaintiffs Lack Standing Under The CCCL, Which Specifically Limits
       Standing To California Residents...........................................................................23

3

4

V.      PLAINTIFFS HAVE FAILED TO STATE A CLAIM FOR UNJUST
       ENRICHMENT ...................................................................................................................24

5

CONCLUSION ...............................................................................................................................25

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF AUTHORITIES**

2

3  **Cases**

4  *Ballard v. Savage,*
5    65 F.3d 1495 (9th Cir. 1995) ............................................................. 7

   *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.,*
6    223 F.3d 1082 (9th Cir. 2000) ................................................. 4, 5, 7, 9

7  *Bell Atlantic Corp. v. Twombly,*
     550 U.S. 544, 127 S. Ct. 1955 (2007) ...................................... 18, 21
8
   *BMW of N. America v. Gore,*
9    517 U.S. 559 (1996) ........................................................................ 10

10 *Brand v. Menlove Dodge,*
     796 F.2d 1070 (9th Cir. 1986) .......................................................... 5
11
   *Brazil v. Dell,*
12   2008 WL 2693629, at *2 (N.D. Cal. July 7, 2008) .......................... 24

13 *Butera & Andrews v. IBM Corp.,*
     456 F. Supp. 2d 104 (D.D.C. 2006) ................................................ 21
14
   *Calder v. Jones,*
15   465 U.S. 783 (1984) ..................................................................... 6, 8

16 *Central Bank of Denver, NA v. First Interstate Bank of Denver,*
     511 U.S 164 (1994) ............................................................. 13, 14, 15
17
   *Core-Vent Corp. v. Nobel Industries AB,*
18   11 F.3d 1482 (9th Cir. 1993) ........................................................... 10

19 *Cornelius v. Chaney,*
     16 Cal.3d 143, 147 (1976) ................................................................ 7
20
   *Crowley v. Cybersource Corp.,*
21   166 F. Supp. 2d 1263 (N.D. Cal. 2001) ........................................... 14

22 *Diamond Multimedia Sys., Inc. v. Superior Court,*
     968 P.2d 539 (1999) ........................................................................ 22
23
   *DirecTV, Inc. v. Benson,*
24   333 F. Supp. 2d 440 (M.D.N.C. Aug. 18, 2004) .............................. 16

25 *DirecTV, Inc. v. Goehre,*
     No. 03-CV-1106, 2005 WL 2275940, at *3 (E.D. Wis. Sept. 19, 2005) ......... 16
26
   *Doe v. Dartmouth-Hitchcock Medical Center,*
27   No. 00-100-M, 2001 WL 873063, at *5 (D.N.H. July 19, 2001) .......... 17

28

1  *Doe v. GTE Corp.*,
2     347 F.3d 655 (7th Cir. 2003) ............................................................ 15, 16

   *Dole Food Co., Inc. v. Watts*,
3     303 F.3d 1104 (9th Cir. 2002) .......................................................... 8, 11

4  *Edgar v. MITE Corp.*,
      457 U.S. 624 (1982) ................................................................................ 10
5
   *Enreach Tech., Inc. v. Embedded Internet Solutions, Inc.*,
6     403 F. Supp. 2d 968 (N.D. Cal. 2005) ...................................................... 24

7  *Fernandez-Vargas v. Gonzales*,
      548 U.S. 30 (2006) ................................................................................... 16
8
   *Freeman v. DirecTV, Inc.*,
9     457 F.3d 1001 (9th Cir. 2006) .......................................................... 15, 16

10 *Garland-Sash v. Lewis*,
      No. 05-6827, 2007 WL 935013, at *4 (S.D.N.Y. Mar. 26, 2007) ................... 17
11
   *Glud & Marstrand A/S v. Microsoft Corp.*,
12    No. C05-01563, 2006 WL 2380717, at *6 (W.D. Wash. 2006).......................... 8

13 *Helicopteros Nacionales de Colombia, S.A. v. Hall*,
      466 U.S. 408 (1984) ................................................................................... 4
14
   *In re DoubleClick Inc. Privacy Litigation*,
15    154 F. Supp. 2d 497 (S.D. N.Y. 2001) ...................................................... 20

16 *In re Graphics Processing Units Antitrust Litig.*,
      527 F.Supp.2d 1011 (N.D. Cal. 2007)......................................................... 21
17
   *In re Late Fee & Over-Limit Fee Litig.*,
18    528 F. Supp. 2d 953 (N.D. Cal. 2007).......................................................... 24

19 *In re Toys R Us, Inc. Privacy Litig.*,
      No. 00-CV-2746, 2001 WL 34517252 (N.D. Cal. Oct. 9, 2001) ...................... 16
20
   James v. Newspaper Agency Corp.,
21    591 F.2d 579 (10th Cir. 1979).............................................................. 13, 18

22 *Kearney v. Salomon Smith Barney*,
      39 Cal.4th 95 (Cal. 2006) .................................................................. 22, 23
23
   *Melchior v. New Line Prods., Inc.*,
24    131 Cal. Rptr. 2d 347 (Cal. Ct. App. 2003) ................................................ 24

25 *Nat'l Indem. Co. v. Garamendi*,
      284 Cal. Rptr. 278 (Cal. Ct. App. 1991) .................................................... 23
26
   *North Alaska Salmon Co. v. Pillsbury*,
27    162 P. 93 (Cal. 1916)................................................................................ 22

28

*Norwest Mortgage, Inc. v. Superior Court*,
    85 Cal. Rptr. 2d 18 (Cal. Ct. App. 1999) ........................................................................ 22

*Panavision International, L.P. v. Toeppen*,
    141 F.3d 1316 (9th Cir. 1998) .......................................................................... 6, 7, 11

*PBA Local No. 38 v. Woodbridge Police Department*,
    832 F. Supp. 808 (D.N.J. 1993) ........................................................................ 12

*People v. Ratekin*,
    261 Cal. Rptr. 143 (Cal. Ct. App. 1989) ........................................................... 23

*Perkins-Carrillo v. Systemax, Inc.*,
    2006 WL 1553957 *15 (N.D. Ga. May 26, 2006) ........................................... 12

*Reynolds v. Spears*,
    93 F.3d 428 (8th Cir. 1996) ............................................................................... 12

*Sandberg v. McDonald*,
    248 U.S. 185 (1918) .......................................................................................... 22

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004) ....................................................................... 5, 6, 8

*Shaffer v. Heitner*,
    433 U.S. 186 (1977) ............................................................................................ 7

*Sinatra v. National Enquirer, Inc.*,
    854 F.2d 1191 (9th Cir. 1998) ........................................................................... 10

*Smartix Int'l Corp. v. Mastercard, Int'l LLC*,
    No. 06-5174, 2008 WL 4444554, at *1 n.2 (S.D.N.Y. Sept. 30, 2008) ............ 17

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007) .............................................................................. 2

*Theofel v. Farey-Jones*,
    359 F.3d 1066 (9th Cir. 2004) ........................................................................... 20

*Tos v. Mayfair Packing Co.*,
    206 Cal.Rptr. 459 (Cal. Ct. App. 1984) ............................................................ 23

*Unicorn v. Investment Bank v. Kuruvilla*,
    2005 WL 1151996 (E.D. Wash. 2005) ................................................................ 8

*United States* v. *Hammond*,
    286 F.3d 189, 192 (4th Cir. 2002), *cert. denied,* 537 U.S. 900 (2002) ............ 19

*United States* v. *Lewis*,
    406 F.3d 11 (1st Cir. 2005) ............................................................................... 19

*United States* v. *N.Y. Tel. Co.*,
    434 U.S. 159 n.13 (1977) ................................................................................... 18

*Zampatti v. Tradebank Intern. Franchising Corp.,*
    508 S.E.2d 750 (Ga. App. 1998) ................................................. 25

*Ziegler v. Indian River County,*
    64 F.3d 470 (9th Cir. 1995) ..................................................... 7, 9

**Codes**

18 U.S.C. § 1030 ........................................................ 17, 19, 20, 21

18 U.S.C. § 1702 ......................................................................... 15

18 U.S.C. § 2510 ......................................................................... 18

18 U.S.C. § 2511 ................................................................... 15, 19

18 U.S.C. § 2520 ......................................................................... 16

18 U.S.C. § 2703 ......................................................................... 17

28 U.S.C. § 1712 ......................................................................... 11

California Code of Civil Procedure § 410 ...................................... 6

California Penal Code § 502 ................................................... 22, 24

California Penal Code § 631 ................................................... 22, 23

California Penal Code § 637.2 ...................................................... 21

**Rules**

Federal Rules of Civil Procedure 12 ............................................ 12

**Other Authorities**

Public Law 110-326, Title II, § 206, 122 Stat. 3561 (2008) .................. 16

Senate Report 99-541, 1986 U.S.C.C.A.N. 3555 ......................... 18

Senate Report No. 99-432, at 5-7 (1986), *reprinted in* 1986 U.S.C.C.A.N. 2479 .................. 21

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2
    Plaintiffs ask this Court to impermissibly adjudicate their claims in California, even

3
though each of them – and all putative class members they purport to represent – are out-of-state

4
residents bringing claims against several out-of-state Internet Service Providers ("ISPs"), arising

5
from brief periods of service provided entirely in other states.  On November 10, 2008 Plaintiffs

6
filed their complaint (the "Complaint"), on behalf of themselves and a putative class, against

7
NebuAd, Inc. ("NebuAd"), a California company, and six out-of-state Internet Service Providers

8
(the "ISP Defendants"),[1] including Knology, Inc. ("Knology") and WideOpen West Finance,

9
LLC ("WOW").  Neither Knology nor WOW have engaged in any conduct in this forum

10
justifying the exercise of personal jurisdiction and the claims against them should be dismissed

11
for lack of personal jurisdiction.  In any event, the Complaint alleges meritless violations of state

12
and federal laws against Knology and WOW, arising out of a new technology invented, patented,

13
owned and implemented by California-based NebuAd.

14
    Georgia resident Knology and Colorado resident WOW entered into contracts with co-

15
*defendant* NebuAd to serve online advertising to their customers, all of whom reside in states

16
other than California.  The advertising was served using a device installed in Knology's and

17
WOW's networks, both of which exist wholly outside of California.  The six Knology and two

18
WOW subscribers included as named Plaintiffs reside outside of California, and none of the other

19
named or putative class members they seek to represent reside in California.  To be clear, zero

20
Plaintiffs or possible Plaintiffs for this matter reside in California.  The acts that Plaintiffs claim

21
form the basis of the substantive allegations (installation and use of a device to intercept

22
communications and placing cookies on user computers), all took place outside California and

23
were entirely directed toward nonresidents of California.  Not surprising, then, Plaintiffs do not

24
directly allege in their Complaint that this Court has personal jurisdiction over Knology or WOW.

25
Indeed, this Court does not have personal jurisdiction over Plaintiffs' claims against Knology or

26
WOW for injuries allegedly suffered in other states.

27

28

---

[1] For efficiency's sake, Knology and WOW join in each of the other ISP Defendants' briefs and occasionally reference them where appropriate.

DEFENDANTS KNOLOGY AND WOW'S MEMO IN
SUPP. MOTION TO DISMISS
CV-08-5113 (TEH)

1    Alternatively, each and every Count should be dismissed by the Court because Plaintiffs

2    have failed to state claims upon which relief can be granted.  Specifically:

3        • Counts I, III, V and VI[2] against Knology and WOW must be dismissed because,

4            under the Electronic Communications Protection Act ("ECPA") and the Computer

5            Fraud and Abuse Act ("CFAA"), Knology and WOW are not liable for NebuAd's

6            actions and cannot be secondarily liable for another's acts allegedly in violation of those

7            statutes, or for aiding and abetting or conspiracy tied to those acts.  Further, various

8            ECPA provisions immunize Knology and WOW from liability; and even if there were

9            some form of CFAA liability, Plaintiffs have failed to allege sufficient damages or

10           intent necessary to meet the statutory requirements for CFAA claims.

11       • Counts II and IV against Knology and WOW for alleged violations of the

12           California Invasion of Privacy Act ("CIPA") and the California Computer Crime Law

13           ("CCCL") must be dismissed for lack of standing because Plaintiffs are not California

14           residents.

15       • Count VII against Knology and WOW for unjust enrichment must be dismissed

16           because that cause of action does not exist in California and does not apply in Georgia

17           or Illinois when a valid contract is alleged.

18   In short, this Court lacks personal jurisdiction and that is the end of the matter.  If the

19   court is to determine jurisdiction exists, Plaintiffs fail to plead actionable claims and this Court

20   must grant Knology and WOW's motion to dismiss.[3]

21                                    **BACKGROUND**

22       Knology and WOW offer their customers Internet access and other services in the

23   Southeast and Midwest regions of the country.  The Complaint alleges that they each entered a

---

[2] References to Count numbers refer to the Counts as alleged in the Complaint at pages 38-49, which differ slightly from the numbering in the header of the Complaint.

[3] If the Court grants Knology and WOW's Motion to Dismiss, the Court should dismiss the claims without leave to amend.  Dismissal without leave to amend is proper where it is clear "that the complaint could not be saved by any amendment."  *Swartz v. KPMG LLP*, 476 F.3d 756, 760 (9th Cir. 2007) (citation omitted).  Here, Plaintiffs certainly cannot cure the jurisdictional defects, and the extensive legal defects in each Count are flaws as a matter of law, not fact.  Therefore, no amendment should be allowed.  *See id.*

DEFENDANTS KNOLOGY AND WOW'S MEMO IN
SUPP. MOTION TO DISMISS
CV-08-5113 (TEH)

1    "partnership" with NebuAd, a specialist in online behavioral advertising (Comp. ¶ 68), who seeks

2    to match the advertisements that an Internet user sees with that user's interests.  Thus, for

3    example, "[i]f the consumer was visiting multiple car sites over a period of time, and then

4    searched for a sports site," behavioral advertising would aim to have car ads on the sports site,

5    rather than randomly generated ads of little interest to the consumer.  Comp. ¶ 53.

6         NebuAd conducted a brief test of its technology on small populations of Knology

7    customers in Georgia.  Comp. ¶ 94.  Over this period of less than a year, the test was slowly

8    expanded to include customers in Florida, Tennessee, Alabama and South Carolina.  *Id.*  Prior to

9    these tests, Knology amended its Customer Service Agreement to advise their customers that data

10   was being collected for behavioral advertising purposes, and offered their users the choice not to

11   participate.  *Id.*  Knology posted the new Agreement on its website.  *Id.*  Knology received

12   assurances from NebuAd that the data was collected and maintained in a manner that would make

13   it impossible to link to a particular user, but decided to discontinue the test when concerns were

14   raised about NebuAd's privacy practices.  *Id.*

15        WOW offered the NebuAd service to its high speed data customers in Illinois, Michigan,

16   Ohio and Indiana over a period of just four months.  Comp. ¶ 95.  Prior to the NebuAd service

17   beginning in March 2008, WOW provided customers with multiple forms of notification:  (1)

18   WOW modified its agreement with its customers; (2) an informational "Third Party Advertisers"

19   link was added to the WOW website; and (3) WOW updated its Frequently Asked Questions to

20   provide information regarding the NebuAd trial.  *Id.*  WOW received representations from

21   NebuAd that the data was collected and maintained in a manner that would make it impossible to

22   link to users and only used non-personally identifiable information.  *Id.*  WOW terminated the

23   NebuAd services for all customers just four months into use of the service.  *Id.*

24        Pursuant to NebuAd's contracts, "NebuAd placed a hardware interception device directly

25   onto the data hub of the ISP."  Comp. ¶ 60.  NebuAd installed devices in Knology's network at

26   locations in Georgia, Alabama, Tennessee, Florida and South Carolina (Declaration of Bret T.

27   McCants ("McCants Decl.") ¶ 9) and at locations in WOW's network in Illinois, Michigan, Ohio

28   and Indiana.  Declaration of Peter Smith ("Smith Decl.") ¶ 9.  Only customers in those states were

DEFENDANTS KNOLOGY AND WOW'S MEMO IN
SUPP. MOTION TO DISMISS
CV-08-5113 (TEH)

1   affected by the NebuAd service.  *Id.*; McCants Decl. ¶ 9.  NebuAd's device "analyzed the

2   contents of the traffic," monitored and intercepted consumer communications (Comp. ¶¶ 68, 70)

3   and used the information obtained to route relevant advertising to the customer in the customer's

4   home state.  *Id.* ¶ 72.  Plaintiffs make bald allegations that these actions "took place by and

5   through NebuAd's headquarters," even though the alleged acts at issue – installation and use of a

6   device, intercepting communications, and placing cookies on computers – happened in the non-

7   California states where Knology's and WOW's servers reside and their customers receive

8   service. *Id.* ¶ 77 -78.  Apart from the out-of-state acts of Knology and WOW "permit[ing]"

9   NebuAd to install the device in its data centers (*id.* ¶ 104), the acts were under NebuAd's control.

10  *Id.* ¶¶ 70-74.

11          Six customers of Knology (all residents of Georgia) and one customer and one former

12  customer of WOW (both residents of Illinois) have sued Knology and WOW here in the Northern

13  District of California.  *Id.*. ¶¶ 15, 20-25, 29.  Although none of these customers chose to opt out

14  of the NebuAd service, they now claim that NebuAd's online behavioral advertising system

15  violates their privacy and other rights under federal and state wiretapping and computer laws.

16  Plaintiffs have also sued NebuAd and four other out-of-state ISPs.  This Court has no personal

17  jurisdiction over the otherwise legally invalid claims.  There is no basis for the suit to proceed,

18  and the claims should be dismissed in their entirety without leave to amend.

19                                              **ARGUMENT**

20  **I.      THE COURT LACKS PERSONAL JURISDICTION OVER OUT-OF-STATE
             PLAINTIFFS' CLAIMS AGAINST OUT-OF-STATE DEFENDANTS KNOLOGY**
21           **AND WOW**

22          **A.      This Court Lacks General Personal Jurisdiction Over Knology And WOW**

23          The court only has general jurisdiction over defendants "whose contacts with a state are

24  'substantial' or 'continuous and systematic.'"  *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.,*

25  223 F.3d 1082, 1086 (9th Cir. 2000) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall,*

26  466 U.S. 408, 415 (1984)).  The Ninth Circuit explains that asserting general jurisdiction over a

27  nonresident defendant is a "fairly high" standard which "requires that the defendant's contacts be

28  of the sort that approximate physical presence in the state." *Id.*; *see also Schwarzenegger v. Fred*

1   *Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004) (noting the standard for general jurisdiction

2   is an "exacting" standard.).

3          Plaintiffs do not allege such contacts, nor do they allege that general jurisdiction exists,

4   because it does not.  Neither Knology nor WOW are residents of California.  McCants Decl. ¶ 3,

5   5; Smith Decl. ¶ 3, 5.  Knology is incorporated in Delaware, and headquartered in Georgia.

6   McCants Decl. ¶ 3; Comp. ¶ 33.  WOW is a Delaware limited liability company, and

7   headquartered in Colorado.  Smith Decl. ¶ 3; Comp. ¶ 36.  Neither Knology nor WOW have any

8   continuous or systematic business contacts in California.  McCants Decl. ¶ 4; Smith Decl. ¶ 4.

9   Knology has no physical presence in California, no offices, no employees and no agents

10  designated for service within California, nor does WOW.  McCants Decl. ¶ 5; Smith Decl. ¶ 5.

11  Knology has no customers in California and does not advertise in California.  McCants Decl. ¶ 6.

12  Nor does WOW.  Smith Decl. ¶ 6.  These facts alone are more than sufficient to establish a lack

13  of general jurisdiction.[4]

14         The sole contact Plaintiffs allege Knology and WOW made with California is the contract

15  they each entered with a co-*defendant*, NebuAd.  But a single contract is hardly "continuous or

16  systematic" and in any case merely shows one instance of doing business *with* an entity in

17  California, rather than the necessary showing of doing business *in* California.  *Bancroft &*

18  *Masters, Inc.*, 223 F.3d at 1086 (agreements with California vendors "constitute doing business

19  with California but do not constitute doing business in California.").  Defendants who have a

20  single contract with a California company are not subject to general jurisdiction, especially for a

21  dispute brought by these nonresident Plaintiffs, who themselves have no contact with the state

22  and are not parties to a California contract.[5]  Neither Knology nor WOW have sufficient contact

23

24  [4] *See Bancroft & Masters Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000) (no general
    personal jurisdiction for company that was not registered in California, paid no taxes in California, and
25  targeted no advertising toward California residents); *see also Schwarzenegger*, 374 F.3d at 801;
    *Panavision*, 141 F.3d at 1320.
26  [5] *See Schwarzenegger*, 374 F.3d at 801 (finding it "implausibl[e]" to think general personal jurisdiction
    exists over nonresident defendant even where defendant purchased California products, hired California
27  contractors, and provided for California law to govern certain California disputes); *see also Brand v.*
    *Menlove Dodge*, 796 F.2d 1070, 1073 (9th Cir. 1986) (even occasional sales by nonresident defendant to
28  California residents are insufficient to create general jurisdiction.).

DEFENDANTS KNOLOGY AND WOW'S MEMO IN
SUPP. MOTION TO DISMISS
CV-08-5113 (TEH)

1   with California, let alone any continuous or ongoing contact, so this Court lacks general personal

2   jurisdiction over Plaintiffs claims against Knology and WOW.

3       **B.   This Court Does Not Have Specific Personal Jurisdiction Over Knology or
            WOW Since Plaintiffs Have Failed To Meet Their Burden Of Proving
4           Knology's or WOW's Minimum Contacts With California**

5          This Court likewise lacks specific personal jurisdiction, not only because Plaintiffs,

6   Knology and WOW are nonresidents, but also because Plaintiffs' tort-based claims have not

7   caused any damage to anyone in California and it would be unreasonable to exercise jurisdiction.

8          State law sets the standard for this Court's authority to exercise personal jurisdiction over

9   parties.  Under California's long-arm statute, "a court of this state may exercise jurisdiction on

10  any basis not inconsistent with the Constitution of this state or of the United States."  Cal. Code

11  Civ. P. § 410.10.  The Supreme Court has held that the U.S. Constitution only "permits personal

12  jurisdiction over a defendant in any State with which the defendant has 'certain minimum

13  contacts … such that the maintenance of the suit does not offend 'traditional notions of fair play

14  and justice.'"  *Calder v. Jones*, 465 U.S. 783, 788 (1984) (citing *International Shoe v.*

15  *Washington*, 326 U.S. 310, 316 (1945)).

16         In order to determine whether such minimum contacts reasonably give rise to imposing

17  personal jurisdiction over tort claims, this Court must conduct a three-part test examining

18  whether:  (1) the defendants have purposefully availed themselves of the forum by directing their

19  activities at residents of the forum state or the forum state itself; (2) the plaintiffs' claims arise out

20  of or relate to those activities; and (3) the assertion of personal jurisdiction is reasonable and fair.

21  *See Panavision International, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998); *see also*

22  *Schwarzenegger,* 374 F.3d at 802.

23         Plaintiffs bear the initial burden of meeting "the first two prongs of the test.  If the

24  plaintiff[s] [fail] to satisfy either of these prongs, personal jurisdiction is not established in the

25  forum state."  *Schwarzenegger,* 374 F.3d at 802 (internal citation omitted).  Even if met, "the

26  burden then shifts to the defendant to present a compelling case that the exercise of jurisdiction

27  would not be reasonable."  *Schwarzenegger,* 374 F.3d at 802 (internal quotations omitted).  Thus,

28  this Court may ultimately only exercise jurisdiction over a nonresident if its "relationship to the

1   state is such as to make the exercise of jurisdiction reasonable." *Cornelius v. Chaney*, 16 Cal.3d

2   143, 147 (1976).  All Plaintiffs, Knology, and WOW are out-of-state parties, none of whom have

3   any contacts with California, and none of these three requirements are met.

**1.     The purposeful availment requirement is not met because Knology and WOW have not directed conduct toward residents of California**

6       The requirement that an out-of-state defendant purposefully avail itself of a particular

7   forum is necessary to ensure "fair warning that a particular activity may subject [it] to the

8   jurisdiction of a foreign sovereign." *Shaffer v. Heitner*, 433 U.S. 186, 218 (1977) (Stevens, J.

9   concurring).  In order to show that these Knology and WOW have "purposefully availed

10  [themselves] of the privileges of conducting activities in the forum" in order to support specific

11  jurisdiction, *Bancroft & Masters, Inc. v. Augusta National, Inc.*, 223 F.3d 1082, 1087 (9th Cir.

12  2000), plaintiffs must satisfy the "effects test" articulated in *Calder v. Jones*, 465 U.S. 783

13  (1984).

14      The Ninth Circuit has adopted this principle – particularly here where the claims involved

15  torts and do not involve contracts – and applies the "effects test," mandating that meeting the

16  purposeful availment prong requires a showing that "the defendant 'has taken deliberate action'

17  toward the forum state." *Panavision*, 141 F.3d at 1320 (quoting *Ballard v. Savage*, 65 F.3d 1495,

18  1498 (9th Cir. 1995)).  The *Panavision* court not only noted this view, but agreed with it and

19  added that defendants must have directed their action "at residents of the forum" (*id.*) and the out-

20  of-state defendants' conduct must be "aimed at or ha[ve] an effect in the forum state." *Id.* at 1321

21  (citing *Ziegler v. Indian River County*, 64 F.3d 470, 473 (9th Cir. 1995)).  There, the court found

22  it had personal jurisdiction only because the defendant carried out his acts "for the purpose of

23  extorting money from *Panavision*.  His conduct, as he knew it likely would, had the effect of

24  injuring *Panavision in California* where *Panavision* has its principal place of business." *Id.* at

25  1322 (emphasis added).

26      Consistent with this approach, the Ninth Circuit has agreed with other courts in rejecting

27  "the broad proposition that a foreign act with foreseeable effects in the forum state always gives

28  rise to specific jurisdiction." *Bancroft & Masters, Inc. v. Augusta National, Inc.*, 223 F.3d 1082,

1  1087 (9th Cir. 2000).  Instead, "something more" is required and the Ninth Circuit made clear that

2  "we now conclude that 'something more' is what the Supreme Court described as 'express

3  aiming' at the forum state."  *Id.* (quoting *Calder*, 465 U.S. at 789).  In other words, Knology and

4  WOW must have "expressly aimed" the allegedly illegal conduct at California, by "engag[ing] in

5  wrongful conduct *targeting a plaintiff whom the defendant knows to be a resident of*

6  [*California*]."  *Bancroft & Masters, Inc.*, 223 F.3d at 1087 (emphasis added).  The *Bancroft* court

7  found jurisdiction only because "the defendant engaged in conduct that individually targeted the

8  plaintiff in California."  *Id.* at 1084.[6]

9  It is thus irrelevant to personal jurisdiction over Knology or WOW that NebuAd allegedly

10  processed Plaintiffs' data in California.  The question is whether any Knology or WOW actions

11  were targeted at California and its residents, and whether the effects could have been felt in

12  California by California residents.  Plaintiffs here have failed to plead that Knology or WOW

13  directed their actions at residents of California or caused them harm in California, which is

14  sufficient for a finding that this court lacks personal jurisdiction.[7]  Indeed, there is no plausible

15  argument that these non-California ISPs with no California subscribers could have targeted their

16  actions at California or its citizens, nor could the Plaintiffs have felt any effects in California,

17  since none of them are California residents.  *See* Comp. ¶¶ 15-29 (alleging that plaintiffs are

18  residents of Montana, Alabama, Georgia, Kansas, and Illinois).  Thus, the purposeful availment

19  requirement is not met.  For that reason alone, it would violate this state's long-arm statute and

20  [6] The Ninth Circuit has subsequently held that the foreign defendant's acts must cause "harm that the
21  defendant knows is likely to be suffered *in the forum state*."  *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104,
   1111 (9th Cir. 2002) (emphasis added).  The Ninth Circuit has even applied this principle to dismiss
22  *resident* plaintiffs' suits in California where the alleged acts were aimed at residents of another state.  The
   Ninth Circuit recently reaffirmed the importance of the targeting requirement in *Schwarzenegger v. Fred
   Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004).  There, the Ninth Circuit held that because the
23  alleged activity was targeted at Ohioans, the Ohio defendant could not be sued in a California court —
24  even though the plaintiff in the case was a Californian.  *Id.* at 807 ("[While the defendant] may have
   known that Schwarzenegger lived in California, [that] does not confer jurisdiction, for [the defendant's]
25  express aim was local.").  If a *Californian* may not hale a nonresident defendant into a California court for
   acts directed at nonresidents, then certainly nonresidents are similarly precluded from bringing suit in
   California.
26  [7] *See Unicorn v. Investment Bank v. Kuruvilla*, 2005 WL 1151996 (E.D. Wash. 2005) (finding no personal
   jurisdiction where defendant "injures another nonresident in a foreign state."); *Glud & Marstrand A/S v.*
27  *Microsoft Corp.*, No. C05-01563, 2006 WL 2380717, at *6 (W.D. Wash. 2006) (because plaintiff is
   incorporated and has its principal place of business in Denmark, the harm is "better described as being
28  aimed at [the plaintiff] in Denmark.").

1    the Due Process clause of the Fourteenth Amendment to exercise personal jurisdiction over these

2    out-of-state Plaintiffs' claims against out-of-state defendants Knology and WOW.

3    **2.      The Claims Do Not Arise From Any Knology or WOW Activity**
**Within California**

4            Plaintiffs' failure to satisfy the "effects test" for purposeful availment makes it logically

5    impossible for them to satisfy the next prong requiring that their claim arise out of or relate to

6    activities in the forum state.  Knology's and WOW's only potentially forum-related activities here

7    would be each entering a contract with NebuAd, a California company.  However, NebuAd is not

8    a Plaintiff and this dispute does not arise from Knology's or WOW's contracts with NebuAd.

9    The Complaint is completely bereft of any legally sufficient allegations that Knology or WOW

10   directly acted within California.  The purported jurisdictional allegations in the Complaint

11   vaguely and passively allege that certain conduct "was devised" and that certain data "was …

12   transmitted" without making any allegations that Knology, WOW or any of the ISP Defendants

13   acted in this regard within California.  Comp. at ¶ 13.[8]  In any event, these allegations by

14   nonresidents against nonresidents cannot support a finding that Knology or WOW had sufficient

15   contacts with California such that exercise of jurisdiction would be reasonable.

16   **3.      Exercising Specific Personal Jurisdiction Over Knology And WOW**
**Would Not Be Reasonable In This Case**

17           Even if Plaintiffs could satisfy the other requirements for general or specific personal

18   jurisdiction, it must be reasonable for the Court to exercise personal jurisdiction over Knology or

19   WOW.[9]  This Court looks to seven factors in assessing the reasonableness of jurisdiction:

20               (1) the extent of the defendants' purposeful injection into the
                 forum state's affairs; (2) the burden on the defendant of defending

21               in the forum; (3) the extent of conflict with the sovereignty of the
                 defendant's state; (4) the forum state's interest in adjudicating the

22               dispute; (5) the most efficient judicial resolution of the
                 controversy; (6) the importance of the forum to the plaintiff's

23   _____

24   [8] The allegations in Paragraphs 35 and 36 of the Complaint that Knology and WOW "allowed, permitted,
     aided, encouraged, and assisted in" certain acts in California are of no moment and do nothing to help

25   Plaintiffs.  First, the Complaint fails to allege anywhere that those acts were conducted by Knology or
     WOW, directed at California's citizens, or caused harm within California.  Second, as discussed in greater

26   detail below, secondary liability does not exist for the alleged misconduct described in Paragraphs 35 and
     36 of the Complaint and cannot form the basis for jurisdiction or liability.

27   [9] *See Ziegler v. Indian River County*, 64 F.3d 470, 474-75 (9th Cir. 1995) (requiring showing of
     reasonableness); *Dole Foods Co.*, 303 F.3d at 1114 (even where defendant has targeted forum, personal

28   jurisdiction is inappropriate where it would be unreasonable); *Bancroft & Masters*, 223 F.3d at 1086
     (making reasonableness a prerequisite of specific jurisdiction).

DEFENDANTS KNOLOGY AND WOW'S MEMO IN
SUPP. MOTION TO DISMISS
CV-08-5113 (TEH)

69990-0001/LEGAL15199640.5

interest in convenient and effective relief; and (7) the existence of an alternative forum. *Id*. at 1114-15.

Each factor establishes the unreasonableness of personal jurisdiction here.

*Purposeful interjection*.  This Circuit recognizes that "the smaller the element of purposeful interjection, the less is jurisdiction to be anticipated and the less reasonable is its exercise." *Core-Vent Corp. v. Nobel Industries AB*, 11 F.3d 1482, 1488 (9th Cir. 1993).  As explained above, the Complaint fails to allege that any of the actions arise from Knology's or WOW's efforts to interject themselves into California.  The Complaint cannot allege such action, since the alleged conduct in this case is that somehow non-Californians were affected by the NebuAd system, which was "installed to an ISP's network" in other states and provided entirely to customers in other states.  Comp. ¶ 64.

*The Burden on ISP Defendants*.  While this factor is not dispositive, it is typical for a court to "examine the burden on the defendant in light of the corresponding burden on the plaintiff." *Sinatra v. National Enquirer, Inc.*, 854 F.2d 1191, 1199 (9th Cir. 1998).  Here, neither the plaintiffs nor the ISP Defendants are from California; neither side logistically benefits from a California forum, except for Plaintiffs' potential benefits from forum shopping.  Knology and WOW have no facilities or presence in California and their employees are in states other than California, so they would be required to bring witnesses and documents into California.  McCants Decl. ¶ 5; Smith Decl. ¶ 5.  The proceedings in this case could be lengthy, and it would be a substantial (and entirely unnecessary) burden to require Knology and WOW to defend their out-of-state actions in California, especially against entirely out-of-state Plaintiffs.

*Conflict with Other States*.  Plaintiffs' claims involve non-California conduct against non-Californians, and as the Supreme Court has put it, "a State may not impose economic sanctions on violators of its laws with the intent of changing the tortfeasors' lawful conduct in other states." *BMW of N. America v. Gore*, 517 U.S. 559, 572 (1996).  To the extent that Plaintiffs' rights are in need of vindication, that is the sole concern of the jurisdictions in which they live.  *Edgar v. MITE Corp.*, 457 U.S. 624, 644 (1982) (recognizing that a state "has no legitimate interest in protecting nonresident shareholders.").  It is not for California to dictate to other states how they

1 | should regulate the provision of Internet access, especially where that access was provided

2 | entirely in those other foreign states.

3 |     *Importance to California*.  This factor only favors the extension of personal jurisdiction

4 | when it would serve California's "interest in providing a forum for its residents and citizens who

5 | are tortiously injured."  *Dole Food*, 303 F.3d at 1115-1116.  Because no California resident or

6 | citizen is alleging injury, California correspondingly has no interest in hearing the claims against

7 | Knology and WOW.[10]

8 |     *Efficient Resolution*.  "This factor focuses on the location of the evidence and witnesses."

9 | *Panavision*, 141 F.3d 1316, 1323 (9th Cir. 1998).  Here, there are 23 named parties to this suit

10 | plus thousands of putative class members living outside this State; only one party — NebuAd —

11 | resides in California.  It is inefficient to require all but one party and thousands of out-of-state

12 | class members to litigate in California.  Even a settlement would be difficult to efficiently

13 | negotiate in California given the Class Action Fairness Act (*see* 28 U.S.C. § 1712(e)), which

14 | would require unnamed class members to come to California to challenge any settlement, instead

15 | of being able to litigate in their home jurisdictions.

16 |     *Importance to Plaintiffs/Alternative Forum*.  The Plaintiffs have no interest in hearing this

17 | suit in California because none of them resides in California.  Plaintiffs can point to no

18 | importance stemming from litigation in California, other than attempting to take advantage of

19 | another state's laws.  In any event, alternative fora are open to Plaintiffs.  The most obvious

20 | forum for each class of Plaintiffs is where their ISP is based or operates, and Plaintiffs might even

21 | be able to establish personal jurisdiction over NebuAd in such a forum as well.  This factor also

22 | suggests that, even if there were somehow personal jurisdiction, this forum is not the most

23 | convenient for the parties and the action might ultimately be tried in other districts, anyway.

24

25 | [10] Notably, setting a precedent for finding jurisdiction in cases like this one could actually *harm* California. First, it would place a great burden on California courts to take it upon themselves to adjudicate disputes

26 | between entirely out-of-state parties.  Here, there is no connection between Plaintiffs and Knology or WOW in California and they have not alleged that any of the harm they suffered was aimed at them while

27 | in California.  Routinely presiding over such cases would certainly burden the courts of this State. Second, it would also discourage out-of-state companies from doing business with California companies

28 | for fear of having to then defend against all their actions in California, no matter who brings them.

DEFENDANTS KNOLOGY AND WOW'S MEMO IN
SUPP. MOTION TO DISMISS
CV-08-5113 (TEH)

1   Ultimately, this Court cannot exercise personal jurisdiction over Knology or WOW here

2   where they have done nothing to direct their actions toward California or its residents, and where

3   each factor determining the reasonableness of personal jurisdiction weighs against this Court

4   exercising personal jurisdiction.  Thus, the Complaint against Knology and WOW should be

5   dismissed in its entirety with prejudice and without leave to amend under FRCP 12(b)(2).

6   **II.    PLAINTIFFS HAVE FAILED TO ALLEGE VIOLATIONS OF FEDERAL**
        **PRIVACY LAWS OR LIABILITY FOR THOSE LAWS UNDER AIDING AND**
7       **ABETTING OR CONSPIRACY THEORIES**

8   Plaintiffs ask this Court to hold Knology and WOW liable under federal statutes that only

9   contemplate primary liability.  Yet, Counts I and III state claims for alleged violations of ECPA

10  and the CFAA, respectively, based on secondary liability for actions undertaken by NebuAd.

11  Counts V and VI allege that Knology and WOW conspired with NebuAd to violate these statutes,

12  or aided and abetted any NebuAd violations.  Since their Complaint makes no allegations that

13  Knology or WOW directly engaged in any of the alleged conduct, these claims attempt to

14  unlawfully impose secondary liability on Knology, WOW and the other ISP Defendants, and they

15  should be dismissed.

16  Courts have specifically rejected efforts to hold service providers liable for interceptions

17  conducted by others on the service providers' networks.  In *PBA Local No. 38 v. Woodbridge*

18  *Police Department*, 832 F. Supp. 808 (D.N.J. 1993), for example, a federal district court rejected

19  efforts to hold a phone company liable under The Wiretap Act for installing, at another's request,

20  a device that enabled the other party to intercept communications.  The phone company had not

21  intercepted any calls itself:  "All NJB did was install, and perhaps maintain or service, a 'call

22  director' in the Director's office.  This does not amount to 'interception' or procuring another to

23  intercept."  *Id.* at 832.[11]  Knology and WOW are not alleged to have even engaged in the direct

24  behavior alleged in cases like *PBA Local*, *Reynolds* or *Systemax* where the claims were dismissed.

25  _____

26  [11] *See also Reynolds v. Spears*, 93 F.3d 428, 432-33 (8th Cir. 1996) (refusing to hold wife liable for
    interception conducted by husband with wife's knowledge and to further their common objective and
    holding that "acquiescence in [another]'s plans to [engage in interception] and [ ] passive knowledge of
27  [such] interception are insufficient as a matter of law to impute liability" under the Wiretap Act); *Perkins-*
    *Carrillo v. Systemax, Inc.*, 2006 WL 1553957 *15 (N.D. Ga. May 26, 2006) ("Even assuming Garrison
28  instructed [someone] to monitor Plaintiff's [ ] calls and that Irby was aware of that fact," since it was

69990-0001/LEGAL15199640.5

DEFENDANTS KNOLOGY AND WOW'S MEMO IN
SUPP. MOTION TO DISMISS
CV-08-5113 (TEH)

1    Research has found no case in which a court has held liable a party that did not directly

2 intercept a communication, which is understandable since the statutes specifically do not

3 contemplate such claims.[12]  There is no general federal statute imposing *civil* liability for aiding

4 and abetting or conspiracy that would support Counts V and VI, absent violations of ECPA and

5 the CFAA.  As the Supreme Court explained in *Central Bank of Denver, NA v. First Interstate*

6 *Bank of Denver*, 511 U.S 164 (1994), "there is no general presumption" of secondary civil

7 liability; rather "Congress instead has taken a statute-by-statute approach."  511 U.S. at 182.

8 Accordingly, when secondary civil liability is alleged, the statute at issue must be examined to

9 determine whether Congress intended to impose such secondary liability.  *See id*.

10    Faced with this lack of applicable statutes, the existence of specific case law that

11 precludes secondary liability, and their inability to allege facts showing Knology or WOW

12 engaged in any of the misconduct, Plaintiffs attempt to work around these problems by alleging

13 aiding and abetting and conspiracy claims as to Knology or WOW's behavior.  First, the factual

14 insufficiency of Plaintiffs' claims is evident on the face of the Complaint:  Plaintiffs can point to

15 no acts carried out by Knology or WOW that violate ECPA or CFAA.  According to the

16 Complaint, it was NebuAd, not Knology or WOW, that engaged in the activity Plaintiffs

17 challenge.  In fact, the Complaint is replete with allegations about what NebuAd allegedly did and

18 how NebuAd did it, yet it is nearly silent as to any actions Knology or WOW allegedly took.

19    Plaintiffs allege, for example, that "NebuAd placed a hardware interception device

20 directly into the data hub of the ISP"  (Comp. ¶ 60), and that "NebuAd advertising hardware

21 monitors, intercepts, and then modifies the contents of internet packets."  Comp. ¶ 68, 70.  They

22 allege that NebuAd at times acted "in cooperation with the named ISPs" (*Id.* at ¶ 60), "through its

23 partnership with ISPs" (*Id.* at ¶ 68), "NebuAd and the ISPs together cooperate" (*Id.* at ¶ 70), and

24 even go so far to allege that NebuAd intercepts data from the ISPs without alleging their

25 involvement.  S*ee id.* at ¶ 75.  Plaintiffs state that all of the storage, analysis, and use of the data

26 "undisputed [ ] neither Garrison nor Irby monitored any …calls," Plaintiffs' "claim against these
individuals [Garrison and Irby] fails as a matter of law.").

27 [12] Although, in *James v. Newspaper Agency Corp.,* 591 F.2d 579 (10th Cir. 1979), the Tenth Circuit
implicitly held that a telephone monitoring device installed by Bell for the defendant was an exempt

28 telephone instrument because Bell furnished and installed it in the regular course of its business.

DEFENDANTS KNOLOGY AND WOW'S MEMO IN
SUPP. MOTION TO DISMISS
CV-08-5113 (TEH)

1 — "[a]ll of the activities complained of herein" — "took place by and through NebuAd's

2 headquarters." *Id.* ¶ 76 - 78.  Indeed, the most Plaintiffs can say regarding the ISP Defendants is

3 to make passive allegations, suggesting that *someone* "permitted" the interception (*Id.* ¶ 104) and

4 "gained profit" from it (*Id.* ¶¶ 77, 79) without alleging that any particular entity engaged in an

5 interception.  Apart from conclusory allegations that the "[d]efendants" violated various

6 provisions of federal privacy laws[13] (*Id.* ¶¶ 116-18) there is no factual allegation that Knology or

7 WOW directly engaged in any of the alleged misconduct.

8       Second, the legal insufficiency of Plaintiffs' claims is evident in the language of each

9 statute and the case law interpreting that language.  With no federal statute conferring aiding and

10 abetting or conspiracy claims, the Court must look to whether Congress allowed for such claims

11 in the statutes the ISP Defendants allegedly violated.  Established Supreme Court and Ninth

12 Circuit precedent make clear that Plaintiffs cannot expand ECPA and CFAA to rope in others

13 simply by alleging "aiding and abetting" or "conspiracy" claims.

14       Generally, the examination of whether Congress intended to allow secondary liability

15 claims for aiding and abetting or conspiracy is rigorous, and "there is no general presumption that

16 the plaintiff may also sue aiders and abettors."  *Central Bank*, 511 U.S. at 182.  The Supreme

17 Court laid out the proper approach in *Central Bank*, where it rejected secondary liability under

18 Section 10b of the 1934 Securities Act.  The basic principle is that Congress makes clear when it

19 chooses to allow aiding and abetting claims, and the analysis begins with the terms of the statute,

20 which indisputably "controls the definition of conduct covered." *Id.* at 175.  Congress has

21 regularly declared its intent to authorize suits based on secondary liability by including the words

22 "aid" and "abet" in the text (*see id.* at 176) and courts are to look at whether there is some

23 affirmative indication that Congress intended to cover "persons who do not engage in the

24 proscribed activities at all, but who give a degree of aid to those who do." *Id.*  When there is no

25 such indication, or if the statute's private rights of action narrowly identify the individuals against

26

27 _____

[13] "The Court need not accept a conclusory allegation that conduct alleged in the complaint constituted an interception under the Wiretap Act."  *Crowley v. Cybersource Corp.*, 166 F. Supp. 2d 1263, 1268 (N.D. Cal. 2001).

28

-14-

1    whom Congress intended to create liability, courts must not create conspiracy or aiding and

2    abetting causes of action where Congress did not.  *See id.* at 179-80.

3         For each statute, then, the Court must decide whether Congress identified a broader scope

4    that encompassed aiders, abettors, and co-conspirators.  In each of the federal statutes at issue

5    here, Congress clearly identified a narrow, specific class of wrongdoers it intended to be held

6    liable.  The various provisions of ECPA and CFAA, that Plaintiffs vaguely allege "Defendants"

7    violated, do not allow secondary liability.

8    **A.    The Plain Statutory Language and Cases Interpreting The Language of
         The Stored Communications Act Forbid Secondary Liability**

9         The Ninth Circuit has expressly rejected secondary liability under the Stored

10   Communications Act (18 U.S.C. § 1702), to the extent it is alleged against the ISP Defendants in

11   Paragraph 120 of the Complaint, stating that there is "no textual support for [the] contention that

12   Congress explicitly provided for aiding and abetting or conspiracy claims."  *Freeman v. DirecTV,*

13   *Inc.*, 457 F.3d 1001, 1005 (9th Cir. 2006).  Because there is nothing that "even hints at allowing

14   claims for aiding and abetting or conspiracy," Plaintiffs' secondary liability claims in Counts I, V

15   and VI, as alleged against Knology and WOW under the Stored Communications Act, must be

16   dismissed.  *Id.* at 1007.

17   **B.    The Plain Statutory Language and Cases Interpreting The Language of
         The Wiretap Act Forbid Secondary Liability**

18        With respect to the allegations claiming violations of The Wiretap Act provisions of

19   ECPA (18 U.S.C. § 2511 *et seq.*), addressing interception, use and disclosure of electronic

20   communications in transit over a carrier's network, the analysis is virtually identical.  In rejecting

21   secondary liability for alleged Wiretap Act violations, the Seventh Circuit recognized that

22   "nothing in the statute condemns assistants, as opposed to those who directly perpetrate the act"

23   and concluded that "[a] statute that is this precise about who, other than the primary interceptor,

24   can be liable, should not be read to create a penumbra of additional but unspecified liability."

25   *Doe v. GTE Corp.*, 347 F.3d 655, 658-59 (7th Cir. 2003).  The Wiretap Act is precisely the kind

26   of statute that *Central Bank* envisioned as not allowing secondary liability:  one in which

27   Congress clearly defined who was liable and gave no indication that courts should expand it.

28

-15-                   DEFENDANTS KNOLOGY AND WOW'S MEMO IN
                                                                       SUPP. MOTION TO DISMISS
                                                                       CV-08-5113 (TEH)

As further explained in the Embarq and CenturyTel brief, the fact that the Wiretap Act's criminal and civil provisions are different helps reinforce this conclusion.  The criminal provisions specifically extend liability to anyone who acts "or procures any other person to" assist in the act (18 U.S.C. § 2701), whereas the civil provisions alleged here do not contain such language.  Indeed, courts across the nation have consistently concluded that the Wiretap Act does not provide a civil cause of action for procuring an interception.[14]  Here in the Ninth Circuit, it is settled that "[w]hen 'a statute is precise about who … can be liable' courts should not implicitly read secondary liability into the statute."  *Freeman v. DirecTV, Inc.*, 457 F.3d 1001, 1006 (9th Cir. 2006) (quoting *Doe v. GTE Corp.*, 347 F.3d 655, 659 (7th Cir. 2003)).

Thus, since the statutory language of The Wiretap Act specifically does not contemplate imposing liability against secondary actors, aiders and abettors or co-conspirators, the secondary liability claims as alleged against Knology and WOW must be dismissed with respect to The Wiretap Act, too.

**C.      The Plain Statutory Language and Cases Interpreting The Language of The Computer Fraud and Abuse Act Forbid Secondary Liability**

Finally, the CFAA is perhaps the most clearly limited of all.  The CFAA did not include any conspiracy provisions until September 2008, when Congress amended Section 1030(b) of the statute to impose conspiracy liability for criminal violations of the Act.  *See* Pub. L. 110-326, Title II, § 206, 122 Stat. 3561, 3563 (2008).  Certainly, the new conspiracy language cannot apply retroactively to punish Knology or WOW for alleged acts before September 2008.  *See Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 37-38 (2006).  In any event, Congress only created conspiracy liability for criminal violations.  The amended Section 1030(b) provides criminal punishments against direct violations of CFAA and "[w]hoever conspires to commit or attempts to commit an offense" under it.  18 U.S.C. § 1030(b).  In contrast, Congress provided for civil actions only "against the violator."  18 U.S.C. § 1030(g).  The contrast could not be more plain,

---

[14] *See In re Toys R Us, Inc. Privacy Litig.,* No. 00-CV-2746, 2001 WL 34517252 (N.D. Cal. Oct. 9, 2001) ("The plain language of § 2520(a) now limits its applicability to those who 'intercept,' 'disclose,' or 'use' the communications at issue."); *DirecTV, Inc. v. Benson*, 333 F. Supp. 2d 440, 447 (M.D.N.C. Aug. 18, 2004) ("Section 2520 does not allow for civil actions based on either the act of 'procuring' satellite signals or 'endeavoring to intercept' signals."); *DirecTV, Inc. v. Goehre*, No. 03-CV-1106, 2005 WL 2275940, at *3 (E.D. Wis. Sept. 19, 2005) ("There is no mention of granting a civil right of action against persons who endeavor to intercept or procure another person to intercept communications.").

and there is no reason to think that the different treatment is anything but a purposeful attempt to eliminate secondary liability for civil CFAA violations.  This Court cannot expand CFAA liability when Congress's terms are, on their own, sufficient to accomplish Congress's purposes.[15] Plaintiffs' utter failure to allege anything other than acts committed by NebuAd means their ECPA and CFAA claims as to Knology and WOW are secondary liability claims.  Imposing liability for CFAA violations here against Knology or WOW would contradict both Congress and the weight of authority prohibiting secondary liability.  The law is clear that courts must not question Congress and expand the reach of those laws to include secondary liability.  Thus, Counts I, II, V and VI must be dismissed.

### III. KNOLOGY AND WOW ARE IMMUNE FROM ECPA LIABILITY AND PLAINTIFFS HAVE FAILED TO PLEAD SUFFICIENT DAMAGES FOR CFAA VIOLATIONS

Nonetheless, Knology and WOW are immune from liability under provisions of ECPA protecting service providers acting in the normal course, and Plaintiffs have failed to plead the requisite damages or intent for violations of CFAA.  Thus, even if this Court finds it has personal jurisdiction and there is some basis for Knology or WOW liability under ECPA or CFAA, Counts I and III – and Counts V and VI to the extent they allege aiding and abetting and conspiracy to violate ECPA and CFAA – must be dismissed as a matter of law.

### A. Even If The Court Finds Some Plausible Basis For Liability Against Knology or WOW, Several Exceptions to ECPA Liability Would Immunize Them

An ISP is immune from liability under ECPA when its conduct is authorized by the statute.  *See* 18 U.S.C. § 2703(f).  An interception requires, by definition, that a person acquire the content of communications through the use of an interception device.  *See* 18 U.S.C. 2510(4).  An interception device is an expressly defined term and it specifically excludes "any telephone or telegraph instrument, equipment or facility, or any component thereof . . . used by a provider of wire or electronic communication service in the ordinary course of its business."  18 U.S.C. §

---

[15] *See Doe v. Dartmouth-Hitchcock Medical Center*, No. 00-100-M, 2001 WL 873063, at *5 (D.N.H. July 19, 2001) ("[I]mposing vicarious liability . . . in this case would neither be permitted by the language of the CFAA itself, nor would it further the basic purpose of the Act."); *see also, e.g.*, *Garland-Sash v. Lewis*, No. 05-6827, 2007 WL 935013, at *4 (S.D.N.Y. Mar. 26, 2007); *Smartix Int'l Corp. v. Mastercard*, Int'l LLC, No. 06-5174, 2008 WL 4444554, at *1 n.2 (S.D.N.Y. Sept. 30, 2008) ("Having recognized that Congress has not provided for conspiracy liability under the CFAA, plaintiff is voluntarily withdrawing its cause of action for CFAA conspiracy.").

1   2510(5)(a)(ii).  It is this exclusion from the definition of a device that permits service providers,

2   as Plaintiffs admit in their Complaint (*see* Comp. ¶ 44), to scan communications for spam and

3   viruses, to meter throughput and manage traffic, to direct communications via appropriate routes,

4   and indeed, to understand customer usage patterns to better market services.[16]  Plaintiffs simply

5   assert, with statutory regurgitations that do not satisfy *Twombly*, that the use of a device to serve

6   more relevant ads is not in the ordinary course.  *See* Comp. ¶ 122.  Yet, they offer absolutely no

7   support for this conclusory pleading.

8        Second, even if the NebuAd equipment is an "interception device," it is not unlawful for

9   ISPs to use such devices to intercept, disclose or use communications while engaged in an

10  activity that is a necessary incident to the rendition of service.  Certainly, in regard to electronic

11  communications (as opposed to wire communication, i.e., voice calls), Congress envisioned that

12  service providers may randomly monitor service and observe communications in the normal

13  course, and Congress permitted as much.[17]  *See* Comp. ¶ 44.  Online advertising is widely

14  recognized as a necessary incident to the rendition of Internet service.[18]  Plaintiffs actually make

15  this point, describing in their Complaint the "Traditional Online Advertising Model," and

16  tracking the evolution of the now ubiquitous online advertising industry that works together with

17  ISPs and publishers to "provide content to their subscribers at a reduced rate for the cost of the

18  content."  Comp. ¶ 46-55.[19]  Of course, if Knology and WOW were permitted to have the device

19  installed and allow NebuAd to receive and process communications to serve relevant ads, then

20

21  [16] *See James v. Newspaper Agency Corp.*, 591 F.2d 579 (10th Cir. 1979) (telephone monitoring device installed by Bell for defendant was exempt telephone instrument because Bell furnished and installed it in the regular course of its business).

22  [17] "The provider of electronic communications services may have to monitor a stream of transmissions in order to properly route, terminate, and otherwise manage the individual messages they contain.  These

23  monitoring functions, which may be necessary to the provision of an electronic communication service, do not involve humans listening in on voice conversations."  S. Rep. 99-541, 1986 U.S.C.C.A.N. 3555, 3574.

24  [18] In *United States v. N.Y. Tel. Co.*, the Supreme Court held in dicta that Section 2511 "excludes all normal telephone company business practices" from the prohibition of the Wiretap Act. 434 U.S. 159, 168 n.13 (1977).

25  [19] ECPA only applies where the alleged misconduct occurred without the consent of the person making the

26  alleged communication.  Knology and WOW both provided sufficient consent to their customers before and during the time NebuAd services were available.  Thus, the consent exception to ECPA liability would

27  also apply here, and both Knology and WOW would intend to present evidence showing the different circumstances under which each Plaintiff-customer and putative class member provided sufficient consent

28  to the NebuAd services.

DEFENDANTS KNOLOGY AND WOW'S MEMO IN
SUPP. MOTION TO DISMISS
CV-08-5113 (TEH)

1   any subsequent use of the communications is allowed.  18 U.S.C. § 2511(1)(c), (d) (only

2   intentional use or disclosure of communications obtained in violation of Section 2511 prohibited);

3   *see e.g., United States* v. *Lewis*, 406 F.3d 11, 19 (1st Cir. 2005); *United States* v. *Hammond*, 286

4   F.3d 189, 192 (4th Cir. 2002), *cert. denied,* 537 U.S. 900 (2002).

5          Should this court find it has personal jurisdiction and that some form of ECPA liability

6   lies with Knology or WOW, both this exclusion of the use of devices from liability, as well as the

7   ordinary course of business exception immunize them from liability for the alleged misconduct.

8   Both Knology and WOW will provide further facts to support the argument that these exceptions

9   apply.  However, even as pled in the Complaint, the facts are sufficient to support a ruling that

10  Knology and WOW are exempt from ECPA liability as a matter of law.

11         **B.        Plaintiffs Have Failed To Plead Requisite Damages And Intent Under CFAA**

12         Plaintiffs have failed to allege economic damages or loss amounting to $5,000 or intent, as

13  required by the CFAA.  The CFAA provides that "a civil action for a violation of this section may

14  be brought *only if* the conduct involves" one of the factors set forth in the sub clauses below and

15  "damages for a violation involving only conduct described in subsection (c)(4)(A)(i)(I) are

16  limited to economic damages."  18 U.S.C. § 1030(g).  Thus, to maintain a civil action under the

17  CFAA, a plaintiff must allege damages involving one of the following:

18              **(I)** loss to 1 or more persons during any 1-year period (and, for
                purposes of an investigation, prosecution, or other proceeding
19              brought by the United States only, loss resulting from a related
                course of conduct affecting 1 or more other protected computers)
20              aggregating at least $5,000 in value;
                **(II)** the modification or impairment, or potential modification or
21              impairment, of the medical examination, diagnosis, treatment, or
                care of 1 or more individuals;
22              **(III)** physical injury to any person;
                **(IV)** a threat to public health or safety;
23              **(V)** damage affecting a computer used by or for an entity of the
                United States Government in furtherance of the administration of
24              justice, national defense, or national security.

25

26

27

28

18 U.S.C. § 1030(c)(4)(A)(i).  *See also Theofel v. Farey-Jones*, 359 F.3d 1066, 1078 (9th Cir. 2004) (civil action under CFAA requires conduct involving one of five factors).[20]  The Complaint does not allege any facts giving rise to damages identified in sub clauses II - V.  Thus, to properly state a civil claim, Plaintiffs must allege economic "loss . . . aggregating at least $5,000 in value."  18 U.S.C. § 1030(c)(4)(A)(i)(I).  Plaintiffs, however, have not – and cannot – allege economic damages involving the "loss" required by Section 1030(c)(4)(A)(i)(I).  The CFAA defines "loss" as:

> "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service."  18 U.S.C. § 1030(e)(11).

Plaintiffs allege only that they have suffered "violation of the right of privacy, disclosure of affiliation and business relationships between Plaintiffs and internet product and service providers, and disclosure of specific purchase and transactional information that otherwise is private, confidential, and not of public record."  Comp. ¶ 144.  Thus, as the losses alleged by Plaintiffs do not involve any economic damage, they cannot meet the threshold statutory requirement for a civil action under the CFAA.[21]

Plaintiffs cannot save their CFAA claim with a conclusory allegation of "loss to one or more persons during any one-year period aggregating at least $5,000 in value," (Comp. ¶ 143), which simply is a verbatim recitation of Section 1030(c)(4)(A)(i)(I).  The Supreme Court's decision in *Twombly* requires more.  Where, as here, the only harm that Plaintiffs specifically allege are *non-economic* – a violation of their right to privacy through disclosure of personal information (*see id.* ¶ 144) – the verbatim recitation of the statutory language is not "enough to raise a right to relief above the speculative level."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

---

[20] At the time of the *Theofel* decision, these five factors were listed in 18 U.S.C. § 1030(a)(5)(B).  Under September 2008 amendments to the CFAA, these same five factors now appear in 18 U.S.C. § 1030(c)(4)(A)(i).

[21] *See In re DoubleClick Inc. Privacy Litigation*, 154 F. Supp. 2d 497, 525 (S.D. N.Y. 2001) (finding that plaintiffs had failed to state any facts supporting a finding of economic loss under the CFAA because no court has held that the placement of targeted advertisements or the value of demographic information collected could constitute damage to consumers).

-20-

1   127 S. Ct. 1955, 1964-65 (2007).  Without a proper claim of economic damages, the Complaint

2   fails to state a claim under the CFAA.

3       Plaintiffs' CFAA claim likewise fails under Section 1030(a)(5)(A), which only provides

4   for claims against only a party who "*knowingly causes the transmission* … and as a result of such

5   conduct, intentionally causes damage without authorization, to a protected computer . . . ." *See* 18

6   U.S.C. § 1030(a)(5)(A).  The "knowingly" and "intentionally" language is strictly interpreted, and

7   requires "conduct or the causing of the result must have been the person's *conscious objective.*"

8   *Butera & Andrews v. IBM Corp.,* 456 F. Supp. 2d 104, 109 (D.D.C. 2006) (emphasis added)

9   (citing S. Rep. No. 99-432, at 5-7 (1986), *reprinted in* 1986 U.S.C.C.A.N. 2479, 2483-85).  The

10  Complaint fails to allege that Knology or WOW intended to cause damage to Plaintiffs.  In fact,

11  Plaintiffs selectively cut and paste Knology's and WOW's  responses to a Congressional inquiry,

12  which actually show each defendant's desire to improve subscriber experience and subsidize

13  users' services without compromising privacy.  *See* Comp. ¶¶ 94, 95.  Thus, Plaintiffs' ECPA and

14  CFAA claims fail as a matter of law and must be dismissed.

15  **IV.  PLAINTIFFS LACK STANDING TO SUE UNDER CALIFORNIA'S INVASION
     OF PRIVACY ACT AND COMPUTER CRIME LAW**

16

17      Plaintiffs do not have standing to bring claims for violations of the California Invasion of

18  Privacy Act ("CIPA") or the California Computer Crime Law ("CCCL") because they are not

19  residents of California.  In putative class actions alleging violation of certain state laws, courts

20  must separately analyze the state law claims and dismiss the state claims where "there is no

21  named plaintiff from those states who have suffered injury."  *In re Graphics Processing Units*

22  *Antitrust Litig.*, 527 F.Supp.2d 1011, 1026-27 (N.D. Cal. 2007) (named plaintiffs in putative class

23  action lacked standing to allege claims under the laws of states where none of them resided.).[22]

24      As an initial matter, this Court should defer to the presumption that California's laws do

25  not apply beyond its borders.  Under our multi-jurisdictional federal system, a particular state's

26  [22] Because Plaintiffs lack standing to bring these claims, they should be dismissed.  However, even
    if the Court should find that Plaintiffs somehow have standing to bring claims under CIPA or CCCL, those

27  claims must not stand against any of the ISP Defendants.  As discussed in CableOne's brief, those statutes
    only allow claims "against the person who committed the violation" (Cal. Pen. Code § 637.2) and "the

28  violator."  Cal. Pen. Code § 502(e).  As explained above, the Complaint fails to allege any direct action
    taken by Knology or WOW that would violate these statutes.

DEFENDANTS KNOLOGY AND WOW'S MEMO IN
SUPP. MOTION TO DISMISS
CV-08-5113 (TEH)

1    laws are "presumptively territorial and confined to limits over which the law-making power has

2    jurisdiction." *Sandberg v. McDonald*, 248 U.S. 185, 195 (1918).  Under that well-established

3    principle, state laws are not to be given extraterritorial effect.  *See, e.g.*, *North Alaska Salmon Co.*

4    *v. Pillsbury*, 162 P. 93, 94 (Cal. 1916); *Norwest Mortgage, Inc. v. Superior Court*, 85 Cal. Rptr.

5    2d 18, 23 (Cal. Ct. App. 1999).  Under some circumstances, this principle requires a certain

6    amount of malleability, such as when the allegedly wrongful conduct occurs outside the state but

7    causes some harm in California.  But, when both the alleged conduct and the alleged harm

8    occurred outside California, courts firmly apply a presumption against extraterritorial application.

9    The California Supreme Court has recognized this principle explicitly, observing that when both

10   the wrongful act and alleged injury occurred in a foreign jurisdiction, courts have no business

11   applying California law.  *See Diamond Multimedia Sys., Inc. v. Superior Court*, 968 P.2d 539,

12   554 n.20 (1999).  California courts will not apply California law in those circumstances "unless a

13   contrary intention is clearly expressed or reasonably can be inferred from the language or purpose

14   of the statute." *Norwest*, 85 Cal. Rptr. at 23.  However, here, the express language of both

15   statutes limits their application to residents of California.

16        A.    **Plaintiffs Lack Standing Under CIPA, Which Specifically Limits**
               **Standing To California Residents And Does Not Cover Electronic**
17             **Communications**

18        Under CIPA, it is unlawful to intercept any wire, line, or cable communication without the

19   consent of all parties.  *See* Cal. Penal Code § 631 ("Section 631").  However, CIPA expressly

20   states that its prohibitions on such behavior are "intend[ed] to protect the right of privacy of the

21   people of this state." *Id.* at § 630.  In addition to this clear statutory language limiting claims

22   under CIPA to residents of California, the California Supreme Court has held that CIPA only

23   protects the privacy interests of persons in California.  *See Kearney v. Salomon Smith Barney*, 39

24   Cal.4th 95, 104 (Cal. 2006) (noting application of CIPA inappropriate in situations involving out-

25   of-state defendants because California "would be applying its law in order to defeat a defendant's

26   conduct in another state vis-à-vis another state's residents" or to "alter [a company's] nationwide

27   policy.").  The *Kearney* court noted relevant state and federal case law, which makes clear that

28

DEFENDANTS KNOLOGY AND WOW'S MEMO IN
SUPP. MOTION TO DISMISS
CV-08-5113 (TEH)

1    "states may adopt distinct policies to protect their own residents and generally may apply those

2    policies to businesses that choose to conduct business within that state."  *Id.* at 105.

3            In addition, CIPA only covers telephonic communications.  Section 631 covers "any

4    *telegraph or telephone* wire, line, cable, or instrument."  Cal. Penal Code § 631(a) (emphasis

5    added); *see also People v. Ratekin*, 261 Cal. Rptr. 143, 145 (Cal. Ct. App. 1989) ("In order to

6    violate Section 631 it is necessary that the intercepted communication be carried over '[]telegraph

7    or telephone wire, line, cable, or instrument.'") (quoting Cal. Penal Code § 631(a)).  It is clear

8    from the first mention of "wire, line, [or] cable" that the legislature intended to restrict the scope

9    of Section 631 to telegraph or telephone communications.  *See Nat'l Indem. Co. v. Garamendi*,

10   284 Cal. Rptr. 278, 287 (Cal. Ct. App. 1991) (relying on an express limitation in another section

11   of a statute to construe a disputed term similarly, "even if the limitation is not expressly stated" a

12   second time).  Indeed, it appears that no California court has ever applied Section 631 to email or

13   other computer communications.  This Court should not extend the statute where California

14   courts and the California legislature have not, particularly when doing so would drastically

15   expand the statute's criminal application.  *Tos v. Mayfair Packing Co.*, 206 Cal.Rptr. 459, 468

16   (Cal. Ct. App. 1984) ("When a statute is penal, principles governing construction of penal statutes

     apply even when the underlying action is civil in nature.").

17           This Court must dismiss Count IV and Counts V and VI – to the extent they allege aiding

18   and abetting or conspiracy to violate CIPA – otherwise it would allow these non-California

19   residents to have statutory claims against non-California defendants that run afoul of the express

20   purpose of CIPA and the well settled principles of federalism as recognized in *Kearney*.

21   **B.      Plaintiffs Lack Standing Under The CCCL, Which Specifically Limits
22                Standing To California Residents**

23           The same argument is true for the CCCL, which expressly protects only California

24   citizens from abuses made possible by emerging advances in technology.  *See* Cal. Penal Code §

25   502.  The CCCL expressly states that it applies only to crimes against California citizens, stating

26   that "computer data is vital to the protection of the privacy of individuals as well as to the well-

27   being of financial institutions, business concerns, governmental agencies, and others within this

28

1  state that lawfully utilize those computers, computer systems, and data." *Id.* By their own

2  admissions in the Complaint, none of the named Plaintiffs are California citizens. Comp. ¶¶ 15-

3  29. Plaintiffs allege nowhere that any members of the putative class or Internet customers of

4  Knology or WOW are California citizens, nor can they since no Knology or WOW customers are

5  California residents. McCants Decl. ¶ 6; Smith Decl. ¶ 6. Thus, Plaintiffs lack standing to bring

6  a claim under the CCCL for the same reasons they lack standing under CIPA. Count IV and

7  Counts V and VI – to the extent they allege aiding and abetting or conspiracy to violate the CCCL

8  – should be dismissed.

9  **V.    PLAINTIFFS HAVE FAILED TO STATE A CLAIM FOR UNJUST
          ENRICHMENT**

10

11      Although plaintiffs do not specify which state's law they hope to apply for their unjust

12  enrichment claim in Count VII (Comp. ¶¶ 174-78), in the end that will make no difference in this

13  motion's outcome. Under both California law and the law under which Knology's and WOW's

14  customer's contracts are governed, unjust enrichment simply does not exist as a claim here. Were

15  California law to apply – which it clearly cannot, for all the reasons stated above – the resolution

16  is simple: "[T]here is no cause of action in California for unjust enrichment." *Melchior v. New*

17  *Line Prods., Inc.*, 131 Cal. Rptr. 2d 347, 357 (Cal. Ct. App. 2003); *see also, e.g.*, *In re Late Fee &*

18  *Over-Limit Fee Litig.*, 528 F. Supp. 2d 953, 966 (N.D. Cal. 2007) (dismissing unjust enrichment

19  claim as not valid under California law); *Enreach Tech., Inc. v. Embedded Internet Solutions,*

20  *Inc.*, 403 F. Supp. 2d 968, 976 (N.D. Cal. 2005) (same). Even if California law does not apply,

21  then the Court should apply the law chosen by the parties in their respective contracts. *See*

22  *generally*, *Brazil v. Dell*, 2008 WL 2693629, at *2 (N.D. Cal. July 7, 2008) (California applies no

23  presumption against contractual choice-of-law). The Knology Plaintiff customers agreed to be

24  bound by Georgia law and the WOW Plaintiff customers agreed to be bound by Illinois law.

25      In Georgia, the Knology Plaintiffs' claims fail because "[t]he theory of unjust enrichment

26  applies when as a matter of fact there is no legal contract ..., but where the party sought to be

27  charged has been conferred a benefit by the party contending an unjust enrichment which the

28  benefited party equitably ought to return or compensate for." *Zampatti v. Tradebank Intern.*

69990-0001/LEGAL15199640.5

DEFENDANTS KNOLOGY AND WOW'S MEMO IN
SUPP. MOTION TO DISMISS
CV-08-5113 (TEH)

1   *Franchising Corp.*, 508 S.E.2d 750, 757 (Ga. App. 1998) (dismissing unjust enrichment claims

2   because Plaintiff alleged existence valid contract).  Here, the Knology Plaintiffs have alleged they

3   subject to an Acceptable Use Policy agreement (*see* Comp. ¶ 45) and reference the Customer

4   Service Agreement they entered.  *See id.* ¶ 94.  The existence of a valid agreement between

5   themselves and Knology makes their claim fail on its own, but as discussed above, they have also

6   failed to allege any economic loss that Knology "equitable ought to return."

7           The same is true for Illinois law, under which the WOW Plaintiffs' claim fails because

8   courts routinely dismiss claims for unjust enrichment where Plaintiffs have alleged existence of a

9   valid contract.  *See Guinn v. Hoskins Chevrolet*, 836 N.E.2d 681, 705 (Ill. App. 1 Dist. 2005)

10  (dismissing unjust enrichment claim because Plaintiff alleged existence of contract).  The WOW

11  Plaintiffs have alleged they were are subject to an Acceptable Use Policy agreement (*see* Comp. ¶

12  45) and Customer Terms of Service and Internet Privacy Policy.  *See* Comp. ¶ 95.  Thus, the

13  WOW Plaintiffs' claim for unjust enrichment must also fail.

14                                      **<u>CONCLUSION</u>**

15          Defendants Knology and WOW respectfully request this Court to dismiss Plaintiffs'

16  Complaint because the Court does not have personal jurisdiction over the claims, and to enter an

17  order dismissing this action with prejudice.  In the alternative, this Court should dismiss all

18  Counts for failure to state a claim upon which relief can be granted.

19  DATED:  January 30, 2009                          **PERKINS COIE LLP**

20

21                                                    By:   /s/
                                                          David T. Biderman

22                                                    Attorneys for Defendants
                                                      Knology, Inc. and WideOpen West Finance,
23                                                    LLC

24

25

26

27

28

DEFENDANTS KNOLOGY AND WOW'S MEMO IN
SUPP. MOTION TO DISMISS
CV-08-5113 (TEH)