1  DANIEL J. BERGESON, Bar No. 105439
   dbergeson@be-law.com
2  MELINDA M. MORTON, Bar No. 209373
   mmorton@be-law.com
3  BERGESON, LLP
   303 Almaden Boulevard, Suite 500
4  San Jose, CA 95110-2712
   Telephone:  (408) 291-6200
5  Facsimile:   (408) 297-6000

6  THOMAS E. GILBERTSEN, *Pro Hac Vice*
   tgilbertsen@kelleydrye.com
7  KELLEY DRYE & WARREN LLP
   3050 K Street, N.W., Suite 400
8  Washington, D.C.  20007
   Telephone:  (202) 342-8400
9
   Attorneys for Defendant
10 NEBUAD, INC.

11                  UNITED STATES DISTRICT COURT

12                 NORTHERN DISTRICT OF CALIFORNIA

13                    SAN FRANCISCO DIVISION

14 
   DAN VALENTINE, DALE MORTENSEN,        | Case No. C08 05113 TEH (EMC)
15 MELISSA BECKER, SAMUEL GREEN,
   SHERRON RIMPSEY, CHARLOTTE            | **KELLEY DRYE & WARREN LLP AND**
16 MIRANDA, FRANK MIRANDA, SAUL          | **BERGESON, LLP'S OPPOSITION TO**
   DERMER, WAYNE COPELAND, CHRYSTAL      | **PLAINTIFFS' MOTION TO COMPEL**
17 REID, ANDREW PAUL MANARD,             | **DISCOVERY**
   KATHLEEN KIRCH, TERRY KIRCH, NEIL
18 DEERING, PAUL DRISCOLL, individuals, on
   behalf of themselves and all others similarly
19 situated,                               | Date:    October 7, 2009
                                            | Time:    10:30 a.m.
20                      Plaintiff,          | Place:   Ctrm C, 15th Fl.
                                            | Judge:   Magistrate Judge Edward Chen
21        vs.

22 NEBUAD, INC., a Delaware Corporation;   | Complaint Filed:    November 10, 2008
   BRESNAN COMMUNICATIONS, a New York     | Trial Date:         None Set
23 Corporation; CABLE ONE, a Delaware
   Corporation; CENTURYTEL, a Texas
24 Corporation; EMBARQ, a Delaware Corporation;
   KNOLOGY, a Delaware Corporation; WOW!, a
25 Delaware Corporation; and JOHN DOES 1-20,
   corporations,
26
27                      Defendants.

28

KELLEY DRYE & WARREN. LLP AND BERGESON, LLP'S
OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY        CASE NO. C08-05113 TEH (EMC)

# TABLE OF CONTENTS

I.     INTRODUCTION ..................................................................................................... 1

II.    PROCEDURAL HISTORY ...................................................................................... 5

     A.     Counsel's Collection of Potentially Responsive Information and Subsequent Motion to Withdraw ...................................................................... 5

     B.     The Court's June 24 and July 7, 2009 Orders and Counsel's Compliance ............ 6

III.   ARGUMENT .......................................................................................................... 7

     A.     COUNSEL HAS PRODUCED ALL RESPONSIVE NON-PRIVILEGED DOCUMENTS IN ITS POSSESSION ................................................................. 7

     B.     PLAINTIFFS HAVE RECEIVED THE EQUIVALENT OF FED. R. CIV. P. 33(d) RESPONSES ................................................................................................ 7

     C.     PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS FROM THE ASSIGNEE IS MOOT ................................................................... 8

     D.     PLAINTIFFS' MOTION TO COMPEL ESI DISCOVERY SHOULD BE DENIED ................................................................................................................ 9

          1.     Fed. R. Civ. P. 26 Standards ............................................................... 9

          2.     Plaintiffs Are Not Entitled to ESI Discovery Across All NebuAd Data..... 9

          3.     ESI Discovery is Unnecessary at This Time ............................................. 11

              a.     Plaintiffs Have Been Provided the Information They Seek .......... 11

              b.     ESI Discovery Should Await the Court's Ruling on ISP Defendants' Motions to Dismiss and Potential Addition of ISP Defendants .................................................................................... 12

     E.     Alternatively, the Plaintiffs Should Be Compelled to PAY the Cost of Conducting ESI Discovery .............................................................................. 13

     F.     IN THE ALTERNATIVE, THE COURT SHOULD DEFER RULING ON PLAINTIFFS' MOTION TO COMPEL UNTIL THE COURT RULES UPON COUNSEL'S MOTION TO WITHDRAW ............................................. 16

IV.   CONCLUSION ...................................................................................................... 17

- i -

KELLEY DRYE & WARREN. LLP AND BERGESON, LLP'S
OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY     CASE NO. C08-05113 TEH (EMC)

# TABLE OF AUTHORITIES

Federal Cases

*OpenTV v. Liberate Techs.*
219 F.R.D. 474 (N.D. Cal. 2003) ..................................................................... 14

*Tierno v. Rite-Aid Corp.*
No. 05-cv-2520 TEH, 2008 WL 3876131 (N.D. Cal. Aug. 19, 2008)............................. 13

*Vang v. Home Loan Funding, Inc.*
No. 07cv1454 (AWI) (GSA), 2008 WL 3286825 (E.D. Cal. Aug. 6, 2008) ............ 1, 6, 16

*Zubulake v. UBS Warburg LLC, et al.*
216 F.R.D. 280 (S.D.N.Y. 2003)..................................................................... 14

*Zubulake v. UBS Warburg, L.L.C*
217 F.R.D. 309 (S.D.N.Y. 2003)..................................................................... 13

State Cases

*Credit Managers Ass'n of S. Ca. v. Nat'l Indep. Bus. Alliance*
162 Cal. App. 3d 1166 (Cal. Ct. App. 1984)...................................................... 1

Federal Statutes

18 U.S.C. § 2510 ........................................................................................ 12

State Statutes

Cal. Civ. Proc. Code § 493.010 ..................................................................... 3

Federal Rules

Fed. R. Civ. P. 26 ................................................................................. *passim*

Fed. R. Civ. P. 33(d)................................................................................... 3

Fed. R. Civ. P. 34(b)(2)(E)(i) ............................................................... 2, 6, 7

Fed. R. Civ P. 37 ...................................................................................... 3

State Regulations

Civil L.R. 37-1(a) ................................................................................................ 3

Civil L.R. 37-2 ................................................................................................ 2, 3

Civil L.R. 79-5(d) ............................................................................................... 2

Other

1 Witkin, Summary of Cal. Law (10th Ed. 2005) Contracts, § 710, p. 795 .................................... 1

1    Kelley Drye & Warren LLP and Bergeson, LLP (collectively, "Counsel") respectfully

2    submit this opposition to plaintiffs' motion to compel on behalf of defendant NebuAd, Inc.

3    ("NebuAd") pursuant to the Court's June 24, 2009 Order (Document 141) directing Counsel to

4    proceed with discovery.  As the Court is aware, defendant NebuAd executed an assignment for the

5    benefit of creditors ("ABC") on or about May 13, 2009 and has essentially ceased to exist.[1]  Four

6    months ago the undersigned moved to withdraw on four independent grounds: (1) lack of any

7    NebuAd director or officer to direct the defense of this litigation and authorize Counsel to act,

8    rendering "counsel's continued representation impossible" (*Vang v. Home Loan Funding, Inc.*,

9    No. 07cv1454 (AWI) (GSA), 2008 WL 3286825, at *1 (E.D. Cal. Aug. 6, 2008) (Austin, Mag.

10   J.)), (2) irreconcilable differences, (3) nonpayment, and (4) NebuAd's consent.  *See generally*

11   Counsel's Motion to Withdraw (Document 121).

12       For the reasons that follow, plaintiffs' motion should be denied or, alternatively, deferred

13   until after the Court rules upon Counsel's pending motion to withdraw.

14   **I.    INTRODUCTION**

15       The instant motion confirms that plaintiffs do not want discovery as much as they want a

16   discovery dispute.  Two days after Judge Henderson's June 24, 2009 Order directing discovery to

17   proceed, plaintiffs' counsel threatened to bring a baseless and procedurally improper *ex parte*

18   application to compel discovery responses about which they had never conferred.  *See* June 26,

19   2009 Letter from Alan Himmelfarb to Daniel J. Bergeson, et al., attached as Ex. "F" to the

20   Declaration of Thomas E. Gilbertsen in Support of Kelley Drye & Warren LLP and Bergeson,

21   LLP's Opposition to Plaintiffs' Motion to Compel, filed concurrently herewith ("Gilbertsen

22   //

23

---

24   [1]    An ABC is "the California state law equivalent of Chapter 7 bankruptcy proceedings."
     *Vang v. Home Loan Funding, Inc.*, No. 07cv1454 (AWI) (GSA), 2008 WL 3286825, at *1 (E.D.
25   Cal. Aug. 6, 2008) (Austin, Mag. J.).  *See also, Credit Managers Ass'n of S. Ca. v. Nat'l Indep.
     Bus. Alliance*, 162 Cal. App. 3d 1166, 1169 (Cal. Ct. App. 1984) ("An assignment for [the] benefit
26   of creditors is a business liquidation device available to an insolvent debtor as an alternative to
     formal bankruptcy proceedings.").  It "is a widely used method by which an insolvent debtor
27   transfers [its] assets in trust to an assignee, who liquidates them and distributes the proceeds to the
     creditors."  1 Witkin, Summary of Cal. Law (10th Ed. 2005) Contracts, § 710, p. 795.

28

---

KELLEY DRYE & WARREN, LLP AND BERGESON, LLP'S
OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY          Case No. C08-05113 TEH (EMC)

1  Decl."). The undersigned objected on a number of valid grounds, including the lack of any meet

2  and confer between counsel. *Id.* Plaintiffs' never filed their *ex parte* application.

3  Thereafter, the undersigned – not plaintiffs' counsel – requested a meet-and-confer

4  between the parties to discuss outstanding issues relating to plaintiffs' discovery requests. The

5  parties conferred on July 1, 2009, and the undersigned began fulfilling obligations it agreed to

6  during the conference, including the continued production of responsive, non-privileged

7  documents in Counsel's possession as well as the provision of Fed. R. Civ. P. 34(b)(2)(E)(i)

8  summaries and a privilege log.

9  Plaintiffs' counsel, in contrast, fell radio silent. The instant motion is the first contact

10  plaintiffs' counsel has made to Counsel since July 15, 2009. During this time frame, and pursuant

11  to the Court's July 7, 2009 Order (Document 147), non-party Jane Doe Corporation ("Jane Doe

12  Corp.") filed a motion for protective order to prevent NebuAd from producing documents in its

13  files referring or relating to Jane Doe Corp. (Document 153). Plaintiffs' counsel filed no

14  opposition to that motion, which this Court granted as unopposed on September 9, 2009

15  (Document 161).

16  The motion at bar seeks to compel NebuAd to (1) produce documents identifying third-

17  party Internet Service Providers ("ISPs") that contracted with NebuAd for behavioral advertising

18  purposes and have not moved for a protective order, (2) provide further responses to plaintiffs'

19  interrogatories, (3) produce documents in the possession NebuAd's assignee, and (4) participate in

20  discovery of electronically stored information ("ESI"). Plaintiffs' motion should be denied.

21  As a threshold matter, plaintiffs' motion is procedurally deficient. Plaintiffs were

22  obligated to attach NebuAd's objections to plaintiffs' interrogatories. *See* Civil L.R. 37-2.

23  Plaintiffs admit they failed to do so, but plead that their omission is excusable because Counsel

24  marked NebuAd's objections as "Highly Confidential – Attorneys' Eyes Only" pursuant to the

25  Stipulated Protective Order. *See* Plaintiffs' Brief at i, n. 2. Local Rule 79-5(d) provides a

26  procedure for filing documents under seal that have been designated confidential by another party.

27  Alternatively, plaintiffs could have challenged Counsel's designation pursuant paragraph 6 of the

28  Stipulated Protective Order. *See* April 28, 2009 Stipulated Protective Order (Document 108), ¶ 6.

2

1    Plaintiffs ignored both options, and their motion should be denied as procedurally deficient under

2    Local Rule 37-2.

3          Moreover, plaintiffs' counsel never met-and-conferred with Counsel to discuss NebuAd's

4    valid and timely-served objections, as they were required to do prior to filing this motion.  *See*

5    Civil L.R. 37-1(a) ("The Court will not entertain a request or a motion to resolve a disclosure or

6    discovery dispute unless, pursuant to FRCivP 37, counsel have previously conferred for the

7    purpose of attempting to resolve *all* disputed issues.") (emphasis added); Gilbertsen Decl., ¶ 2.

8    NebuAd's objections should therefore be sustained, and plaintiffs' motion denied for failure to

9    comply with Local Rule 37-1(a)'s meet-and-confer requirements.

10         Plaintiffs' motion should also be denied on the merits.   Counsel has produced all

11   responsive, non-privileged documents in its possession, including documents identifying third-

12   party ISPs that contracted with NebuAd for behavioral advertising purposes and that have not

13   moved for protective order.  In addition to the six named defendant ISPs, these documents identify

14   over forty other ISPs that may have participated in NebuAd's behavioral advertising program.

15   Plaintiffs' motion to compel production of these documents is therefore moot.

16         Plaintiffs' motion to compel additional interrogatory responses should also be denied.  At a

17   prior hearing before the Court, plaintiffs' counsel asserted that responses incorporating documents

18   pursuant to Fed. R. Civ. P. 33(d) would be satisfactory.  NebuAd's Counsel have already provided

19   the functional equivalent of Rule 33(d) responses, and compelling redundant Rule 33(d) responses

20   containing the same information would be unreasonably cumulative.  Moreover, NebuAd is no

21   longer functioning and has no officers or directors to verify interrogatory responses.

22         Plaintiffs also seek to compel documents in the possession of NebuAd's assignee.

23   Pursuant to the terms of the NebuAd ABC, all of NebuAd's assets, documents and data have been

24   assigned in trust to a fiduciary assignee, NebuAd (assignment for the benefit of creditors), LLC

25   (hereinafter, "Assignee").  *See* NebuAd ABC, ¶ 1 (Gilbertsen Decl. Ex. "A").  *See also* Cal. Civ.

26   Proc. Code § 493.010.   The Assignee has informed Counsel that it is obligated to maintain

27   NebuAd's documents and data for seven years.  *See* Gilbertsen Decl., ¶ 4.

28         Plaintiffs' counsel have never requested to inspect documents in the possession of the

3

1   Assignee, a non-party, nor requested a meet and confer on this issue.  Gilbertsen Decl., ¶ 6.  While

2   Counsel long ago provided to plaintiffs the contact information for the Assignee's counsel,

3   plaintiffs have never served a subpoena on the Assignee.  Despite these failures, and as a matter of

4   courtesy, the undersigned nonetheless asked Assignee counsel whether non-privileged responsive

5   NebuAd documents in its possession could be made available for inspection by plaintiffs' counsel,

6   and the Assignee has agreed to do so.  Plaintiffs' counsel has been advised to coordinate with

7   Assignee counsel to arrange an inspection of NebuAd documents.

8        Plaintiffs' motion to compel NebuAd to engage in ESI discovery should be denied for a

9   host of reasons.  First, plaintiffs' counsel is demanding that ESI discovery be conducted across all

10  of NebuAd's data.  Based on estimates provided by IKON, the independent forensic imaging firm

11  retained by Counsel to image NebuAd data, the cost of this discovery may exceed $1.1 million.

12  Given that plaintiffs seek no out-of-pocket damages, the cost to conduct the ESI discovery

13  requested by plaintiffs far outweighs any potential benefit.  Moreover, no ESI discovery is

14  necessary.  Plaintiffs claim that they need ESI discovery to determine how the NebuAd system

15  functioned, but plaintiffs have already been provided with several documents detailing the

16  functionality of the NebuAd system.  There is no need to engage in costly and unduly burdensome

17  ESI discovery to obtain duplicative information.

18       ESI discovery is also premature.  Plaintiffs' complaint seeks to hold six named ISP

19  defendants and a multitude of Doe ISP defendants jointly and severally liable for their alleged

20  participation in the NebuAd behavioral advertising system.  The documents produced by Counsel

21  identify over forty potential Doe ISP defendants.  To defend against these allegations, these ISP

22  defendants will want to participate in the ESI discovery process, including the selection of search

23  terms to run across NebuAd's data.  Yet, the named ISP defendants have moved to dismiss

24  plaintiffs' complaint for, *inter alia,* lack of personal jurisdiction, and plaintiffs have not yet sought

25  to add any of the potential Doe ISPs as defendants.

26       NebuAd should not be obligated to re-invent ESI discovery for every party in the case.

27  Particularly in light of the extreme costs involved, it will be ruinous to engage in duplicative ESI

28  discovery.  Rather, ESI discovery should await a ruling on the defendant ISPs' motions to dismiss

4

and any potential addition by plaintiff of other ISPs as party-defendants.  Such a course is prudent, reasonable, and efficient, and will allow all parties in the litigation to meet, confer and (hopefully) agree on one set of search terms to run across NebuAd ESI.  No harm to plaintiff will result by delaying ESI discovery, since the NebuAd data collected is being preserved by IKON and since no Case Management Conference has been conducted yet.

In the alternative, Counsel requests that the Court defer ruling on plaintiffs' motion to compel in its entirety.  Concurrent with this filing, the undersigned is requesting the Honorable Judge Henderson to rule on Counsel's pending motion to withdraw.  Counsel respectfully requests that the Court defer ruling on plaintiffs' motion pending the Court's ruling on the submitted motion to withdraw.

## II.      PROCEDURAL HISTORY

### A.      Counsel's Collection of Potentially Responsive Information and Subsequent Motion to Withdraw

Plaintiffs' counsel served formal discovery requests on NebuAd on April 17, 2009.  *See* April 17, 2009 E-mail from Michael Aschenbrener to counsel for the parties herein, attached as Gilbertsen Decl. Ex. "B."  Both before and after receipt of these requests, Counsel worked with NebuAd personnel to collect potentially relevant and responsive information, including hard copy and certain electronically stored documents.  *See* Gilbertsen Decl., ¶ 8.  Counsel also retained the independent data collection firm IKON to image NebuAd data.  *Id.*  IKON imaged, and is currently preserving, approximately 600 gigabytes of compressed electronic data it collected from NebuAd laptops and servers.  *Id.*, ¶ 9.

On or about May 13, 2009, while Counsel was engaged in this collection, NebuAd executed the ABC which transferred all of NebuAd's assets, documents and information to the Assignee.  *See* Motion to Withdraw (Document 121), at 2; Gilbertsen Decl., ¶ 8; Gilbertsen Decl. Ex. "A."

On Friday, May 15, 2009, Counsel was apprised that NebuAd had executed the assignment and no longer had any officers, directors or employees to assist or direct the defense of this litigation.  Gilbertsen Decl., ¶ 3.  The next business day, Counsel moved to withdraw as counsel

5

for NebuAd on four independent grounds including: (1) lack of any NebuAd director or officer to direct a defense of the litigation, rendering "counsel's continued representation impossible" (*Vang*, 2008 WL 3286825, at *1), (2) irreconcilable differences, (3) nonpayment, and (4) NebuAd's consent. *See generally* Counsel's Mot. to Withdraw (Document 121).

Objections and responses to plaintiffs' formal discovery requests came due on May 20, 2009. As Counsel advised the Court during a hearing held that same day, Counsel could not provide verified responses to those requests since it had no client to authorize or certify the correctness and completeness of discovery responses. *See* May 20, 2009 Tr. 14:09-15:12, attached as Gilbertsen Decl. Ex. "C." During this hearing, plaintiffs' counsel asserted that responses to plaintiffs' interrogatories incorporating documents pursuant to Fed. R. Civ. P. 33(d) would be acceptable. *Id.* at 7:13-15 (Scott Kamber: "[W]e expect that the interrogatories are likely to have to be answered by producing documents pursuant to Rule of Civil Procedure 33(d)."). That same day, Counsel timely served objections to plaintiffs' formal discovery requests so as to preserve them for NebuAd or any of its successors in interest. Gilbertsen Decl., ¶ 12.

**B.      The Court's June 24 and July 7, 2009 Orders and Counsel's Compliance**

On June 24, 2009, the Court issued an Order indicating that it was deliberating upon Counsel's motion to withdraw, but that discovery should proceed in the interim. *See* June 24, 2009 Order (Document 141). Subsequently, the Court ordered Counsel to produce documents in its possession that reference potential Doe defendants that did not move for a protective order by July 22, 2009. *See* July 7, 2009 Order (Document 147). Counsel has satisfied its obligations under the June 24 and July 22, 2009 Orders.

Counsel has taken steps to preserve all NebuAd data collected by IKON. Counsel has provided both the oral May 20, 2009 and written June 24, 2009 preservation Orders to IKON and the Assignee. Gilbertsen Decl., ¶ 14. IKON assured Counsel that it is continuing to comply with those orders and preserve the NebuAd data it collected. *Id.*

Counsel has produced all responsive non-privileged NebuAd documents in its possession, including documents identifying potential Doe defendants. *Id.*, ¶ 13. Counsel provided Fed. R. Civ. P. 34(b)(2)(E)(i) summaries of the document requests to which each document is responsive,

KELLEY DRYE & WARREN, LLP AND BERGESON, LLP'S
OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY          Case No. C08-05113 TEH (EMC)

1   as well as a privilege log for responsive documents withheld from production.  *See* July 22 and

2   September 4, 2009 Letters from Stephen R. Freeland to Michael J. Aschenbrenner, Esq., attached

3   as Gilbertsen Decl. Exs. "D" and "E"; *see also* Gilbertsen Decl., ¶ 17.  Counsel has also made

4   repeated but unsuccessful attempts to secure the designation of a former NebuAd officer to verify

5   interrogatory responses.  *See* Gilbertsen Decl., ¶ 18.

6   **III.    ARGUMENT**

7        **A.    COUNSEL HAS PRODUCED ALL RESPONSIVE NON-PRIVILEGED
             DOCUMENTS IN ITS POSSESSION**

8

9        Plaintiffs' motion to compel NebuAd to produce documents identifying third-party ISPs

10   that contracted with NebuAd for behavioral advertising purposes is moot.  Counsel has produced

11   all responsive, non-privileged documents in its possession, including all documents identifying

12   third parties that have not moved for a protective order.  Gilbertsen Decl., ¶ 14.  These documents

13   identify over forty additional entities that may have contracted with NebuAd for behavioral

14   advertising purposes.  Plaintiffs' motion, as it relates to these documents, is now moot and should

15   be denied.

16        **B.    PLAINTIFFS HAVE RECEIVED THE EQUIVALENT OF FED. R. CIV. P.
             33(d) RESPONSES**

17

18        Plaintiffs previously asserted in open court that Rule 33(d) responses to their

19   interrogatories would be sufficient.  *See supra* at 6.  The Fed. R. Civ. P. 34(b)(2)(E)(i) summaries

20   provided by Counsel are substantially identical to the Rule 33(d) responses that plaintiffs' counsel

21   already indicated would satisfy NebuAd's obligations on the outstanding interrogatories.[2]  The

22   Fed. R. Civ. P. 34(b)(2)(E)(i) summaries already provided by Counsel identify NebuAd documents

23   by category that are responsive to the interrogatories – such that a Rule 33(d) answer would be

24   merely duplicative.  *See* July 22 and September 4, 2009 Letters from Stephen R. Freeland to

25   _____

26   [2]     Both rules call for the production of essentially the same information.  *Compare* Fed. R.
       Civ. P. 33(d) (party may specify business records containing answers to interrogatories) with Fed.
27   R. Civ. P. 34(b)(2)(E)(i) (party may "organize and label [documents] to correspond to the
       categories in the request.").   The information provided under both rules links the documents
28   produced with the category of information being sought by the requesting party.

KELLEY DRYE & WARREN, LLP AND BERGESON, LLP'S
OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY        Case No. C08-05113 TEH (EMC)

Michael J. Aschenbrenner, Esq., attached as Gilbertsen Decl. Exs. "D" and "E."  These subjects include documents referring or relating to:  (1) contracts between NebuAd and ISPs (Plaintiffs' Interrogatory Nos. 7-11)[3], (2) communications between NebuAd and ISPs (Plaintiffs' Interrogatory Nos. 7-11), (3) the functionality of the NebuAd device/system (Plaintiffs' Interrogatory No. 12), (4) steps taken by NebuAd to protect privacy (Interrogatory No. 12), (5) communications with the United States Federal Trade Commission (Interrogatory No. 12), (6) dates certain ISPs may have deployed NebuAd's behavioral advertising system on their networks (Interrogatory No. 12), and (7) the potential location of NebuAd behavioral advertising devices based on available information (Interrogatory No. 10).  *See* July 22 and September 4, 2009 Letters from Stephen R. Freeland to Michael J. Aschenbrenner, Esq., attached as Gilbertsen Decl. Exs. "D" and "E."  Further, the NebuAd documents produced by Counsel identify relevant former NebuAd officers, directors, and managers that have knowledge about NebuAd's operations, the substance of their knowledge, their job titles, and their last known contact information. (Interrogatory Nos. 2-7).

Because plaintiffs have now been provided with the same information they previously agreed would be sufficient to satisfy NebuAd's Rule 33 obligations, plaintiffs' motion to compel duplicative interrogatory responses containing that same information should be denied as unreasonably duplicative.

**C.     PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS FROM THE ASSIGNEE IS MOOT**

Pursuant to the ABC, all of NebuAd's documents and data were to be conveyed to the Assignee.  Despite plaintiffs' failure to meet and confer on this issue prior to filing their motion to compel, the undersigned sought and recently obtained assurance from the Assignee's counsel that the Assignee will make responsive, non-privileged NebuAd documents in its possession available for review by plaintiffs' counsel.  *See* Gilbertsen Decl., ¶ 19.  Counsel provided the contact

---

[3]     Plaintiffs' Interrogatories are attached as Exhibit 1 to the Declaration of Michael Aschenbrener in Support of Plaintiffs' Motion to Compel Discovery (Document 156-1) (hereinafter "Aschenbrener Decl.").

KELLEY DRYE & WARREN, LLP AND BERGESON, LLP'S
OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY          Case No. C08-05113 TEH (EMC)

1 information for the Assignee and its counsel to plaintiffs' counsel over three months ago.  *Id.,* ¶ 5.

2 Plaintiffs' counsel has been advised to arrange for an inspection of NebuAd documents in the

3 Assignee's possession at a mutually convenient time and location.  *Id.,* ¶ 19.

### D.      PLAINTIFFS' MOTION TO COMPEL ESI DISCOVERY SHOULD BE DENIED

6          Plaintiffs assert that Judge Henderson's June 24, 2009 Order requires Counsel to

7 immediately complete ESI discovery.  This is incorrect.  Judge Henderson's Order left it to the

8 parties to decide how to proceed with discovery, and to have any disputes resolved by the Court if

9 the parties were unable to reach agreement through the meet-and-confer process.  *See* June 24,

10 2009 Order (Document 141) ("The Court will entertain any motions of Plaintiffs to compel

11 responses to propounded discovery requests . . . .").

12          Plaintiffs' counsel and the undersigned met and conferred about ESI discovery and have

13 three disagreements:  (1) whether plaintiffs are entitled to ESI discovery across all NebuAd data

14 even though the cost to complete such discovery far outweighs any likely benefit, (2) whether and

15 how much plaintiffs will bear the costs of ESI discovery against NebuAd, and (3) whether ESI

16 discovery against NebuAd is necessary or advisable at this time.

### 1.      Fed. R. Civ. P. 26 Standards

18          Under Fed. R. Civ. P. 26(b)(2)(C),

> the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; . . . or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

24 Rule 26(b)(2)(C)(i) and (iii) both suggest that plaintiffs' motion to compel ESI discovery should

25 be denied.

### 2.      Plaintiffs Are Not Entitled to ESI Discovery Across All NebuAd Data

27          Plaintiffs' counsel insists that ESI discovery go forward, yet fail to inform the Court that

28 they have taken *no* steps to move this process forward.  Plaintiffs have not held a Rule 26(f)

9

1   conference, have not proposed search terms for ESI discovery (despite Counsel's request that they

2   do so), have refused to limit the scope of ESI discovery (e.g., by limiting the search to data from

3   certain custodians), have not rebutted Counsel's cost and fee estimates to complete ESI discovery

4   across all NebuAd data collected by IKON, and only participated in a meet-and-confer session

5   about these issues after the undersigned insisted that they do so.  *See* Gilbertsen Decl., ¶ 20; June

6   29, 2009 Letter from Thomas E. Gilbertsen to Alan Himmelfarb, attached as Aschenbrener Decl.

7   Ex. 4.

8          While plaintiffs' counsel have failed to even propose ESI search terms for NebuAd's ESI,

9   they nonetheless maintain that whatever search terms they eventually propose should be run across

10  all of the approximate 600 gigabytes of compressed data being preserved by IKON.   IKON

11  estimates that it will cost approximately $120,000.00 just to conduct a keyword search across this

12  massive amount of data.   *See* June 29, 2009 Letter from Thomas E. Gilbertsen to Alan

13  Himmelfarb, at 2, attached as Aschenbrener Decl. Ex. 4.  This independent estimate excludes the

14  $900.00 to $1,200.00 per gigabyte fee to process documents for attorney review, as well as the

15  attorney fees incurred in reviewing documents produced by keyword searches.  *Id.*

16         Assuming (conservatively) that a keyword search across all NebuAd ESI would produce

17  20 gigabytes of data (less than 4% of the total data), the additional cost to process that data for

18  attorney review is between $18,000.00 and $24,000.00.[4]  By plaintiff own admission, a single

19  gigabyte of data might contain 100,000 pages of text.  *See* July 2, 2009 Letter from Michael

20  Aschenbrenner to Thomas E. Gilbertsen, at 2, attached as Aschenbrener Decl. Ex. 6. Assuming

21  (conservatively) that an attorney can competently review 5,000 pages of text per eight-hour day, a

22  review of documents produced by a keyword search across all NebuAd ESI could take as much as

23  3,200 attorney hours to complete (or 400 days).  Applying a conservative $300 per hour rate,

24  attorney time alone could cost $960,000.00, bringing the total cost of completing ESI to over $1.1

25  _____

26  [4]      This estimate excludes any additional costs to obtain licensing to any third party software
    that is necessary to access and/or view data in NebuAd's ESI.

27

28

KELLEY DRYE & WARREN, LLP AND BERGESON, LLP'S
OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY          Case No. C08-05113 TEH (EMC)

1    million.[5]

2            The discovery needs in this litigation do not warrant such an extravagant undertaking.

3    Plaintiffs' complaint fails to allege any out-of-pocket damage and seeks statutory penalties, yet

4    their lawyers propose pursuing unbounded ESI discovery at a six-to seven-figure cost.   The

5    exorbitant and unduly burdensome cost of completing ESI discovery in the manner plaintiffs'

6    lawyers are suggesting manifestly outweighs any potential benefit for the case.  *See* Fed. R. Civ. P.

7    26(b)(2)(C)(iii) (court must deny request where "the burden or expense of the proposed discovery

8    outweighs its likely benefit").  The amount in controversy in this case does not justify such an

9    expenditure.  *See* Fed. R. Civ. P. 26(b)(2)(C)(iii) (instructing the Court to consider the amount in

10   controversy in determining whether to deny discovery; party resources are a factor the Court must

11   consider in determining whether to deny discovery).  There is simply no need to proceed with

12   exhaustive ESI discovery across all NebuAd data.  Fed. R. Civ. P. 26(b)(2)(C)(iii) (instructing the

13   Court to consider the "needs of the case" and the "importance  of the discovery in resolving the

14   issues.").

15           Plaintiffs' motion to compel ESI discovery across all NebuAd data should be denied.

16           **3.        ESI Discovery is Unnecessary at This Time**

17                   **a.        Plaintiffs Have Been Provided the Information They Seek**

18           Plaintiffs contend that they need unbounded ESI discovery to "reveal the manner in which

19   NebuAd and its ISP partners utilized deep-packet inspection ("DPI") to monitor, intercept, and

20   alter the internet communications of hundreds of thousands of internet users" and to "reveal the

21   extent to which NebuAd and the ISPs monitored, intercepted, and altered the consumers' internet

22   communications."  Pls' Br. at 6.[6]  In other words, plaintiffs are seeking information about how the

23   NebuAd behavioral advertising worked.  According to plaintiffs "the case desperately needs" ESI

24   _____

25   [5]      This estimate excludes the cost to access and restore inaccessible data being maintained by
     IKON, such as the data on NebuAd's accounting server.  *See infra* at pp. 15-17.

26
     [6]      Plaintiffs cite a third reason for needing ESI discovery, but that reason is
27   incomprehensible.  *See* Pl's Br. at 6 (asserting that ESI discovery "will also reveal the degree to
     which this activity affected individuals and business with which the affected consumers
28   communicated.").

1    discovery to obtain this information.  Pls' Br. at 6.  Plaintiffs' counsels' assertion is contradicted

2    by the record facts.

3          Plaintiffs have already been provided with a multitude of documents demonstrating how

4    the NebuAd behavioral advertising system functioned.  *See* September 4, 2009 Letter from

5    Stephen R. Freeland to Michael J. Aschenbrenner, Esq., at 9-11, attached as Gilbertsen Decl. Ex.

6    "E" (listing NebuAd documents already produced that refer or relate to the functionality of the

7    NebuAd device).  Plaintiffs have also been provided all contracts between NebuAd and ISPs and

8    communications between same in Counsel's possession.  *Id.* at 1-9; Gilbertsen Decl., ¶ 14.

9    Simply put, plaintiffs already have the information they cite in support of their motion.  There is

10   no "desperate need" to duplicate that information through ESI discovery.  *See* Fed. R. Civ. P.

11   26(b)(2)(C)(i) (Court must limit or deny discovery where "the discovery sought is unreasonably

12   cumulative or duplicative.").

13         To the extent plaintiffs contend that they need ESI discovery for additional reasons not

14   cited in their opening brief, methods of discovery that are less burdensome than ESI discovery are

15   available.  Moreover, the costs of ESI should be borne by plaintiffs and their counsel.  *See infra* at

16   13-16.

17                    **b.      ESI Discovery Should Await the Court's Ruling on ISP
                              Defendants' Motions to Dismiss and Potential Addition of ISP**
18                            **Defendants**

19         Plaintiffs' motion to compel ESI discovery should be denied for the additional reason that

20   it is premature and that compelling exhaustive ESI discovery at this time will result in duplicating

21   ESI discovery many times over as the case proceeds.  Plaintiffs' complaint seeks to hold the ISP

22   defendants jointly and severally liable under, *inter alia*, the Electronic Communications Privacy

23   Act ("ECPA"), 18 U.S.C. § 2510, *et seq.*, for their alleged participation in the NebuAd behavioral

24   advertising system.  To defend against such allegations, the ISP defendants will no doubt want to

25   participate in ESI discovery from NebuAd including, *inter alia*, the selection of search terms to

26   run across NebuAd ESI.  However, each ISP defendant has moved to dismiss plaintiffs' complaint

27   on various grounds, including lack of personal jurisdiction.  These motions are currently under

28   consideration by the Court.

1    NebuAd documents already produced identify over forty additional ISPs that may have

2    participated in NebuAd's behavioral advertising program.  If plaintiffs successfully add these ISPs

3    as parties to the litigation, these ISPs will also need to participate in ESI discovery from NebuAd.

4    NebuAd and Counsel should not be compelled to duplicate ESI discovery for every party –

5    current or future – in the litigation.  ESI discovery should await a ruling on the six named ISP

6    defendants' motions to dismiss as well as the potential addition of parties-defendant by plaintiffs.

7    This will allow all parties to the litigation to confer and (hopefully) agree on the scope of ESI

8    discovery, ESI search terms, and the method, and timing and funding of ESI production.  *See* Fed.

9    R. Civ. P. 26(b)(2) 2006 advisory committee note (encouraging the parties to reach agreement on

10   these issues prior to seeking Court intervention); Fed. R. Civ. P. 26(c) (the Court may issue an

11   order "specifying terms, including time and place, for the disclosure or discovery" to protect "a

12   party or person from . . . oppression, or undue burden or expense.").

13   For the foregoing reasons, plaintiffs' motion to compel ESI discovery should be denied.

14       **E.       Alternatively, the Plaintiffs Should Be Compelled to PAY the Cost of
                    Conducting ESI Discovery**

15

16   Plaintiffs' counsel refuses to negotiate any cost shifting for ESI discovery.  Pls' Br. at 7.

17   According to plaintiffs' counsel, cost shifting is only appropriate if plaintiffs request NebuAd to

18   provide written copies of the data requested.  *Id.*  Plaintiffs' cited authority for this contention,

19   *Tierno v. Rite-Aid Corp.,* No. 05-cv-2520 TEH, 2008 WL 3876131, at *1 (N.D. Cal. Aug. 19,

20   2008) (Henderson, J.), is inapposite because that case addressed a cost sharing request for copies

21   of *paper* documents, not electronic documents.  Judge Henderson's *Tierno* opinion distinguishes

22   between cost-sharing for paper documents and cost- sharing for ESI discovery:

23           In [a prior] order, the Court found that Magistrate Judge Larson clearly erred by
             weighing the factors set out in *Zubulake v. UBS Warburg, L.L.C.*, 217 F.R.D. 309,
24           322 (S.D.N.Y. 2003) to determine whether Rite Aid should pay the expense of
             producing copies of paper documents in response to Plaintiffs discovery requests
25           because the *Zubulake* test applies only to electronic discovery.

26   *Tierno*, 2008 WL 3876131, at *1.

27   Under *Zubulake*, whether production of electronic data is unduly burdensome or expensive

28   "'turns primarily on whether it is kept in an accessible or inaccessible format (a distinction that

13

1   corresponds closely to the expense of production).'"  *OpenTV v. Liberate Techs.*, 219 F.R.D. 474,

2   476 (N.D. Cal. 2003) (quoting *Zubulake v. UBS Warburg LLC, et al.,* 217 F.R.D. 309, 318

3   (S.D.N.Y. 2003)).   Cost shifting is appropriate when the data sought by the requesting party is

4   "inaccessible."  *Id.* (citing *Zubulake v. UBS Warburg LLC, et al.,* 216 F.R.D. 280, 284 (S.D.N.Y.

5   2003)).

6          A substantial portion of the data collected is "inaccessible" in that it cannot be accessed

7   without the involvement of specialized third party experts and the incurrence of substantial

8   additional costs.  Gilbertsen Decl., ¶ 10.  For example, IKON forensically imaged NebuAd's Great

9   Plains accounting server, but in order to access and review the data in this server, a forensic

10  accounting firm or other expert on Great Plains databases must be retained to restore the data,

11  which is currently compressed, to usable form.  *Id.*  After restoration, the third party expert would

12  then be required to manually review the data to determine what information, if any, is responsive.

13  *Id.*  Manual review is necessary because it is not possible to run search terms across the data in the

14  Great Plains server.  *Id.*

15         Under *Zubulake*, the Court considers the following factors in determining whether shifting

16  the cost to the requesting party is appropriate:  (1) the extent to which the request is specifically

17  tailored to discover relevant information;  (2) the availability of such information from other

18  sources;  (3) the total cost of production, compared to the amount in controversy; (4) the total cost

19  of production, compared to the resources available to each party; (5) the relative ability of each

20  party to control costs and its incentive to do so; (6) the importance of the issues at stake in the

21  litigation; and (7) the relative benefits to the parties of obtaining the information.  *OpenTV*, 219

22  F.R.D. at 477 (citing *Zubulake,* 216 F.R.D. at 284 and ordering 50-50 cost sharing to retrieve and

23  restore electronic data).

24         Factor 1 weighs in favor of cost shifting.  The discovery needs in this case are relatively

25  straightforward – how did the NebuAd system work, who operated the system on their networks,

26  and pursuant to what notice to and consent by consumers.  Yet, plaintiffs' counsel are requesting

27  that ESI be conducted across all NebuAd data collected by IKON which, by virtue of the

28  collection process, contains both responsive and non-responsive information.  Plaintiffs' counsel

1   have refused to discuss limiting the scope of ESI discovery (e.g., to only certain custodians).

2   Plaintiffs request is therefore *not* specifically tailored to discover relevant information, but instead

3   seeks a fishing expedition throughout a sea of ESI data.

4          Factor 2 – the availability of the requested information from other sources – also weighs in

5   favor of cost shifting.  As demonstrated *supra*, plaintiffs have already been provided much of the

6   information they seek to establish in ESI and have the information necessary to pursue depositions

7   of former NebuAd officers, directors and employees.

8          Factor 3 – the total cost of production, compared to the amount in controversy – weighs in

9   favor of cost shifting.  Plaintiffs are not seeking compensatory damages and, at best, their claim

10  for statutory damages is worth only a few million dollars.  Comparing the amount in controversy

11  with the exorbitant estimated cost of production weighs in favor of cost sharing.  Compared to

12  other settlements in privacy class actions, the costs of ESI as proposed by plaintiffs' counsel may

13  well exceed a fair settlement of any class claims here.

14         Factor 4 – the total cost of production, compared to the resources available to each party –

15  weighs in favor of cost shifting.  NebuAd has no assets to pay for ESI discovery, and there is no

16  guarantee that NebuAd's insurance carriers will pay for such discovery.  Moreover, one of

17  NebuAd's policies is a "wasting" policy that will be exhausted by the ESI discovery plaintiffs'

18  counsel proposes, leaving nothing for putative class members in the event of settlement or

19  judgment.  Presumably, plaintiffs would not have brought this case against multiple defendants

20  unless they or their counsel had the resources to complete discovery, including ESI discovery.

21  Factor 4 weighs in favor of cost shifting.

22         Factor 5 – the relative ability of each party to control costs of production and its incentive

23  to do so – is neutral.  There are no officers, directors or employees of NebuAd for Counsel to

24  consult regarding the retrieval, restoration and processing of electronic data.  Counsel therefore

25  lacks the ability to control the cost of production.  Presumably, plaintiffs also lack the ability to

26  control the cost of production of NebuAd's electronic data.  All parties are similarly situated on

27  this factor.

28         Factors 6 and 7 weigh in favor of cost shifting.  The main issue in the case is whether

1   NebuAd's behavioral advertising system violated internet user's privacy given the notices

2   provided by each ISP utilizing the ad serving program.  Plaintiffs' counsel has been provided with

3   multiple documents describing and depicting the functionality of the NebuAd device.  There are

4   therefore few benefits to the parties of obtaining duplicative information through ESI discovery.

5        Accordingly, if the Court directs ESI discovery to proceed, Counsel requests that the Court

6   shift the cost of ESI discovery, in whole or in substantial part, to plaintiffs.

7        **F.**     **IN THE ALTERNATIVE, THE COURT SHOULD DEFER RULING ON PLAINTIFFS' MOTION TO COMPEL UNTIL THE COURT RULES UPON**

8        **COUNSEL'S MOTION TO WITHDRAW**

9        Counsel has fully complied with the Court's June 24 and July 7, 2009 Orders.  Meanwhile,

10  the grounds for Counsel's withdrawal remain and are more urgent.  As a result of Counsel's

11  additional work to comply with the Court's orders, the current total owed by NebuAd to Counsel

12  for attorneys' fees and costs is over $500,000.00.  Gilbertsen Decl., ¶ 21.[7]  Counsel simply cannot

13  afford to proceed further in this matter, and should not be forced to stand in the client's stead in

14  defense of this litigation.

15       NebuAd has no officers or directors to direct Counsel in this case and it is impossible for

16  Counsel to proceed.  *Vang,* 2008 WL 3286825, at *1 (ABC rendered "counsel's continued

17  representation impossible").  For this same reason, the irreconcilable differences between Counsel

18  and NebuAd will never be resolved.  Compelling Counsel to proceed further with discovery would

19  be error for the reasons cited in Counsel's motion to withdraw.  *See* Document 121 at 4.  Counsel

20  respectfully requests in the alternative that the Court defer ruling on plaintiffs' motion to compel

21  until after a ruling on Counsel's motion to withdraw.  No prejudice will result to plaintiffs as a

22  result of deferring a ruling on the motion to compel.  Both the Assignee and IKON are preserving

23  NebuAd documents and data, and have indicated that they will continue to do so pursuant to this

24  Court's preservation Orders.

25  //

26  

27  [7]     NebuAd expressly consented to withdrawal under these circumstances in its retainer agreement with Counsel.  *See* Counsel's Mot. to Withdraw (Document 121), at 4.

28  

KELLEY DRYE & WARREN, LLP AND BERGESON, LLP'S
OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY     Case No. C08-05113 TEH (EMC)

1    **IV.     CONCLUSION**

2          For the foregoing reasons, Counsel respectfully requests that plaintiffs' motion to compel

3    be denied or, in the alternative, that the Court defer ruling on that motion until after the Court rules

4    upon Counsel's motion to withdraw, or, alternatively, that plaintiffs be ordered to share in the cost

5    of ESI discovery.

6

7    Dated:  September 16, 2009                    KELLEY DRYE & WARREN LLP

8

9                                                 By:_____/s/_____

10                                                      Thomas E. Gilbertsen (admitted *pro hac vice*)

     Attorneys for Defendant
11   NEBUAD, INC.

12

13   Dated:  September 16, 2009                    BERGESON, LLP

14

15                                                 By:_____/s/_____

16                                                      Melinda M. Morton

     Attorneys for Defendant
17   NEBUAD, INC.

18

19

20

21

22

23

24

25

26

27

28

KELLEY DRYE & WARREN, LLP AND BERGESON, LLP'S
OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY          Case No. C08-05113 TEH (EMC)