1
2
3          IN THE UNITED STATES DISTRICT COURT
4          FOR THE NORTHERN DISTRICT OF CALIFORNIA
5
6
7
8    DAN VALENTINE, *et al.*,
9                          Plaintiffs,                    NO. C08-05113 TEH
10                   v.
                                                          ORDER GRANTING ISP
11   NEBUAD, INC., *et al.*,                              DEFENDANTS' MOTIONS TO
                                                          DISMISS UNDER FRCP 12(b)(2)
12                          Defendants.
13

14          This matter came before the Court on July 27, 2009, on the Motions to Dismiss filed

15   by Defendants Bresnan Communications ("Bresnan"); CenturyTel Communications, Inc.

16   ("CenturyTel") and Embarq, Inc. ("Embarq"); Knology, Inc. ("Knology") and WideOpen

17   West Finance, LLC ("WOW"); and Cable One.  Having carefully considered the parties'

18   written and oral arguments, the Court GRANTS the Motions pursuant to Federal Rule of

19   Civil Procedure 12(b)(2) based on the absence of personal jurisdiction.

20

21   **FACTUAL AND PROCEDURAL BACKGROUND**

22          Bresnan, CenturyTel, Embarq, Knology, WOW, and Cable One (collectively, "ISP

23   Defendants") are all "internet service providers" or "ISPs," companies that provide internet

24   access services to their customers.  The ISP is the gateway for its subscribers'

25   communications over the internet, acting as the conduit for information flowing to and from

26   a customer's computer.  A subscriber's sent email and web-based activity is transmitted

27   through the ISP to reach the recipient or web site; received email and website content

28   likewise pass through the ISP before getting to the subscriber.

*United States District Court*
For the Northern District of California

This lawsuit stems from the use of the ISPs' data stream to deliver targeted advertising to subscribers. Defendant NebuAd, Inc. ("NebuAd") developed a hardware interception device that, when installed on an ISP's network, would monitor its subscribers' internet activity: what web sites they visited, for example, or what search terms they entered. NebuAd contracted with the ISP Defendants to install such devices directly onto the ISP data hubs to collect information regarding subscribers' internet usage. That data, once transmitted to the NebuAd server complex in California for analysis, was harnessed to deliver advertisements tailored to subscribers' interests. Thus, for example, a subscriber who had previously shopped online for a car might, when visiting a travel website, encounter car advertisements based on her previous internet activity. The revenue generated by the targeted advertising was split equally between NebuAd and the ISP Defendants.

In their responses to a Congressional inquiry into the "customization" technology employed by NebuAd, the ISP Defendants each said they used the company's technology only for temporary trials. Bresnan "conducted one limited trial with NebuAd" in the spring of 2008 "in a small segment" of the company's Billings, Montana market, "limited to approximately 6,000 Bresnan OnLine customers." Compl. ¶ 90. Cable One "initiated a small-scale test" in its Anniston, Alabama system, which serves approximately 14,000 cable modem subscribers, for six months starting in November 2007. *Id.* ¶ 91. CenturyTel tested NebuAd's technology in Kalispell, Montana from November 2007 through June 2008, affecting approximately 20,000 high-speed internet subscribers in Montana, Idaho, and Wyoming. *Id.* ¶ 92. Embarq's "test" affected 26,000 customers served out of Gardner, Kansas. *Id.* ¶ 93. Knology began its "trial" in January 2008 in West Point, Georgia, eventually expanding to other markets in Georgia, Florida, Tennessee, and Alabama until discontinuing the trial in July of that year. *Id.* ¶ 94. WOW deployed NebuAd services over four months in 2008 for 330,000 customers in Illinois, Michigan, Ohio, and Indiana. *Id.* ¶ 95.

United States District Court

For the Northern District of California

2

United States District Court

For the Northern District of California

Plaintiffs, subscribers of the ISP Defendants, charge that the practice of tracking and harnessing their internet activity to sell targeted advertising was illegal.  They argue that NebuAd and the ISP Defendants (collectively, "Defendants") invaded their privacy and improperly intercepted their communications in violation of federal and California statutes governing privacy and computer crimes.  Plaintiffs brought seven causes of action in a Complaint filed November 10, 2008.  They allege against all Defendants violations of the federal Electronic Communications Privacy Act of 1986, 18 U.S.C. § 2510 *et seq.*; California's Computer Crime Law, Cal. Pen. Code § 502; the federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030; and California's Invasion of Privacy Act, Cal. Pen. Code § 630 *et seq.*  They also charge the ISP Defendants with aiding and abetting the alleged statutory violations and with civil conspiracy, and they assert an unjust enrichment claim against all Defendants.

The ISP Defendants moved to dismiss the claims against them under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), for lack of personal jurisdiction and failure to state a claim upon which relief may be granted.[1]  Following a period of jurisdictional discovery, the ISP Defendants' motions are now before the Court.  Because the motions can be resolved on the jurisdictional question alone, the Court limits its discussion to that issue.

NebuAd is a California corporation headquartered in Redwood City, where the data collected by its devices was processed and analyzed.[2]  No other party is a California resident. Plaintiffs all reside in states where the ISP Defendants carried out trials of the NebuAd system: Illinois, Montana, Alabama, Georgia, and Kansas.  Compl. ¶¶ 15-29.  Of the ISP Defendants, Cable One, Embarq, Knology, and WOW are all Delaware corporations,

---

[1] NebuAd also moved to dismiss on December 22, 2008.  However, NebuAd's motion is not presently before the Court because the time for NebuAd to file a reply brief in support of its motion was enlarged until after the Court resolved the motion to withdraw and motion to stay filed by NebuAd's counsel on May 18, 2009. An order granting the motion to withdraw and denying the motion to stay is being filed concurrently with this Order.

[2] In May of this year, NebuAd executed an assignment for the benefit of creditors, "a business liquidation device available to an insolvent debtor as an alternative to formal bankruptcy proceedings."  *Credit Managers Ass'n v. Nat'l Indep. Bus. Alliance*, 162 Cal. App. 3d 1166, 1169 (1984).  NebuAd is therefore in the process of liquidation and dissolution, and NebuAd's counsel has said that the company "essentially ceases to exist."

headquartered in Arizona, Kansas, Georgia, and Colorado, respectively.  Bresnan is incorporated and headquartered in New York, and CenturyTel is a Texas corporation based in Louisiana.  NebuAd contracted with Bresnan and Knology for choice of law and venue in the Northern District of California for "any litigation arising out of the Agreement."  Himmelfarb Decl. in Supp. of Pls.' Resp., ¶¶ 2, 4.  The other ISP Defendants contracted for governing law and venue outside of California.

The ISP Defendants argue that the Court cannot assert personal jurisdiction over them because they have not sustained the minimum contacts necessary to hale them into court in California.  Plaintiffs assert that the ISP Defendants must submit to litigation in California because they performed on contracts with NebuAd, a California-based company, and derived revenue from the advertising sales generated from data processed in California.

**LEGAL STANDARD**

Where no applicable federal statute governs personal jurisdiction, as is the case here, the district court applies the law of the state where it sits.  *Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F.3d 1199, 1205 (9th Cir. 2006).  California's long-arm statute is co-extensive with federal due process requirements.  Cal. Code Civ. Proc. § 410.10; *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998).  The Court's exercise of personal jurisdiction over the ISP Defendants is therefore proper as long as it comports with federal constitutional standards.

To satisfy due process, a court may only exercise personal jurisdiction over a defendant who has "certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  Where those "minimum contacts" with the forum are "substantial" or "continuous and systematic," the party "can be haled into court in that state in any action, even if the action is unrelated to those contacts."  *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415

United States District Court

For the Northern District of California

4

(1984)).  The standard for exercising such "general jurisdiction" is "fairly high," requiring contacts "of the sort that approximate physical presence." *Id.*  Where that standard is not met, a court may still exercise "specific jurisdiction" if the case "arises out of certain forum-related contacts" sufficient to meet the "minimum contacts" standard. *Id.*

Plaintiffs do not even address general jurisdiction, arguing only that the Court should exercise specific jurisdiction over the ISP Defendants.  The Ninth Circuit applies a three-prong test to determine when specific jurisdiction exists:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; *or* perform some act by which he purposefully avails himself of the privileges of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002).  "The plaintiff bears the burden of satisfying the first two prongs of the test." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).  If those prongs are met, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (internal citation omitted).  All disputed facts are resolved in the plaintiff's favor. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006).  If personal jurisdiction is found lacking, dismissal is proper under Federal Rule of Civil Procedure 12(b)(2).

## DISCUSSION

## I.      First Prong: Purposeful Availment or Purposeful Direction

The first prong of the minimum contacts test can be satisfied by meeting one of two standards:  purposeful direction or purposeful availment.  Plaintiffs must show either that the ISP Defendants "purposefully direct[ed their] activities or consummate[d] some transaction with the forum or resident thereof," or that they "purposefully avail[ed themselves] of the privileges of conducting activities in the forum, thereby invoking the benefits and protections

United States District Court

For the Northern District of California

1    of its laws." *Dole Food Co.*, 303 F.3d at 1111.  Although "often clustered together under a

2    shared umbrella," purposeful direction and purposeful availment "'are, in fact, two distinct

3    concepts.'"  *Brayton Purcell LLP v. Recordon & Recordon*, 575 F.3d 981, 985 (9th Cir.

4    2009) (quoting *Pebble Beach*, 453 F.3d at 1155).  "A purposeful availment analysis is most

5    often used in suits sounding in contract.  A purposeful direction analysis, on the other hand,

6    is most often used in suits sounding in tort."  *Schwarzenegger*, 374 F.3d at 802 (internal

7    citations omitted).

8           The Ninth Circuit assesses purposeful direction using a three-part test drawn from the

9    Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783 (1984).  The "*Calder* effects" test

10   requires that the defendant allegedly "have (1) committed an intentional act, (2) expressly

11   aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in

12   the forum state."  *Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F.3d 1199, 1206 (9th Cir.

13   2006).  A showing of purposeful availment, on the other hand, "typically consists of evidence

14   of the defendant's actions in the forum, such as executing or performing a contract there,"

15   *Schwarzenegger*, 374 F.3d at 802, or other "affirmative conduct which allows or promotes

16   the transaction of business within the forum state," *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d

17   1191, 1195 (9th Cir. 1988).   "By taking such actions" in the state, the defendant "invok[es]

18   the benefits and protections of its laws," in return for which he "must – as a quid pro quo –

19   submit to the burdens of litigation in that forum."  *Schwarzenegger*, 374 F.3d at 802 (internal

20   citations omitted).

21          The parties dispute which standard is appropriate here.  The ISP Defendants argue for

22   the application of the purposeful *direction* test, because the causes of action all sound in tort.

23   In their four statutory claims, Plaintiffs allege that Defendants violated their privacy interests

24   by intercepting electronic communications and obtaining private data via unauthorized

25   computer access.  Right of privacy torts involve "interference with the interest of the

26   individual in leading, to some reasonable extent, a secluded and private life, free from the

27   prying eyes, ears and publications of others."  Restatement (Second) of Torts § 652A cmt. b

28   (1977); *see also Calder*, 465 U.S. at 790 (referring to invasion of privacy as one of a series of

"allegedly tortious[] actions").  None of Plaintiffs' claims are premised on or even allege any breach of contract; rather, their claims all focus on privacy in the computer context, and sound in tort.  The ISP Defendants are therefore correct that this Court should analyze minimum contacts under the purposeful direction test.

Whether the Court should also engage in purposeful availment analysis is a more difficult question.  Plaintiffs argue that the ISP Defendants "purposefully *availed* themselves of California law" by performing "in California" on contracts entered into "with California-based NebuAd for the deployment of a California-based joint advertising initiative."  Pls.' Resp. at 5 (emphasis added).  The ISP Defendants insist that their agreements with NebuAd are "the wrong focus," because the "claims here are tort claims" that do not "arise out of any contract to which Plaintiffs are a party."  Knology/WOW Reply at 3.  This Court "may not," they contend, "apply the purposeful availment test to a tort action."  CenturyTel/Embarq Reply at 6.  *See also* Cable One Reply at 2 (arguing that since "Plaintiffs are not parties to the only contracts alleged – between NebuAd and the individual ISPs," purposeful availment is not applicable); Bresnan Reply at 3 ("Because no count in the Complaint asserts a contract claim and Plaintiffs only assert privacy claims that sound in tort, the 'purposeful direction' test applies.").

"Purposeful availment" and "purposeful direction," although distinct, are both mechanisms for assessing "the constitutional touchstone" of "whether the defendant purposefully established 'minimum contacts' in the forum State."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985).  The purposeful direction analysis originated with the Supreme Court's *Calder* decision, which "stands for the proposition that purposeful availment is satisfied even by a defendant whose only 'contact' with the forum state is the 'purposeful direction' of a foreign act having effect in the forum state."  *Dole Food Co.*, 303 F.3d at 1111.  One reason a forum "legitimately may exercise personal jurisdiction over a nonresident who 'purposefully directs' his activities toward forum residents" is to prevent the Due Process Clause from being "wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed."  *Burger King*, 471 U.S. at 473-74.  In other words,

7

"purposeful direction" developed as a means of *expanding* personal availment analysis so that defendants who acted tortiously outside the forum – and hence did not invoke the benefit and protection of its laws – could still be answerable there.  It would defy that reasoning to limit jurisdictional analysis for all tort claims to purposeful direction, particularly when jurisdiction based on purposeful availment is conceivable.

In observing that courts "most often" apply "purposeful direction" in tort and "purposeful availment" in contract, the Ninth Circuit did not lay down an absolute rule. *Schwarzenegger*, 374 F.3d at 802.  Indeed, although the claims in *Schwarzenegger* (for unauthorized use of Arnold Schwarzenegger's image) sounded in tort, the Ninth Circuit still considered purposeful availment.   It rejected that approach only because plaintiff failed to identify any conduct by defendant "that would be readily susceptible to a purposeful availment analysis." *Id.* at 803.  Since the defendant "received no benefit, privilege, or protection from California," "the traditional quid pro quo justification for finding purposeful availment thus does not apply." *Id.*  The key to whether "purposeful availment" analysis applies, therefore, is not whether the claim sounds in contract, but whether the defendant received any "benefit, privilege, or protection" from the forum state in connection with the conduct at issue.  Plaintiffs argue that the ISP Defendants did receive such a benefit: they profited from the data analysis and advertising sales that occurred in NebuAd's California facility, which is the conduct underlying Plaintiffs' claims.  That rationale is sufficient for this Court to engage in purposeful availment analysis.[3]

This Court will therefore assess the first prong of the minimum contacts test based on both "purposeful direction" and "purposeful availment."  If the first prong is satisfied under either test, the Court will move onto the second and third prongs to determine whether the

---

[3] Plaintiffs also assert that because NebuAd contracted with Bresnan and Knology for choice-of-law and venue to be in California for "any litigation arising out of the Agreement," the conduct in question in this case also may be challenged in California because it was contemplated by the agreement.  Pls.' Resp. at 5-6.  This argument is unpersuasive, as claims brought by Plaintiffs, who are not parties to the contracts among Defendants, do not arise out of those contracts.

United States District Court

For the Northern District of California

1   ISP Defendants had minimum contacts with California sufficient to justify this Court's

2   exercise of personal jurisdiction over them.

4   **A.      Purposeful Direction**

5            The *Calder* effects test establishes purposeful direction where a defendant

6   "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm

7   that the defendant knows is likely to be suffered in the forum state."  *Yahoo! Inc. v. La Ligue*

8   *Contre Le Racisme*, 433 F.3d 1199, 1206 (9th Cir. 2006).  The first prong is easily satisfied:

9   the ISP Defendants contracted with NebuAd to have hardware interception devices placed

10  directly onto their data hubs, an intentional act that enabled Plaintiffs' personal data to be

11  collected.

12           The second prong requires that the act have been "expressly aimed" at California.

13  *Yahoo!*, 433 F.3d at 1206.  Although the concept of express aiming "hardly defines itself,"

14  the requirement clearly "is satisfied when the defendant is alleged to have engaged in

15  wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the

16  forum state."  *Brayton Purcell LLP v. Recordon & Recordon*, 575 F.3d 981, 986 (9th Cir.

17  2009) (concluding that defendant "expressly aimed its conduct at the Forum by individually

18  targeting" plaintiff); *see also Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1318 (9th

19  Cir. 1998) (finding jurisdiction because defendant's "acts were aimed at [plaintiff] in

20  California").  However, that is not the theory that Plaintiffs advance, nor could they: as

21  Plaintiffs are not residents of California, any "express aiming" toward them in other states

22  could not justify a finding of jurisdiction here.

23           Plaintiffs argue instead that "express aiming" is satisfied because the data the ISP

24  Defendants contracted to sell was transmitted to California for analysis, packaging, and sale.

25  The ISP Defendants' conduct was aimed not toward California, but toward their own

26  subscribers – from whom data was collected, and to whom targeted advertising was

27  delivered.  Express aiming involves conduct that "individually target[s] a known forum

28  resident."  *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1087 (9th Cir.

1    2000).  To the extent it can be said the ISP Defendants "expressly aimed" their conduct

2    anywhere, they targeted Plaintiffs and other subscribers, not anyone in California.

3         Even if Plaintiffs could have satisfied the "express aiming" requirement, they could

4    not show that the ISP Defendants caused harm they knew was "likely to be suffered in the

5    forum state" to meet the third element of the *Calder* effects test.  *Yahoo!*, 433 F.3d at 1206.

6    "This element is satisfied when defendant's intentional act has 'foreseeable effects' in the

7    forum."  *Brayton Purcell*, 575 F.3d at 988 (citing *Bancroft*, 223 F.3d at 1087).  A

8    "jurisdictionally sufficient amount of harm" must be suffered in the forum state, even if

9    "more harm might have been suffered in another state."  *Yahoo!*, 433 F.3d at 1207.  None of

10   the Plaintiffs suffered any harm in California.  Pointing out that eight of the ten most popular

11   websites in the country are based in California, Plaintiffs argue that enough individuals in

12   California had their data intercepted to cause harm in the forum state, because Plaintiffs were

13   inevitably communicating with individuals, businesses, and computers located in California.

14   This argument is unpersuasive.  Despite a period of jurisdictional discovery, Plaintiffs have

15   provided no facts demonstrating harm suffered in California, and offer no meaningful

16   "foreseeable effects" that occurred in California.  Speculating that some Californians must

17   have had their data intercepted while communicating with Plaintiffs is an inadequate basis

18   for asserting personal jurisdiction.  Hypothetical harm to unidentified internet users is not a

19   "jurisdictionally sufficient amount of harm" in California.  All of the concrete harm that

20   Defendants allegedly caused occurred in the home states of Plaintiffs, where they used their

21   computers and allegedly had their private data taken.  In the absence of harm in California,

22   Plaintiffs cannot satisfy the third *Calder* prong, and their assertion of personal jurisdiction

23   under the purposeful direction test must fail.

24

25   **B.    Purposeful Availment**

26         The standard for assessing purposeful availment is more fluid than the three-part test

27   used for purposeful direction.  The Supreme Court has held that "an individual's contract

28   with an out-of-state party alone" cannot "automatically establish sufficient minimum contacts

10

1  in the other party's home forum." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478

2  (1985).

> Instead, we have emphasized the need for a "highly realistic"
> approach that recognizes that a "contract" is "ordinarily but an
> intermediate step serving to tie up prior business negotiations
> with future consequences which themselves are the real object of
> the business transaction." It is these factors – prior negotiations
> and contemplated future consequences, along with the terms of
> the contract and the parties' actual course of dealing – that must
> be evaluated in determining whether the defendant purposefully
> established minimum contacts within the forum.

8  *Id.* at 479 (internal citations omitted). Purposeful availment, in other words, "requires that

9  the defendant 'have performed some type of affirmative conduct which allows or promotes

10  the transaction of business within the forum state.'" *Sher v. Johnson*, 911 F.2d 1357, 1362

11  (9th Cir. 1990) (quoting *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1195 (9th Cir.

12  1988)). "Evidence of availment is typically action taking place in the forum that invokes the

13  benefits and protections of the laws in the forum." *Pebble Beach Co. v. Caddy*, 453 F.3d

14  1151, 1155 (9th Cir. 2006).

15  From the ISP Defendants' perspective, all of the activity relevant to this lawsuit

16  occurred out of state. Plaintiffs resided outside of California, NebuAd's device was affixed

17  to ISP networks outside of California, and targeted advertising appeared on Plaintiffs'

18  computers outside of California. The data reached California to be processed only after

19  *NebuAd* retrieved it from the ISP Defendants' networks. That NebuAd is a California

20  company would not by itself be determinative, because a contract with a California resident

21  is not enough to establish jurisdiction. *Burger King*, 471 U.S. at 478.

22  However, it is difficult to ignore that the ISP Defendants profited from the data

23  analysis and advertising sales performed by NebuAd in California. Purposeful availment

24  does not require that the ISP Defendants ever enter California. *Burger King*, 471 U.S. at 476.

25  It is true that jurisdiction "cannot be premised on actions taken by another,"

26  CenturyTel/Embarq Reply at 7 (citing *Burger King*, 471 U.S. at 475), and the ISP

27  Defendants claim they did nothing more than allow NebuAd's devices to be installed.

28  However, adopting that position – and ignoring the consequences (and profits) that flowed

1    from the installation of NebuAd's devices – is precisely the kind of "rigid and formalistic"

2    analysis that this Court must avoid.  *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir.

3    2008).  Taking a "highly realistic" approach and considering the "future consequences" that

4    "are the real object of the business transaction," *Burger King*, 471 U.S. at 479, the Court

5    observes that the ISP Defendants fed NebuAd the data that it processed in California,

6    enabling NebuAd to transmit targeted advertisements back to the ISP Defendants' own

7    subscribers.  In exchange, NebuAd split its profits with the ISP Defendants.  The "economic

8    reality," *Roth v. Garcia Marquez*, 942 F.2d 617, 622 (9th Cir. 1991), is that much of this

9    activity occurred in California, under the protection of California's laws, to the benefit of

10   both NebuAd and the ISP Defendants.  *See, e.g.*, *Compuserve, Inc. v. Patterson*, 89 F.3d

11   1257 (6th Cir. 1996) (finding Texas-based software developer had purposefully availed

12   himself of Ohio law by repeatedly loading "shareware" software he had created onto

13   Compuserve's Ohio server to be marketed and sold online).

14          Satisfied that purposeful availment can be found as to the ISP Defendants, the Court

15   will turn to the next two factors of the jurisdictional analysis to determine whether they

16   support a finding of personal jurisdiction.

17

18   **II.       Arising Out of Defendants' Forum-Related Activities**

19          The second prong is whether the claim "arises out of or relates to the defendant's

20   forum-related activities."  *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002).

21   Plaintiffs allege that the collection and use of their data violated statutes designed to protect

22   the privacy of communications and computer usage.  The ISP Defendants' forum-related

23   activity was to give NebuAd access to that data, which was analyzed and used to generate

24   advertising sales in California.  Plaintiffs' claims clearly relate to the ISP Defendants' forum-

25   related activity.

26   //

27   //

28   //

12

**III.    Reasonableness**

The last consideration is whether the exercise of jurisdiction would "comport with fair play and substantial justice," or, in other words, "be reasonable." *Dole*, 303 F.3d at 1111. The Ninth Circuit weighs "a congeries of factors" to determine "whether the exercise of jurisdiction over a nonresident defendant satisfies the reasonableness test." *Roth v. Garcia Marquez*, 942 F.2d 617, 623 (9th Cir. 1991). The seven factors are:

> 1) the extent of the defendant's purposeful interjection into the forum state's affairs; 2) the burden on the defendant; 3) conflicts of law between the forum and defendant's home jurisdiction; 4) the forum's interest in adjudicating the dispute; 5) the most efficient judicial resolution of the dispute; 6) the plaintiff's interest in convenient and effective relief; and 7) the existence of an alternative forum.

*Id.* The factors are balanced where none is dispositive. *Id.* The ISP Defendants bear the burden of showing that exercising jurisdiction would not be reasonable. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).

Plaintiffs and the ISP Defendants do not count a single California resident among their ranks. The only California party is NebuAd, which has executed an assignment for the benefit of creditors, "a business liquidation device available to an insolvent debtor as an alternative to formal bankruptcy proceedings." *Credit Managers Ass'n v. Nat'l Indep. Bus. Alliance*, 162 Cal. App. 3d 1166, 1169 (1984). Acknowledging that NebuAd "essentially ceases to exist," the Court has allowed NebuAd's counsel to withdraw from the case.[4] The seven reasonableness factors will be assessed against the backdrop that the only California party in this case is in the process of dissolution.

(1) The extent of the ISP Defendants' purposeful injection into California is minor to moderate. By profiting from the data analysis and advertising sales that occurred in California, the ISP Defendants purposefully availed themselves of the benefits of doing business in the forum. However, they otherwise had no connection to California, and were

---

[4]The Order Granting Motion to Withdraw and Denying Motion to Stay is being filed concurrently with this Order.

United States District Court
For the Northern District of California

essentially indifferent to where the data analysis and advertising sales took place, as they were performed exclusively by NebuAd.  This factor favors neither side.

(2) The burden on the ISP Defendants of litigating in California is moderate. Although they are represented by counsel in California, and the obstacles posed by distance are mitigated by technology and the ease of travel, all six ISP Defendants are based outside of the state.  What would be a moderate burden for each of the ISP Defendants deserves greater consideration where that burden is imposed six times over.  This factor favors the ISP Defendants.

(3) The ISP Defendants have not pointed to any specific conflicts between the law of California and that of Plaintiffs' home states.  This factor favors Plaintiffs.

(4)  Although "California maintains a strong interest in providing an effective means of redress for its residents tortiously injured," *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998), California has little interest in doing so for residents of other states. This factor favors the ISP Defendants.

(5) For purposes of hearing all of Plaintiffs' claims simultaneously, California likely provides the most efficient judicial resolution of the dispute.  However, the most efficient forum is usually "where the injury occurred and where evidence is located."  *Pacific Atl. Trading Co. v. M/W Main Express*, 758 F.2d 1325, 1331 (9th Cir. 1985).  Plaintiffs' injuries all occurred outside of California, and all of the ISP Defendants and Plaintiffs themselves are based in other states.  Some of the evidence regarding NebuAd's activities is likely in California.  Since there is no single forum that would be more efficient than California, this factor favors Plaintiffs.

(6)  It is unclear how Plaintiffs' interest in convenient and effective relief is satisfied by litigating this matter in California, where no Plaintiffs reside.  Assuming that the selection of this forum demonstrates some interest by Plaintiffs in litigating here, that interest is minimal.  This factor favors the ISP Defendants.

(7) Plaintiffs would be able to bring separate actions in the states where they reside, which is also where each ISP Defendant provided internet service and where the data

14

United States District Court

For the Northern District of California

collection and delivery of advertisements occurred.  It is possible these separate proceedings could be coordinated through multidistrict litigation.  This factor favors the ISP Defendants.

Even if NebuAd were not in the process of liquidation, it would be difficult to imagine how forcing the six out-of-state ISP Defendants to come to California to defend a lawsuit brought by out-of-state Plaintiffs could be reasonable.  California and Plaintiffs both have little interest in having this dispute heard in this forum, especially given that Plaintiffs can file suit in the states where they – and the ISP Defendants – reside.  Forcing the ISP Defendants to appear in California imposes a moderate burden on them, which is barely justified by whatever benefit they reaped from California law.  Although hearing Plaintiffs' claims against NebuAd and the ISP Defendants in one place may ultimately be more efficient, even that apparent advantage fades away in light of NebuAd's dissolution, and similar economies of scale could be achieved in separate fora through multidistrict litigation.

The six ISP Defendants have sustained their burden of demonstrating that haling them to court in California is unreasonable under these circumstances.  Exercising jurisdiction over them would not comport with notions of fair play and substantial justice.  The ISP Defendants cannot be expected to defend this lawsuit in this forum.

**CONCLUSION**

For the foregoing reasons, the ISP Defendants' Motions to Dismiss are GRANTED. Plaintiffs' claims against the ISP Defendants are hereby DISMISSED.

**IT IS SO ORDERED.**

Dated:    10/06/09

_____
THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT