IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAN VALENTINE, *et al.*,<br><br>          Plaintiffs,<br><br>      v.<br><br>NEBUAD, INC., *et al.*,<br><br>          Defendants. | NO. C08-05113 TEH<br><br>ORDER DENYING MOTION TO DISMISS |

This matter came before the Court on Defendant NebuAd's motion to dismiss. After carefully considering the parties' written arguments, the Court finds oral argument to be unnecessary. For the reasons set forth below, the motion is DENIED.

**BACKGROUND**

This lawsuit arises out of a practice of tracking individuals' internet habits and harnessing that data to sell and deliver targeted advertisements based on their web browsing history. NebuAd contracted with internet service providers ("ISPs") to install devices on their networks that monitored ISP subscribers' internet activity and transmitted that data to NebuAd's California headquarters for analysis. That data was used to sell advertising tailored to subscribers' interests, which appeared in place of more generic advertisements on web pages visited by subscribers. The advertising profits were split by NebuAd and its ISP partners.

Plaintiffs are ISP customers who allege their online activities were monitored during trials of this technology by NebuAd and the six ISPs to which they subscribed ("ISP

1  Defendants"). Plaintiffs filed a complaint on November 10, 2008, against NebuAd and the
2  ISP Defendants, asserting that this practice violated federal and state statutes governing the
3  privacy of communications and computer usage. NebuAd filed a motion to dismiss on
4  December 22, 2008; the ISP Defendants moved to dismiss on January 30, 2009. The Court,
5  after allowing time for Plaintiffs to conduct jurisdictional discovery, heard the ISP
6  Defendants' motions on July 27, 2009; they were dismissed for lack of personal jurisdiction
7  on October 6, 2009, leaving NebuAd as the only defendant in the case.
8      In the meantime, on May 13, 2009, NebuAd's board of directors executed an
9  assignment for the benefit of creditors ("ABC"), a business liquidation device under
10 California law that is an alternative to bankruptcy proceedings. NebuAd's counsel moved to
11 withdraw and to stay proceedings on May 18, arguing that they could not continue to
12 represent NebuAd because there was effectively – due to the ABC – no client left to
13 represent. The Court enlarged the time for NebuAd to file a reply in support of its Motion to
14 Dismiss until after its counsel's motions were resolved. The Court allowed counsel to
15 withdraw, but denied the stay, on October 6, 2009. New counsel for NebuAd entered their
16 appearance days later. A reply in support of NebuAd's Motion to Dismiss was filed on
17 November 30, 2009, with a hearing re-noticed for December 14, 2009. Since then, the Court
18 has granted several continuances of this hearing date in light of the parties' settlement efforts.
19 On August 3, 2010, the Court ordered the parties, pursuant to their stipulation, to request a
20 date for further case management conference and a date to calendar Defendant NebuAd,
21 Inc.'s pending motion to dismiss within 30 days of the close of settlement efforts. The parties
22 last settlement conference took place on December 13, 2010. Hearing nothing from the
23 parties by January 14, 2011, the Court set a case management conference for January 31,
24 2011. At the case management conference, the Court gave the parties yet more time to reach
25 a settlement. If they did not settle by March 14, 2011, the Court held, it would hear the
26 pending motion to dismiss on April 4, 2011. The Court invited the parties to submit short
27 supplemental briefs by 4 p.m. on Friday, March 25, 2011. NebuAd submitted nothing;
28 Plaintiffs submitted a declaration containing supplemental materials.

Plaintiffs bring claims for violation of the federal Electronic Communications Privacy Act of 1986 ("ECPA"), 18 U.S.C. § 2510 *et seq.* (Count I); California's Computer Crime Law ("CCCL"), Cal. Pen. Code § 502 (Count II); the federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030 (Count III); and California's Invasion of Privacy Act ("CIPA"), Cal. Pen. Code § 630 *et seq.* (Count IV). Plaintiffs also assert a claim for unjust enrichment (Count VII).[1] NebuAd moves to dismiss the two state claims, Counts II and IV, for violation of the CCCL and the CIPA. NebuAd asserts that the state claims are preempted by the federal ECPA, and that Plaintiffs lack standing to assert claims under the CCCL and the CIPA because they are not (and do not allege to be) California residents.

**LEGAL STANDARD**

Dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6) when a plaintiff's allegations fail "to state a claim upon which relief can be granted." In ruling on a motion to dismiss, the Court must "accept all material allegations of fact as true and construe the complaint in a light most favorable to the non-moving party." *Vasquez v. L.A. County*, 487 F.3d 1246, 1249 (9th Cir. 2007). Courts are not, however, "bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, --- U.S. ----, 129 S. Ct. 1937, 1949-50, 173 L.Ed.2d 868 (2009).

A Rule 12(b)(6) dismissal "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Plausibility does not equate to probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949. "A claim has facial plausibility when the

---

[1] Claims for civil conspiracy (Count VI) and aiding and abetting the alleged statutory violations (Count V) have been dismissed as they were asserted only against the ISP Defendants.

3

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Dismissal of claims that fail to meet this standard should be with leave to amend unless it is clear that amendment could not possibly cure the complaint's deficiencies. *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1296 (9th Cir. 1998).

**DISCUSSION**

NebuAd argues that Plaintiffs do not have standing to assert CIPA and CCCL claims, and that these claims are preempted by the federal ECPA.[2]

**I.  Standing**

NebuAd asserts that Plaintiffs cannot pursue an action under the CIPA and the CCCL because they are not residents of California, and therefore lack standing under the statutes. Plaintiffs counter that they should be permitted to maintain their California statutory claims "because the relevant conduct occurred in California" and because doing so will further California's interest in promoting a fraud-free business climate. Pls.' Response at 5.

Both statutes, by their own language, were enacted to protect "the people of this state" (CIPA) or individuals and entities "within this state" (CCCL). NebuAd relies on this language to argue that Plaintiffs do not have standing under either statute. The "declaration of policy" for the CIPA provides that the "Legislature by this chapter intends to protect the right of privacy of *the people of this state*." Cal. Pen. Code § 630 (emphasis added). The Legislature articulated the intent of the CCCL as follows:

> The Legislature further finds and declares that protection of the integrity of all types and forms of lawfully created computers, computer systems, and computer data is vital to the protection of

---

[2] The supplemental materials submitted by Plaintiffs in support of their opposition appear to have no bearing upon the issues in this motion. Three of them are expert reports or declarations from other cases. Another is an order from the District of Montana in which no questions of standing or preemption are at issue. The final document is a class action complaint from the District of Montana. These documents are irrelevant to the instant motion to dismiss.

4

> the privacy of individuals as well as to the well-being of financial institutions, business concerns, governmental agencies, and others *within this state* that lawfully utilize those computers, computer systems, and data.

Cal. Pen. Code § 502 (emphasis added). NebuAd argues that the Legislature's expressed intention is to protect only "the people of" – and those "within" – California, and thus Plaintiffs have no standing to sue under either statute.

Standing is only conferred on a plaintiff who alleges "'injury in fact,' that is, a sufficiently concrete interest in the outcome of their suit to make it a case or controversy subject to a federal court's Art. III jurisdiction." *Singleton v. Wulff*, 428 U.S. 106, 112, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976). NebuAd does not premise its argument on constitutional principles, however, and casts no doubt on Plaintiffs' standing as a constitutional matter. Rather, NebuAd asserts that Plaintiffs lack standing as a matter of statutory construction. "Standing rules for actions based upon statute may vary according to the intent of the Legislature and the purpose of the enactment." *Angelucci v. Century Supper Club*, 41 Cal. 4th 160, 175, 59 Cal. Rptr. 3d 142, 158 P.3d 718 (2007). The Court is "bound by statutory limitations on standing where they plainly apply." *Midpeninsula Citizens for Fair Housing v. Westwood Investors,* 221 Cal. App. 3d 1377, 1389, 271 Cal. Rptr. 99 (1990).

The question before the Court is exclusively one of statutory interpretation: did the California Legislature intend to limit the right of action under the CIPA and the CCCL to in-state plaintiffs?[3] Such a reading would allow California residents to violate the statutes with impunity so long as their actions targeted non-residents. As the intention of the Legislature controls, this Court must decide whether that body meant to preclude actions from out-of-state plaintiffs against in-state defendants. Neither the parties nor the Court have identified any cases that resolve this issue.

---

[3] Plaintiffs argue that the doctrine on which NebuAd relies is the "presumption against extraterritoriality," which provides that state laws may not be applied to conduct occurring outside its borders – and which does not apply here, as NebuAd's conduct occurred within California. NebuAd denies relying in any way on this doctrine, for the very reason that Plaintiffs' Complaint *does* allege conduct in California. The Court agrees that the presumption is inapplicable.

5

United States District Court
For the Northern District of California

*Kearney v. Salomon Smith Barney*, on which NebuAd relies to show that the CIPA protects only California residents, is of limited value because its facts are opposite those here: the *Kearney* plaintiffs were California residents suing an out-of-state defendant, whereas Plaintiffs here are out-of-state residents suing a California defendant. 39 Cal. 4th 95, 45 Cal. Rptr. 3d 730, 137 P.3d 914 (2006). In *Kearney*, the defendant brokerage firm's Georgia employees recorded telephone conversations with California clients without the knowledge or consent of those clients, who sued the firm for violating the CIPA and California's unfair competition law. The California Supreme Court primarily addressed a choice-of-law question: whether to apply California law, which requires the consent of all parties before a conversation can be lawfully recorded, or Georgia law, under which only one party need consent. The court ultimately chose to apply California law. In reaching that conclusion, the court noted that the statute's purpose – "to protect the right of privacy of the people of this state," *id.* at 119 (quoting Cal. Pen. Code § 630) – "certainly supports application of the statute in a setting in which a person outside California records, without the Californian's knowledge or consent, a telephone conversation of a California resident who is within California." *Id.*

Before tackling the choice-of-law issue, the court addressed – and dismissed – the defendant's arguments that applying California law would violate due process and the commerce clause. The commerce clause would not be offended because only "a business's undisclosed recording of telephone conversations with clients or consumers in California" would be subject to California law, which "would not compel any action or conduct of the business with regard to conversations with non-California clients or consumers." *Id.* at 107. This is the language that NebuAd highlights as supporting its position that a non-California resident cannot bring an action under the CIPA. *Kearney* does clearly establish that a non-California defendant cannot be liable to a non-California plaintiff for violations of the CIPA. However, the California Supreme Court did not address the question at hand: whether a *California* defendant could be liable to non-California plaintiffs under the statute.

6

Plaintiffs turns to other statutory provisions to support their assertion of standing. They point out that the CIPA applies to "any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place *within this state*." Cal. Pen. Code § 631. Since the Complaint alleges that the communications at issue were sent to and from California, Plaintiffs argue that they have the requisite standing under the CIPA. NebuAd responds that section 630 constitutes a "clear statement of legislative intent to limit civil remedies under CIPA," and so Plaintiffs "cherry-picked from the wrong tree." Reply at 3.

NebuAd's observation is a valid one, but it applies to NebuAd's own argument as well. The Court doubts the merit of NebuAd's approach of examining only a statute's statement of legislative intent to determine what limitations it imposes on civil remedies. That is more logically derived from the provisions of statutes governing civil remedies. To that end, section 637.2 – titled "Civil action by persons injured; injunction" – provides that an action under the CIPA can be brought by "*[a]ny person* who has been injured by a violation of this chapter . . . against the person who committed the violation . . . ." Cal. Pen. Code § 637.2. The CCCL, likewise, allows "the owner or lessee of the computer . . . or data who suffers damage or loss by reason of" the statute's violation to "bring a civil action against the violator for compensatory damages and injunctive relief or other equitable relief." Cal. Pen. Code § 502(e).

The Court declines to read the statutes' statements of purpose as a limitation on standing when both statutes expressly allow an action to be brought by "any person" or by an "owner or lessee" without imposing any residency requirements. A legislative purpose that articulates an interest in protecting those within California is not inconsistent with also allowing non-Californians to pursue claims against California residents. To conclude otherwise would mean the California Legislature intended to allow California residents to violate the CIPA and the CCCL with impunity with respect to out-of-state individuals and entities, a result this Court declines to reach.

7

## II. Preemption

NebuAd also argues that Plaintiffs' CIPA and CCCL claims should be dismissed on the basis of preemption. The federal ECPA,[4] according to NebuAd, expressly preempts the state statutes and has "'occupied the field' with respect to the interception of electronic communications." Mot. at 5.

Federal law may preempt state law in three ways: express preemption, field preemption, and conflict preemption.

> First, Congress may preempt state law by so stating in express terms. Second, preemption may be inferred when federal regulation in a particular field is 'so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it.' . . . Third, preemption may be implied when state law actually conflicts with federal law.

*Bank of Am. v. City & County of S.F.*, 309 F.3d 551, 558 (9th Cir. 2002) (internal citations omitted). "Pre-emption fundamentally is a question of congressional intent[.]" *English v. Gen. Elec. Co.*, 496 U.S. 72, 79, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990). "When Congress has considered the issue of pre-emption and has included in the enacted legislation a provision explicitly addressing that issue, and when that provision provides a reliable indicium of congressional intent with respect to state authority, there is no need to infer congressional intent to pre-empt state laws from the substantive provisions of the legislation." *Cipollone v. Liggett Group*, 505 U.S. 504, 517, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992) (internal citations and quotations omitted). Field preemption, which exists in the absence of "explicit pre-emptive language" from Congress, occurs "where the scheme of federal regulation is 'so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it.'" *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98, 112 S.Ct. 2374, 120 L.Ed.2d 73 (1992) ("Our ultimate task in any pre-emption case is to determine whether state regulation is consistent with the structure and purpose of the statute

---

[4] Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 82 Stat. 211, was enacted "to protect effectively the privacy of wire and oral communications." *Bartnicki v. Vopper*, 532 U.S. 514, 523, 121 S.Ct. 1753, 149 L.Ed.2d 787 (2001). Congress passed the ECPA in 1986 to "enlarge[] the coverage of Title III to prohibit the interception of 'electronic' as well as oral and wire communications." *Id.*

8

as a whole."). "'[F]ederal regulation of a field of commerce should not be deemed preemptive of state regulatory power in the absence of persuasive reasons – either that the nature of the regulated subject matter permits no other conclusion, or that the Congress has unmistakably so ordained.'" *R. J. Reynolds Tobacco Co. v. Durham Cnty.*, 479 U.S. 130, 141, 107 S.Ct. 499, 93 L.Ed.2d 449 (1986) (quoting *Fla. Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963)).

NebuAd relies heavily on the reasoning of a court in the Central District of California that found the ECPA preempted a CIPA claim. *Bunnell v. Motion Picture Ass'n of Am.*, 567 F. Supp. 2d 1148, 1154-55 (C.D. Cal. 2007). *Bunnell* (and NebuAd) derive their assertion of express preemption from the following provision of the ECPA:

> The remedies and sanctions described in this chapter with respect to the interception of electronic communications are the only judicial remedies and sanctions for nonconstitutional violations of this chapter involving such communications.

18 U.S.C. § 2518(10)(c). Further, because the "scheme of the ECPA is very comprehensive," the *Bunnell* court concluded that "it is apparent . . . 'that Congress "left no room" for supplementary state regulation.'" *Bunnell*, 567 F. Supp. 2d at 1154. The reasoning of *Bunnell* is unconvincing, however. The quoted passage from the ECPA does not explicitly provide for the preemption of state law, which is the bar that must be met before express preemption may be found. Indeed, a court in this district concluded that this provision was "added to the ECPA for a limited purpose: to prevent criminal defendants from suppressing evidence based on electronic communications or customer records obtained in violation of ECPA's provisions." *In re NSA Telcomms. Records Order Litig.*, 483 F. Supp. 2d 934, 939 (N.D. Cal. 2007). In addition, the mere fact that a federal scheme is comprehensive is insufficient for a finding of field preemption, which "arises only in 'extraordinary' situations." *Id.* at 938 (quoting *Wayne v. DHL Worldwide Express*, 294 F.3d 1179, 1184 (9th Cir. 2002)).

The Court is far more persuaded by the California Supreme Court's contrary holdings that the ECPA does not preempt the CIPA. That court, "[h]aving found no intent by Congress

9

1 to occupy the entire field involving the interception of communications nor any conflict
2 between title III and section 631 that would require the latter to yield under the supremacy
3 clause," held that California "is free to enforce the proscription of section 631." *People v.*
4 *Conklin*, 12 Cal. 3d 259, 272, 114 Cal. Rptr. 241, 522 P.2d 1049 (1974). The California
5 Supreme Court recently reiterated that holding, citing "numerous sister-state and federal
6 decisions that have reached the same conclusion as *Conklin* with regard to the preemption
7 issue," and concluding that "there is no basis for concluding that application of California
8 law is preempted by federal law." *Kearney*, 39 Cal. 4th at 106.

For that reason, this Court concludes that the CIPA and the CCCL are not preempted by federal law.

**CONCLUSION**

For the reasons set forth above, NebuAd's motion to dismiss is DENIED.

**IT IS SO ORDERED.**

Dated: 4/4/11

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT