1  SCOTT A. KAMBER (*pro hac vice*)
   skamber@kamberlaw.com
2  DAVID A. STAMPLEY (*pro hac vice*)
   dstampley@kamberlaw.com
3  KamberLaw, LLC
   100 Wall Street, 23rd Floor
4  New York, New York 10005
   Telephone:    (212) 920-3072
5  Facsimile:    (212) 202-6364
6
7  BRIAN J. PANISH (SBN 116060)
   panish@psblaw.com
8  RAHUL RAVIPUDI (SBN 204519)
   ravipudi@pbslaw.com
9  PANISH, SHEA & BOYLE, LLP
   11111 Santa Monica Boulevard, Suite 700
10 Los Angeles, California 90025
   Telephone:(310) 477-1700
11 Facsimile:(310) 477-1699
12
13 Attorneys for Plaintiffs
   Additional counsel listed on signature pages

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DAN VALENTINE, *et al.*, | No. 3:08-cv-05113 (TEH) (EMC) |
| Plaintiffs, | **PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |
| vs. | |
| NEBUAD, INC., *et al.*, | |
| Defendants. | Hon. Thelton E. Henderson |
| | Date:     Sept. 12, 2011 |
| | Location: Courtroom 12, 19th Fl. |
| |           450 Golden Gate Avenue |
| |           San Francisco, CA 94102 |
| | Time:     3:00 p.m. |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... iii

I. INTRODUCTION ........................................................................................................1

II. SUMMARY OF FACTS ..............................................................................................2

    A. The Litigation ...................................................................................................2

    B. Proposed Settlement .........................................................................................2

        1. The Settlement Class ............................................................................3

        2. The Settlement Fund .............................................................................3

        3. Testimonial Cooperation ......................................................................3

        4. The Release ...........................................................................................3

        5. Plaintiffs' Attorneys Fees and Incentive Awards .................................4

III. PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED ..............................4

    A. The Numerosity Requirement is Satisfied .......................................................5

    B. The Commonality Requirement is Satisfied ....................................................5

    C. The Requirement of Typicality is Satisfied .....................................................6

    D. The Requirement of Adequate Representation is Satisfied .............................6

    E. The Proposed Settlement Class Meets the Requirements of Rule 23(b)(1) ................7

IV. THE COURT SHOULD APPOINT PLAINTIFFS' REQUESTED CLASS COUNSEL ....................................................................................................................7

V. THE COURT SHOULD PRELIMINARILY APPROVE THE PROPOSED SETTLEMENT .............................................................................................................8

VI. PROPOSED PLAN OF CLASS NOTICE ..................................................................10

    A. The Proposed Method of Notice is Reasonably Calculated to Elicit Any Objections on Behalf of the Class ..................................................................10

    B. The Proposed Form of Notice Adequately Informs Class Members of the Settlement and their Right to Object ...............................................................11

    C. Notice of Settlement will be Provided to Appropriate Officials ...................12

VII. CONCLUSION ...........................................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Aguila v. Melkonian Enterprises, Inc.*,
  No. 1:05-cv-00032-OWW, 2006 WL 3199074 (E.D. Cal.) ..................................................... 7

*Amchem Prods. Inc. v. Windsor*,
  521 U.S. 591 (1997) ............................................................................................................... 4

*Armstrong v. Bd. Of Sch. Dirs. Of City of Milwaukee*,
  616 F.2d 305 (7th Cir. 1980) ................................................................................................. 9

*Celano v. Marriot Int'l, Inc.*,
  242 F.R.D. 544 (N.D. Cal. 2007) ........................................................................................... 5

*Davis, et al. v. VideoEgg, et al.*,
  No. 2:10-cv-07112-GW (N.D. Cal. 2011) ............................................................................ 10

*DeLise v. Fahrenheit Entm't*,
  Civ. Action No. CV-014297 (Cal Sup. Ct. Marin Cty. Sept. 2001) ....................................... 9

*Doe v. Perales*,
  782 F. Supp. 201 (W.D.N.Y. 1991) ..................................................................................... 11

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974) ............................................................................................................... 5

*Hanlon v. Chrysler Corp.*,
  150 F.3d .............................................................................................................................. 6, 9

*In Re Clearspring Flash Cookie Litigation*,
  No. 2:10-cv-05948-GW (N.D. Cal. 2011) ............................................................................ 10

*In re DoubleClick, Inc. Privacy Litig.*,
  No. 00 Civ. 0641 (NRB)(S.D.N.Y. 2001) .............................................................................. 9

*In re Inter-Op Hip Prosthesis Liab. Litig.*,
  204 F.R.D. 359 (N.D. Ohio 2001) ......................................................................................... 9

*In re Jackson Lockdown/Mco Cases*,
  107 F.R.D. 703 (E.D. Mich. 1985) ........................................................................................ 7

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
  177 F.R.D. 216 (D.N.J. 1997) ......................................................................................... 11, 12

*In Re Quantcast Advertising Cookie Litigation*,
  No. 2:10-cv-05484-GW (N.D. Cal. 2011) ............................................................................ 10

*In re Syncor ERISA Litig.*,
    516 F.3d 1095 (9th Cir. 2008) .................................................................................... 8, 9

*In re Tableware Antitrust Litig.*,
    484 F. Supps.2d 1078 ..................................................................................................... 8

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) .......................................................................................... 11

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S.Ct. 2541 (2011) ..................................................................................................... 5

**STATUTES**

Class Action Fairness Act, 28 U.S.C. § 1715 ........................................................................ 12

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23(a)(1) ....................................................................................................... 4, 5

Fed. R. Civ. P. 23(a)(2) ........................................................................................................... 5

Fed. R. Civ. P. 23(a)(3) ........................................................................................................... 6

Fed. R. Civ. P. 23(a)(4) ........................................................................................................... 6

Fed. R. Civ. P. 23(b) ............................................................................................................... 4

Fed. R. Civ. P. 23(b)(1) ............................................................................................. 3, 4, 7, 12

Fed. R. Civ. P. 23(c)(2)(A) .................................................................................................... 11

Fed. R. Civ. P. 23(e) ................................................................................................................ 8

Fed. R. Civ. P. 23(e)(2) ........................................................................................................... 9

Fed. R. Civ. P. 23(g) ................................................................................................................ 8

Fed. R. Civ. P. 23(g)(1)(A)(i-iv) ............................................................................................. 7

Fed. R. Civ. P. 23(g)(1)(B) ...................................................................................................... 7

*Manual for Complex Litigation* § 21.632 (4th ed. 2004) ..................................................... 4, 8

*Newberg on Class Actions*, § 11.25, at 38-39 (4th Ed. 2002) .............................................. 8, 9

## I. INTRODUCTION

Plaintiffs filed this suit, on behalf of themselves and a putative nationwide class, in November 2008 against NebuAd, Inc. ("NebuAd" or "Defendant") and a number of Internet Service Providers ("ISPs") alleging violations of the Electronic Communications Privacy Act, the Computer Fraud and Abuse Act, California's Invasion of Privacy Act, California's Computer Crime Law and common law unjust enrichment. This Court dismissed the ISP defendants for lack of personal jurisdiction, leaving NebuAd as the sole remaining defendant in this jurisdiction. Cases have been brought against the dismissed ISP defendants in their home jurisdictions. NebuAd believes it has a number of legal and factual defenses to the claims asserted by Plaintiffs and denies any wrongdoing.

On May 13, 2009, NebuAd (assignment for the benefit of creditors), LLC was appointed as Assignee by NebuAd, pursuant to California law for the purpose of liquidating NebuAd's assets, winding down NebuAd, and distributing the net liquidation proceeds to creditors of NebuAd. NebuAd no longer exists as an actively operating business, and no longer engages in the conduct alleged in the Complaint.

To resolve Plaintiffs' claims, NebuAd has agreed to cause its insurers to pay certain sums in settlement for the benefit of the Settlement Class. NebuAd will also provide testimonial cooperation, through two former officers and directors, for use in cases against other former NebuAd clients. The injunctive relief sought by Plaintiffs in the Complaint with respect to NebuAd is addressed by the cessation of business of the corporation.

Plaintiffs and their counsel believe the proposed settlement (the "Agreement") is in the best interest of the class, and respectfully request that the Court review the negotiated Settlement Agreement—attached as Exhibit A to the accompanying declaration of David A. Stampley and enter an order:

- Granting preliminary approval of the settlement;
- Certifying a mandatory class for settlement purposes only and appointing Dan Valentine as Settlement Class Representative and Plaintiffs' counsel as Class

      Counsel;

- Directing that notice be given to class members in the proposed form and manner; and

- Setting a hearing on whether the Court should grant final approval of the settlement, enter judgment, award attorneys' fees and expenses to Plaintiffs' counsel and grant incentive awards to the Plaintiffs.

(*See* Proposed Order Granting Preliminary Approval of Class Settlement, Exhibit D to the Agreement).

## II.    SUMMARY OF FACTS

### A.    The Litigation

Plaintiffs Dan Valentine, Neil Deering, Kathleen Kirch, Terry Kirch, and Dale Mortensen filed a putative class action lawsuit against Defendants NebuAd and six ISP clients of NebuAd regarding NebuAd's use of a device in the ISP networks to obtain or provide information from or about Plaintiffs and other similarly situated consumers to track them without providing adequate notice or choice. (Dkt. 1.) In October 2009, this Court dismissed the ISP defendants for lack of personal jurisdiction. (Dkt. 166.) Following the dismissal of the ISP defendants, lawsuits were brought against the ISP defendants in their local jurisdictions.

Plaintiffs alleged that the actions of Defendant NebuAd violated the Electronic Communications Privacy Act, the Computer Fraud and Abuse Act, California's Invasion of Privacy Act, and California's Computer Crime Law. (Dkt. 1.) NebuAd disputes that its actions violated any laws. Further, NebuAd no longer exists as a legal entity, assuring that it cannot engage in the conduct at issue.

After earlier, unsuccessful mediation efforts, the parties engaged in arms-length settlement negotiations starting in September 2010, including mediation before U.S. Magistrate Judge Joseph Spero in person and in two, telephonic sessions. (Dkt. 212, 215, 216.) The parties continued negotiations, leading to the proposed settlement presented to the Court.

### B.    Proposed Settlement

After many months of arms-length negotiations and mediation, the parties have success-

fully negotiated an agreement. The details of the Agreement are as follows:

### 1. *The Settlement Class*

The Agreement would provide for a mandatory Settlement Class of all persons in the United States who, from January 1, 2007 to July 1, 2008 were consumers subscribing to the services of certain Internet Service Providers identified in Exhibit A to the Agreement. (Agreement, ¶ I.1) As explained in more detail below, certification of this nationwide class is appropriate pursuant to Rule 23(b)(1), as the agreed-to relief benefits not just Plaintiffs, but similarly situated consumers as well.

### 2. *The Settlement Fund*

To settle Plaintiffs' claims, the proposed settlement will provide a fund of $2,409,509.74 from NebuAd's insurance carriers to be distributed, after costs for settlement administration, taxes, expenses, and advocacy compensation (the "Settlement Fund"), as a *cy pres* donation to a non-profit organization or organizations with the purpose of protecting consumers from misuse and/or unauthorized distribution of their electronic information or of personally identifiable information gathered through use of the Internet.

### 3. *Testimonial Cooperation*

In addition to the Settlement Fund, to settle Plaintiffs' claims, NebuAd's former directors and officers, Robert Dykes and Kira Makagon, agree to provide sworn testimony to Plaintiffs' counsel relating to the allegations in the Complaint, and to testify at the trial of defendants in other actions relating to or arising out of such defendants' or clients' relationships with NebuAd.

### 4. *The Release*

In exchange for the Settlement Fund and Testimonial Cooperation, class members will release "any and all known or unknown claims, demands, actions, suits, causes of action (under the common or civil law, statutes, or regulations, including laws of all jurisdictions outside the United States), damages whenever incurred whether compensatory or exemplary, liabilities of any nature or under any theory whatsoever, including costs, expenses, penalties, and attorneys' fees, in law or equity, that any Releasor, whether or not they object to the settlement, ever had or

now has, directly, representatively, derivatively, or in any capacity, arising out of or related in any way to any conduct, events, or transactions occurring in the course of the Action or arising out of the facts, transactions, events, matters, occurrences, acts, disclosures, statements, misrepresentations, omissions or failures to act regarding NebuAd, Inc.'s deployment of devices, appliances, software, and/or other processes and in processing Internet communications or transmissions from January 1, 2007 to the present. The Agreement does not include any award of damages or restitution to the class members because Plaintiffs and their counsel believe that such relief could not be awarded on a class-wide basis, if at all.

5. *Plaintiffs' Attorneys Fees and Incentive Awards*

The parties did not discuss or agree on any award of attorneys' fees to Plaintiffs' counsel or any incentive award to the Plaintiffs until after agreement had been reached on all other substantive terms of the Settlement. (*See* Stampley Decl.). Defendant does not take a position as to fees. Plaintiffs' counsel shall submit an application for attorneys' fees and expenses, not to exceed thirty (30) percent of the Settlement Fund, to the Court. (Agreement, ¶ II.9.) The Class Representative Plaintiff may apply for an incentive award from the Court in an amount not to exceed $5,000, and each of the other representative Plaintiffs may apply for an award of up to $1,000 to be paid solely from the Settlement Fund. (Agreement, ¶ II.7.E.)

### III. PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED

Prior to granting preliminary approval of a settlement, the Court must determine that the proposed settlement class is a proper class for settlement purposes. *Manual for Complex Litigation* § 21.632 (4th ed. 2004); *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). The Court may certify a class when plaintiffs demonstrate that the proposed class and proposed class representatives meet the following prerequisites of Rule 23(a) of the Federal Rules of Civil Procedure: numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a)(1)-(4). After meeting the strictures of Rule 23(a), the plaintiffs must then demonstrate that the action is maintainable under Rule 23(b). Here the proposed class is maintainable under Rule 23(b)(1).

In determining whether to certify a class, courts do not inquire into the merits of the

plaintiffs' claims. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974).

### A. The Numerosity Requirement is Satisfied

The numerosity prerequisite is met when "the class is so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). To satisfy this requirement, there is no specific number required, nor are plaintiffs required to state the exact number of potential class members. *Celano v. Marriot Int'l, Inc.*, 242 F.R.D. 544, 548 (N.D. Cal. 2007). Generally the numerosity requirement is satisfied when the class comprises 40 or more members. *Id.* at 549. In this case, based on NebuAd's representations and discovery in this litigation, the class is estimated to include tens of thousands of Internet users in the United States, easily satisfying the numerosity requirement.

### B. The Commonality Requirement is Satisfied

The second threshold to certification requires that there be questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011) (quoting *Gen. Tel. Co. of the Southwest v. Falcon,* 457 U.S. 147, 157, 102 S.Ct. 2364, (1982)). The class members' "claims must depend on a common contention," and that common contention must be "of such a nature that it is capable of class-wide resolution- which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*

As alleged in this case, all class members share the common contention of having their personal information diverted to NebuAd, in Plaintiffs' view without their knowledge or consent. This common contention among class members results in common factual and legal questions, including, but not limited to: (1) whether NebuAd, without notice or consent, collected personally identifying information about class members; (2) what NebuAd and the ISP clients did with information collected through the NebuAd appliance; and (3) whether there was proper notice, or any notice, of the operation of the NebuAd device to consumers. Because the determination of the truth or falsity of this common contention will resolve an issue that is central to the validity of each one of the claims asserted in the Complaint in one stroke, the commonality requirement

is satisfied here.

## C. The Requirement of Typicality is Satisfied

Rule 23 next requires that the plaintiffs' claims be typical of those of the class. Fed. R. Civ. P. 23(a)(3). "Under the rule's permissive standards, representative claims are "typical" if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d at 1020.

Here, Defendant's alleged practice of using a device to intercept all data transmitted between the consumer and the Internet is alleged to have resulted in Plaintiffs and the proposed settlement class having their privacy rights violated in breach of federal and state law. It is alleged that the Plaintiffs and each proposed class member were subjected to NebuAd's identical wrongful conduct in a nearly identical manner. As such, Plaintiffs' claims are typical of those of the proposed class and Fed. R. Civ. P. 23(a)(3) is met.

## D. The Requirement of Adequate Representation is Satisfied

The final prerequisite for Rule 23(a) is that the proposed class representatives have and will continue to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This factor requires: (1) that Plaintiffs are represented by qualified and competent counsel and (2) that the proposed representative Plaintiffs do not have conflicts of interest with the proposed class. *Hanlon,* 150 F.3d at 1020.

In this case, Plaintiffs have the same interests as the proposed class members—all have allegedly been wrongfully harmed by Defendant's alleged use of a device to intercept their Internet communications for tracking purposes. Therefore, Plaintiffs have no interests antagonistic to the interests of the proposed class. Further, class counsel are well respected members of the legal community, have regularly engaged in major complex litigation, and have had extensive experience in consumer online privacy class action lawsuits that are similar in size, scope, and complexity to the present case. (*See* Firm Resume of KamberLaw, LLC, a copy of which is attached as Exhibit 2 to the Stampley Decl.). Accordingly, both Plaintiffs and their counsel have and will adequately represent the class.

E.   **The Proposed Settlement Class Meets the Requirements of Rule 23(b)(1)**

Once the subsection (a) prerequisites of Rule 23 are satisfied, Federal Rules of Civil Procedure 23(b)(1) provides that a class action may be maintained where "prosecuting separate actions by or against individual class members would create a risk of: (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." Fed. R. Civ. P. 23(b)(1). Due to the identical action taken by NebuAd to all members of the proposed class, if individuals pursued litigation independently, there is a strong risk of inconsistent rulings. *See Aguila v. Melkonian Enterprises, Inc.*, No. 1:05-cv-00032-OWW, 2006 WL 3199074 at *4 (E.D. Cal.). Further, a determination that NebuAd violated federal law in one case would be dispositive of other cases. *Id.*

Moreover, since NebuAd ceased operation in 2009, it cannot continue the complaint-of conduct and any attendant harms have a finite, temporal limitation. Under these circumstances, a mandatory class is appropriate, especially given the added fact that NebuAd's resources available for relief are limited and diminishing. *Cf. In re Jackson Lockdown/Mco Cases*, 107 F.R.D. 703, 711 (E.D. Mich. 1985) (prison riot was action of limited duration and limited funds were available for relief).

IV.   **THE COURT SHOULD APPOINT PLAINTIFFS' REQUESTED CLASS COUNSEL**

Plaintiffs respectfully request the appointment of Scott A. Kamber and David A. Stampley of KamberLaw, LLC and Rahul Ravipudi of Panish Shea & Boyle LLP as class counsel. Under Rule 23, "a court that certifies a class must appoint class counsel . . . [who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, the Court must consider counsel's: (1) work in identifying or investigating potential claims; (2) experience in handling class actions or other complex litigation, and the types of claims asserted in the case; (3) knowledge of the applicable law; and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i-iv).

As discussed above, proposed class counsel have extensive experience in prosecuting class actions and other complex litigation. (Stampley Decl.; *see also* Exhibit 2.) Further, proposed class counsel have diligently investigated and prosecuted this matter, dedicating substantial resources to the investigation of the claims at issue in the case, and have successfully negotiated the settlement of this matter to the benefit of the class. (Stampley Decl.) Counsel and class representatives, assisted by non-legal experts, spent many months considering legal theories as well as investigating factual and technology-related issues regarding Defendant's alleged use of its device to intercept consumers' Internet communications, and their related lack of adequate notice or choice about NebuAd's actions. (Stampley Decl.) Accordingly, the Court should appoint Plaintiffs' counsel to serve as class counsel for the proposed class pursuant to Rule 23(g).

## V. THE COURT SHOULD PRELIMINARILY APPROVE THE PROPOSED SETTLEMENT

After certifying the settlement class, the Court should preliminarily approve the settlement. The procedure for review of a proposed class action settlement is a well-established two-step process. Fed. R. Civ. P. 23(e); Alba & Conte, 4 *Newberg on Class Actions*, § 11.25, at 38-39 (4th Ed. 2002). The first step is a preliminary, pre-notification hearing to determine whether the proposed settlement is "within the range of possible approval." *Newberg,* § 11.25, at 38-39 (quoting *Manual for Complex Litigation* § 30.41 (3d ed. 1995)); *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1110 (9th Cir. 2008). This hearing is not a fairness hearing; its purpose, rather, is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing. *In re Syncor ERISA Litig.*, 516 F.3d at 1110. Notice of a settlement should be sent where "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supps.2d 1078, 1079 (N.D. Cal 2007). The *Manual for Complex Litigation* characterizes the preliminary approval stage as an "initial evaluation" of the fairness of the proposed settlement made by the court on the basis of written submissions and informal presentation from the settling parties. *Manual for Complex*

*Litigation*, § 21.632 (4th ed. 2004). If the Court finds a settlement proposal "within the range of possible approval," it then proceeds to the second step in the review process—the final approval hearing. *Newberg*, §11.25, at 38-39. The standard of scrutiny for preliminary approval is more relaxed than for final approval. *Armstrong v. Bd. Of Sch. Dirs. Of City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980).

A strong judicial policy exists that favors the voluntary conciliation and settlement of complex class action litigation. *In re Syncor*, 516 F.3d at 1101 (citing *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982)). While the district court has discretion regarding the approval of a proposed settlement, it should give "proper deference to the private consensual decision of the parties." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998). In fact, when a settlement is negotiated at arms' length by experienced counsel, there is a presumption that it is fair and reasonable. *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 359, 380 (N.D. Ohio 2001). Ultimately, the Court's role is to ensure that the settlement is fundamentally fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2).

In this case, there is no question that the proposed settlement is at least within the range of possible approval. The settlement was reached after extensive arms'-length negotiations, including mediation under the supervision of U.S. Magistrate Judge Joseph Spero, extensive discovery, and consultation with technical experts. (Stampley Decl.) The Agreement that was finally reached benefits the class by providing for a *cy pres* donation to a non-profit organization or organizations with the purpose of protecting consumers from misuse and/or unauthorized distribution of their electronic information. This type of formulation for allocating settlement resources, which does not include compensation to members of the at-large class, is consistent with other settlements resolving claims of online privacy violations involving allegations of insufficient notice and choice regarding collection of information. *See, e.g., In re DoubleClick, Inc. Privacy Litig.*, No. 00 Civ. 0641 (NRB)(S.D.N.Y. 2001) (DoubleClick, an Internet ad-serving company, revised its notice, choice, and data collection practices, and conducted a privacy-oriented public information campaign by distributing 300 million Internet banner ads); *DeLise v. Fahrenheit Entm't*, Civ. Action No. CV-014297 (Cal Sup. Ct. Marin Cty. Sept. 2001) (sellers of

interactive music CD updated privacy policies, added warning labels to CDs, and purged previously collected data); *In Re Quantcast Advertising Cookie Litigation*, No. 2:10-cv-05484-GW (N.D. Cal. 2011), *In Re Clearspring Flash Cookie Litigation*, No. 2:10-cv-05948-GW (N.D. Cal. 2011), and *Davis, et al. v. VideoEgg, et al.*, No. 2:10-cv-07112-GW (N.D. Cal. 2011) (settlement of related "Flash cookie" matters in which website defendants agreed to notice provisions and choice mechanisms triggered by certain types of information collection practices).

A comparison of the potential costs and benefits of consummating the Settlement Agreement versus continuing to prosecute this matter requires consideration of a number of factors. These factors include the strength of the Plaintiffs' claims and ability to prevail at trial—in which counsel remain confident—and the relief Plaintiffs anticipate from a successful trial outcome. Countervailing considerations include the legal and factual burdens Plaintiffs would bear in bringing the matter to trial, the defenses Defendant would assert—in which Defendant has expressed continued confidence (Stampley Decl.), the complexities of class action practice, and the risks that inevitably attend litigation, including the risk that Plaintiffs will not ultimately prevail and so will not secure any post-trial relief. Even if successful in prosecuting this matter, Plaintiffs would have forfeited the valuable, additional relief now being offered at Defendant's discretion which could not be compelled from Defendant following trial. The added issue of the insolvency of Defendant also mitigates in favor of earlier resolution.

In advocating for approval of the Settlement Agreement, Plaintiffs' counsel are aided by their collective experience and awareness of the costs and risks described above, and are mindful of the interests of Plaintiffs and the putative class, particularly given the proposed settlement's substantial relief and meaningful benefits. It is apparent that the proposed settlement serves the best interest of class members. Accordingly, this settlement easily falls well within the reasonable range of possible approval.

## VI.   PROPOSED PLAN OF CLASS NOTICE

**A.   The Proposed Method of Notice is Reasonably Calculated to Elicit Any Objections on Behalf of the Class**

When the named parties of a class action reach a proposed settlement, the court must di-

rect notice in a reasonable manner to class members who would be bound by the proposal. Fed. R. Civ. P. 23(c)(2)(A), (e). The mechanics of the notice process are left to the Court's discretion, subject only to the broad reasonableness standard of due process, which requires that the notice be reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the proposed settlement and afford them an opportunity to present objections. *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 177 F.R.D. 216, 231 (D.N.J. 1997). In evaluating a notice program, therefore, the relevant question is "whether the class as a whole had notice adequate to flush out whatever objections might reasonably be raised to the settlement." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993).

In light of the fact that there are likely tens of thousands of class members, and these class members are Internet users spread throughout the United States, the parties have agreed on providing notice through publication on selected Internet websites as well as a dedicated settlement website. (Settlement Agreement, II.3.) Some courts faced with a similar calculus, involving no individual monetary recovery and a very large class, have determined that notice to the class is not required at all. *See e.g. Doe v. Perales*, 782 F. Supp. 201, 206-207 (W.D.N.Y. 1991) ("There are, however, circumstances in which notice is unnecessary. In my view, this is one of those circumstances . . . there is no monetary recovery at issue here, hence there is virtually no potential for the named plaintiffs to benefit from the settlement at the expense of the interests of the rest of the class . . . Finally, there is no evidence whatsoever of any collusion between the plaintiffs named to represent the class and the defendants.")

Under all the circumstances of this proposed settlement, where the need for notice is minimal and direct mail notice is impracticable, the parties respectfully submit that the proposed method of disseminating notice is appropriate.

**B.    The Proposed Form of Notice Adequately Informs Class Members of the Settlement and their Right to Object**

Notice of a proposed settlement must inform class members (1) of the nature of the pending litigation; (2) of the settlement's general terms; (3) that complete information is available from the court files or another source, and (4) that any class member may appear and be heard at

the Fairness Hearing. *In re Prudential*, 177 F.R.D. at 230 (citing 2 Newberg on Class Actions § 8.32 (3d ed. 1992). The proposed notice meets these requirements. (Agreement, Ex. B, C.) The Internet notice provides neutral, plain-language information to class members about the lawsuit, the proposed settlement and the right to object. It also directs class members to the Settlement website, where they can review the full Settlement Agreement (Agreement, Ex. B.)

Plaintiffs therefore request that the Court approve the form of notice agreed to by the parties and direct that notice be disseminated to the Settlement Class as proposed.

**C.     Notice of Settlement will be Provided to Appropriate Officials**

Notice of the proposed Agreement will also be provided to the appropriate Federal and State officials of all 50 states, as required by the Class Action Fairness Act, 28 U.S.C. § 1715. (Agreement, II.3.B.)

### VII.   CONCLUSION

For the foregoing reasons, the parties respectfully request that the Court enter the accompanying Proposed Order granting preliminary approval of the proposed settlement, certifying the proposed settlement class pursuant to Rule 23(b)(1), and directing dissemination of notice to the class in the proposed form and manner.

Dated: August 15, 2011                    Respectfully submitted,
                                          KAMBERLAW, LLC

                                          s/David A. Stampley
                                          David A. Stampley

                                          SCOTT A. KAMBER (*pro hac vice*)
                                          skamber@kamberlaw.com
                                          DAVID A. STAMPLEY (*pro hac vice*)
                                          dstampley@kamberlaw.com
                                          KamberLaw, LLC
                                          100 Wall Street, 23rd Floor
                                          New York, New York 10005
                                          Telephone:(212) 920-3072
                                          Facsimile: (212) 202-6364

                                          BRIAN J. PANISH (SBN 116060)
                                          panish@psblaw.com
                                          RAHUL RAVIPUDI (SBN 204519)

|   |   |
|---|---|
| 1 | ravipudi@pbslaw.com |
|   | PANISH, SHEA & BOYLE, LLP |
| 2 | 11111 Santa Monica Boulevard, Suite 700 |
|   | Los Angeles, California 90025 |
| 3 | Telephone:(310) 477-1700 |
|   | Facsimile:(310) 477-1699 |

ravipudi@pbslaw.com
PANISH, SHEA & BOYLE, LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
Telephone:(310) 477-1700
Facsimile:(310) 477-1699

JOSEPH H. MALLEY (*pro hac vice*)
Law Office Of Joseph H. Malley, P.C.
1045 North Zang Boulevard
Dallas, Texas 75208
Telephone:(214) 943-6100
Facsimile: (214) 943-6170

DAVID C. PARISI (SBN 162248)
dcparisi@parisihavens.com
SUZANNE HAVENS BECKMAN (SBN 188814)
shavens@parisihavens.com
Parisi & Havens LLP
15233 Valleyheart Drive
Sherman Oaks, California 91403
Telephone:(818) 990-1299
Facsimile:(818) 501-7852

Attorneys for Plaintiffs, individually and on behalf of a Class of similarly situated individuals