SCOTT A. KAMBER (*pro hac vice*)
skamber@kamberlaw.com
DAVID A. STAMPLEY (*pro hac vice*)
dstampley@kamberlaw.com
KAMBERLAW, LLC
100 Wall Street, 23rd Floor
New York, New York 10005
Telephone: (212) 920-3072
Facsimile: (212) 202-6364

RAHUL RAVIPUDI (SBN 204519)
ravipudi@pbslaw.com
PANISH, SHEA & BOYLE, LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
Telephone: (310) 477-1700
Facsimile: (310) 477-1699

Plaintiffs' Class Counsel

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAN VALENTINE, *et al*., <br><br> Plaintiffs, <br><br> vs. <br><br> NEBUAD, INC., *et al*., <br><br> Defendants. | No. 3:08-cv-05113 (TEH) <br><br> **DECLARATION OF SCOTT A. KAMBER IN SUPPORT OF PLAINTIFFS' MOTION FOR APPROVAL OF ATTORNEYS' FEES AND COSTS** <br><br> Hon. Thelton E. Henderson. <br><br> Date: Dec. 19, 2011 <br> Location: Courtroom 12, 19th Fl. <br> 450 Golden Gate Avenue <br> San Francisco, CA 94102 <br> Time: 10:00 a.m. |

I, Scott A. Kamber, declare as follows:

Introduction

1. As part of preliminary approval of the proposed settlement I was appointed Class Counsel in the above-captioned litigation. I make this declaration in support of Plaintiffs'

1  Motion for Approval of Attorneys' Fees and Costs in this action. I have actively participated in
2  all aspects of this litigation, including negotiation of the settlement, management of the efforts
3  of the various firms working on behalf of Plaintiffs to obtain this settlement for the class, and
4  am fully familiar with the proceedings in the matter.. If called upon, I am competent to testify
5  that the following facts are true and correct to the best of my knowledge, information and
6  belief.

7      2.    For the past three years, Plaintiffs have litigated, mediated, and negotiated through
8  a complex, procedural minefield to pursue claims again NebuAd, a now-defunct entity, and the
9  Internet service providers, ("ISPs") that were its client base. Those efforts culminated in the
10 presenting for preliminary approval a settlement including the relief of the limits of
11 Defendant's insurance policies as well as assuring the cooperation of former officers of
12 Defendant whose testimony is expected to benefit the class's efforts to recover against the
13 remaining ISP defendants in cases across the country.

14     3.    The result obtained in this case did not come easily. In fact, as detailed below, the
15 total attorney time in this case totaled more than 1907 hours for a collective lodestar of
16 $970,679.50. Thus, Plaintiffs here seek a fee for counsel that is less than the cumulative
17 lodestar of their counsel, representing 30 percent of the monies being paid in the proposed
18 settlement.

19 History of Counsel's Efforts

20     4.    In November 2008, following substantial pre-complaint investigation over almost
21 six months, Plaintiffs filed a complaint on behalf of themselves and similarly situated
22 individuals against NebuAd and a number of its clients—ISPs that provide broadband Internet
23 services to Plaintiffs and class members. Plaintiffs alleged NebuAd devices installed in the
24 ISPs' networks intercepted, analyzed, and modified class members' Internet communications
25 and transmissions, without notice or consent and, in addition, that Defendants installed tracking
26 code on Plaintiffs and class members' computers, in violation of the Electronic
27 Communications Privacy Act, the Computer Fraud and Abuse Act, California's Invasion of
28

Privacy Act, California's Computer Crime Law, and giving rise to a claim for Unjust Enrichment.

5. At all times, Defendant NebuAd has denied and continues to deny that it engaged in any wrongdoing or committed, threatened to commit, or attempted to commit any wrongdoing of any kind, including that alleged in the complaint in this matter. Defendant contends it acted properly and therefore denies the Plaintiffs and putative class members are entitled to any form of damages based on the conduct alleged in the complaint. Defendant maintains and contends it has meritorious defenses to all claims alleged in the Complaint and that it was and is prepared to defend itself vigorously against all claims asserted in this litigation.

6. From December 1998 through January 1999 several motions to dismiss were filed by NebuAd and the ISP defendants. The ISP Defendants sought to dismiss on jurisdictional grounds. Thus, shortly after the filing of the ISP motions to dismiss, Plaintiffs sought jurisdictional discovery. Ultimately Plaintiffs obtained discovery from NebuAd on the jurisdictional issues.

7. Complicating litigation of this matter, on May 13, 2009, NebuAd's Board of Directors executed an assignment for the benefit of creditors, declaring the company insolvent and seeking to liquidate assets. NebuAd's assets and documents were assigned in trust to a fiduciary assignee, NebuAd, LLC. Each time the parties began discussions regarding settlement, unique issues arose regarding who was directing the litigation, who had the power to settle, who had authority to assign insurance policies, amongst others.

8. Beginning in January 2009, representatives of the parties had numerous discussions regarding settlement both telephonically and in person. These efforts culminated in private and confidential mediation of the matter, mediated before a JAMS mediator, the Hon. William J. Cahill (Ret.). After a full day mediation, the settlement discussions broke off without success.

9. In October 2009, the Court dismissed the ISP defendants for lack of personal jurisdiction. (Dkt. 166.) Class actions were then brought against the individual ISP defendants

1  in their respective home jurisdictions.

2      10.    At the same time, the Court granted Defendant's counsel's motion—which
3  Plaintiffs opposed—to withdraw as counsel. (Dkt. 167.)

4      11.    Thereafter, Plaintiffs' efforts were focused on obtaining discovery and the review
5  of that discovery. Many complex issues involving the preservation of electronic media were
6  addressed and several discovery-related motions were required before Judge Chen. Ultimately,
7  Plaintiffs served and received responses to discovery requests totaling approximately 6,600
8  pages of documents from NebuAd. Also, through this period, Plaintiffs counsel reviewed and
9  evaluated the insurance policies of NebuAd in advance of further settlement discussions.

10     12.    On December 17, 2009, Defendant, represented by new counsel, and with
11 Plaintiffs' counsel's participation, deposed a former NebuAd employee to ascertain the status
12 of other potentially responsive discovery materials, including NebuAd devices, themselves. In
13 cases against the ISP defendants in their respective jurisdictions, Plaintiffs took depositions of
14 ISP personnel involved in NebuAd deployments and submitted technical experts' analyses of
15 relevant NebuAd and ISP processes, based on documents produced and deposition testimony.
16 In addition, Plaintiffs conferred telephonically with former NebuAd officers and their legal
17 representative, who continued to participate in the settlement process. Plaintiffs engaged in a
18 detailed analysis of the patents and evidence regarding other corporate assets and were
19 persuaded of NebuAd's lack of assets, save for its insurance policies. Plaintiffs feel certain that,
20 if the case were litigated to resolution, the wasting policies would leave one, limited policy
21 available for monetary relief, thus resulting in further litigation costs but ultimately little
22 recovery that would provide a meaningful benefit to the class.

23     13.    In June 2010, the parties informed the Court of their interest in renewing
24 discussions to explore possible resolution. On September 22, 2010, the first mediation session
25 was conducted by U.S. Magistrate Judge Joseph Spero in San Francisco, California, which was
26 attended by counsel for the parties; Plaintiff, Mr. Valentine; and a legal representative of certain
27 of NebuAd's former directors and officers. Two additional telephonic conferences were
28 conducted by Magistrate Judge Spero. Many of the complex issues discussed above were

1  stumbling blocks that were ultimately resolved through mediation and subsequent discussions
2  between the parties over the course of nearly six months.  The parties subsequently reached an
3  agreement in principle to settle the litigation, after which their continued efforts led to the
4  proposed settlement presented to the Court.

5     14.    At no point prior to reaching agreement on the substantive terms of the
6  Agreement did the parties discuss the amount of any incentive fees to the representative
7  Plaintiff or attorney fee payments to Class Counsel.

8     15.    On August 16, 2011, having reached full agreement on terms and conditions of a
9  settlement, the parties sought the Court's preliminary approval of the Settlement Agreement.
10  (Dkts. 233-235.)  On September 20, 2011, this Court issued an Order granting preliminary
11  approval. (Dkt. 239.)

12    16.    As set forth in correspondence filed electronically with the Court and attached
13  hereto as Exhibit 1, Plaintiffs designate *cy pres* recipients consistent with the terms and useage
14  set forth in the settlement agreement.  Each of the nominated organizations does work that has
15  a strong nexus to the issues at stake in this litigation and Plaintiffs belief that this *cy pres* will
16  result in a substantial and tangible benefit to the class.  As set forth at the preliminary approval
17  hearing, the distribution of the limited recovery fund to the sizeable class would be unrealistic
18  and result in a negligible distribution to each class members.  Thus, in my opinion and that of
19  the representative Plaintiffs, the *cy pres* designations will provide a much more meaningful
20  benefit to the class.

21    17.    To my knowledge based on diligent inquiry, neither class counsel nor any
22  Plaintiff has any conflict with any of the designated *cy pres* recipients.  None of the designated
23  funds would provide any personal financial benefit to Plaintiffs' counsel or Plaintiffs, who
24  neither have ownership of nor controlling interest in any of the recipient organizations.

25  Time and Expenses

26    18.    With Plaintiffs' application for preliminary approval, a copy of KamberLaw's
27  firm resume (Dkt. 235-1) was provided to the Court and still accurately reflects the
28  qualifications and capabilities of Class Counsel.

19. Attached hereto as Exhibits 2, 3, and 4 are, respectively, the declarations of Rahul Ravipudi of Panish Shea and Boyle; David Parisi of Parisi and Havens; and Joseph Malley of the Law Offices of Joseph A. Malley. Each of these declarations set forth the hours, lodestar. and expenses incurred by each of these firms in the prosecution of this matter.

20. The hours and lodestar of KamberLaw as kept in the ordinary course of business are set forth in the chart below:

|  | Hours | Hourly Rate | Lodestar |
|---|---|---|---|
| Scott A. Kamber (Partner) | 374 | $580 | $216,920.00 |
| David A. Stampley (Partner) | 508 | $520 | $264,160.00 |
| Dana B. Rubin (Senior Associate) | 65 | $430 | $27,950.00 |
| Deborah Kravitz (Senior Counsel) | 19 | $520 | $9,880.00 |
| Grace A. Parasmo (Associate) | 14 | $375 | $5,250.00 |
| TOTAL | 980 |  | $524,160.00 |

21. The expense of KamberLaw as kept in the ordinary course of business is set forth in the chart below. KamberLaw does not seek reimbursement herein for phone, copies, fax, or express mail.

| | |
|---|---|
| Expert Expenses | $30,959 |
| Travel Expenses (air and hotel) | $23,544 |
| Travel Expenses (Panish firm) | $1,850 |
| Transcription and discovery expense | $7,325 |
| TOTAL | $63,678 |

22. Attached hereto as Exhibit 5 is a chart detailing the attorney time each of the participating firms expended on each of the major litigation tasks. This chart is based upon my own personal knowledge and firm records with respect to KamberLaw and information obtained from each of the participating firms included in this fee application.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: November 1, 2011         s/Scott A. Kamber
       New York, New York       Scott A. Kamber
                                KAMBERLAW, LLC
                                100 Wall Street, 23rd Floor
                                New York, New York 10005