SCOTT KAMBER (*pro hac vice*)
skamber@kamberlaw.com
DAVID A. STAMPLEY (*pro hac vice*)
dstampley@kamberlaw.com
KAMBERLAW, LLC
100 Wall Street, 23rd Floor
New York, New York 10005
Telephone: (212) 920-3072
Facsimile:  (212) 202-6364

RAHUL RAVIPUDI (SBN 204519)
ravipudi@psblaw.com
PANISH, SHEA & BOYLE, LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
Telephone:  (310) 477-1700
Facsimile:   (310) 477-1699

Plaintiffs Class Counsel
Additional counsel listed on signature page

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DAN VALENTINE, *et al*.<br><br>　　　　　　Plaintiffs,<br><br>v.<br><br>NEBUAD, INC., *et al.*,<br><br>　　　　　　Defendants. | Case No. 08cv05113 (TEH)<br><br>**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT FOR APPROVAL OF ATTORNEYS' FEES AND COSTS**<br><br>Hon. Thelton E. Henderson<br><br>Date:　　　December 19, 2011<br>Location:　Courtroom 12, 19th Floor<br>　　　　　　450 Golden Gate Avenue<br>　　　　　　San Francisco, CA 94102<br>Time:　　　10:00 a.m. |

This class action arose from the actions of Defendant NebuAd and its Internet Service Provider ("ISP") clients in their use of NebuAd-provided devices in the ISPs' networks to intercept the Internet communications of the ISPs' customers—Plaintiffs and other similarly

situated consumers—doing so without providing adequate notice or obtaining consent, and to use the intercepted information to track those customers' Internet activities and maintain profiles about them. (Dkt. 1.) Plaintiffs Dan Valentine, Neil Deering, Kathleen Kirch, Terry Kirch, and Dale Mortensen filed a class action against Defendants NebuAd and six of NebuAd's ISP clients. In October 2009, this Court dismissed the ISP defendants for lack of personal jurisdiction. (Dkt. 166.) Following the dismissal of the ISP defendants, lawsuits were brought against the ISP defendants in their local jurisdictions.

Plaintiffs alleged that the actions of Defendant NebuAd violated the Federal Electronic Communications Privacy Act, the Federal Computer Fraud and Abuse Act, California's Invasion of Privacy Act, and California's Computer Crime Law. (Dkt. 1.) Following several mediation sessions before U.S. Magistrate Judge Joseph Spero (Dkt. 212, 215, 216), the parties reached a settlement, which was presented to this Court. (Dkt. 235.) On September 20, 2011, this Court issued an Order granting preliminary approval to the settlement agreement (the "Settlement Agreement"). (Dkt. 239.)  The details of the tasks performed in support of this litigation are set forth in the accompanying declaration of Scott A. Kamber at paragraphs 3-16.

Plaintiffs now request that this Court grant Class Counsel the agreed upon attorneys' fees of $722,853 and further expense reimbursement of $63,678.

## I.    NATURE OF THE CASE

In November 2008, following extensive research and investigation, Plaintiffs filed a complaint captioned *Dan Valentine, et al. v. NebuAd, Inc., et al.*, No. 08-cv-05113, alleging claims for damages, injunctive and declaratory relief arising out of Defendants' failure to provide adequate notice or choice prior to tracking their Internet activities and intercepting their communications. (Dkt. 1.) Plaintiffs filed their Complaint, individually and on behalf of a class of similarly situated ISP subscribers. The Complaint alleged claims for violations of the federal Electronic Communications Privacy Act, the federal Computer Fraud and Abuse Act, California's Invasion of Privacy Act, California's Computer Crime law and common law unjust enrichment.

(Dkt. 1.) NebuAd disputes that its actions violated any laws. Further, NebuAd no longer exists as a legal entity, assuring that it cannot engage in the conduct at issue in the future.

There has been significant investigation and research, including consultation with experts, review of documents in connection with mediation and negotiations, and depositions. There have been months of negotiations that included several in-person and telephonic mediation sessions. Following an extended period of negotiations, Plaintiffs and NebuAd were able to finalize and memorialize the terms of a proposed Settlement Agreement for which they currently seek final approval from this Court. ( Kamber Decl. at ¶ 11.)

By the terms of the Settlement Agreement, the total benefit of the settlement made available to the Class is $2,409,509.74 from NebuAd's insurance carriers to be distributed as a *cy pres* donation to organizations with the purpose of protecting consumers from misuse and/or unauthorized distribution of their electronic information, and to be used for costs for settlement administration, taxes, expenses and advocacy compensation, not to exceed thirty percent, or $722,853, plus costs, as may be awarded by the Court. The details of the Settlement Agreement and the history of the litigation is set forth at length in the papers supporting Preliminary Approval of the Settlement. (Dkt. 235.)

## II.   AGREED-UPON ATTORNEYS' FEES AND EXPENSES ARE REASONABLE

### A.   California Law Governs Calculation of Plaintiffs' Attorneys' Fees

Although the Parties have agreed that the attorneys' fees and expenses will not exceed thirty percent (30%) of the Settlement Fund, the Court has discretion over the amount to be awarded. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). In this matter, Plaintiffs claims are governed by California state law, which therefore also governs the methodology of calculating a fee award. *Champion Produce, Inc. v. Ruby Robinson Co. Inc.*, 342 F.3d 1016 (9th Cir. 2003) (held that state law governs calculation of attorneys' fees); *see also Vizcaino v. Microsoft Corp.*, 209 F.3d 1043, 1047 (9th Cir. 2002) ("Because Washington law governed the claim, it also governs the award of fees.")

It is well established that in class actions governed by California law, the primary method for establishing the amount of reasonable attorneys' fees is the lodestar method. *Lealao v. Beneficial Cal., Inc.*, 82 Cal. App.4th 19, 26 (1st Dist. 2000). However, where, as here, the value to the Settlement Class can be quantified, a percentage-based fee analysis can be used to augment the lodestar rate to "ensure that the fee awarded is within the range of fees freely negotiated in the legal marketplace in comparable litigation." *Id.* at 50-51.

To demonstrate the validity of Plaintiffs' requested fee and cost reimbursement, Plaintiffs have provided an analysis of both the percentage-based analysis and the lodestar formula below.

**B.     Lodestar Method Calculation Shows Reasonableness of Plaintiffs' Request**

    **1.     Class Counsel Reasonably Incurred a Lodestar Approaching $1,000,000**

The lodestar figure, or "touchstone," is based on the total number of reasonable attorney hours expended multiplied by a reasonable hourly rate for each attorney involved in the litigation. *Lealao*, 82 Cal. App.4th at 26; *Friend v. Kolodzieczak*, 72 F.3d 1386, 1389 (9th Cir. 1995). Absent extreme circumstances, Class Counsel is entitled to be compensated for "all hours reasonably expended." *Hensley*, 461 U.S. at 431 (1983). It is proper to calculate attorneys' fees at prevailing rates to compensate for delay in receipt of payment. *Vizcaino,* 290 F.3d at 1051. Further, the standard lodestar formula is not limited to this initial mathematical calculation and may be enhanced with a multiplier upon consideration of a variety of factors. *Lealao*, 82 Cal. App. 4th at 41 (quoting *Press v. Lucky Stores, Inc.*, 34 Cal. 3d 311, 322 (1983)).

//

As supported by the attached declarations, the following chart sets forth Class Counsel's hours worked in furtherance of this litigation and settlement on behalf of the Plaintiffs and Class:

| FIRM/ATTORNEY | HOURS | HOURLY RATE | LODESTAR |
|---|---|---|---|
| **KamberLaw, LLC** | | | |
| Scott A. Kamber (Managing Member) | 374.0 | $580 | $216,920.00 |
| David A. Stampley (Partner) | 508.0 | $520 | $264,160.00 |
| Dana B. Rubin (Senior Associate) | 65.0 | $430 | $27,950.00 |
| Deborah Kravitz (Of Counsel) | 19.0 | $520 | $9,880.00 |
| Grace A. Parasmo (Associate) | 14.0 | $375 | $5,250.00 |
| **KamberLaw Subtotal** | 980.0 | | $524,160.00 |
| **Law Offices of Joseph H. Malley, P.C.** | | | |
| Joseph Malley (Managing Member) | 358.5 | $525 | $188,212.50 |
| Jennifer Valdez (Paralegal) | 130.0 | $150 | $19,500.00 |
| **Joseph H. Malley Subtotal** | 488.5 | | $207,712.50 |
| **Panish, Shea & Boyle LLP** | | | |
| Rahul Ravipudi (Partner) | 350.0 | $500 | $175,000.00 |
| Pete Kaufman (Partner) | 50.0 | $450 | $22,500.00 |
| Mary Carney (Paralegal) | 10.0 | $150 | $1,500.00 |
| **Panish, Shea & Boyle Subtotal** | 410.0 | | $199,000.00 |
| **Parisi & Havens, LLP** | | | |
| David C. Parisi (Partner) | 28.2 | $510 | $14,382.00 |
| Azita Moradmand (Associate) | 1.8 | $250 | $450.00 |
| Suzanne Havens (Partner) | 0.7 | $490 | $343.00 |
| **Parisi & Havens Subtotal** | 30.7 | | $15,175.00 |
| **TOTAL HOURS/LODESTAR** | **1,907.2** | | **$970,679.50** |

The attorneys performing work on this litigation are billed at rates that correlate to their respective experience, that are reasonable in the New York, California, and Texas legal markets. (Kamber Decl. at ¶ 19.) Although several lawyers were involved in the litigation of this matter, each made conscious effort to minimize the duplication of work and such efforts were coordinated

through KamberLaw.  Further, the hours submitted were reviewed and any unnecessary hours or duplicative hours have been adjusted.  Thus, Class Counsel's base, or touchstone, lodestar amount is $970,679.50.

The standard lodestar formula is not limited to the initial mathematical calculations and may be enhanced by a multiplier. *Lealao*, 82 Cal. App.4th at 41. Indeed, in *Graham v. Daimler-Chrysler Corp.*, 34 Cal.4th 553, 579 & 582 (2004), the Court held that while the "lodestar is the basic fee for comparable legal services in the community, it may be adjusted by the court" based on various factors, including the novelty and difficulty of the questions involved, the skill displayed in presenting them, the contingent nature of the case, and whether an exceptional effort produced an exceptional result. *See Serrano v. Priest*, 20 Cal.3d 25 (1977) (*Serrano III")* (listing additional factors available for consideration in adjusting a base lodestar). California and other courts around the nation, including the Ninth Circuit, apply lodestar multipliers generally ranging from 2-4. *Wershba v. Apple Computer, Inc.*, 91 Cal. App.4th 224, 255 (2001). In the instant case, Plaintiffs are requesting less than a multiplier of 1. The review of the factors below demonstrates that this request is clearly within the range of reasonableness.

    a. *Novelty and difficulty of the questions presented:* This action was complex on all fronts. The case had a number of legal pitfalls, including the issue of actual harm and the issue of liability. ( Kamber Decl. at ¶¶ 3-16) Further, the technical aspects of the case required a substantial commitment of time, expense and skill from Class Counsel in order to fully pursue the Class claims. (Kamber Decl. at ¶¶ 3-16) There was also the additional complication of the dissolution of Defendant NebuAd as a legal entity.

    b. *Contingent nature of the action:* Lodestar enhancement for contingent risk accounts for the possibility that the attorney will not receive payment if the suit does not succeed, and therefore constitutes earned compensation that is "intended to approximate market-level compensation for such services, which typically include a premium for the risk of nonpayment or delay in payment of attorneys' fees." *Ketchum v. Moses*, 24 Cal.4th 1122, 1138 (2001). Further, contingency risk is used as a basis for a multiplier to "entice competent counsel to undertake

difficult public interest cases." *San Bernardino Valley Audobon Soc'y v. San Bernardino*, 155 Cal. App.3d 738, 755 (1984).

Class Counsel undertook this litigation on a wholly contingent basis. There was no guarantee of success and taking on this litigation required Class Counsel to commit to advancing substantial out of pocket expenses. (Kamber Decl. at ¶ 3.) Moreover, the dismissal of the ISP defendants and the necessity to pursue the ISP defendants in their local jurisdictions, added further risk to Plaintiffs' counsel. The dissolution of NebuAd also added to the risk of nonpayment.

*c.*   *Result obtained on behalf of Class*: As discussed above and in the Settlement Agreement, the total value of the Settlement Fund was $2,409,509.74. In addition, the Class receives testimonial cooperation for other actions arising out of the allegations in the Complaint. There are currently a number of actions pending against the ISP defendants arising from the allegations in the Complaint.

As Plaintiffs' claims are untested, and the actual harm to Class members was at issue, Class Counsel agreed to commence this litigation knowing they would face significant opposition. Analysis of novel issues, significant investigation—including consultation with experts at an early stage, and careful and extended negotiation of the final Settlement Agreement—were required to ensure maximum benefit to the Class, and that is, in fact, what the Class received. Accordingly, Counsels' base lodestar of $$970,679.50 translates to a multiplier of less than 1.

**C.   Percentage-of-Fund Calculation Supports the Reasonableness of Plaintiffs' Fee Request**

A district court may use either the lodestar or the percentage of the fund method evaluation in common fund cases such as this. *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000). Here, an analysis of the request by the percentage of the fund method is helpful in confirming that the requested lodestar award is reasonable.

Plaintiffs' requested fee of 722,853 is which is an amount equal to 30% of the total settlement value. A relevant factor when awarding fees is whether the amount is within the range typically associated with cases of its kind. *Vizcaino*, 290 F.3d at 1048-50. Here, a 30% fee is not

excessive but rather commensurate with the median rate for attorneys' fee awards in class actions, which ranges from 27 to 30 percent. *In re DJ Orthopedics Inc. Sec. Litig.*, No. 01-cv-2238-K (RBB), 2004 WL 1445101 *7 (S.D. Cal. June 21, 2003), citing Thomas E. Willging, Laurel L. Hopper, and Robert J. Niemic, "Empirical Study of Class Actions in Four Federal District Courts: Final Report to Advisory Committee on Civil Rules," at 69 (Federal Judicial Center 1996). Although the 9th Circuit often this range as a benchmark, higher percentages have been supported based on the circumstances of the particular cases. *See In re Informix Corp. Sec. Litig.*, No. 97-1289 (N.D. Cal., Nov. 23, 1999) (Breyer, J.) (30 percent: $40 million fee, $137 million fund); *Razilov v. Nationwide Mut. Ins. Co., et al.*, 2006 WL 3312024 (D. Or. 2006) (Brown, J.) (30 percent: $5.77 million fee, $19.25 million fund); *In re Nat'l Health Labs. Sec. Litig.*, Nos. 92-1949 & 93-1694 (S.D. Cal., Aug. 15, 1995) (Brooks, M.J.) (30 percent: $19 million fee, $64 million fund); *In re Melridge, Inc. Sec. Litig.*, No. 87-1426 (D. Ore. Mar 19, 1992, Nov. 1, 1993, and April 15, 1996) (Frye, J.) (37.1 percent: $20 million fee, $54 million fund); and *Hernandez v. Kovacevich*, 2005 WL 2435906 (E.D. Cal. 2005) (Wagner, J.) (33.3 percent: $795,000 fee, $2.5 million fund).

Plaintiffs' requested attorneys' fees and cost award is also reasonable when compared to customary private contingent fee agreements, which usually range between 30% and 40% of the recovery. *See Blum v. Stenson*, 465 U.S. 886, 904 (1984) ("In tort suits, and attorney might receive one-third of whatever amount the plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery"); *In re M.D.C. Holdings Sec. Litig.*, [1990 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 95,474, at 97,490 (S.D. Cal. 1990) ("In private contingent litigation, fee contracts have traditionally ranged between 30% to 40% of the total recovery"). Thus, customary contingent fee agreements obtained in the private marketplace, which range between 30% to 40% of the money recovered, also validate the percentage fee requested in this case.

D.   **Plaintiffs' Request for Reimbursement of Extended Costs is Reasonable**

In addition to their time, Counsel have expended $63,678 in reimbursable expenses, such as expert consulting charges, travel, and other similar expenses. (Kamber Decl. at ¶ 20.) These are

the types of expenses routinely charged to hourly paying clients, were incurred in the conduct of the litigation, and are reasonable. In fact, here counsel did not seek reimbursement of copying costs, express mail, faxes or telephone calls.  (Kamber Decl. ¶ 20). Costs that are of the type typically billed by attorneys to paying clients in the marketplace should be reimbursed. *Harris v. Marhoefer,* 24 F.3d 16, 19 (9th Cir. 1994) ("Harris may recover as part of the award of attorney's fees those out-of-pocket expenses that "would normally be charged to a fee paying client'" (citation omitted); *In re Media Vision Tech. Sec. Litig.*, 913 F.Supp. 1362, 1366 (N.D.Cal. 1996); *Bracher v. Bray-Doyle Indep. Sch. Dist. No. 42*, 8 F3d. 722, 725-26 (10th Cir. 1993) (expenses recoverable if customary to bill clients for them)). Accordingly, Counsel requests that the Court award litigation costs in the amount of  $63,678.

# III. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully ask that the Court approve the agreed upon attorneys' fees and expenses and grant such further relief that the Court deems reasonable and just.

.

This 1st day of November, 2011.

Respectfully submitted,
KamberLaw, LLC

____/s/Scott A. Kamber_____

Scott A. Kamber (*pro hac vice*)
David A. Stampley (*pro hac vice*)
KAMBERLAW, LLC
100 Wall St., 23rd Fl.
New York, NY 10005
*skamber@kamberlaw.com*
*dstampley@kamberlaw.com*

RAHUL RAVIPUDI (SBN 204519)
ravipudi@psblaw.com
PANISH, SHEA & BOYLE, LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
Telephone:     (310) 477-1700
Facsimile:     (310) 477-1699

JOSEPH H. MALLEY (*pro hac vice*)
LAW OFFICE OF JOSEPH H. MALLEY, P.C.
1045 North Zang Boulevard
Dallas, Texas 75208
Telephone:     (214) 943-6100
Facsimile:     (214) 943-6170

DAVID C. PARISI (SBN 162248)
dcparisi@parisihavens.com
PARISI & HAVENS LLP
15233 Valleyheart Drive
Sherman Oaks, California 91403
Telephone:     (818) 990-1299
Facsimile:     (818) 501-7852