Scott A. Kamber (*pro hac vice*)
skamber@kamberlaw.com
David A. Stampley (*pro hac vice*)
dstampley@kamberlaw.com
KamberLaw, LLC
100 Wall Street, 23rd Floor
New York, NY 10005
Telephone: (212) 920-3072
Facsimile: (212) 202-6364

Rahul Ravipudi (SBN 204519)
ravipudi@pbslaw.com
Panish, Shea & Boyle, LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
Telephone: (310) 477-1700
Facsimile: (310) 477-1699

Class Counsel
(Additional attorneys listed on signature page)

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAN VALENTINE, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> NEBUAD, INC., *et al.*, <br><br> Defendants. | Case No. C 08-05113 (TEH) (LB) <br><br> Hon. Thelton E. Henderson <br><br> **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** <br><br> Judge:    The Hon. Thelton E. Henderson <br> Date:     December 19, 2011 <br> Time:     10:00 a.m. <br> Location: Courtroom 12, 19th Floor <br> 450 Golden Gate Avenue <br> San Francisco, California 94102 |

**NOTICE OF MOTION**

NOTICE IS HEREBY GIVEN that Plaintiffs will move the Court, pursuant to Federal Rule of Civil Procedure 23(e), to grant final approval of a proposed settlement in this consumer class action on December 19, at 10:00 a.m., or as soon thereafter as counsel may be heard by the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, California 94102, in Courtroom 12, before the Honorable Thelton E. Henderson.

Plaintiffs seek final approval of this class action settlement as fair, reasonable and adequate. The Motion is based on this Notice of Motion, the accompanying Brief in Support of the Motion and the authorities cited therein and accompanying exhibits, the accompanying Declaration of David A. Stampley in support of this motion, oral argument of counsel, and any other matter that may be submitted at the hearing.

Dated: December 7, 2011                    KAMBERLAW, LLC

By: s/David A. Stampley
David A. Stampley
One of the Attorneys for Plaintiffs, individually and on behalf of a Class of similarly situated individuals

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................................ ii

MEMORANDUM OF LAW ........................................................................................................... 1

I.   NATURE OF THE LITIGATION ...................................................................................... 2

    A. Litigation of the Case ............................................................................................... 2

    B. Protracted Settlement Discussions and the Settlement Approval Process ............... 3

    C. NebuAd's Position .................................................................................................... 5

II.  SETTLEMENT TERMS ...................................................................................................... 5

    A. Class Definition ........................................................................................................ 5

    B. Settlement Benefits .................................................................................................. 6

        1. Testimonial Cooperation ................................................................................... 6

        2. Settlement Fund ................................................................................................ 6

        3. Payment of Notice and Administrative Fees, Attorneys' Fees, and Expenses .. 7

    C. Release ..................................................................................................................... 7

III. CLASS NOTICE COMPORTS WITH DUE PROCESS AND RULE 23 .......................... 8

IV. SETTLEMENT WARRANTS FINAL APPROVAL ......................................................... 9

    A. Strength of Plaintiffs' Case ..................................................................................... 10

    B. Risks of Continued Litigation ................................................................................ 10

    E. Extent of Discovery Completed and Stage of Proceedings ................................... 13

    F. Experience and Views of Counsel .......................................................................... 13

    G. Presence of Governmental Participant .................................................................. 14

    H. Reactions of Class Members .................................................................................. 14

V.   CONCLUSION ................................................................................................................. 14

# TABLE OF AUTHORITIES

**Cases**

*Boyd v. Bechtel Corp.*, 485 F. Supp. 610 (N.D. Cal. 1979) ............................................................... 13

*Churchill Village LLC v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004) ................................................. 14

*Dunleavy v. Nadler*, 213 F.3d 454 (9th Cir. 2000) ......................................................................... 10

*Francisco v. Numismatic Guaranty Corp. of America*, No. 06-61677-CIV, 2008 WL 649124 (S.D. Fla. Jan. 31, 2008) ..................................................................................................... 12

*Hanson v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ................................................................ 9

*In re OmniVision Tech. Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2008) ........................... 9, 10, 12, 13

*In re Pacific Enters. Sec. Litig.*, 47 F.3d 373 (9th Cir. 1995) ......................................................... 13

*Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298 (S.D. Fla. 2005) ............................................. 11

*Molski v. Gleich*, 318 F.3d 937 (9th Cir. 2003) ............................................................................. 14

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) ............................................. 8

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) ..................... 14

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982)) ................................ 10, 13

*Protective Comm. for Indep. Stockholders v. Anderson*, 390 U.S. 414 (1968) ............................... 10

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, No. CV-04-2195 (CPS), 2006 WL 3681138 (E.D.N.Y. Dec. 11, 2006) ....................................................................................................... 12

*Saulic v. Symantec Corp.*, 596 F.Supp.2d 1323 (C.D. Cal. 2009) .................................................... 8

*New York v. Keds Corp.*, No. 93 CIV. 6708 (CSH), 1994 WL 97201 (S.D.N.Y. Mar. 21, 1994) .. 12

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ......................................................................... 9

**Rules**

Fed. R. Civ. P. 23 ............................................................................................................................... 9

Fed. R. Civ. P. 23(c)(2)(B) ................................................................................................................ 8

Fed. R. Civ. P. 23(e)(1) ..................................................................................................................... 8

**Treatises**

Alba Conte and Herbert B. Newberg, Newberg on Class Actions § 10:17 (4th Ed. 2009) ............ 12

Alba Conte and Herbert B. Newberg, *Newberg on Class Actions* § 11:41 (4th Ed. 2009) .............. 9

# MEMORANDUM OF LAW[1]

After hard-fought litigation, which included joint discussions between Plaintiffs' and Defendants' representatives to analyze the privacy implications of users' online experiences, consultation with experts, motions to dismiss, formal mediation sessions, and protracted negotiations, the parties have reached a settlement (the Class Action Settlement Agreement, Dkt. 235-1, Exhibit A) (the "Settlement Agreement" and, in the context of such orders of the Court as give effect to such agreement, the "Settlement"). Plaintiffs now seek final approval of the Settlement.

This lawsuit was filed by Plaintiffs on behalf of themselves and a putative class in November 2008 against NebuAd, Inc. ("NebuAd" or "Defendant") and a number of Internet Service Providers ("ISPs") alleging violations of the Electronic Communications Privacy Act, the Computer Fraud and Abuse Act, California's Invasion of Privacy Act, California's Computer Crime Law and common law unjust enrichment. (Dkt. 1.) This Court dismissed the ISP defendants for lack of personal jurisdiction, leaving NebuAd as the sole remaining defendant in this jurisdiction. Cases have been brought against the dismissed ISP defendants in their home jurisdictions. NebuAd believes it has a number of legal and factual defenses to the claims asserted by Plaintiffs and denies any wrongdoing.

On September 20, 2011, this Court granted preliminary approval (Dkt. 239) to the Class Action Settlement Agreement (the "Settlement Agreement" or "Settlement") (Dkt. 235-1), reached after several mediation sessions with Magistrate Judge Spero and months of intense negotiation. As called for in the notice plan approved by the Court, Internet Notice and Website Notice were provided, and notice to the required governmental agencies was served pursuant to the Class Action Fairness Act.

Given the strength of the settlement—the termination of the NebuAd program, the testimonial cooperation of the NebuAd former officers and directors, as well as a $2.4 million fund dedicated to promoting consumers' privacy interests—it is not surprising that while there have

---

[1] Capitalized terms not expressly defined herein have the meanings ascribed to them in the Class Action Settlement Agreement (Dkt. 235-1).

been over 15,000 unique visitors to the settlement website, there have been no opt-outs or objections. *See* Declaration of Jeannine Andreis, Claims Administrator, attached hereto as Exhibit 2 ("Andreis Decl."). The last day for objections and opt-outs was December 1, 2011.

The complexity and novelty of Plaintiffs' claims, coupled with the vigorous defense promised and asserted by the Defendants, and the fact that NebuAd no longer exists as an actively operating business, further supports the conclusion that this Court should find the results achieved in this litigation are "fair, reasonable, and adequate" and that the Settlement Agreement warrants final approval.

## I.   NATURE OF THE LITIGATION

### A.   Litigation of the Case

On November 8, 2008, following substantial pre-complaint investigation over almost six months, Plaintiffs filed a complaint on behalf of themselves and similarly situated individuals against NebuAd and a number of its clients—ISPs that provide broadband Internet services to Plaintiffs and class members. (Dkt 1.) Plaintiffs alleged NebuAd devices installed in the ISPs' networks intercepted, analyzed, and modified class members' Internet communications and transmissions, without notice or consent and, in addition, that Defendants installed tracking code on Plaintiffs and class members' computers in violation of the Electronic Communications Privacy Act, the Computer Fraud and Abuse Act, California's Invasion of Privacy Act, California's Computer Crime Law, and giving rise to a claim for Unjust Enrichment. (*Id*.) Plaintiffs sought damages, injunctive, and declaratory relief. (*Id*.)

From December 2008 through January 2009, several motions to dismiss were filed by the ISP defendants and, on December 22, 2008, by NebuAd. (Dkt. 4.) On January 30, 2009, the ISP defendants sought to dismiss on jurisdictional grounds and for failure to state a claim (Dkts. 40, 44, 51, 52). Defendant Bresnan Communications, Inc., one of the ISP defendants, filed a motion to compel arbitration. (Dkt. 42.)

Shortly after the filing of the ISP motions to dismiss, Plaintiffs sought jurisdictional discovery. (Dkt. 64.) The Court granted Plaintiffs leave to conduct jurisdictional discovery of NebuAd but not the ISPs. (Dkt. 90). In October 2009, the Court dismissed the ISP defendants for lack

of personal jurisdiction. (Dkt. 166.) Class actions were then brought against the individual ISP defendants in their respective home jurisdictions. (Declaration of David A. Stampley in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement, hereinafter, "Stampley Decl." ¶4, attached hereto as Exhibit 1.)

After NebuAd filed an answer to the Complaint in April 2009, Plaintiffs' efforts were focused on obtaining discovery and the review of that discovery. Issues involving the preservation of electronic media were raised and addressed and several discovery-related motions were required before Magistrate Judge Chen, including motions to compel discovery of NebuAd. (Dkts. 156, 162.) Ultimately, Plaintiffs received responses to discovery requests totaling approximately 6,600 pages of documents from NebuAd. (Stampley Decl. ¶5.)Also, through this period, Plaintiffs counsel reviewed and evaluated the insurance policies of NebuAd in advance of further settlement discussions. (*Id*.)

**B.     Protracted Settlement Discussions and the Settlement Approval Process**

As early as January 2009, representatives of the parties had numerous discussions regarding settlement telephonically and in person. (Stampley Decl. ¶6.) In January 2009, the parties participated in a private and confidential mediation before a JAMS mediator, the Hon. William Cahill (ret.). (*Id*.) After a full day of mediation, the settlement discussions broke off. (*Id*.)

On May 13, 2009, and further complicating the settlement of this matter, NebuAd executed an assignment for the benefit of creditors, declaring the company insolvent and seeking to liquidate assets. (Dkt. 118). NebuAd's assets and documents were assigned in trust to a fiduciary assignee, NebuAd, LLC. Thus, each time the parties attempted to resume settlement discussions, unique issues arose regarding who was directing the litigation, who had the power to settle, who had authority to assign insurance policies, amongst others. (Stampley Decl. ¶7.)

On December 17, 2009, Defendant, represented by new counsel, and with Plaintiffs' counsel's participation, deposed a former NebuAd employee to ascertain the status of other potentially responsive discovery materials, including NebuAd devices, themselves. In cases against the ISP defendants in their respective jurisdictions, Plaintiffs took depositions of ISP personnel involved in NebuAd deployments and submitted technical experts' analyses of relevant NebuAd and ISP

processes, based on documents produced and deposition testimony. In addition, Plaintiffs conferred telephonically with former NebuAd officers and their legal representative, who continued to participate in the settlement process. Plaintiffs engaged in a detailed analysis of the patents and evidence regarding other corporate assets and were persuaded of NebuAd's lack of assets, save for its insurance policies. Plaintiffs feel certain that, if the case were litigated to resolution, the wasting policies would leave one, limited policy available for monetary relief, thus resulting in further litigation costs but ultimately little recovery that would provide a meaningful benefit to the class.

In June 2010, the parties informed the Court of their interest in renewing discussions to explore possible resolution. On September 22, 2010, the first full mediation session was conducted by U.S. Magistrate Judge Joseph Spero in San Francisco, California, which was attended by counsel for the parties; Plaintiff, Mr. Valentine; and a legal representative of certain of NebuAd's former directors and officers. Two additional telephonic conferences were conducted by Magistrate Judge Spero. Many of the complex issues discussed above were stumbling blocks that were ultimately resolved through mediation and subsequent discussions between the parties over the course of nearly six months. The parties subsequently reached an agreement in principle to settle the litigation, after which their continued efforts led to the proposed settlement presented to the Court.

On August 16, 2011, having reached full agreement on terms and conditions of a settlement, the parties sought the Court's preliminary approval of the Settlement Agreement. (Dkts. 233-235.) On September 20, 2011, this Court issued an Order granting preliminary approval. (Dkt. 239.)

On September 22, 2010 counsel for the parties met in person in San Francisco, California for mediation with the assistance of Magistrate Judge Spero. (Stampley Decl., ¶11.) On November 10, 2010 the parties had a telephonic settlement conference with the assistance of Magistrate Judge Spero. (*Id*.) In the months between the mediation sessions, and in the months following the mediation sessions, counsel for the parties engaged in dozens more hours of negotiations and were able to finalize and document the terms of the proposed settlement for which they now seek final approval from this Court. (*Id*.)

The Settlement provides for the testimonial cooperation of NebuAd's former officers and directors in other actions arising out of the facts of this case. The Settlement also provides for a fund of $2.4 million to benefit the Class by funding projects to promote consumers' privacy interests. The fact that the defendant is no longer in business ensures that the actions complained of will no longer be a threat to consumers. The settlement fund will also be applied to settlement-related costs—including notice, settlement administration, incentive awards, and attorneys' fees and expenses.

**C.     NebuAd's Position**

At all times, NebuAd has denied and continues to deny: (1) each and all of the claims and allegations of wrongdoing made by the Plaintiffs and Class Members; (2) all charges of wrongdoing or liability against it arising out of any of the conduct, statements, acts or omissions alleged, or that could have been alleged, in the action; and (3) allegations that the Plaintiffs or any Class Member were harmed by any conduct by NebuAd alleged in the action or otherwise. (Stampley Decl. ¶12.)

NebuAd contends it has acted properly, and denies that the Plaintiffs and Class Member are entitled to any form of damages based on the conduct alleged in the Complaint. (Stampley Decl. ¶13.) In addition, NebuAd maintains it has meritorious defenses to all claims alleged in the Complaint and is prepared to defend vigorously against all claims asserted in this litigation. (*Id*.)

## II.     SETTLEMENT TERMS

The key terms of the Settlement Agreement (Dkt. 235-1, Exhibit A) are as follows:

**A.     Class Definition**

On September, 20, 2011, pursuant to Rule 23(a) and Rule 23(b)(1) of the Federal Rules of Civil Procedure, this Court certified the following Class for settlement purposes:

> All persons in the United States who, from January 1, 2007 to July 1, 2008 were consumers subscribing to the services of certain Internet Service Providers identified in Exhibit A to the Agreement.

(Dkt. 239).

**B.     Settlement Benefits**

NebuAd has agreed to provide the following relief:

### 1.     *Testimonial Cooperation*

NebuAd's former directors and officers, Robert Dykes and Kira Makagon, agree to provide sworn testimony to Plaintiffs' counsel relating to the allegations in the Complaint, and to testify at the trial of defendants in other actions relating to or arising out of such defendants' or clients' relationship with NebuAd.

### 2.     *Settlement Fund*

Upon final approval of the Settlement Agreement, NebuAd will establish and administer a cash settlement fund of two million, four hundred nine thousand, five hundred nine dollars and seventy four cents ($2,409,509.74) from its insurance carriers, as a *cy pres* donation to a non-profit organization or organizations with the purpose of protecting consumers from misuse and/or unauthorized distribution of their electronic information or of personally identifiable information gathered through the use of the Internet.

The following organizations, all of which have demonstrated the capability and commitment to conduct research, education, and activities with the purpose of protecting consumers from misuse and/or unauthorized distribution of their electronic information or of personally identifiable information gathered through use of the Internet will receive *cy pres* funds from the Net Settlement Fund as set forth in Articles II.7.D and II.8.B of the Settlement Agreement and Plaintiffs' proposed allocation plan detailed in their letter to the Court of November 1, 2011 (Dkt. 242-1):

   a.     Each of the following will receive a $75,000 cy pres award: National Network to End Domestic Violence–Safety Net–Safe & Strategic Technology Project; Center for Democracy and Technology; Fordham Law School–Center on Law and Information Policy; Free Press–Open Technology Initive; Public Knowledge–Open Technology Initiative; Lamb's Farm–Safe Internet surfing education; U.C.–Santa Barbara–Computer Security Group; U.C.–Berkeley School of Law–Berkeley Center for Law & Technology; U.C.–Berkeley–Information School–Prof. Deidre Mulligan Internet privacy projects.

   b.     Each of the following will receive a $125,000 *cy pres* award for the further-

ance of clinical programs in which law students represent consumers in arbitrations for the particular purpose of protecting consumers from misuse and/or unauthorized distribution of their electronic information or of personally identifiable information gathered through use of the Internet: IIT Chicago-Kent College of Law; New York Law School; University of Colorado; U.C.–Hastings College of Law.

    c.  Each of the following will receive a *cy pres* award consisting of an equal division of the monies remaining in the Settlement Fund—expected to total no less than $200,000—following initial distributions to the *cy pres* recipients designated in sections (a) and (b), above: the Electronic Frontier Foundation–Technology Research & Development Program and Privacy Rights Clearinghouse.

   **3.**  ***Payment of Notice and Administrative Fees, Attorneys' Fees, and Expenses***

  NebuAd, through the settlement fund described above, will cover the cost of all notice and administrative fees and attorneys' fees and expenses. On November 21, 2011, Magistrate Judge Beeler issued her Report and Recommendation recommending approval of the requested fees and costs. (Dkt. 248.)

**C.**  **Release**

  Upon the entry of a final order approving the Settlement and following the expiration of the time for appeal or the entry of a decision on such appeal, the Class Representatives, and each and every member of the settlement Class who have not timely filed requests to be excluded from the settlement Class, will release "any and all known or unknown claims, demands, actions, suits, causes of action (under the common or civil law, statutes or regulations, including laws of all jurisdictions outside the United States), damages whenever incurred whether compensatory or exemplary, liabilities of any nature or under any theory whatsoever, including costs, expenses, penalties, and attorneys' fees, in law or equity, that any Releasor, whether or not they object to the Settlement, ever had or now has, directly, representatively, derivatively, or in any capacity, arising out of or related in any way to any conduct, events, or transactions occurring in the course of the Action or arising out of the facts, transactions, events, matters, occurrences, acts, disclosures, statements, misrepresentations, omissions or failures to act regarding NebuAd, Inc.'s deployment

of devices, appliances, software, and/or other processes and in processing Internet communications or transmissions from January 1, 2007 to the present."

Access to the full text of the release was available to all Class Members in the Settlement Agreement document posted on the Settlement website (www.nebuadsettlement.com).

### III. CLASS NOTICE COMPORTS WITH DUE PROCESS AND RULE 23

The Court found that requirements for a mandatory class action under Rule 23 (b)(1) are satisfied. (Dkt. 239.) The Court found that the requirements of Rule 23(a) were met as: (a) the number of Settlement Class Members is so numerous that joinder of all members thereof is impracticable; (b) there are questions of law and fact common to the Settlement Class; (c) the claims of the named representatives are typical of the claims of the Settlement Class they seek to represent; and (d) the Plaintiffs will fairly and adequately represent the interests of the Settlement Class. (*Id*.) The Court also found that a mandatory class under Rule 23(b)(1) is appropriate because prosecuting separate actions by or against individual class members would create a risk of inconsistent or varying adjudications, or such adjudications would be dispositive of the interests of other members not party to the individual adjudication. (*Id*.).

Before final approval of a class action can issue, notice of the settlement must be provided to the class. Fed. R. Civ. P. 23(e)(1). Rule 23 requires the class receive "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Notice to the class must be "reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *Saulic v. Symantec Corp*., 596 F.Supp.2d 1323, 1327 (C.D. Cal. 2009) (notice via defendants' customer email lists appropriate).

As detailed in the Declaration of Jeannine Andreis, and pursuant to the Court's Preliminary Approval Order, NebuAd caused the Notice to be effectuated through Internet Notice and Website Notice. Internet Notice was effectuated through the use of Internet advertisements using banner ads on selected Internet websites. (Andreis Decl. ¶¶ 7-8.) The Notice was further published on the Settlement website, www.nebuadsettlement.com. (Andreis Decl. ¶¶ 5-6.) This Court previously

ruled at the preliminary approval hearing that such notice to the members of the Settlement Class (a) is the best notice practicable to members of the Settlement Class; (b) is reasonably calculated, under the circumstances, to apprise members of the Settlement Class of the pendency of the Action, conditional certification of the Settlement Class, and the proposed Settlement; the application of Plaintiffs' counsel for an award of attorneys' fees and reimbursement of expenses; and the application by Representative Plaintiffs for an incentive award; (c) is reasonable and constitutes due, adequate and sufficient notice to all persons and entities entitled to receive notice; and (d) meets all applicable requirements of law including, but not limited to, Rule 23(c) of the Federal Rules of Civil Procedure and the Due Process Clause of the Fourteenth Amendment of the United States Constitution. (Dkt. 239.)

### IV.     SETTLEMENT WARRANTS FINAL APPROVAL

Under Federal Rule of Civil Procedure 23(e), "[t]he court must approve any settlement, voluntary dismissal, or compromise of the claims, issues or defenses of a certified class" and such approval may occur "only after a hearing and on finding that the settlement, voluntary dismissal, or compromise is fair, reasonable, and adequate." Fed. R. Civ. P. 23; *In re OmniVision Tech. Inc.*, 559 F. Supp. 2d 1036, 1040 (N.D. Cal. 2008) (citing *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003)). While a number of factors must be balanced when considering the final approval of a class action settlement, courts in the Ninth Circuit presume fairness if the negotiations were at arm's length, there was sufficient discovery, the counsel are experienced in similar litigation, and there are only a small number of objectors. Alba Conte and Herbert B. Newberg, *Newberg on Class Actions* § 11:41 (4th Ed. 2009); *Hanson v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

As provided above, the Settlement Agreement, to which there have not been any objections to date, is the product of substantial effort by experienced counsel with sufficient discovery, and only after extensive arm's-length negotiations and a private JAMS mediation session and two mediation sessions with Magistrate Judge Spero. Accordingly, the Court's analysis of the factors listed below should be examined with a presumption that the Settlement Agreement is fair.

It is well-settled that in analyzing the fairness, reasonableness, and adequacy of a class action settlement, the Court may consider the following non-exhaustive list of factors:

> [T]he strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the

*In re OmniVision*, 559 F. Supp. 2d at 1040-41 (citing *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982)). In the instant case, each of the factors militates in favor of approving the settlement.

### A. Strength of Plaintiffs' Case

"Basic to [analyzing a proposed settlement] in every instance, of course, is the need to compare the terms of the compromise with the likely rewards of the litigation." *Protective Comm. for Indep. Stockholders v. Anderson*, 390 U.S. 414, 424-25 (1968). While Plaintiffs believe in the strength of their claims, it fails to outweigh the significant benefits and mitigation of risk provided for in the Settlement. Plaintiffs brought a number of novel claims and theories in an untested area of law. Defendants have asserted and express confidence in a variety of defenses. The added uncertainty involved in litigating against an insolvent company that is no longer an active business entity led Plaintiffs to recognize that the Settlement Agreement resolves material uncertainties. (Stampley Decl. ¶ 19.) Plaintiffs' case is not so strong that the Settlement Agreement is unreasonable. Accordingly, this factor favors approval of the Settlement.

### B. Risks of Continued Litigation

The next factor this Court must consider is "the risk of continued litigation balanced against the certainty and immediacy of recovery from the Settlement." *In re OmniVision*, 559, F. Supp. 2d at 1041 (citing *Dunleavy v. Nadler*, 213 F.3d 454, 458 (9th Cir. 2000)). "The Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expen-

sive litigation. In this respect, it has been held proper to take the bird in hand instead of a prospective flock in the bush." *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1323 (S.D. Fla. 2005).

In the absence of the Settlement, and assuming Plaintiffs prevailed in obtaining certification of the class, Plaintiffs would face a number of certain obstacles in litigating this matter. It is certain that the expense, duration, and complexity of the protracted litigation that would result from the claims and defense alleged in this litigation would be substantial. It would be necessary to undertake additional document and deposition discovery, expert discovery, and dispositive motion practice at the conclusion of discovery, and this case could easily require an additional two-three years to reach a conclusion. (Stampley Decl. ¶20.) Significant costs would be incurred were this matter to proceed to trial, including expenses for expert witnesses, technical consultants, and the myriad of other costs necessitated by the trial of a class action. (*Id.*) Given the complexity of the issues, the defeated party would likely appeal. (*Id.*)

These predictable obstacles to timely resolution must be considered in light of the unpredictable factors represented by the risks discussed above. Plaintiffs face risks of dismissal at the pleading stage and in proving liability and damage at trial. Finally, it is impossible to predict how a trier of fact will construe the evidence and testimony. Here, the expense, complexity and likely duration of the litigation fully support the Settlement, and the substantial and immediate relief provided to the Class under the Settlement weigh heavily in favor of its approval compared to the inherent risk of continued litigation, trial, and appeal. As such, the substantial and immediate relief provided to the Class under the Settlement weighs heavily in favor of its approval compared to the inherent risk of continued litigation, trial, and appeal.

**C. Risks of Maintaining Class Action Status**

The Court's September 20, 2011 Order certified a nationwide class for settlement purposes only. (Dkt. 239.) However, if the Court fails to grant final approval to the Settlement Agreement for any reason, the conditional certification of the class will automatically become void. (*Id.*) Although Plaintiffs and Class Counsel believe they would be successful in obtaining certification of a class absent the Settlement Agreement, Defendant has made it clear that, in the absence of the agreement, they would vigorously oppose certification. Further, even if Plaintiffs were successful

in a motion for class certification absent the Settlement Agreement, Defendant could move for de-certification of the class before or during trial and likely would challenge certification on appeal. The litigation risks faced by the Class are also consistent with the findings of Magistrate Judge Beeler in her Report & Recommendations. (Dkt. 248 at 3.)

### D.   Amount Offered in Settlement

The next factor relevant to a consideration of the reasonableness of the Settlement Agreement is the amount offered by Defendant. In addition to the testimonial cooperation obtained by the settlement, the settlement also provides for a settlement fund of just over two million, four hundred thousand dollars ($2,409,509.74) for *cy pres* donations to funding and sponsoring programs designed to protect consumers from misuse and/or unauthorized distribution of their electronic information or of personally identifiable information gathered through use of the Internet.

"When a litigated or settled aggregate class recovery cannot feasibly be distributed to individual class members . . . the court may direct that such funds be applied prospectively to the indirect benefit of the class." *Newberg on Class Actions* § 10:17. In cases such as this, where any potential recovery per Class member would be small, a *cy pres* resolution, such as the one proposed here, is reasonable and adequate. *State of New York v. Keds Corp.*, No. 93 CIV. 6708 (CSH), 1994 WL 97201 at *3 (S.D.N.Y. Mar. 21, 1994); *Francisco v. Numismatic Guaranty Corp. of America*, No. 06-61677-CIV, 2008 WL 649124 (S.D. Fla. Jan. 31, 2008). Courts have also found settlements of statutory actions fair and reasonable where the class representatives received statutory damages, and the remainder of the settlement was distributed as a *cy pres* payment. *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, No. CV-04-2195 (CPS), 2006 WL 3681138 (E.D.N.Y. Dec. 11, 2006).

Moreover, the certainty and relative immediacy of the benefit under the Settlement Agreement, when compared with the risk associated with seeking the further benefits but receiving nothing, further justifies the reasonableness of accepting less than the maximum potential recovery. *See In re OmniVision*, 559 F. Supp. 2d at 1042.

### E. Extent of Discovery Completed and Stage of Proceedings

The next factor requires that the Court consider the extent of the discovery conducted to date and the stage of the litigation as indicators of class counsel's familiarity with the case and ability to make informed decisions. *In re OmniVision*, 559 F. Supp. 2d at 1042 (citing *Dunleavy*, 213 F.3d at 459). NebuAd provided Plaintiffs with approximately 6,600 documents to review relevant to Plaintiffs' claims in response to discovery requests propounded by Plaintiffs. (*See* Stampley Decl. ¶21.) The information provided by Defendants—both prior to and at the mediation— and Class Counsel's pre-suit investigation (including consultations with experts), allowed Class Counsel to be adequately familiarized with the case and to effectively negotiate the merits of the Settlement Agreement. (*Id.*) Accordingly, this factor, too, favors approval of the Settlement.

### F. Experience and Views of Counsel

The sixth factor has the Court consider Class Counsel's experience and views about the adequacy of the Settlement. *See In re OmniVision*, 559 F. Supp. 2d at 1043. In fact, "[t]he recommendations of plaintiff's counsel should be given a presumption of reasonableness." *Id.* (quoting *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979)). Reliance on such recommendations is premised on the fact that "parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). Class Counsel, as well as other members of KamberLaw, LLC, KamberLaw, LLP, Panish, Shea & Boyle, LLP, Parisi and Havens, LLP and the Law Office of Joseph H. Malley, that were actively involved in the litigation of this matter, have regularly engaged in major complex litigation, and have had extensive experience in prosecuting consumer class action lawsuits of similar size and complexity. (Stampley Decl. ¶16) Through their investigation, consultation with experts, review of discovery materials, litigation, mediation, and settlement, Class Counsel have an intimate understanding of the instant litigation and believe the settlement to more than exceed the "fair, adequate, and reasonable" standard required for the Court's approval. (*Id.*) This fact, therefore, also favors the Court's final approval of the Settlement Agreement.

### G. Presence of Governmental Participant

In this matter, counsel made themselves available to inquiries from representatives of government agencies, however there was no governmental participation. Therefore, this factor does not apply in this matter. (Stampley Decl. ¶22.)

### H. Reactions of Class Members

The final factor in the Court's determination of the fairness, adequacy, and reasonableness of the Settlement Agreement is the reaction of the class to the settlement. *Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003). "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528-29 (C.D. Cal. 2004). There have been no objections from the class members to the Settlement Agreement and the deadline has now passed. This strongly weighs further favoring its approval. *Churchill Village LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004).

## V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully ask that the Court grant final approval of the proposed settlement agreement, unconditionally certify the Settlement Class pursuant to Rules 23(a) and Rules 23(b)(1) of the Federal Rules of Civil Procedure, and enter the proposed order separately submitted as Exhibit 3, and grant such further relief the Court deems reasonable and just.

| | |
|---|---|
| Dated: December 7, 2011 | KAMBERLAW, LLC |
| | By: s/David A. Stampley |
| | David A. Stampley |
| | One of the Attorneys for Plaintiffs, individually and on behalf of a Class of similarly situated individuals |

Scott A. Kamber (*pro hac vice*)
skamber@kamberlaw.com
David A. Stampley (*pro hac vice*)
dstampley@kamberlaw.com
KamberLaw, LLC
100 Wall Street, 23rd Floor
New York, NY. 10005
Telephone: (212) 920-3072
Facsimile: (212) 202-6364

Deborah Kravitz (SBN 275661)
dkravitz@kamberlaw.com
KamberLaw, LLP
141 North Street
Healdsburg, California 95448
Telephone: (707) 820-4247
Facsimile: (212) 202-6364

Brian J. Panish (SBN 116060)
panish@psblaw.com
Rahul Ravipudi (SBN 204519)
ravipudi@psblaw.com
Pete Kaufman (SBN 269297)
kaufman@psblaw.com
Panish, Shea & Boyle, LLP
11111 Santa Monica Blvd., Suite 700
Los Angeles, CA 90025
Telephone: (310) 477-1700
Facsimile: (310) 477-1699

Class Counsel

1  Joseph H. Malley
2  malleylaw@gmail.com
   Law Office of Joseph H. Malley
3  1045 North Zang Blvd.
   Dallas, TX 75208
4  Telephone: (214) 943-6100
   Facsimile:  (214) 943-6170
5

6  David Parisi (SBN 162248)
   dparisi@parisihavens.com
7  Suzanne Havens Beckman (SBN 188814)
   shavens@parisihavens.com
8  Parisi & Havens LLP
   15233 Valleyheart Drive
9  Sherman Oaks, California 91403
10 Telephone: (818) 990-1299
   Facsimile:  (818) 501-7852
11
   Counsel for Plaintiffs
12

Memorandum of Law in Support of        16         Case No. C 08-05113 (TEH) (LB)
Final Approval of Settlement