SCOTT A. KAMBER (*pro hac vice*)
skamber@kamberlaw.com
DAVID A. STAMPLEY (*pro hac vice*)
dstampley@kamberlaw.com
KamberLaw, LLC
100 Wall Street, 23rd Floor
New York, New York 10005
Telephone: (212) 920-3072
Facsimile: (212) 202-6364

RAHUL RAVIPUDI (SBN 204519)
ravipudi@pbslaw.com
PANISH, SHEA & BOYLE, LLP
11111 Santa Monica Boulevard, Suite 700
Los Angeles, California 90025
Telephone: (310) 477-1700
Facsimile: (310) 477-1699

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAN VALENTINE, *et al.*,<br><br>　　　　　　　　　Plaintiffs,<br><br>v.<br><br>NEBUAD, INC., *et al.*,<br><br>　　　　　　　　　Defendants. | Case No. C 08-05113 (TEH) (LB)<br><br>**DECLARATION OF DAVID A. STAMPLEY IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Hon. Thelton E. Henderson.<br><br>Date:　　December 19, 2011<br>Location:　Courtroom 12, 19th Fl.<br>　　　　　450 Golden Gate Avenue<br>　　　　　San Francisco, CA 94102<br>Time:　　10:00 a.m. |

I, David A. Stampley, declare as follows:

1. I make this declaration in support of Plaintiffs' Motion for Final Approval of the Class Action Settlement Agreement. In the Court's Hearing Order granting preliminary approval of the proposed settlement in the above-captioned matter, I was appointed one of the Class Counsel in this matter and I have been actively coordinated all aspects of this litigation for Plaintiffs since its inception and I have personally managed and participated in those ef-

forts, including negotiation of the settlement and coordination of discovery. My partner, Scott A. Kamber, who has also been appointed as Class Counsel, has previously submitted declarations in this matter in support of Plaintiffs' fee application and I have submitted a declaration in support of preliminary approval of this Class Action Settlement Agreement. By reference, I incorporate the substance of these prior representations and supplement them with the following.

**A.     Litigation of the Case**

2.     On November 8, 2008, following substantial pre-complaint investigation over almost six months, Plaintiffs filed a complaint on behalf of themselves and similarly situated individuals against NebuAd and a number of its clients—ISPs that provide broadband Internet services to Plaintiffs and class members. Plaintiffs alleged NebuAd devices installed in the ISPs' networks intercepted, analyzed, and modified class members' Internet communications and transmissions, without notice or consent and, in addition, that Defendants installed tracking code on Plaintiffs and class members' computers in violation of the Electronic Communications Privacy Act, the Computer Fraud and Abuse Act, California's Invasion of Privacy Act, California's Computer Crime Law, and giving rise to a claim for Unjust Enrichment. (*Id.*) Plaintiffs sought damages, injunctive, and declaratory relief. (*Id.*)

3.     From December 2008 through January 2009, several motions to dismiss were filed by the ISP defendants and, on December 22, 2008, by NebuAd. On January 30, 2009, the ISP defendants sought to dismiss on jurisdictional grounds and for failure to state a claim. Defendant Bresnan Communications, Inc., one of the ISP defendants, filed a motion to compel arbitration.

4.     Shortly after the filing of the ISP motions to dismiss, Plaintiffs sought jurisdictional discovery. The Court granted Plaintiffs leave to conduct jurisdictional discovery of NebuAd but not the ISPs. In October 2009, the Court dismissed the ISP defendants for lack of personal jurisdiction. Class actions were then brought against the individual ISP defendants in their respective home jurisdictions.

5.     After NebuAd filed an answer to the Complaint in April 2009, Plaintiffs' efforts

were focused on obtaining discovery and the review of that discovery. Issues involving the preservation of electronic media were raised and addressed and several discovery-related motions were required before Magistrate Judge Chen, including motions to compel discovery of NebuAd. Ultimately, Plaintiffs received and reviewed responses to discovery requests totaling approximately 6,600 pages of documents from NebuAd. Also, through this period, Plaintiffs counsel reviewed and evaluated the insurance policies of NebuAd in advance of further settlement discussions.

B. **Protracted Settlement Discussions and the Settlement Approval Process**

6. As early as January 2009, representatives of the parties had numerous discussions regarding settlement telephonically and in person. In January 2009, the parties participated in a private and confidential mediation before a JAMS mediator, the Hon. William Cahill (ret.). After a full day of mediation, the settlement discussions broke off.

7. On May 13, 2009, and further complicating the settlement of this matter, NebuAd executed an assignment for the benefit of creditors, declaring the company insolvent and seeking to liquidate assets. NebuAd's assets and documents were assigned in trust to a fiduciary assignee, NebuAd, LLC. Thus, each time the parties attempted to resume settlement discussions, unique issues arose regarding who was directing the litigation, who had the power to settle, who had authority to assign insurance policies, amongst others.

8. On December 17, 2009, Defendant, represented by new counsel, and with Plaintiffs' counsel's participation, deposed a former NebuAd employee to ascertain the status of other potentially responsive discovery materials, including NebuAd devices, themselves. In cases against the ISP defendants in their respective jurisdictions, Plaintiffs took depositions of ISP personnel involved in NebuAd deployments and submitted technical experts' analyses of relevant NebuAd and ISP processes, based on documents produced and deposition testimony. In addition, Plaintiffs conferred telephonically with former NebuAd officers and their legal representative, who continued to participate in the settlement process. Plaintiffs engaged in a detailed analysis of the patents and evidence regarding other corporate assets and were persuaded of NebuAd's lack of assets, save for its insurance policies. Plaintiffs feel certain that, if

the case were litigated to resolution, the wasting policies would leave one, limited policy available for monetary relief, thus resulting in further litigation costs but ultimately little recovery that would provide a meaningful benefit to the class.

9. In June 2010, the parties informed the Court of their interest in renewing discussions to explore possible resolution. On September 22, 2010, the first full mediation session was conducted by U.S. Magistrate Judge Joseph Spero in San Francisco, California, which was attended by counsel for the parties; Plaintiff, Mr. Valentine; and a legal representative of certain of NebuAd's former directors and officers. Two additional telephonic conferences were conducted by Magistrate Judge Spero. Many of the complex issues discussed above were stumbling blocks that were ultimately resolved through mediation and subsequent discussions between the parties over the course of nearly six months. The parties subsequently reached an agreement in principle to settle the litigation, after which their continued efforts led to the proposed settlement presented to the Court.

10. On August 16, 2011, having reached full agreement on terms and conditions of a settlement, the parties sought the Court's preliminary approval of the Settlement Agreement. On September 20, 2011, this Court issued an Order granting preliminary approval.

11. On September 22, 2010 counsel for the parties met in person in San Francisco, California for mediation with the assistance of Magistrate Judge Spero. On November 10, 2010 the parties had a telephonic settlement conference with the assistance of Magistrate Judge Spero. In the months between the mediation sessions, and in the months following the mediation sessions, counsel for the parties engaged in dozens more hours of negotiations and were able to finalize and document the terms of the proposed settlement for which they now seek final approval from this Court.

C. **NebuAd's Position**

12. At all times, NebuAd has denied and continues to deny: (1) each and all of the claims and allegations of wrongdoing made by the Plaintiffs and Class Members; (2) all charges of wrongdoing or liability against it arising out of any of the conduct, statements, acts or omissions alleged, or that could have been alleged, in the action; and (3) allegations that the

Plaintiffs or any Class Member were harmed by any conduct by NebuAd alleged in the action or otherwise.

13. NebuAd contends it has acted properly, and denies that the Plaintiffs and Class Member are entitled to any form of damages based on the conduct alleged in the Complaint. In addition, NebuAd maintains it has meritorious defenses to all claims alleged in the Complaint and is prepared to defend vigorously against all claims asserted in this litigation.

**D.     The Settlement Warrants Final Approval**

14. The Settlement is the product of hard-fought litigation and takes into consideration the significant risks specific to the case. It was negotiated by experienced counsel for Plaintiffs and Defendant with a solid understanding of both the strengths and weaknesses of their respective positions.

15. I have participated directly in the mediation and negotiation efforts, the Motion For Preliminary Approval of the Proposed Settlement, and the Motion for Final Approval now before this Court.

16. Class Counsel, as well as other members of KamberLaw, LLC, KamberLaw, LLP, Panish, Shea & Boyle, LLP, Parisi and Havens, LLP and the Law Office of Joseph H. Malley, that were actively involved in the litigation of this matter, have regularly engaged in major complex litigation, and have had extensive experience in prosecuting consumer class action lawsuits of similar size and complexity. Through their investigation, consultation with experts, review of discovery materials, litigation, mediation, and settlement, Class Counsel have an intimate understanding of the instant litigation and believe the settlement to more than exceed the "fair, adequate, and reasonable" standard required for the Court's approval.

17. Throughout our mediation and negotiation efforts and in advising our clients of the proposed settlement, Plaintiffs' counsel has at all times considered the fairness, reasonableness, and adequacy of the settlement for the class, taking into account: the strength of Plaintiffs' case; the risk, expense, complexity and likely duration of further litigation; the risk of certifying a class and then maintaining class action status through trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings and views of

plaintiffs' counsel.

18. Against the backdrop of counsel's collective experience in prosecuting complex class actions, co-counsel and I have considered the claims set forth in the Complaint and our continued confidence in the merit of those claims, the scope of relief offered in the Settlement compared to potential relief at the conclusion of litigation, and the risks and costs of continued litigation. Taking these factors into account, it is my opinion that the proposed settlement is fair, reasonable, and adequate, well within the range of possible approval, and therefore deserving of the Court's final approval.

19. These issues and others were considered by Plaintiffs and their counsel in deciding to settle the litigation on terms which would provide the class with a benefit of $2.4 million and the testimonial cooperation of NebuAd's officers in related litigation. In reaching the determination to settle, Plaintiffs and Class Counsel have weighed the documentary evidence and legal authority supporting their allegations against the documents and legal authority that Defendant asserts undercut Plaintiffs' claims, as well as Defendants' characterizations and interpretations of the evidence in this case. Plaintiffs also considered the novelty of the harm and liability issues in this case and the added uncertainty involved in litigating against an insolvent company that is no longer an active business entity.

20. In the absence of the Settlement, and assuming Plaintiffs prevailed in obtaining certification of the Class, Plaintiffs would face a number of certain obstacles in litigating this matter. It is certain that the expense, duration, and complexity of the protracted litigation that would result from the claims and defense alleged in this litigation would be substantial. It would be necessary to undertake additional document and deposition discovery, expert discovery, and dispositive motion practice at the conclusion of discovery, and this case could easily require an additional two-three years to reach a conclusion. Significant costs would be incurred were this matter to proceed to trial, including expenses for expert witnesses, technical consultants, and the myriad of other costs necessitated by the trial of a class action. Given the complexity of the issues, the defeated party would likely appeal.

21. NebuAd provided Plaintiffs with approximately 6,600 documents to review rel-

evant to Plaintiffs' claims in response to discovery requests propounded by Plaintiffs. The information provided by Defendants—both prior to and at the mediation— and Class Counsel's pre-suit investigation (including consultations with experts), allowed Class Counsel to be adequately familiarized with the case and to effectively negotiate the merits of the Settlement Agreement.

22. In this matter, counsel made themselves available to inquiries from representatives of government agencies, however there was no governmental participation.

23. At no point prior to reaching agreement on the substantive terms of the Agreement did the parties discuss the amount of any incentive fees to the representative plaintiffs or attorney fee payments to Class Counsel.

24. On August 16, 2011, having reached full agreement on terms and conditions of a settlement, the parties sought the Court's preliminary approval of the Settlement Agreement. On September 20, 2011, this Court issued an Order granting preliminary approval. (Dkt. 239)

25. On November 21, 2011, Magistrate Judge Beeler issued her Report and Recommendation recommending approval of the requested fees and costs. (Dkt. 248.)

26. A copy of the firm resume of KamberLaw, LLC was provided to the Court on its application for preliminary approval (Dkt. 235-1) and still accurately reflects the qualifications and capabilities of Class Counsel.

27. I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: December 7, 2011      s/David A. Stampley
    New York, New York     David A. Stampley
                                    KAMBERLAW, LLC
                                    100 Wall Street, 23d Floor
                                    New York, New York 10005